1   MARTIN R. GLICK (No. 40187)
    BERNARD A. BURK (No. 118083)
2   DANIEL B. ASIMOW (No. 165661)
    ROBERT D. HALLMAN (No. 239949)
3   HOWARD RICE NEMEROVSKI CANADY
        FALK & RABKIN
4   A Professional Corporation
    Three Embarcadero Center, 7th Floor
5   San Francisco, California 94111-4024
    Telephone:   415/434-1600
6   Facsimile:   415/217-5910

7   Attorneys for Plaintiffs
    DATEL HOLDINGS LTD. and DATEL DESIGN &
8   DEVELOPMENT, INC.

FILED

NOV 2 0 2009

E-filing

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

9

10                  UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                                        CV  09    5535

13  DATEL HOLDINGS LTD. and DATEL        No.
    DESIGN & DEVELOPMENT, INC.,
14                                        Action Filed:
            Plaintiffs,
15                                        COMPLAINT FOR VIOLATIONS OF
        v.                                §§1-2 OF THE SHERMAN ACT AND §3
16                                        OF THE CLAYTON ACT; FOR UNFAIR
    MICROSOFT CORPORATION,                COMPETITION; AND FOR TORTIOUS
17                                        INTERFERENCE WITH PROSPECTIVE
            Defendant.                    ECONOMIC ADVANTAGE
18
                                          JURY TRIAL DEMANDED
19

20

21

22

23

24

25

26

27

28

COMPLAINT

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    Plaintiff Datel Holdings Ltd. and Datel Design & Development, Inc. (collectively,

2    "Datel"), by and for their complaint against Defendant Microsoft Corporation ("Microsoft"),

3    allege as follows:

4

5                                    **INTRODUCTION**

6    1.    Datel, a leading developer of video game enhancement products, develops and

7    manufactures aftermarket products for the Microsoft Xbox 360 video game system.  One of

8    Datel's leading products is a memory card for the Xbox known as the "MAX Memory" card.

9    A two gigabyte MAX Memory card retails for approximately $39.99.   The only other

10   supplier of memory cards for the Xbox is Microsoft.   The largest memory card sold by

11   Microsoft is a 512 megabyte unit, which has a retail list price of approximately $39.99 even

12   though it has only one-fourth the memory of the Datel product.

13   2.    In October 2009, Microsoft deployed a software update to the Xbox 360 known

14   as a "dashboard update."  Xbox 360 users are required to download the update in order to

15   access online multiplayer gaming; other users, upon information and belief, will be

16   prompted to download the update when they install new games.

17   3.    The dashboard update is intended to, and does in fact, disable Datel's memory

18   cards.  On information and belief, Microsoft's purpose in disabling Datel's memory cards is

19   to prevent consumers from choosing a Datel product that offers far better value for the price.

20   There is no benefit to consumers from Microsoft's decision to target and disable Datel's

21   memory cards.   To the contrary, Microsoft's actions will leave approximately 50,000

22   consumers with useless memory cards (and without the ability to access their data on the

23   cards), forestall innovation, and deprive future consumers of the benefits of competition.

24   4.    Microsoft's dashboard upgrade is also intended to foreclose competition from

25   Datel in the sale of other aftermarket Xbox accessories and add-ons, including gamepad

26   controllers, through the implementation of predatory technological barriers.    These

27   technological barriers do not constitute improvements of the product in any respect, but

28   rather are arbitrary contrivances intended to perpetuate Microsoft's market power.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

## JURISDICTION AND VENUE

5. Datel files this action against Microsoft for violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§1-2) and Section 3 of the Clayton Act (15 U.S.C. §14). This Court has subject matter jurisdiction over federal antitrust claims under 28 U.S.C. Sections 1331 and 1338(a).

6. Datel also seeks relief pursuant to the California Unfair Competition Law (Cal. Bus. & Prof. Code §§17200 *et seq.*) and California common law. The facts underlying these claims for relief share a common nucleus with the federal antitrust claims, and this Court has supplemental subject matter jurisdiction over such claims pursuant to 28 U.S.C. Section 1367.

7. Microsoft sells the Xbox and Xbox aftermarket products throughout the United States and the world, and derives substantial revenues from interstate and global commerce. Microsoft is subject to personal jurisdiction within this judicial district because it transacts business and is found within this district, and because the anticompetitive conduct described herein has affected Datel within this district. Venue is proper in this district pursuant to 28 U.S.C. Section 1391(b).

## INTRADISTRICT ASSIGNMENT

8. Pursuant to Northern District Local Rule 3-2(c), this action may be assigned on a district-wide basis.

## PARTIES

9. Plaintiff Datel Holdings Ltd is an international private corporation based in Staffordshire, United Kingdom. Datel Design & Development, Inc. is a Florida corporation and an affiliate of Datel Holdings Ltd.

