1   GREGORY P. STONE (SBN 078329)
    Gregory.Stone@mto.com
2   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue
3   Thirty-Fifth Floor
    Los Angeles, CA  90071-1560
4   Telephone:    (213) 683-9100
    Facsimile:    (213) 687-3702
5
    HOJOON HWANG (SBN 184950)
6   Hojoon.Hwang@mto.com
    ROHIT K. SINGLA (SBN 213057)
7   Rohit.Singla@mto.com
    JONATHAN H. BLAVIN (SBN 230269)
8   Jonathan.Blavin@mto.com
    MUNGER, TOLLES & OLSON LLP
9   560 Mission Street,
    Twenty-Seventh Floor
10  San Francisco, CA  94105-2907
    Telephone:    (415) 512-4032
11  Facsimile:    (415) 512-4077

12  Attorneys for Defendant
    MICROSOFT CORPORATION

13

14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16                    SAN FRANCISCO DIVISION

17

18  DATEL HOLDINGS LTD. and DATEL          CASE NO.  CV 09-5535 EDL
    DESIGN & DEVELOPMENT, INC.,
19                                         **DEFENDANT MICROSOFT
                    Plaintiffs,            CORPORATION'S ANSWER AND
20                                         COUNTERCLAIMS**
           vs.
21
    MICROSOFT CORPORATION,
22
                    Defendant.
23

24

25

26

27

28

1    Defendant Microsoft Corporation ("Microsoft") hereby answers the allegations of Datel

2    Holdings Ltd. and Datel Design & Development, Inc. (jointly, "Datel"), contained in their

3    Complaint as follows:

4                              **INTRODUCTION**

5    1.    Microsoft admits that Datel sells "video game enhancement" products for the

6    Microsoft Xbox 360 and sells a product known as the "MAX" memory card.  Microsoft does not

7    sell products at retail, but admits that a Microsoft 512 megabyte memory unit for the Xbox 360

8    sold at retail.  Microsoft denies that its 512 megabyte memory unit for the Xbox has or had a

9    "retail list price" of $39.99.  Microsoft is without knowledge or information sufficient to form a

10   belief as to the truth of the remaining allegations in Paragraph 1 of the Complaint and on that

11   basis denies them.

12   2.    Microsoft admits that in October 2009, it deployed a software update to the Xbox

13   360 known as a "dashboard update" that Xbox 360 users were required to download to access the

14   Xbox LIVE service, and which also was included in new games sold for the console.  Except as

15   specifically admitted, Microsoft is without knowledge or information sufficient to form a belief as

16   to the truth of the allegations in Paragraph 2 of the Complaint and on that basis denies them.

17   3.    Microsoft admits that the October 2009 dashboard update includes changes to the

18   Xbox 360 security and authentication algorithms that temporarily disabled Datel's effort to hack

19   that system with its memory cards.  Except as specifically admitted, Microsoft denies the

20   allegations of Paragraph 3.

21   4.    Microsoft denies the allegations of Paragraph 4.

22                         **JURISDICTION AND VENUE**

23   5.    Microsoft admits that Datel has filed claims in this action pursuant to Sections 1

24   and 2 of the Sherman Act (15 U.S.C. §§1-2) and Section 3 of the Clayton Act (15 U.S.C. §14).

25   The remaining allegations of Paragraph 5 are legal conclusions to which no response is required.

26   To the extent that a response is required, Microsoft denies the allegations in Paragraph 5 of the

27   Complaint.

28

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

6.      Microsoft admits that Datel has filed claims pursuant to the California Unfair Competition Law (Cal. Bus. & Prof. Code §§17200 *et seq.*) and California common law.  The remaining allegations of Paragraph 6 are legal conclusions to which no response is required.  To the extent that a response is required, Microsoft denies the allegations in Paragraph 6 of the Complaint.

7.      Microsoft admits that Microsoft manufactures Xbox 360 units and related products that are sold in the United States and throughout the world, and derives revenues from interstate and global commerce.  The remaining allegations of Paragraph 7 are legal conclusions to which no response is required.  To the extent that a response is required, Microsoft denies the allegations in Paragraph 7 of the Complaint.

## INTRADISTRICT ASSIGNMENT

8.      Microsoft admits that, for purposes of Civil Local Rule 3-2(c), assignment over this action is proper on a District-wide basis.

## PARTIES

9.      Microsoft admits that Datel Holdings Ltd. is a British corporation having its principal place of business in Staffordshire, United Kingdom.  Microsoft further admits that Datel Design and Development Inc. is a United States corporation having its principal place of business in Clearwater, Florida and is a wholly owned subsidiary of Datel Design and Development Ltd.  Except as specifically admitted, Microsoft denies the allegations of Paragraph 9.

10.      Microsoft admits that it is a Washington corporation with its principal place of business in Redmond, Washington.

## FACTUAL BACKGROUND

11.      Microsoft admits that it released the original Xbox video game console in 2001, and released the second generation Xbox console, the Xbox 360, in 2005.  Microsoft further admits that there are various models of the Xbox 360 console offered at different price points by independent retailers.  Except as specifically admitted, Microsoft denies the allegations of Paragraph 11.

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

1       12.    Microsoft admits that it offers a subscription-based service for online multiplayer

2   gaming called "Xbox LIVE."  Microsoft further admits that as of May 2009, Microsoft had more

3   than 20 million active members of the Xbox LIVE online community.  Microsoft further admits

4   that the Xbox 360 attracts users with innovative game playing and multiplayer functionality, and

5   the quality and variety of available games.  Except as specifically admitted, Microsoft denies the

6   allegations of Paragraph 12.

7       13.    Microsoft admits that Sony released the Playstation 3 video game console in

8   November 2006.  Microsoft further admits that the Sony Playstation 3 competes with the Xbox

9   360 but so do many other products, including the Nintendo Wii.  Microsoft further admits that in

10   January 2009 it reported worldwide sales of more than 28 million Xbox 360 consoles since

11   introducing the Xbox 360 console in November 2005, and in May 2009 reported worldwide sales

12   of more than 30 million Xbox 360 consoles since introducing the console in November 2005.

13   Except as specifically admitted, Microsoft is without knowledge or information sufficient to form

14   a belief as to the truth of the allegations in Paragraph 13 of the Complaint and on that basis denies

15   them.

16       14.    Microsoft admits that there are accessories and add-ons which are sold for the

17   Xbox 360 separate and apart from Xbox 360 games.  Except as specifically admitted, Microsoft is

18   without knowledge or information sufficient to form a belief as to the truth of the allegations in

19   Paragraph 14 of the Complaint and on that basis denies them.

20       15.    Microsoft is without knowledge or information sufficient to form a belief as to

21   the truth of the allegations in Paragraph 15 of the Complaint and on that basis denies them.

22       16.    Microsoft admits that Datel has announced the release of its "Joypad" controller.

23   Except as specifically admitted, Microsoft is without knowledge or information sufficient to form

24   a belief as to the truth of the allegations in Paragraph 16 of the Complaint and on that basis denies

25   them.

26       17.    Microsoft is without knowledge or information sufficient to form a belief as to

27   Datel's claim that it first released its MAX memory cards in May 2009, and on that basis denies

28   this allegation.  Microsoft denies the remaining allegations in Paragraph 17.

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

18.     Microsoft is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Complaint and on that basis denies them.

19.     Microsoft admits that it marketed a 512 megabyte memory unit for the Xbox 360 as of November 1, 2009, and admits that the quoted language from paragraph 19 of the Complaint appeared on the xbox.com website.  Except as specifically admitted, Microsoft denies the allegations of Paragraph 19.

20.     Microsoft admits that the quoted language in paragraph 20 appeared on the "Major Nelson" blog post on or about October 16, 2009.  Except as specifically admitted, Microsoft denies the allegations of Paragraph 20.

21.     Microsoft admits that the quoted language in paragraph 21 appeared in an October 23, 2009 article on G4Tv.com.  Except as specifically admitted, Microsoft denies the allegations of paragraph 21 of the Complaint.

22.     Microsoft is without knowledge or information sufficient to form a belief as to the existence and content of comments in the "blogosphere" referenced in Paragraph 22 of the Complaint and on that basis denies them.  Microsoft further denies the truth of the purported comments.