10. Defendant Microsoft Corporation is a Washington corporation with its principal place of business in Redmond, Washington.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

COMPLAINT

# FACTUAL BACKGROUND

## The Microsoft Xbox 360

11. Microsoft released the Xbox—its first video game console—in 2001, and launched its second generation console, Xbox 360, in 2005. Various models of the Xbox 360 console, featuring a different hard drive capacity, a different look, and/or different bundled games, have been sold at different price points. As of August 27, 2009, Microsoft advertised its Xbox 360 Elite console for $299.99, its Xbox 360 Pro console for $249.99, and its Xbox 360 Arcade console for $199.99.

12. In addition to the functionality of the Xbox 360 for personal gaming, and the quality and variety of available games, Microsoft attracts customers with "Xbox Live," an online multiplayer gaming service that Microsoft operates in connection with the Xbox 360. Through an annual subscription, users have access through Xbox Live to web-based multiplayer gaming and digital media. As of May 2009, Microsoft reported more than 20 million active members of the Xbox Live online community.

13. The Xbox 360 reached the market about a year before Sony—Microsoft's competitor in the console market—released its own second generation video game console, Playstation 3, in November 2006. In May 2006, Bill Gates predicted that Microsoft would have a 10 million unit head-start in sales. The Xbox 360 continues to control a larger share of the console market than Sony's Playstation 3. In January 2009, Microsoft reported that life-to-date unit sales of the Xbox 360 console had reached 28 million, as compared to approximately 20 million for Playstation 3. In May 2009, Microsoft's life-to-date unit sales passed the 30 million mark for the Xbox 360, while analysts reported nearly 23 million sales for Playstation 3.

14. There is also a considerable aftermarket for Xbox 360 accessories and add-ons, separate and apart from Xbox 360 games. In fact, numerous commentators have opined that Microsoft has sold its Xbox 360 consoles at a loss, anticipating profits in the sale of games, membership in Xbox Live, and the sale of accessories and add-ons.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1

**Datel's Aftermarket Accessories and Add-Ons**

2       15.     Datel has been developing and manufacturing electronics and video game console

3   peripherals since the 1980s.    It offers several aftermarket products for the Xbox 360,

4   including the following:

5       •   The *XSATA* and the *Xport*—devices for transferring data between an Xbox 360 and

6           a personal computer, allowing users to store Xbox demos, game saves and other

7           materials on a personal computer when they are not being used on the Xbox 360.

8       •   The *MAX Memory Card*—memory cards compatible with the Xbox 360, available

9           in 2GB and 4GB varieties.

10      •   The *MAX Drive 160*—an external 160GB hard drive for use with the Xbox 360

11          console.

12      •   Other accessories designed for use with the Xbox 360 or Xbox Live, such as

13          gaming headsets and rechargers for wireless controllers.

14      16.     Datel has also announced, but has not yet released, another accessory designed

15  for use with the Xbox 360, a *Joypad* controller that will compete with Microsoft's wireless

16  controllers.

17

18

**Datel's MAX Memory Cards**

19      17.     Upon information and belief, Datel is currently the only source of memory cards

20  compatible with the Xbox 360 other than Microsoft itself.    Datel's MAX Memory Cards

21  ("DMMCs") were first released in May 2009.

22      18.     As of November 1, 2009, a 2GB DMMC for the Xbox 360 console was available

23  for purchase at the retail price of $39.99 and a 4GB DMMC for $49.99.    The DMMCs were

24  sold through various retailers, including online retailers such as Amazon.com, and bricks-

25  and-mortar retailers such as Best Buy, some of which may offer discounts that lower the

26  price of the DMCCs even further.    At the Best Buy website, the functionality of the 2GB

27  DMMC was described as follows:

28      Ensure that you have enough memory to save vital game information from your

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

COMPLAINT
-4-

1  Xbox 360 games. The Max Memory 2GB Memory Card provides 2 gigabytes of
2  reliable storage. Easily save levels, characters and high scores with speed and
   security.

3  19. As of November 1, 2009, Microsoft's 512MB memory card—the only size

4  available for purchase from Microsoft—was available for purchase at a list price of $39.99.

5  At the xbox.com website, Microsoft described the functionality of its memory card:

6  Take your games everywhere you go with eight times the space of the original
   Xbox 360 Memory Unit. With 512 MB of memory and a keychain carrying case,
7  it's a snap to bring your game saves, Xbox LIVE® gamer profiles, Arcade game
   downloads, and even exclusive kiosk content.