23.     Microsoft denies the allegations of paragraph 23 of the Complaint.

24.     Microsoft denies the allegations of paragraph 24 of the Complaint.

25.     Microsoft admits that it modified the Xbox 360's authentication protocol which had the effect of disabling Datel's unauthorized and unlicensed hack of the Xbox 360 authentication protocol.  Except as specifically admitted, Microsoft denies the allegations of paragraph 25 of the Complaint.

26.     Microsoft denies the allegations of paragraph 26 of the Complaint.

27.     Microsoft denies the allegations of paragraph 27 of the Complaint.

28.     Microsoft admits that some accessories and add-ons for the Xbox 360 gaming system are specifically designed for the Xbox 360.  Except as specifically admitted, Microsoft denies the allegations of paragraph 28 of the Complaint.

29.     Microsoft denies the allegations of paragraph 29 of the Complaint.

DEFT'S ANSWER & COUNTERCLAIMS
CV 09-5535 EDL

1    30.    Microsoft denies the allegations of paragraph 30 of the Complaint.

2    31.    Microsoft denies the allegations of paragraph 31 of the Complaint.

3    32.    Microsoft denies the allegations of paragraph 32 of the Complaint.

4    33.    Microsoft admits that it has a successful third-party accessories licensing

5    program and states that the quoted language in Paragraph 33 refers to third parties who participate

6    in this program.  Except as specifically admitted, Microsoft denies the allegations of paragraph 33

7    of the Complaint.

8    34.    Microsoft states that the quoted language in Paragraph 34 speaks for itself.

9    Except as specifically admitted, Microsoft denies the allegations of paragraph 34 of the

10   Complaint.

11   35.    Microsoft denies the allegations of paragraph 35 of the Complaint.

12   36.    Microsoft denies the allegations of paragraph 36 of the Complaint.

13   37.    Microsoft admits that some people have described the Xbox 360, the Sony

14   Playstation 3, and the Nintendo Wii as included in the "seventh generation" of video game

15   consoles.  Except as specifically admitted, Microsoft denies the allegations of paragraph 37 of the

16   Complaint.

17   38.    Microsoft denies the allegations of paragraph 38 of the Complaint.

18   39.    Microsoft denies the allegations of paragraph 39 of the Complaint.

19   40.    Microsoft states that the content of the alleged press releases speaks for

20   themselves.  Except as specifically admitted, Microsoft denies the allegations of paragraph 40 of

21   the Complaint.

22   41.    Microsoft admits that the pricing of the Xbox 360 line has influenced Sony's

23   pricing of the Playstation 3 line, and vice versa, as well as other factors.  Except as specifically

24   admitted, Microsoft denies the allegations of paragraph 41 of the Complaint.

25   42.    Microsoft denies the allegations of paragraph 42 of the Complaint.

26   43.    Microsoft states that the referenced sales reports speak for themselves.  Except as

27   specifically admitted, Microsoft denies the allegations of paragraph 43 of the Complaint.

28

DEFT'S ANSWER & COUNTERCLAIMS
CV 09-5535 EDL

44.     Microsoft states that the content of the referenced sales reports speak for themselves.  Except as specifically admitted, Microsoft denies the allegations of paragraph 44 of the Complaint.

45.     Microsoft admits that developing the Xbox 360 console and copyrighted video game content for it entailed, and continues to entail, a significant investment.  Except as specifically admitted, Microsoft denies the allegations of paragraph 45 of the Complaint.

## FIRST CLAIM FOR RELIEF

### Violation of Section 2 of the Sherman Act (15 U.S.C. §2)

46.     Microsoft repeats and incorporates its responses to the allegations contained in Paragraphs 1 through 45 of the Complaint, as if fully set forth herein.

47.     Microsoft denies the allegations of paragraph 47 of the Complaint.

48.     Microsoft denies the allegations of paragraph 48 of the Complaint.

49.     Microsoft denies the allegations of paragraph 49 of the Complaint.

50.     Microsoft denies the allegations of paragraph 50 of the Complaint.

51.     Microsoft denies the allegations of paragraph 51 of the Complaint.

52.     Microsoft denies the allegations of paragraph 52 of the Complaint.

53.     Microsoft denies the allegations of paragraph 53 of the Complaint.

54.     Microsoft denies the allegations of paragraph 54 of the Complaint.

55.     Microsoft denies the allegations of paragraph 55 of the Complaint.

56.     Microsoft denies the allegations of paragraph 56 of the Complaint.

57.     Microsoft denies the allegations of paragraph 57 of the Complaint.

58.     Microsoft denies the allegations of paragraph 58 of the Complaint.

59.     Microsoft denies the allegations of paragraph 59 of the Complaint.

## SECOND CLAIM FOR RELIEF
### Violation of Section 2 of the Sherman Act (15 U.S.C. §2)

60.     Microsoft repeats and incorporates its responses to the allegations contained in Paragraphs 1 through 59 of the Complaint, as if fully set forth herein.

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

61. Microsoft denies the allegations of paragraph 61 of the Complaint.

62. Microsoft denies the allegations of paragraph 62 of the Complaint.

63. Microsoft denies the allegations of paragraph 63 of the Complaint.

64. Microsoft denies the allegations of paragraph 64 of the Complaint.

65. Microsoft denies the allegations of paragraph 65 of the Complaint.

66. Microsoft denies the allegations of paragraph 66 of the Complaint.

67. Microsoft denies the allegations of paragraph 67 of the Complaint.

68. Microsoft denies the allegations of paragraph 68 of the Complaint.

69. Microsoft denies the allegations of paragraph 69 of the Complaint.

70. Microsoft denies the allegations of paragraph 70 of the Complaint.

**THIRD CLAIM FOR RELIEF**
Violation of Sections 1-2 of the Sherman Act and
Section 3 of the Clayton Act (15 U.S.C. §§1-2, 14)

71. Microsoft repeats and incorporates its responses to the allegations contained in Paragraphs 1 through 70 of the Complaint, as if fully set forth herein.

72. Microsoft denies the allegations of paragraph 72 of the Complaint.

73. Microsoft denies the allegations of paragraph 73 of the Complaint.

74. Microsoft denies the allegations of paragraph 74 of the Complaint.

75. Microsoft denies the allegations of paragraph 75 of the Complaint.

76. Microsoft denies the allegations of paragraph 76 of the Complaint.

77. Microsoft denies the allegations of paragraph 77 of the Complaint.

78. Microsoft denies the allegations of paragraph 78 of the Complaint.

79. Microsoft denies the allegations of paragraph 79 of the Complaint.

80. Microsoft denies the allegations of paragraph 80 of the Complaint.

81. Microsoft denies the allegations of paragraph 81 of the Complaint.

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

**FOURTH CLAIM FOR RELIEF**
Unfair Competition (Cal. Bus. & Prof. Code §17200 *et seq.*)

82.    Microsoft repeats and incorporates its responses to the allegations contained in Paragraphs 1 through 81 of the Complaint, as if fully set forth herein.

83.    Microsoft denies the allegations of paragraph 83 of the Complaint.

84.    Microsoft denies the allegations of paragraph 84 of the Complaint.

85.    Microsoft denies the allegations of paragraph 85 of the Complaint.

86.    Microsoft denies the allegations of paragraph 86 of the Complaint.

**FIFTH CLAIM FOR RELIEF**
Common Law Unfair Competition

87.    Microsoft repeats and incorporates its responses to the allegations contained in Paragraphs 1 through 86 of the Complaint, as if fully set forth herein.

88.    Microsoft denies the allegations of paragraph 88 of the Complaint.

89.    Microsoft denies the allegations of paragraph 89 of the Complaint.

90.    Microsoft denies the allegations of paragraph 90 of the Complaint.

Microsoft denies that Datel is entitled to any of the relief which it seeks.

**AFFIRMATIVE DEFENSES**

**First Affirmative Defense**

(Estoppel)

Datel's claims are barred, in whole or in part, by the doctrine of estoppel.  Among other things, upon information and belief Datel purchased an Xbox 360 console and subscribed to the Xbox LIVE service, and agreed to contractual terms prohibiting the use of unauthorized accessories, and any reverse engineering or unauthorized modifications to any Xbox 360 software or hardware.  Nonetheless, Datel breached that agreement, hacked, reverse engineered and modified the Xbox 360 software and hardware without authorization, and unlawfully circumvented the Xbox 360's access and copy-protection technologies to develop and sell unauthorized accessories for the Xbox 360.   Microsoft also incorporates by reference the factual allegations of its counterclaims.