8

9  ### Microsoft Software Update Disables Datel's MAX Memory Cards

10  20. On or about October 16, 2009, a blog entitled "Major Nelson," which is operated

11  by Microsoft's Xbox Live Director of Programming, issued the following notice to Xbox

12  360 users:

13  #### Don't use unauthorized Xbox 360 Storage Devices

14  When Preview Program members start receiving the Xbox 360 system update
    next week, one of the changes is that unauthorized Memory Units will no longer
15  work with the Xbox 360. If you've moved your profile or saved games onto one
    to "back it up," you'd better move it back onto an authorized Xbox 360 storage
16  device prior to taking the update. If you continue to use an unauthorized Memory
    Unit after the update, you will not be able to access your stored profile or saved
17  games.

18  If you need help identifying officially licensed Xbox 360 storage devices or
    accessories you can read more about the licensed accessories program on
19  Xbox.com.

20  The blog entry offered no explanation for the new restrictive measures.

21  21. Although Microsoft initially informed Datel that the disabling of third party

22  memory units was an unintentional effect of the software update, it later stated in an

23  interview with G4TV.com that it was instead an intentional move ostensibly implemented to

24  prevent "cheating." The October 23, 2009 G4TV.com article quotes Microsoft's

25  explanation:

26  Microsoft goes to great lengths to protect the Xbox 360 and Xbox LIVE service
    from cheating, which is the primary purpose and use of these unauthorized MUs
27  [memory units] . . . Unauthorized MUs are not tested for compatibility or
    certified for safety and compliance standards and thus could damage customer's
28  Xbox 360 consoles.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    22.    Microsoft's disabling of the DMMCs, and the potential for substantial data loss

2    resulting from the disablement, has generated a great deal of discussion in the

3    "blogosphere," with many commenting that the explanation Microsoft proffered—

4    prevention of cheating—is nothing more than a pretext for forcing consumers to purchase its

5    own overpriced memory cards.

6    23.    Notably, Microsoft has never explained how or in what sense a larger memory

7    card promotes "cheating." Nor has Microsoft ever identified a single circumstance in which

8    the DMMC caused "compatibility" or "safety" issues or damages to a customer's Xbox 360

9    console.

10    24.    Upon information and belief, Microsoft's "cheating" justification is indeed a

11    pretext. Greater memory capacity does not encourage cheating and disabling the DMMCs

12    will not prevent cheating.    The disablement of higher capacity memory cards is a

13    technological step backwards, which *harms* Xbox 360 users. Upon information and belief,

14    the true purpose behind the disablement of the DMMCs is to exclude competition from the

15    Xbox 360 aftermarket for memory cards, and to force consumers to buy Microsoft's own

16    memory cards.

17

18    **Microsoft's Preemptive Barrier to Other Datel Accessories**

19    25.    Upon information and belief, Microsoft has modified the Xbox 360's

20    authorization protocols and Security Integrated Circuit processes to prevent the

21    interoperability of other Datel accessories—including the announced but not yet released

22    *Joypad*.    Upon information and belief, Microsoft's intention is to block the use of

23    competitive Datel devices. Upon information and belief, the true purpose behind the

24    erection of such technological barriers is to exclude competition from the Xbox 360

25    aftermarket for controllers, and to force consumers to buy Microsoft's own controllers.

26

27    **RELEVANT MARKETS**

28    26.    Upon information and belief, Microsoft's anticompetitive conduct has affected

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1    and continues to affect at least two relevant product markets: (1) the aftermarket for

2    accessories and add-ons specific to the Xbox brand (the "Aftermarket for Xbox 360

3    Accessories and Add-ons"); and (2) the market for video game systems that feature

4    multiplayer online gaming in addition to personal gaming (the "Multiplayer Online

5    Dedicated Gaming Systems Market"). The geographic scope of these markets is worldwide.

6

7                    **Microsoft Has Market Power in the Aftermarket for Xbox 360 Accessories**

8        27.   The Aftermarket for Xbox 360 Accessories and Add-ons comprises a relevant

9    market, which is wholly derivative of and dependent upon the primary market for the Xbox

10   gaming system. Microsoft and its licensees dominate the distinct Aftermarket for Xbox 360

11   Accessories and Add-ons.

12       28.   Such add-ons and accessories—for example, game controllers, external hard

13   drives, memory cards—are specifically designed for the Xbox 360 gaming system and are

14   not interchangeable with products outside the Aftermarket for Xbox 360 Accessories and

15   Add-ons.

16       29.   Microsoft controls the Aftermarket for Xbox 360 Accessories and Add-ons, and

17   has effected policies and practices designed to retain its control, including but not limited to:

18          (a)   tying the sale of aftermarket accessories and add-ons to the sale of the Xbox

19   360 console;

20          (b)   erecting technological barriers to restrict the interoperability of third party

21   add-ons and accessories;

22          (c)   using software "updates" to disable otherwise functional third party add-ons

23   and accessories; and

24          (d)   using its special access to purchasers of an Xbox gaming system to promote

25   its own add-ons and accessories and to advise consumers against purchasing third party add-

26   ons and accessories.