- 8 -

1

**Second Affirmative Defense**

2

(Waiver)

3       Datel's claims are barred, in whole or in part, by the doctrine of waiver.  Among

4  other things, upon information and belief Datel purchased an Xbox 360 console and subscribed to

5  the Xbox LIVE service, and agreed to contractual terms prohibiting the use of unauthorized

6  accessories, and any reverse engineering or unauthorized modifications to any Xbox 360 software

7  or hardware.  Nonetheless, Datel breached that agreement, hacked, reverse engineered and

8  modified the Xbox 360 software and hardware without authorization, and unlawfully

9  circumvented the Xbox 360's access and copy-protection technologies to develop and sell

10  unauthorized accessories for the Xbox 360.   Microsoft also incorporates by reference the factual

11  allegations of its counterclaims.

12

13

**Third Affirmative Defense**

(Unclean Hands)

14

15       Datel's claims are barred, in whole or in part, by the doctrine of unclean hands.

Among other things, upon information and belief Datel purchased an Xbox 360 console and

16

subscribed to the Xbox LIVE service, and agreed to contractual terms prohibiting the use of

17

unauthorized accessories, and any reverse engineering or unauthorized modifications to any Xbox

18

360 software or hardware.  Nonetheless, Datel breached that agreement, hacked, reverse

19

engineered and modified the Xbox 360 software and hardware without authorization, and

20

unlawfully circumvented the Xbox 360's access and copy-protection technologies to develop and

21

sell unauthorized accessories for the Xbox 360.   Microsoft also incorporates by reference the

22

factual allegations of its counterclaims.

23

24

**Fourth Affirmative Defense**

25

(Illegality)

26       Datel's claims are barred, in whole or in part, because the conduct which Datel

27  alleges has been restrained by Microsoft is illegal under federal and state law.  Microsoft

28  incorporates by reference the factual allegations of its counterclaims.  By trafficking in its illegal

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

devices, Datel has violated Microsoft and other game developers' rights under federal and state law and has induced Microsoft's Xbox LIVE subscribers to breach their contracts with Microsoft. Among other things, upon information and belief Datel purchased an Xbox 360 console and subscribed to the Xbox LIVE service, and agreed to contractual terms prohibiting the use of unauthorized accessories, and any reverse engineering or unauthorized modifications to any Xbox 360 software or hardware.  Nonetheless, Datel breached that agreement, hacked, reverse engineered and modified the Xbox 360 software and hardware without authorization, and unlawfully circumvented the Xbox 360's access and copy-protection technologies to develop and sell unauthorized accessories for the Xbox 360.

**Fifth Affirmative Defense**

(Assumption of Risk)

Datel's claims are barred, in whole or in part, by the doctrine of assumption of risk.  Among other things, Datel understood before it began developing its unauthorized Xbox 360 accessories that the Xbox 360 security model did not permit unauthorized accessories and that Microsoft had an authorized accessory program in which Datel did not participate.

**Sixth Affirmative Defense**

(Mitigation of Damages)

Datel's claims are barred, in whole or in part, by its failure to mitigate damages.  Among other things, Datel was aware that Microsoft had an authorized accessory program but did not seek to obtain a license for any of its products.  Datel also understood before it began developing its unauthorized Xbox 360 accessories that the Xbox 360 security model did not permit unauthorized accessories.

**Seventh Affirmative Defense**

(Permissible Competitive Activity)

Datel's claims are barred, in whole or in part, because Microsoft's conduct constitutes permissible competitive activity.  Among other things, the incompatibility of Datel's products with the Xbox 360 is the result of a legitimate product improvement and design

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

1   innovation.  Moreover, the procompetitive benefits of Microsoft's conduct outweigh any

2   purported anticompetitive harms.

3

4                               **Eighth Affirmative Defense**

5                                 (Statute of Limitations)

6           Datel's claims are barred, in whole or in part, by the applicable statute of

    limitations.

7                               **Ninth Affirmative Defense**

8                                        (Laches)

9           Datel's claims are barred, in whole or in part, by the doctrine of laches.

10                              <u>**PRAYER FOR RELIEF**</u>

11          WHEREFORE, Microsoft prays for judgment:

12          1.      Dismissing with prejudice Datel's Complaint in its entirety;

13          2.      Awarding Microsoft its costs, disbursements and reasonable attorney's fees

14   incurred in defending against the Complaint plus interest on any sums awarded thereunder; and

15          3.      Awarding Microsoft such other and further relief as this Court deems just

16   and proper, including but not limited to the relief sought in the Counterclaims pleaded below.

17

18

19

20

21

22

23

24

25

26

27

28

DEFT'S ANSWER &  COUNTERCLAIMS
                                       CV 09-5535 EDL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNTERCLAIMS**

Counterclaimant Microsoft Corporation ("Microsoft"), by and through its attorneys, for its counterclaims against Datel Holdings Ltd. and Datel Design & Development, Inc. (jointly, "Datel" or "Counterclaim-defendants"), alleges as follows:

**NATURE OF THE ACTION**

1.      Datel is a major, if not the major, developer and distributor of unauthorized cheating systems for all video gaming platforms, or as Datel euphemistically calls them, "video game enhancement" devices. Datel's products have been used for more than 20 years to hack into video game systems and to copy and alter copyright video game content. In addition to enabling some users to cheat at games by obtaining infinite levels of health or power, Datel has long designed and sold products that enable the piracy of video games. Many of its most famous hacking and cheating products have taken the form of memory cartridges or cards or other accessory devices that plug into memory or other console ports.

2.      Microsoft's original video game console, the Xbox, was the target of Datel products, including for example, its Action Replay system through which Datel distributed tens of thousands of copies of copyrighted "game saves," including modified game saves that were designed for cheating. "Game saves" are copyrighted video game files that contain data describing a saved game's copyrighted audio, visual, and narrative elements.

3.      When designing the Xbox 360, Microsoft implemented a number of technological security layers to prevent cheating, hacking, and piracy. For example, the Xbox 360 will not recognize most unauthenticated — and thus untrustworthy — accessories, including unauthenticated memory units. The Xbox 360 also is designed to prevent video game data from being transferred to and from a personal computer ("PC") (and thus to and from the Internet), to prevent arbitrary, unauthenticated data (*e.g.*, hacking software) from being transferred to the console, and to prevent Xbox 360 data from being altered. On a PC, video game data can be hacked, modified, and pirated, and users can download already hacked or modified game data from the Internet. The Xbox did not have the kinds of security and authentication protections that have been built into the Xbox 360, and was severely hacked through the use of "mod chips" and

DEFT'S ANSWER & COUNTERCLAIMS
CV 09-5535 EDL

other devices that let users, *inter alia*, play pirated discs and other applications on their consoles. In part as a result of its strong security model, the Xbox 360 has enjoyed great success among game developers and consumers.

4.      Datel has responded by developing an entire line of products designed and marketed to bypass and circumvent various security features of the Xbox 360.  It has specifically designed products, for example, that enable cheaters and hackers to transfer video game content from the Xbox 360 to a PC, to hack some of the cryptographic protection on that content, to exchange game content over the Internet, and to reload that content and other arbitrary, unauthenticated data onto the Xbox 360.  Datel's products also permit hackers to directly access and modify and manipulate data stored on Xbox 360 storage devices.  As Datel admits in its Complaint, it has made a "substantial investment in analyzing the security and authentication techniques" of the Xbox 360 console.

5.      Datel itself advertises its products as the "perfect" devices for users to copy, transfer and manipulate copyrighted video "game saves" to and from the Xbox 360 console, PCs, and the Internet.  Datel also boasts that it distributes "professionally modified game saves that can completely unlock a game, making extra levels, weapons and characters instantly available," without the permission of video game publishers, *i.e.*, the copyright holders.