27       30.   The efficacy of Microsoft's techniques is indicated by the fact that Datel is the

28   only firm that has been able to overcome these deliberately-erected technical barriers and

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    bring to market a competing memory card for the Xbox 360. Datel achieved this through a

2    substantial investment in analyzing the security and authentication techniques employed by

3    the Xbox to exclude competitive accessories. However, Datel's share of this market is a

4    small fraction of that of Microsoft.

5        31.   Microsoft's market power in the Aftermarket for Xbox 360 Accessories and Add-

6    ons derives from its control over Xbox 360 hardware and software and from its special

7    access to purchasers of the Xbox 360 gaming system, and does not derive from contractual

8    rights that consumers knowingly and voluntarily gave Microsoft at the time of purchase.

9        32.   Market imperfections have prevented consumers from realizing the impact that

10   their choice in the primary market would have on their freedom in the aftermarket. For

11   example, the fact that the Xbox 360 console has a USB port suggests to consumers that third

12   party accessories and add-ons are compatible with the Xbox 360 gaming system. Likewise,

13   Microsoft's apparent acceptance of the compatibility of the DMMCs suggested that Xbox

14   360 accessories were not limited to those supplied by Microsoft and its licensees.

15       33.   In addition, Microsoft's own statements mislead consumers into a reasonable

16   belief at the time of purchasing an Xbox gaming system that third party accessories and add-

17   ons are readily available. For example, Microsoft spokesperson David Dennis recently

18   stated that "[t]he [Xbox] 360 also drives a ton of third-party spend," and noted the

19   availability of "a lot of third party alternatives" when it comes to Xbox 360 accessories.

20       34.   Microsoft has touted the fact that its "accessories attach rate is higher than

21   anyone's" at 4.1 for the Xbox 360 compared to 2.2 for the Sony Playstation 3. Microsoft

22   attributes the purchase of its accessories and add-ons to consumer loyalty to, and trust in,

23   Microsoft: "The fact that people continue to purchase our accessories over a lot of third-

24   party alternatives in many instances shows that people do gravitate toward the ones they

25   know they can trust." In fact, it is Microsoft's anticompetitive conduct, including tying and

26   predatory design, such as the erection of technological barriers to third party accessories and

27   the disabling of otherwise functional third party accessories, *not* consumer loyalty or esteem,

28   that primarily drives Microsoft's accessories attach rate.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

35.   Microsoft has used its power in the Aftermarket for Xbox 360 Accessories and Add-ons to charge supra-competitive prices.   For example, while memory cards for consumer electronics have plummeted in price since 2005—reports reflect a 22% decrease in price in 2007 alone—upon information and belief the price of Microsoft's proprietary Xbox 360 memory card held steady at $59.99 across a two-year period, until Datel's compatible memory cards reached the market and, within a month, Microsoft reduced its prices.

36.   Upon information and belief, even if there were meaningful competition in the primary market for multiplayer online dedicated gaming systems (which there is not), it would not check Microsoft's monopoly power in the aftermarket due to:

(a)   the high switching costs, which include not only the price of the gaming console (c. $200-$400) but also the library of games accumulated (c. $30-60 each), the subscription to online gaming services, and the ties that users develop in the online gaming community;

(b)   the high information costs;

(c)   the large ratio of installed customer base relative to potential new customers; and

(d)   the substantial ability to exploit customers.

## Microsoft Has Market Power in the Multiplayer Online Dedicated Gaming Systems Market

37.   The gaming industry by some estimates is currently in its seventh generation of video game systems.   While there are three main sources for dedicated video game systems in this "generation"—Microsoft, Sony and Nintendo—in addition to the varied gaming functionality of personal computers, there is a specific market for dedicated gaming systems with a meaningful capacity for online multiplayer gaming (the "Multiplayer Online Dedicated Gaming Systems Market").   Only two systems—Microsoft's Xbox 360 and Sony's Playstation 3—currently compete in that market.

38.   Nintendo's Wii system has limited multiplayer functionality and is widely

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1 understood to be designed with families and casual gamers in mind. The Wii's reduced
2 functionality and lower price point reflect a target market that is distinct from that of
3 Microsoft's Xbox 360 and Sony's Playstation 3. Accordingly, the Wii is not regarded by
4 consumers as reasonably interchangeable with the Xbox 360 and the Playstation 3, and the
5 cross-elasticity of demand between these products and the Wii is low.