6.      The Xbox 360's security model and its protections against cheating have helped make Xbox LIVE, Microsoft's innovative online multiplayer gaming system, a success.  Players can use Xbox LIVE confident that others are not using cheating tools to gain an unfair advantage against them.  The Xbox 360 and Xbox LIVE also include an innovative "Achievements" point-based scoring system in which players can earn a "Gamerscore" based on both their online and offline game play.  The Xbox 360 tracks the Achievements a player earns in offline play and then transmits that information to the Xbox LIVE system.  A high Gamerscore gives a user status in the gaming community which fuels competition between players.  These innovative features are obviously undermined by cheating.  Microsoft has included specific contractual provisions in its Xbox LIVE Terms of Use ("TOU") prohibiting players from cheating.  Datel sells products that are specifically and intentionally designed to induce players to breach these contractual

1    obligations.  Moreover, by allowing arbitrary, unauthenticated data to be transferred to the Xbox

2    360 console, Datel's devices threaten the Xbox 360's system operating software and potentially

3    risk widespread game piracy.

4         7.     Finally, Datel purposefully advertises and sells its products in a manner that

5    falsely and unfairly implies affiliation with the XBOX 360 brand and Microsoft, creating

6    consumer confusion over the source of origin of its products.  Datel has used on its product

7    packaging the "XBOX 360" mark and imitated the distinctive color scheme and geometric

8    patterns of Microsoft's packaging of Xbox 360 products to profit from Microsoft's established

9    goodwill and reputation.  Notably, with respect to many of its products, the Datel trademark or

10   logo appear nowhere on the packaging of the product, or appear only inconspicuously.

11        8.     Datel's conduct has caused and will continue to cause irreparable injury to

12   Microsoft.  As a result of Datel's conduct, Microsoft has spent significant amounts of money to

13   detect and disable Datel's unlawful technologies and cheating products.  Further, Microsoft has

14   lost immeasurable customers and sales as a result of Datel's unlawful activities, and its reputation

15   and customer goodwill have been irreparably damaged.  Microsoft is also entitled to its actual

16   damages, to Datel's profits, and to substantial statutory damages as a result of Datel's conduct.

17                                   **THE PARTIES**

18        9.     Counterclaimant Microsoft is a Washington corporation having its principal place

19   of business at One Microsoft Way, Redmond, Washington 98052.

20        10.    Founded in 1975, Microsoft is a worldwide leader in computer software, services

21   and solutions for businesses and consumers.  Microsoft has a long history of technical and design

22   innovation in the software and hardware products it develops and distributes.  These products

23   include successful and critically acclaimed video gaming systems such as the Xbox, Xbox 360,

24   accessories and devices for such systems, and copyrighted video games.

25        11.    On information and belief, Counterclaim-defendant Datel Holdings Ltd. is a

26   British corporation organized and existing under the laws of the United Kingdom having a

27   principal place of business at Stafford Road, Stone, Staffordshire, ST15 0DG, United Kingdom.

28

1      12.     On information and belief, Counterclaim-defendant Datel Design and

2  Development Inc. is a United States corporation organized and existing under the laws of Florida

3  and is a wholly owned subsidiary of Datel Design and Development Ltd.  On information and

4  belief, Datel Design and Development Inc.'s principal place of business is 33 N. Garden Avenue,

5  Clearwater, Florida 33755.

6      13.     For approximately 20 years Datel has been in the business of manufacturing and

7  selling devices that can be used to evade the security protections in video gaming systems,

8  including for Microsoft's Xbox and Xbox 360 video gaming systems.  On information and belief,

9  Datel offers its devices worldwide, including in the United States and in the greater San Francisco

10  metropolitan area, via its websites and the websites of Internet retail companies, and also via

11  retail stores such as Walmart, Best Buy and Target, among many others.  Datel does business

12  within the Northern District of California.

13                              **JURISDICTION AND VENUE**

14      14.     The Court has subject matter jurisdiction over the Digital Millennium Copyright

15  Act (the "DMCA") and Lanham Act causes of action pleaded herein pursuant to 28 U.S.C.

16  §§ 1331 (federal question), 28 U.S.C. §§ 1338(a) (any act of Congress relating to copyright), 17

17  U.S.C. §§ 1201, *et seq*. (the DMCA), and 15 U.S.C. §§ 1051, *et seq*. (the Lanham Act).  The

18  Court has supplemental jurisdiction over the state law causes of action pleaded herein pursuant to

19  28 U.S.C. § 1367.

20      15.     This Court has personal jurisdiction over Datel, and venue is proper in this

21  Judicial District pursuant to 28 U.S.C. § 1391(b) because, *inter alia,* (a) Datel has filed suit in this

22  District in the present action; (b) Datel and/or its agents are doing business in this District; and

23  (c) a substantial part of the events or omissions giving rise to this lawsuit, as well as substantial

24  injury to Microsoft, have occurred or will occur in interstate commerce, in the State of California,

25  and in the Northern District of California as a result of Datel's violations of the DMCA, the

26  Lanham Act, and state law, as alleged in detail below.  Venue also is proper in this District

27  pursuant to 28 U.S.C. § 1400(a) in that Datel may be found in this District in light of its extensive

28  commercial activities here.

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

**BACKGROUND FACTS**

**Microsoft's Xbox 360 System, Xbox LIVE Service and Copyrighted Video Game Content**

16.     Microsoft released the original Xbox video game console in 2001 and released the current version, the Xbox 360, in 2005.  The Xbox and Xbox 360, like other contemporary video gaming platforms, such as the Sony PlayStation 2, Sony PlayStation 3, and the Nintendo Wii, are used for both individual game playing as well as multiplayer online gaming, *i.e.*, playing games over the Internet with an entire community of gamers.  Microsoft offers consumers, on an annual subscription basis, a service called "Xbox LIVE," which is an online multiplayer gaming service through which users can access web-based multiplayer gaming and digital media.  The Xbox 360 console contains copyrighted operating system software that resides on a file system in the console.

17.     Microsoft owns valid copyrights in some of the most successful and critically acclaimed video games released in the United States and throughout the world, including the top-selling "Halo" video game series.  There are also many third-party Xbox 360 video game publishers who develop, publish, and own valid copyrights in their own video games, such as Activision, who has released the top-selling "Call of Duty" video game series.  In developing game software and content for the Xbox 360, third-party game publishers rely on the content protection and security systems developed by Microsoft for the Xbox 360.  The development, production, and marketing of video games can cost Microsoft and its third-party partners tens of millions of dollars per game.

18.     Xbox 360 video games include many different kinds of copyrighted material, including software code, the game's visual and audio manifestations, such as graphics, character animations, sound effects, and music, as well as the storyline of the video games and design of the game environment.  The visual and audio elements include graphics of environmental surroundings (*e.g.,* lakes, oceans, trees, mountains, castles, rain, etc.), sound effects (*e.g.,* swords clashing, the roar of monsters, battle cries, explosions, etc.), music played in different parts of the game, and game player "avatars."  Avatars are graphical representations of players who may wear different clothing and armor and possess a wide variety of weapons and equipment.  The unique

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

1  layout of objects, creatures, and people in different "levels" or portions of a video game

2  environment also constitutes copyrighted material.  Moreover, the underlying narratives, stories,

3  and concepts of Xbox 360 games constitute copyrighted material.

4       19.    To access and experience the copyrighted *dynamic* game and its narrative

5  structure built from these various separate copyrighted components — *i.e.,* the changing world of

6  a game, its environment, and other characters and players — a user must access and utilize the

7  game through accessories and devices connected to the Xbox 360 console, including video game

8  controllers.  When users play games on the Xbox 360, they use the Xbox 360 extensively to cache

9  copyrighted video game content into memory, including audio and visual game content.

10       20.    One innovative and novel feature of the Xbox 360 and Xbox LIVE service is the

11  "Achievements" point-based scoring system, in which players can earn a "Gamerscore" based on

12  both their online and offline game play.  When playing offline, the Xbox 360 console tracks a

13  player's Achievements and then reports them to Xbox LIVE.  A player's Achievements are

14  reflected in their "Gamerscore," which is attached to the player's unique Xbox LIVE username,

15  known as the player's "Gamertag."  Achievements are awarded for the completion of game-

16  specific challenges, such as beating a level, killing a specific villain, locating an item of treasure,

17  amassing a specified number of wins against other players in Xbox LIVE matches, etc.