6 39. While personal computers may offer multiplayer online functionality, except at a
7 high price point they tend to lack other features of dedicated gaming systems. A February
8 10, 2008 About.com article comparing dedicated consoles to personal computers as gaming
9 platforms estimated that a personal computer adequate for running the latest games "can
10 easily cost twice" the cost of a dedicated gaming console. Accordingly, personal computers
11 are not regarded by consumers as reasonably interchangeable with the Xbox 360 and the
12 Playstation 3, and the cross-elasticity of demand between these products and personal
13 computers is low.

14 40. Microsoft itself has measured the success of the Xbox 360 against the Playstation
15 3, to the exclusion of other products or platforms. For example, on December 1, 2008, a
16 Microsoft press release compared Xbox 360 sales against Playstation 3 sales in the United
17 States and Europe, and did not address Nintendo Wii or personal computer sales. Again, in
18 January 2009, Microsoft reported life-to-date unit sales of the Xbox 360 console and
19 compared them against life-to-date unit sales of the Playstation 3 console, and not against
20 any other product or platform.

21 41. In addition, on information and belief, Microsoft's pricing of the Xbox 360 line
22 has influenced Sony's pricing of the Playstation 3 line, and vice versa, but such pricing has
23 not tracked or influenced the pricing of the Nintendo Wii or of personal computer systems in
24 any direct or easily identifiable manner.

25 42. Accordingly, the second relevant market, for Multiplayer Online Dedicated
26 Gaming Systems, is a distinct market which currently includes products offered by Sony in
27 the Playstation 3 line and Microsoft in the Xbox 360 line. No products outside of that
28 market are reasonably interchangeable with the Xbox 360 or Playstation 3.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional corporation

1    43.   On information and belief, Microsoft enjoys market power within this relevant

2    market.   Sales statistics reported by Microsoft and confirmed by independent analysts

3    establish that the Xbox 360 console has significantly more life-to-date unit sales than the

4    Playstation 3 console—the only competing console product in the Multiplayer Online

5    Dedicated Gaming Systems market.  In a recent reaction to the release of sales statistics by

6    the research firm NPD, Microsoft also boasted of its dominant sales figures in subsidiary

7    game and accessories markets (described above), outpacing Playstation 3 accessory and

8    game sales.

9    44.   Microsoft's share of the Multiplayer Online Dedicated Gaming Systems market

10   was approximately 66% as of July 2009.  In June 2009, the Xbox 360 outsold the Playstation

11   3 by approximately 1.5 to 1, indicating that Microsoft's market dominance is continuing and

12   stable.

13   45.   On information and belief, Microsoft's market power in this relevant market is

14   unchecked by the potential for competition from new market entrants due to substantial

15   barriers to market entry.  In addition to the anticompetitive conduct that is the focus of this

16   complaint, such substantial barriers include but are not limited to:

17       (a)   The costs of development and production of a competing video game

18   system, which are extremely high.  A BBC article indicates that Microsoft, for example,

19   spent more than $4 billion developing and marketing the Xbox 360.

20       (b)   The established libraries of games and online gaming communities of the

21   incumbent companies, which tend to entrench consumers in a particular system and which

22   would be nearly impossible to replicate.  For example, it is estimated than an individual

23   video game for the Xbox 360 or Playstation 3 costs within the range of $10 million to

24   develop.

25       (c)   The massive monetary, technological and human resources at the disposal

26   of the incumbent companies, and their ability to sell below cost to achieve strategic goals.  It

27   is widely assumed that both Microsoft Xbox 360 consoles and Sony Playstation 3 consoles

28   have been sold below cost.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1

**FIRST CLAIM FOR RELIEF**
Violation of Section 2 of the Sherman Act (15 U.S.C. §2)

2

Monopolization and Attempted Monopolization of the Aftermarket for Xbox 360
Accessories and Add-Ons

3

4

46.     The allegations of paragraphs 1 through 45 are incorporated herein by reference.

5

47.     There exists a distinct relevant market consisting of accessories and add-ons for

6

the Xbox 360 (the "Aftermarket for Xbox 360 Accessories and Add-ons").

7

48.     Microsoft possesses substantial market power in the Aftermarket for Xbox 360

8

Accessories and Add-ons. Microsoft has deployed this power to charge consumers supra-

9

competitive prices in this market. Microsoft's power is persistent and stable.

10

49.     Microsoft controls access to the Aftermarket for Xbox 360 Accessories and Add-

11

ons by way of technological barriers and by way of its special access to consumers arising

12

from their purchase of the Xbox 360 console. Microsoft is thus able to leverage its control

13

over the Xbox 360 console, and its power in the primary market, into monopoly power in the

14

Aftermarket for Xbox 360 Accessories and Add-ons.

15

50.     If for any reason Microsoft is not deemed to have monopoly power in the

16

Aftermarket for Xbox 360 Accessories and Add-ons, there exists a dangerous probability of

17

Microsoft gaining such power.