18  Achievements allow users to compare their game prowess with other players, and a user's

19  Gamerscore reflects his or her gaming reputation within the gaming community.  A high

20  Gamerscore gives a user status in the gaming community which fuels competition between

21  players, *e.g.,* there is status in being the first person to earn all of the Achievements of a particular

22  game.  The Xbox 360's unique and innovative Achievements system is one of its most attractive

23  and popular features among video game players.  Many Xbox 360 users invest significant time

24  and effort in earning and maintaining their Gamerscore.  There are international Gamerscore

25  rankings of Xbox 360 players.  Each retail game sold generally comes with a minimum of 1,000

26  Achievements to be earned.  The desire to achieve a higher Gamerscore drives, in part, game

27  sales.

28

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

21.     Users may permanently store game data, including their Achievements, in "game saves" on an Xbox 360 hard drive or memory card.  Game saves are files that can permanently store, among other things, a copyrighted detailed description of the audiovisual display for a saved game level, *i.e.,* what goes where in a level, as well as containing copyrighted audio and visual game files.  The appearance and related narrative structure of the entire game universe can be stored in a game save, including the location, appearance, and status of hundreds or thousands of persons and objects.  Game saves may also include a description of a player's status, including the avatar's appearance, skills, health, and weapons.  Although some game saves might not contain any audio or visual files, they provide the game engine — the computer program running the game — with instructions as to what particular sights and sounds to generate upon the playing of a saved game.  Each file has on it encrypted and protected data that associates the save with the user's console and unique Gamertag.  Game saves effectively control a user's access to a video game's copyrighted code and dynamic elements, *e.g.,* the audio, visual, and narrative elements accessible at a particular game level, and the associated Achievements available to the user.

22.     For example, Halo 3 saves the entire state of a game.  Halo 3 game saves, which are roughly 8 megabytes in size, are comprised of multiple regions and store a substantial amount of copyrighted game data.  These regions include data about the various objects and players in the game environment, including highly descriptive data regarding each object and player's location, visualization, sound, physical properties, and behavior.  Below, for example, is an image generated by the Xbox 360 and Halo 3 game software from the data contained in a game save. The game save contains a representation of the image, including the location of each object, each object's appearance, velocity, and direction, what each object is carrying, and each object's behavior (*e.g.,* whether it is guarding an entrance, searching, firing a weapon, etc.).

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL



23.     Microsoft does not sell, and has not licensed other entities to sell, devices that allow users to transfer and copy individual game save files to other devices, such as a PC hard drive.  To the contrary, Microsoft has designed the Xbox 360 to prohibit consumers from transferring game save files to or from a PC—and thus to or from the Internet.  Copyrighted material stored in game saves are intended to be shared though Xbox LIVE.

**Xbox LIVE TOU and Video Game Software License Prohibitions**

24.     Copyrighted video games sold for the Xbox 360 are subject to contractual terms permitting the authorized uses of games on the Xbox 360 and in the Xbox LIVE environment.  These agreements prohibit the unauthorized reproduction and alteration of the copyrighted video game content and the use of unauthorized cheats and cheating devices.

25.     The Xbox LIVE TOU (attached hereto as Exhibit A), which a user must agree to prior to subscribing to and using the Xbox LIVE service, provide that a subscriber's "use" of any "software or content," including "games," "associated" with the Xbox LIVE service is subject to

"the terms of the license . . . presented to [a subscriber] for acceptance with that software," and if "there is no license presented" to a subscriber, then Microsoft grants the subscriber a "limited, personal, non-exclusive, revocable license to use the software only for and during the authorized use of this Service and/or the game or other product to which the software relates." Ex. A at 8 (emphasis added).

26.     Under the Xbox LIVE TOU, a subscriber "may not *copy, download, modify or create derivative works, publish, transmit, sell or attempt to sell or transfer, or otherwise use or exploit any software unless* [Microsoft or its] *suppliers have expressly allowed you to do so . . . .* [Microsoft or its] suppliers, own the title, copyright, and other intellectual property rights in the software and Service, and the software and Service are solely licensed and not sold.  [Microsoft and its] suppliers reserve all other rights to the software and Service that are not expressly granted in this contract."  *Id.* (emphases added).  The Xbox LIVE TOU further provide that a user may not "use the Service or any material or information made available through the Service in any manner that infringes any copyright, trademark, patent, trade secret, or other proprietary right of us or any third party," may not "disassemble, decompile, create derivative works of, reverse engineer," or "modify . . . any game, application, or other content available or accessible through the Service, or any hardware or software associated with the Service or with an original Xbox or Xbox 360," and "may not . . . *use or distribute unauthorized cheats, macros, or scripts*."  *Id.* at 3, 8, 10 (emphasis added).

27.     Some third-party game publishers include supplemental contractual terms in the packaging of their games.  For example, the top-selling game "Call of Duty: Modern Warfare 2," published and sold by Activision, includes a software license (attached hereto as Exhibit B) that prohibits users from modifying or creating derivative works of the video game, and from engaging in cheating in online multiplayer game settings, which result in an automatic termination of the license and the right to use the game for any purpose:

> **YOU SHALL NOT**:
> * Reverse engineer, derive source code, modify, decompile, disassemble, *or create derivative works of this Program, in whole or in part*.

DEFT'S ANSWER & COUNTERCLAIMS
CV 09-5535 EDL

. . . .

*Hack or modify (or attempt to modify or hack) the Program, or create, develop, modify, distribute or use any software programs, *in order to gain (or allow others to gain) advantage of this Program in any on-line multiplayer game settings*.

. . . .

*Id.* at 17-18 (emphases added).

## The Xbox 360's Access and Copy-Protection Mechanisms

28.     In developing the next generation Xbox 360, Microsoft invested significant amounts of money and resources to protect its and its third-party partners' copyrighted video game content.

29.     The Xbox 360 employs several effective technological protection layers, including an authentication and encryption scheme to prevent unauthorized, unapproved devices from accessing, copying, transferring, modifying, or utilizing Xbox 360 content; Gamertags to associate content with individual consumers; integrity hash systems to ensure that game content is not modified or tampered with; and unique, unpublished file formats and electrical interfaces to prevent unauthorized access to, modifying, transferring, and copying of copyrighted video game content on PCs.

30.     By effectively protecting copyrighted video game content against unauthorized access, alteration, and reproduction, these measures prevent the infringement of copyrighted video game works, hacking, piracy, and cheating that undermines the competitive online gaming environment, and provide users with a consistent and positive gaming experience.   These measures further prevent against unauthorized access to, and potential attacks upon, the system operating software of the Xbox 360 console.

31.     In April 2010, Microsoft began to permit Xbox 360 game data to be stored on USB flash memory units.  The decision to permit the use of USB flash memory units was first made in 2008.  In connection with permitting USB flash memory devices, Microsoft implemented a new, proprietary file container for game data.  One benefit of that file container is that it replaces, in part, the protection for game data provided by the Xbox 360's unique electrical

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

interface and game data file format, and effectively protects against unauthorized access to, alteration, and reproduction of copyrighted video game content within the meaning of the DMCA.

**Microsoft's Xbox 360 Trademark**

32.    Microsoft carefully protects its trademarks.

33.    Microsoft owns common law rights in the "XBOX 360" mark.

34.    Microsoft also is the owner of U.S. federal registration nos. 3573970, 3538652, 3538651, 3300210, and 3252556, for the "XBOX 360" mark, covering, *inter alia*, "interactive video game devices comprised of computer hardware and software and accessories," such as "game consoles, game controllers and software for operating game controllers," and "electronic devices," such as "computer hardware for accessing global computer and communication networks; computer hardware and computer peripherals."  Copies of the certificates for these federal trademark registrations are attached hereto as Exhibit C.

35.    "XBOX 360" has been used in commerce by Microsoft since 2005.  Microsoft's use has been substantially continuous and exclusive.

36.    Microsoft has used the "XBOX 360" mark on the packaging of its console, accessories and devices with a distinctive color scheme of white, lime green, and grey, with curved green arcs.

 

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

37.    Microsoft has attained strong name recognition in its famous "XBOX 360" mark, which has come to be associated with Microsoft and identifies Microsoft as the source of various Xbox 360 video gaming products offered in connection with the mark.

38.    Microsoft has developed substantial goodwill in the "XBOX 360." Microsoft has spent millions of dollars marketing and promoting its Xbox 360 goods in connection with its XBOX 360 mark, and considers its XBOX 360 mark to be an important and valuable asset.