18

51.     With the specific intent to acquire or the intent to maintain monopoly power in

19

and over the Aftermarket for Xbox 360 Accessories and Add-ons, Microsoft has committed

20

exclusionary, predatory, or anticompetitive acts including:

21

(a)     employing technological barriers to the interoperability of third party

22

accessories, including but not limited to the DMMCs and other Datel accessories;

23

(b)     using the pretext of software updates to disable third party accessories that

24

managed to enter the Aftermarket for Xbox 360 Accessories and Add-ons, including but not

25

limited to the DMMCs;

26

(c)     casting false doubts as to the quality of or purpose behind third party

27

accessories that managed to enter the Aftermarket for Xbox 360 Accessories and Add-ons,

28

including but not limited to the DMMCs; and

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

COMPLAINT
-12-

1    (d)    modifying its products for the sole purpose of frustrating competition

2    without any countervailing benefit to consumers.

3    52.    Microsoft's disabling of the DMMCs and its anticipated imposition of new

4    technological barriers to block other Datel accessories removes functionality, reduces the

5    choices available to consumers, bars access to high quality accessories for lower prices than

6    those offered by Microsoft, and has no legitimate technological or business justification.

7    53.    While Microsoft has long employed restrictive and coercive tactics to suppress

8    competition in the Aftermarket for Xbox 360 Accessories and Add-ons, Microsoft's

9    disabling of the DMMCs and its anticipated imposition of technological barriers to other

10    Datel products represents a change in Microsoft's policy, which had previously

11    accommodated Datel's accessories (without endorsing them) and had not relied upon

12    modification of products already in the marketplace and sold to consumers for the purpose of

13    rendering such accessories incompatible.

14    54.    Microsoft's intention in the above-listed acts and policy change is to monopolize

15    the Aftermarket for Xbox 360 Accessories and Add-ons.

16    55.    Maintaining a monopoly in the Aftermarket for Xbox 360 Accessories and Add-

17    ons has allowed and/or will allow Microsoft to, among other things:

18    (a)    charge supra-competitive prices for Xbox 360 accessories and add-ons; and

19    (b)    supply inferior Xbox 360 accessories and add-ons and force consumers to

20    purchase and use those accessories and add-ons;

21    56.    Through its actions, Microsoft has intentionally raised its competitors' costs and

22    has raised barriers to entry in the Aftermarket for Xbox 360 Accessories and Add-ons.

23    57.    By reason of Microsoft's unlawful monopolization and/or attempted

24    monopolization of the Aftermarket for Xbox 360 Accessories and Add-ons, Datel has been

25    injured in its business and property.

26    58.    Unless enjoined, Microsoft's unlawful conduct will continue, Datel will continue

27    to sustain injury and damages, and competition will continue to decrease in the relevant

28    markets.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    59.   Datel is entitled to injunctive relief and to treble damages.

2

3                          **SECOND CLAIM FOR RELIEF**
                    Violation of Section 2 of the Sherman Act (15 U.S.C. §2)
4          Monopolization and Attempted Monopolization of the Multiplayer Online
                          Dedicated Gaming Systems Market
5

6    60.   The allegations of paragraphs 1 through 59 are incorporated herein by reference.

7    61.   There exists a distinct relevant market consisting of video game systems that

8    feature multiplayer online gaming in addition to personal gaming (the "Multiplayer Online

9    Dedicated Gaming Systems Market").

10   62.   Microsoft possesses substantial market power in the Multiplayer Online

11   Dedicated Gaming Systems Market.   Microsoft has deployed this power to control related

12   and subsidiary markets and to impede the development of a vibrant competitive Aftermarket

13   for Xbox 360 Accessories and Add-ons.   The profits derived from supra-competitive pricing

14   in the subsidiary markets and the extension of Microsoft's proprietary interests there, in turn,

15   reinforce Microsoft's power in the Multiplayer Online Dedicated Gaming Systems Market.

16   63.   Specifically, by using its power in the Multiplayer Online Dedicated Gaming

17   Systems Market to curb competition and innovation in the Aftermarket for Xbox 360

18   Accessories and Add-ons, Microsoft is able to facilitate price discrimination, increase

19   switching costs, and erect substantial barriers to potential entrants to the Multiplayer Online

20   Dedicated Gaming Systems Market.

21   64.   Microsoft's power is persistent and stable.

22   65.   If for any reason Microsoft is not deemed to have monopoly power in the

23   Multiplayer Online Dedicated Gaming Systems Market, there exists a dangerous probability

24   of Microsoft gaining such power.

25   66.   With the specific intent to acquire or the intent to maintain monopoly power in

26   and over the Multiplayer Online Dedicated Gaming Systems Market, Microsoft has

27   committed exclusionary, predatory, or anticompetitive acts described herein.