**Datel's Circumvention and Cheating Products**

39.    As Datel explains on its website, Datel "creates the world's best-selling videogame cheat products, generating annual sales of over $150 [million] through a global network of distribution and retail partners."[1] Codejunkies.com, "Datel's consumer site," employs a "dedicated team of cheat code developers" to provide "cheat codes" and "game saves" for "the latest games as soon as they are released."[2] On that site, Datel advertises and sells numerous different kinds of circumvention and cheat products.

40.    Datel's unauthorized devices and accessories for the Xbox 360 by intent and design circumvent and bypass some of the Xbox 360's technological measures that effectively protect against unauthorized access to, alteration, and copying of copyrighted video game content. As Datel admits in its Complaint, through "substantial investment in analyzing the security and authentication techniques" in the Xbox 360 console, Datel has "overcome," *i.e., circumvented* and hacked through some of Microsoft's technological protection measures. Complaint ¶ 30.

41.    Datel's devices facilitate unauthorized access to, reproduction, alteration, and dissemination of copyrighted video game code and other copyrighted video game content (*e.g.,* levels, characters, sounds, images, etc.). Once these copies are "in the clear" and in the hands of others, repeated reproduction and distribution are possible.

42.    Datel's products, for example, allow users to copy, transfer and manipulate game save files from the Xbox 360 console to their PCs, or transfer unauthorized modified game saves

---

[1] http://www.datel.co.uk/pages/about_us.aspx (last visited May 28, 2010).
[2] http://www.datel.co.uk/pages/codejunkies.aspx (last visited May 28, 2010).

DEFT'S ANSWER & COUNTERCLAIMS
CV 09-5535 EDL

1   found on the Internet to the Xbox 360 console.  Datel admits that its "MAX" memory card is

2   marketed to allow users to "save vital game information from your Xbox 360 games," such as

3   "levels" and "characters."  *Id*., ¶ 18.  Unlike the official memory cards Microsoft sells for the

4   Xbox 360, Datel's memory cards use SD cards and are sold with an SD reader that allows users to

5   transfer game saves from the SD card "straight into any free USB port on your PC."[3]  As Datel

6   advertizes, the MAX memory card is the "perfect" card for users to "make use" of purportedly

7   "suitable game saves and content downloaded from the internet,"[4] *i.e.*, hacked or modified game

8   saves.

9          43.      Similarly, Datel admits that its "XSATA" and "Xport" products are "devices for

10   transferring data between an Xbox 360 and a personal computer, allowing users to store Xbox

11   demos, game saves and other materials on a personal computer when they are not being used on

12   the Xbox 360."  *Id*., ¶ 15.   Datel states on its website that with its "Xport" device a user can

13   "install files from your PC to your console's hard drive, *and inspect, modify and install files of*

14   *your own . . . .*"[5]  Likewise, Datel advertises its "Transfer Kit" device as allowing users to

15   "email" and "share your saves with friends from all over the world," as long as the save itself is

16   "not locked to your own console or Xbox Live account,"[6] in other words, further protected by

17   additional Xbox 360 technological measures, such as Gamertags.   Datel's "Action Replay

18   360Powersaves," as well as other pirating tools available on the Internet, allow users to crack that

19   extra layer of protection.

20          44.      With Datel's "Action Replay 360Powersaves," Datel has cracked the encryption

21   scheme Microsoft employs to ensure that game saves are not modified or sold.  The product

22   contains—as Datel itself boasts—"professionally *modified game saves* that can completely

23   unlock a game, making extra levels, weapons and characters instantly available."[7]  The "Action

24   [3] http://us.codejunkies.com/Products/XB360-MAX-Memory-4GB__EF000778.aspx (last visited
25   May 28, 2010).
     [4] *Id*.
26   [5] http://us.codejunkies.com/Products/XB360-Xport__EF000191.aspx (emphasis added) (last
     visited May 28, 2010).
27   [6] http://us.codejunkies.com/Products/XB360-Transfer-Kit__EF000188.aspx (last visited May 28,
28   2010).
     [7] http://uk.codejunkies.com/Products/XB360-Action-Replay-360Powersaves__EF000793.aspx
     (emphasis added) (last visited May 28, 2010).

Replay 360 Powersaves" allows a user to "resign" (in Datel's parlance) modified game saves, tricking the Xbox 360 into believing that these are legitimate game saves earned by the user.  Not only do these game saves include copyrighted works or derivative works, but by using these products, players can engage in authorized cheating by obtaining unearned Achievements, immediately advancing to new levels and accumulating greater weapons and strengths than by playing the game as the game publisher intended, to the detriment of other players.

45.     Further, Datel's accessories permit unauthorized access to and alteration of copyrighted *dynamic* video game content*, i.e.,* the devices modify the changing and active video game environment, including the game's intended narrative structure.  By facilitating the hacking of game saves, or directly hacking the saves themselves, Datel's products give users unauthorized access to game levels (including the level's copyrighted audio, visual, and narrative components), additional strength, lives, or weapons, and associated Achievements that users themselves have not earned through playing the game.  Not only do such modifications change the gaming experience for players using Datel's products through unauthorized cheating, they may also even alter and frustrate the creative expression of the game for other non-cheating users.  With hacked game saves, users can skip multiple game levels, defeat adversaries with unearned strength or weapons, and severely undermine the competitive online gaming environment.  These devices fundamentally change users' interactions with the copyrighted dynamic video game environment in ways that game publishers never intended.

46.     Indeed, in describing the "Xport" product on its website, Datel states that users can "[d]ownload fan-created files *and enhance your games in ways Microsoft never intended*. . . Transfer game saves from the Internet *to boost your achievements*!"[8]

47.     Upon information and belief, Datel has full knowledge of the infringement, cheating, and other unauthorized conduct that players engage in through using Datel's products, Datel makes a direct and material contribution to such conduct, actively encourages such conduct, and deliberately refrains from taking measures to prevent further damage to Microsoft's and other

---

[8] http://us.codejunkies.com/Products/XB360-Xport__EF000191.aspx (emphasis added) (last visited May 28, 2010).

DEFT'S ANSWER & COUNTERCLAIMS
CV 09-5535 EDL

1    game developers' copyrighted works. Moreover, Datel derives a direct financial benefit from end

2    users' unauthorized conduct, while declining to exercise its right and ability to stop or limit that

3    conduct.

4            48.    Through allowing users to cheat and gain unearned "Achievements," Datel's

5    products undermine the integrity and legitimacy of the entire Xbox LIVE service and its

6    Achievement system. Further, Datel's products induce end users to breach the terms of the valid

7    and enforceable Xbox LIVE TOU and video game software licenses, as described above. Datel

8    actively sells and promotes the use of its products even though it knows that their use by gamers,

9    resulting in unauthorized access to, reproduction and alteration of copyrighted video game

10   content and cheating in the Xbox LIVE environment, violates the Xbox LIVE TOU and game

11   software licenses. Datel directly profits from the sale of its products knowing their uses may

12   directly breach Microsoft's legitimate and substantial contractual rights, that this interference

13   causes Microsoft to expend substantial resources detecting cheating and enforcing its anti-

14   cheating policies while potentially losing subscribers and Xbox LIVE service revenue, and that

15   the use of these products upsets the carefully balanced competitive Xbox LIVE environment.

16           49.    Datel's devices also threaten the Xbox 360's system operating software and

17   potentially risk widespread game piracy. Datel's products, such as the "MAX" memory card with

18   its removable SD card and the "Transfer Kit," permit hackers to transfer unauthenticated,

19   arbitrary data from editable environments such as a PC to the Xbox 360 console and/or to directly

20   modify data on Xbox 360 memory cards or hard drives. This poses a particular danger to the

21   Xbox 360 system operating software. Microsoft purposefully developed the Xbox 360 with

22   propriety memory slots protected by unique electrical interfaces and an authentication scheme,

23   one benefit of which is to preclude people in the ordinary course from loading arbitrary,

24   unauthenticated data (*e.g.,* hacking software) onto an Xbox 360. Datel's products remove one

25   security barrier protecting the Xbox 360's system operating software and create a potential for

26   game piracy.