28   67.   Through its actions, Microsoft has intentionally impeded the development of a

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    vibrant, competitive Aftermarket for Xbox 360 Accessories and Add-ons, removed

2    functionality, reduced the choices available to consumers, raised its competitors' costs and

3    has raised barriers to entry in the Multiplayer Online Dedicated Gaming Systems Market.

4       68.    By reason of Microsoft's unlawful monopolization and/or attempted

5    monopolization of the Multiplayer Online Dedicated Gaming Systems Market, Datel has

6    been injured in its business and property.

7       69.    Unless enjoined, Microsoft's unlawful conduct will continue, Datel will continue

8    to sustain injury and damages, and competition will continue to decrease in the relevant

9    markets.

10       70.    Datel is entitled to injunctive relief and to treble damages.

11

12

**THIRD CLAIM FOR RELIEF**
Violation of Sections 1-2 of the Sherman Act and
Section 3 of the Clayton Act (15 U.S.C. §§1-2,14)

13

14       71.    The allegations of paragraphs 1 through 70 are incorporated herein by reference.

15       72.    Microsoft's unlawful acts create an unreasonable restraint of trade and commerce

16    and threaten to extend Microsoft's monopoly in the Multiplayer Online Dedicated Gaming

17    Systems market into the separate Aftermarket for Xbox 360 Accessories and Add-ons,

18    without legitimate business or technological justification, in a manner which has caused

19    harm to competition in both markets, and in violation of Section 1 of the Sherman Act.

20       73.    Microsoft has substantial power in the market for Multiplayer Online Dedicated

21    Gaming Systems and in the Aftermarket for Xbox 360 Accessories and Add-ons. Microsoft

22    controls over 50% of each of these markets, and enjoys virtually complete control in the

23    latter market.

24       74.    Microsoft ties the sale of the Xbox 360 console to a separate product or products,

25    namely accessories and add-ons to sales of a separate product, including memory cards.

26    Specifically, through a technological tie, as implemented in the recent dashboard update,

27    Microsoft sells the Xbox 360 console only on the condition that the consumer purchase

28    memory cards solely from Microsoft.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

75. Microsoft's tying arrangement affects a substantial volume of interstate commerce.

76. Microsoft's tying arrangement is *per se* unlawful. In addition, Microsoft's tying arrangement harms competition in the Aftermarket for Xbox 360 Accessories and Add-ons in a variety of ways, including:

(a) decreasing competitors' ability to compete in the Aftermarket for Xbox 360 Accessories and Add-ons;

(b) increasing the barriers to entry in the Aftermarket for Xbox 360 Accessories and Add-ons;

(c) increasing the barriers to entry in the market for Multiplayer Online Dedicated Gaming Systems

(d) facilitating price discrimination in the markets for Multiplayer Online Dedicating Gaming Systems and the Aftermarket for Xbox 360 Accessories and Add-ons by permitting Microsoft to extract a higher, supra-competitive price from certain users;

(e) exploiting locked-in customers who are deprived of the benefits of competition in the Aftermarket for Xbox 360 Accessories and Add-ons; and

(f) forcing consumers, who would otherwise prefer third-party accessories and add-ons for the Xbox 360, including the DMMCs and other Datel accessories, to nonetheless use Microsoft's accessories and add-ons.

77. The anticompetitive effects of Microsoft's conduct outweigh any procompetitive benefits; indeed, there are no procompetitive benefits deriving from Microsoft's conduct at issue in this complaint.

78. Microsoft has monopoly power or a dangerous probability of acquiring monopoly power in the market for Multiplayer Online Dedicated Gaming Systems, the Aftermarket for Xbox 360 Accessories and Add-ons, and in any combined market consisting of these fore- and aftermarkets. The tying arrangement described in the preceding paragraphs reinforces Microsoft's power in these markets and improperly prevents competition on the merits. As a result, through the tying arrangement described herein, Microsoft has monopolized or

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   attempted to monopolize the relevant markets in violation of Section 2 of the Sherman Act.

2       79.   Datel has suffered, and will continue to suffer, damages as a direct and proximate

3   result of Microsoft's tying practices.

4       80.   Datel has been, and continues to be, irreparably harmed by Microsoft's tying

5   practices, for which there is no adequate remedy at law, and Datel is therefore entitled to an

6   injunction preventing further harm to Datel as a result of this conduct.

7       81.   Datel is also entitled to injunctive relief and treble damages.

8

9                          **FOURTH CLAIM FOR RELIEF**
                  Unfair Competition (Cal. Bus. & Prof. Code §17200 *et seq*.)
10

11      82.   The allegations of paragraphs 1 through 81 are incorporated herein by reference.

12      83.   Microsoft's conduct as described in this Complaint amounts to an unlawful

13  and/or unfair business practice within the meaning of California Business & Professional

14  Code §17200 et seq.

15      84.   By reason of Microsoft's unlawful and/or unfair business practices, Datel has

16  been injured in its business and property.