27

28

DEFT'S ANSWER & COUNTERCLAIMS
CV 09-5535 EDL

### Datel's Unauthorized Use of
### Microsoft's XBOX 360 Trademark

50.     Without any authorization or consent from Microsoft, Datel has used Microsoft's famous "XBOX 360" mark in commerce to sell its unlawful accessories and devices in a manner likely to confuse consumers as to their association, affiliation, endorsement or sponsorship with or by Microsoft.

51.     After Microsoft acquired and perfected its rights in the "XBOX 360" mark, Datel commenced advertising, offering for sale, and selling various products using the "XBOX 360" mark, in the United States and throughout the world.  Datel's use of the "XBOX 360" mark includes Datel's display of the mark on the packaging of several of its products, including, but not limited to, Datel's "Xport" and "Xsata" products, whose names themselves bear a significant and confusing similarity to "Xbox," and Datel's "MAX" memory cards and "MAX" battery charger products.  For example, Datel has even named its "Xport" product the "*Xbox 360* Docking Station," which title appears on the packaging of the product and on the product itself.  (Emphasis added).  Notably Datel's own "Datel" mark appears either not at all or only inconspicuously on its products.  Datel also has imitated on its packaging the distinctive white, lime green, and grey color scheme, even adding curved green arcs.




DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

1

2

3

4

5

6

7

8

9

10



11

12      52.      Indeed, Datel has used the trademarks of other video gaming platforms and

13  similarly imitated their packaging as well.  For example, the packaging of Datel's products for the

14  Nintendo Wii imitate the Wii's distinct font and white, torquoise, and grey coloring scheme, and

15  its products for the Sony Playstation 3 mimic the Playstation 3's red and black coloring scheme.

16      Nintendo Wii:                                    Datel Wii Accessory:

17

18

19

20

21                                    

22

23

24

25

26

27

28

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

Sony Playstation 3:                    Datel Playstation 3 Accessory:

   

53.     Datel's products and devices are not authorized, approved, endorsed, or sponsored by, or associated, affiliated, or connected with Microsoft, and Datel's use of the "XBOX 360" mark is not authorized, approved, endorsed, or sponsored by, or associated, affiliated, or connected with Microsoft.

54.     Upon information and belief, in using the "XBOX 360" mark, Datel has willfully and deliberately sought to profit from Microsoft's established goodwill and reputation.  Although Datel is not licensed or otherwise sponsored by Microsoft, its products are sold in a manner that falsely and unfairly implies affiliation with the "XBOX 360" brand and Microsoft, creating consumer confusion over the source of origin of Datel's products.   Datel's products also dilute the distinctive quality of the "XBOX 360" mark, by both blurring and tarnishment.

**Microsoft's Injury As A Result of Datel's Conduct**

55.     Datel's devices and products, by design and operation, cause immediate and irreparable harm to Microsoft and infringe upon Microsoft's exclusive rights protected under federal law and state law.

56.     Through circumventing Microsoft's technological protection measures, Datel's devices permit and threaten widespread unauthorized uses, alteration, dissemination, and piracy

- 29 -

1   of copyrighted video game content, diminishing the value of Microsoft's and other game

2   developers' copyrighted works.

3       57.    Datel's devices also undermine the carefully balanced competitive gaming

4   environment of the Xbox 360 by facilitating unauthorized cheating.  Microsoft has spent

5   substantial sums of money attempting to detect and disable Datel's unlawful circumvention

6   technologies, and to detect cheating occurring on the Xbox LIVE network through the use of

7   Datel's illegal products.  Microsoft has lost immeasurable numbers of customers and sales as a

8   result of Datel's activities, and its reputation and customer goodwill have been damaged.

9   Moreover, Datel has and continues to directly infringe Microsoft's trademark rights.  Datel seeks

10  to profit from Microsoft's investments, established goodwill, and reputation.

11      58.    All of these harms constitute irreparable injury.

12

13                          **FIRST CAUSE OF ACTION**
                  **(VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT,**
14                          **17 U.S.C. §§ 1201, *et seq.*)**

15      59.    Microsoft incorporates by reference paragraphs 1 - 58 above as though fully set

16  forth herein.

17      60.    Section 1201(a)(2) of the DMCA, 17 U.S.C. § 1201(a)(2), provides, in pertinent

18  part, that no person shall manufacture, import, offer to the public, provide, or otherwise traffic in

19  any technology, product, service, device, component, or part thereof, that (A) is primarily

20  designed for the purpose of circumventing a technological measure that effectively controls

21  access to a work protected under this title; (B) has only limited commercially significant purpose

22  or use other than to circumvent a technological measure that effectively controls access to a

23  work protected under this title; or (C) is marketed by that person or another acting in concert

24  with that person with that person's knowledge for use in circumventing a technological measure

25  that effectively controls access to a work protected under this title.

26      61.    Section 1201(b) of the DMCA, 17 U.S.C. § 1201(b) provides, in pertinent part,

27  that no person shall manufacture, import, offer to the public, provide, or otherwise traffic in any

28  technology, product, service, device, component, or part thereof, that (A) is primarily designed

DEFT'S ANSWER & COUNTERCLAIMS
CV 09-5535 EDL

for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; (B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; or (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof.

62.    The various layers of technological protection Microsoft employs on the Xbox 360 console — including an authentication scheme to prevent unauthorized, unapproved devices from accessing, copying, or utilizing Xbox 360 content; Gamertags to associate content with individual consumers; integrity hash systems to ensure that game content is not modified or tampered with; unique, unpublished file formats; and unique electrical interfaces to prevent unauthorized access to copyrighted video game content and the Xbox 360 system software — (a) effectively control access to works protected by the Copyright Act and (b) effectively protect copyrighted material, including protecting Microsoft's and other game developers' reproduction and derivative works rights, by controlling whether an end user can access, reproduce, alter, manufacture, record, adapt, and/or distribute copies of Microsoft's and other game developers' copyrighted works or portions thereof.

63.    Datel offers to the public, provides, and/or otherwise traffics in accessories and devices that (a) are primarily designed or produced for the purpose of circumventing the Xbox 360's technological protection measures or the protection offered by such measures; (b) have only limited commercially significant purpose or use other than to circumvent the Xbox 360's technological protection measures or the protection offered by such measures; and/or (c) are marketed by Datel and/or others acting in concert with it with the knowledge that these accessories and devices are used to circumvent the Xbox 360's technological protection measures or the protection afforded by such measures.

DEFT'S ANSWER & COUNTERCLAIMS
CV 09-5535 EDL

64.     By circumventing its Xbox 360 accessories and devices and by offering to the public and providing the services hereinabove alleged, Datel has violated 17 U.S.C. §§ 1201(a)(2), and 1201(b).

65.     As a direct and proximate result of the infringements by Datel, Microsoft is entitled to damages and Datel's profits in amounts to be proven at trial which are not currently ascertainable.

66.     Alternatively, at Microsoft's election, it is entitled to an award of the maximum statutory damages as permitted by the DMCA, 17 U.S.C. § 1203(c).  Microsoft also is entitled to Datel's profits from its violations of 17 U.S.C. §§ 1201(a)(2), and 1201(b).

67.     As a direct and proximate result of the foregoing acts and conduct, Microsoft has sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Pursuant to 17 U.S.C. § 1203, Microsoft is entitled to a preliminary and permanent injunction prohibiting further violations of § 1201.

68.     Microsoft is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 1203.

## SECOND CAUSE OF ACTION
## (FEDERAL TRADEMARK INFRINGEMENT, 15 U.S.C. §§ 1114 AND 1125(a))

69.     Microsoft incorporates by reference paragraphs 1 - 58 above, as though fully set forth herein.

70.     Microsoft owns U.S. federal registrations nos. 3573970, 3538652, 3538651, 3300210, and 3252556, for the "XBOX 360" mark. These registrations are in full force and effect and are enforceable.

71.     Datel's use of the "XBOX 360" mark in interstate commerce, without the consent or authorization of Microsoft, is likely to cause consumer confusion or to cause mistake or to deceive as to the origin of the products and services offered and sold by Datel and as to their affiliation, connection, or association with and/or endorsement or approval by Microsoft.

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

72.     The foregoing acts of Datel constitute false designation of association, affiliation, connection, endorsement and/or approval under 15 U.S.C. § 1125(a).