17      85.   Unless enjoined, Microsoft's unlawful and/or unfair business practices will

18  continue, and Datel will continue to sustain injury.

19      86.   Datel is entitled to injunctive relief.

20

21                          **FIFTH CLAIM FOR RELIEF**
                          Common Law Unfair Competition
22

23      87.   The allegations of paragraphs 1 through 86 are incorporated herein by reference.

24      88.   Microsoft's conduct as described in this Complaint amounts to an unlawful

25  and/or unfair business practice within the meaning of the common law of unfair competition.

26      89.   By reason of Microsoft's unlawful and/or unfair business practices, Datel has

27  been injured, and continues to be injured, in its business and property.

28      90.   Datel is entitled to compensatory and punitive damages.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

**SIXTH CLAIM FOR RELIEF**
Intentional Interference with Prospective Economic Advantage

91.   The allegations of paragraphs 1 through 90 are incorporated herein by reference.

92.   Datel has, or has had, an economic relationship with various third parties, including with numerous retailers who sell or have sold Datel's products and with numerous customers—actual and potential—of Datel's products, with the probability of future economic benefit to Datel.

93.   Retailers and customers expect and demand that the DMMCs continue to be compatible with the Xbox 360, and have expressed concern about Datel's ability to supply a working product in light of Microsoft's conduct described herein.

94.   Microsoft is, and has been, aware of the existence of the economic relationship Datel has with its retailers and customers, among others.

95.   Microsoft deliberately took actions that were designed to disrupt, and have in fact disrupted, the relationship between Datel and its retailers and customers, among others, by, *inter alia*, disabling the interoperability of the DMMCs, rendering the data on DMMCs inaccessible, and warning Xbox 360 users to stop using the DMMCs.

96.   Microsoft has engaged in wrongful conduct including but not limited to its violations of the Sherman Act and Clayton Act (15 U.S.C. §§1-2, 14) and its unlawful and/or unfair business practices.

97.   By reason of Microsoft's conduct, Datel has been injured, and continues to be injured, in its business and property.

98.   Microsoft's conduct in this regard was intentional, wrongful and designed to disrupt Datel's economic relationships.

99.   Microsoft's conduct described in the preceding paragraphs was oppressive, malicious and /or fraudulent, thereby justifying an award of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Datel prays for judgment as follows:

1.    That Microsoft be adjudged to have violated federal antitrust laws, state law of unfair competition and the common law, and be enjoined from carrying on such conduct;

2.    That Microsoft specifically be preliminarily and permanently enjoined and restrained from disabling or erecting technological barriers to Datel accessories and add-ons for the Xbox 360 (and its successor systems), including but not limited to the DMMCs and Joypad;

3.    That Microsoft be directed to pay to Datel money damages sustained by reason of Microsoft's wrongful acts, together to interest thereon, including treble damages and punitive damages as appropriate;

4.    That Microsoft be required to pay to Datel its reasonable attorneys' fees incurred in connection with this action;

5.    That Microsoft be required to pay to Datel the costs and disbursements of this action;

6.    That Datel be awarded prejudgment interest on any monetary award made part of the judgment against Microsoft; and

7.    That Datel be awarded such additional and further relief as the Court deems just and proper.

DATED:  November 20, 2009.

MARTIN R. GLICK
BERNARD A. BURK
DANIEL B. ASIMOW
ROBERT D. HALLMAN
HOWARD RICE NEMEROVSKI CANADY
FALK & RABKIN
A Professional Corporation

By: _____
MARTIN R. GLICK

Attorneys for Plaintiffs DATEL HOLDINGS LTD.
and DATEL DESIGN & DEVELOPMENT, INC.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1   <u>JURY TRIAL DEMANDED</u>

2       Pursuant to Rule 38 of the Federal Rules of Civil Procedure, and Civil Local Rule 3-

3   6(a), Plaintiffs Datel Holdings Ltd and Datel Design & Development, Inc. demand trial by

4   jury of all issues properly triable of right by a jury.

5

6   DATED: November 20, 2009.

7                                           MARTIN R. GLICK
                                            BERNARD A. BURK
8                                           DANIEL B. ASIMOW
                                            ROBERT D. HALLMAN
9                                           HOWARD RICE NEMEROVSKI CANADY
                                                   FALK & RABKIN
10                                          A Professional Corporation

11
                                            By:
12                                                        MARTIN R. GLICK

13                                          Attorneys for Plaintiffs DATEL HOLDINGS LTD.
                                            and DATEL DESIGN & DEVELOPMENT, INC.
14
    W03 131100017/1594879/F
15

16

17

18

19

20

21

22

23

24

25

26

27

28