73.     Datel's actions also constitute the use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of a registered trademark of Microsoft in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion or mistake, or to deceive, in violation of 15 U.S.C. § 1114.

74.     Upon information and belief, Datel has engaged in such false designation of origin, association, affiliation, connection, endorsement and/or approval knowingly, willfully, deliberately, and in conscious disregard of Microsoft's rights, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

75.     Microsoft has been damaged and will continue to be damaged, and Datel has been unjustly enriched, by such unlawful conduct in an amount to be proven at trial.

76.     Alternatively, Microsoft is entitled to the maximum statutory damages with respect to each type of goods or services sold that infringes Microsoft's "XBOX 360" mark, or for such other amounts as may be proper under 15 U.S.C. § 1117.

77.     Microsoft is further entitled to recover its attorneys' fees and full costs pursuant to 15 U.S.C. § 1117.

78.     In addition, Datel's conduct described herein has caused and, if not enjoined will continue to cause, irreparable damage to Microsoft's rights in its marks, and to the business, positive reputation and goodwill of Microsoft, which cannot be adequately compensated solely by monetary damages.  Microsoft therefore has no adequate remedy at law and seeks permanent injunctive relief pursuant to 15 U.S.C. § 1116.

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

**THIRD CAUSE OF ACTION**
**(FEDERAL DILUTION, 15 U.S.C. § 1125(c))**

79.     Microsoft incorporates by reference paragraphs 1 - 58 above, as though fully set forth herein.

80.     Microsoft's "XBOX 360" mark is extraordinarily famous and highly distinctive, and became famous and highly distinctive before any of the unlawful conduct of Datel complained of herein.

81.     Datel's aforesaid acts constitute trademark uses in commerce that are likely to dilute the distinctive quality of the "XBOX 360" mark, by both blurring and tarnishment, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

82.     Upon information and belief, Datel has engaged in such conduct willfully, deliberately, and in conscious disregard of Microsoft's rights, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

83.     In addition, Datel's conduct described herein has caused and, if not enjoined will continue to cause, irreparable damage to Microsoft's rights in its marks, and to the business, positive reputation and goodwill of Microsoft, which cannot be adequately compensated solely by monetary damages.  Microsoft therefore has no adequate remedy at law and seeks permanent injunctive relief pursuant to 15 U.S.C. § 1116.

**FOURTH CAUSE OF ACTION**
**(COMMON LAW TRADEMARK INFRINGEMENT)**

84.     Microsoft incorporates by reference paragraphs 1 - 58 above, as though fully set forth herein.

85.     Microsoft owns common law rights in the "XBOX 360" mark that date back to at least 2005.

86.     The acts and conduct of Datel as alleged in the Second Cause of Action above constitute trademark infringement under the common law of California and the substantially similar common law of other states.

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

87.    As a direct and proximate result of Datel's conduct, Microsoft has been damaged in an exact amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (INDUCING BREACH OF CONTRACT)

88.    Microsoft incorporates by reference paragraphs 1 - 58 above, as though fully set forth herein.

89.    The Xbox LIVE TOU constitute a valid and existing contract between Microsoft and its Xbox LIVE users.

90.    Datel had knowledge of the Xbox LIVE TOU and of the valid and existing contract between Microsoft and its Xbox LIVE users created by the Xbox LIVE TOU.

91.    Datel committed intentional and unjustified acts to induce Xbox LIVE users to breach their contract with Microsoft.

92.    Xbox LIVE Users who were sold and were induced to utilize Datel's products and devices did in fact breach the Xbox LIVE TOU by acts, including but not limited to engaging in unauthorized cheating in the Xbox LIVE environment and creating unauthorized reproductions and alterations of copyrighted Microsoft video game content through the use of Datel's products and devices.

93.    These breaches of the Xbox LIVE TOU were caused by Datel's unjustified and wrongful conduct.  Datel's products and devices which caused Xbox LIVE users to breach the Xbox LIVE TOU are independently illegal under federal law and violate established standards of fair play within the online multiplayer video gaming environment.

94.    Datel's conduct has damaged Microsoft, and caused and continues to cause irreparable and incalculable harm and injury to Microsoft.

95.    Microsoft is entitled to injunctive relief, compensatory damages, attorneys' fees, costs and/or other equitable relief.

96.    Microsoft is informed and believes that Datel's conduct was undertaken with the intent to injure Microsoft, or with a willful and conscious disregard of Microsoft's rights, and

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

constitutes clear and convincing evidence of oppression, fraud and malice.  As a result,

Microsoft is entitled to an award of punitive damages against Datel in an amount sufficient to

deter it from future misconduct.

## SIXTH CAUSE OF ACTION
## (INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS)

97.     Microsoft incorporates by reference paragraphs 1 - 58 above, as though fully set

forth herein.

98.     The Xbox LIVE TOU constitute a valid and existing contract between Microsoft

and Xbox LIVE users.

99.     Datel had knowledge of the Xbox LIVE TOU and of the valid and existing

contract between Microsoft and its Xbox LIVE users created by the Xbox LIVE TOU.

100.    Datel committed intentional and unjustified acts designed to interfere with or

disrupt the contract between Microsoft and its Xbox LIVE users.

101.    Datel caused actual interference with or disruption of relationship between

Microsoft and its Xbox LIVE users.  Datel's products and devices which interfered with or

disrupted the relationship between Microsoft and its Xbox LIVE users are independently illegal

under federal law and violate established standards of fair play within the online multiplayer

video gaming environment.

102.    Datel's conduct has damaged Microsoft, and caused and continues to cause

irreparable and incalculable harm and injury to Microsoft.

103.    Microsoft is entitled to injunctive relief, compensatory damages, attorneys' fees,

costs and/or other equitable relief.

104.    Microsoft is informed and believes that Datel's conduct was undertaken with the

intent to injure Microsoft, or with a willful and conscious disregard of Microsoft's rights, and

constitutes clear and convincing evidence of oppression, fraud and malice.  As a result,

Microsoft is entitled to an award of punitive damages against Datel in an amount sufficient to

deter it from future misconduct.

DEFT'S ANSWER &  COUNTERCLAIMS
CV 09-5535 EDL

**PRAYER FOR RELIEF**

**WHEREFORE,** Microsoft prays for judgment against Datel and against all of its affiliates, agents, servants, employees, partners and all persons in active concert or participation with it, for the following relief:

(a)     Permanent injunctive relief enjoining Datel and all of its employees, officers, directors, agents, servants, affiliates, attorneys, successors and assigns, and all those acting directly or indirectly in concert or participation with any of them, from violating Microsoft's rights under the DMCA, the Lanham Act, and state law, by selling, offering, marketing or otherwise trafficking in its various Xbox 360 devices and accessories, or any products with substantially similar functionality, that circumvent access- and copy-protection mechanisms protecting copyrighted video game content, use Microsoft's "XBOX 360" mark without any authorization, or induce Xbox LIVE users to breach the LIVE TOU or interfere with the contractual relationship between Microsoft and its Xbox LIVE users;

(b)     An order directing that Datel file with the Court and serve upon counsel for Microsoft within thirty (30) days after the entry of such order or judgment, a report in writing and under oath setting forth in detail the manner and form in which Datel has complied with the injunction;

(c)     An award to Microsoft of damages it has sustained or will sustain by reason of Datel's conduct, all profits derived by Datel from such conduct, or in lieu of any portion thereof, should Microsoft so elect, such statutory damages as provided by law;

(d)     Microsoft's costs and reasonable attorneys' fees;

(e)     Prejudgment and post-judgment interest; and

(f)     All such further and additional relief, in law or in equity, to which Microsoft may be entitled or which the Court deems just and proper.

DEFT'S ANSWER & COUNTERCLAIMS
CV 09-5535 EDL

1

**DEMAND FOR JURY TRIAL**

2        Microsoft hereby demands a jury trial of all issues in these counterclaims which are triable

3    to a jury.

4

5    DATED: May 28, 2010                    Munger, Tolles & Olson LLP

6

7    By:_____/s/ Rohit K. Singla_____
                                              ROHIT K. SINGLA

8    Attorneys for Defendant
     MICROSOFT CORPORATION

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFT'S ANSWER &  COUNTERCLAIMS
                                                                CV 09-5535 EDL