1   GREGORY P. STONE (SBN 078329)
    Gregory.Stone@mto.com
2   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue
3   Thirty-Fifth Floor
    Los Angeles, CA  90071-1560
4   Telephone:     (213) 683-9100
    Facsimile:     (213) 687-3702
5
    HOJOON HWANG (SBN 184950)
6   Hojoon.Hwang@mto.com
    ROHIT K. SINGLA (SBN 213057)
7   Rohit.Singla@mto.com
    JONATHAN H. BLAVIN (SBN 230269)
8   Jonathan.Blavin@mto.com
    MICHAEL J. MONGAN (SBN 250374)
9   Michael.Mongan@mto.com
    MUNGER, TOLLES & OLSON LLP
10  560 Mission Street,
    Twenty-Seventh Floor
11  San Francisco, CA  94105-2907
    Telephone:     (415) 512-4032
12  Facsimile:     (415) 512-4077

13  Attorneys for Defendant
    MICROSOFT CORPORATION

14
                    UNITED STATES DISTRICT COURT
15
                 NORTHERN DISTRICT OF CALIFORNIA
16
                      SAN FRANCISCO DIVISION
17

18
19  DATEL HOLDINGS LTD. and DATEL          CASE NO.  CV 09-5535 EDL
    DESIGN & DEVELOPMENT, INC.,
20                                         **DECLARATION OF ROHIT K. SINGLA IN
            Plaintiffs and                 SUPPORT OF MOTION TO COMPEL
21          Counterclaimant                DATEL'S PRODUCTION OF DOCUMENTS
            Defendants                     AND THINGS**
22
        vs.
23                                         Date:        January 28, 2011
    MICROSOFT CORPORATION,                 Time:        9:00 a.m.
24                                         Courtroom:  E, 15th Floor
            Defendant and                  Judge:       Mag. Judge Elizabeth D. Laporte
25          Counterclaimant

26
27
28
                                                 SINGLA DECL. ISO MOT. TO COMPEL
                                                 PRODUCTION OF DOCS. & THINGS
                                                 CASE NO. CV 09-5535 EDL

I, Rohit K. Singla, hereby declare:

1.      I am an attorney with the law firm Munger, Tolles & Olson LLP, counsel of record for Defendant Microsoft Corporation ("Microsoft") in the above-entitled action. I am licensed in the State of California and admitted to practice before this Court. I make this declaration based on my personal knowledge, and, if called upon as a witness, I could and would testify competently as to the matters set forth below.

2.      The following exhibits attached hereto are true and correct copies of the referenced documents:

| Exhibit | Document | Date |
|---------|----------|------|
| A | Defendant's First Set of Requests for Production | February 19, 2010 |
| B | Plaintiffs' Response to Defendant's First Set of Requests for Production | March 22, 2010 |
| C | Defendant's Second Set of Requests for Production | June 17, 2010 |
| D | Plaintiffs' Response to Defendant's Second Set of Requests for Production | August 5, 2010 |
| E | Defendant's Fourth Set of Requests for Production | September 27, 2010 |
| F | Plaintiffs' Response to Defendant's Fourth Set of Requests for Production | November 3, 2010 |
| G | Defendant's Fifth Set of Requests for Production | November 8, 2010 |
| H | Plaintiffs' Responses to Defendant's Fifth Set of Requests for Production | December 8, 2010 |
| I | Plaintiffs' Responses to Defendant's First Set of Requests for Admission | November 3, 2010 |
| J | Intentionally Omitted | |
| K | Plaintiffs' Responses to Defendant's Fifth Set of Interrogatories | January 5, 2011 |
| L | Letter from Robert Hallman to Rohit Singla | July 7, 2010 |
| M | Letter from Rohit Singla to Robert Hallman | July 19, 2010 |
| N | Letter from Robert Hallman to Rohit Singla | August 10, 2010 |

SINGLA DECL. ISO MOT. TO COMPEL
PRODUCTION OF DOCS. & THINGS
CASE NO. CV 09-5535 EDL

| | | | |
|---|---|---|---|
| O | Letter from Martin Glick to Rohit Singla | September 29, 2010 |
| P | Letter from Daniel Asimow to Rohit Singla | November 24, 2010 |
| Q | Letter from Rohit Singla to Daniel Asimow | November 28, 2010 |
| R | E-mail chain between Daniel Asimow and Rohit Singla | November 24-30, 2010 |
| S | Letter from Daniel Asimow to Rohit Singla | December 1, 2010 |
| T | E-mail from Rohit Singla to Daniel Asimow | December 1, 2010 |
| U | E-mail from Rohit Singla to Daniel Asimow and Robert Hallman | December 20, 2010 |
| V | Letter from Daniel Asimow to Rohit Singla | December 27, 2010 |
| W | E-mail from Jonathan Blavin to Martin Glick | December 30, 2010 |
| X | E-mail from Martin Glick to Jonathan Blavin | January 4, 2011 |
| Y | E-mail from Robert Hallman to Rohit Singla | January 11, 2011 |

**Reverse Engineering Documents**

3.      On February 19, 2010, Microsoft served its First Set of Requests for Production.  *See* Exhibit A.  Several of the requests for production included in this set related to documents concerning Datel's reverse engineering of the various security layers of the Xbox 360.  On March 22, 2010, Datel served its Responses to Microsoft's First Set of Requests for Production.  *See* Exhibit B.  Datel agreed to produce some documents related to its reverse engineering, but refused to produce any technical specifications, instructions, software code, or documents detailing how Datel reverse engineered Xbox 360 security systems.  Counsel for Microsoft engaged in a lengthy meet and confer process with counsel for Datel on this issue.  In a letter sent on September 29, 2010, counsel for Datel suggested that Datel would produce technical documents relating to all of the Xbox and Xbox 360 products it distributes, except for technical documents relating to Datel's reverse-engineering of the Xbox 360's authentication chip.  *See* Exhibit O.

4.      Datel subsequently began producing substantial quantities of documents.  After an initial review of Datel's documents, I called Datel's counsel (Mr. Asimow) in late

SINGLA DECL. ISO MOT. TO COMPEL
PRODUCTION OF DOCS. & THINGS
CASE NO. CV 09-5535 EDL

1     November to further meet and confer on the failure to produce the technical specifications and

2     documents detailing how Datel's products function that Datel said it would produce in its

3     September 29 letter.  Mr. Asimow then told me that Datel in fact had few, if any, technical

4     specifications or documents that show how its products work.  I thus inquired again on November

5     24, 2010, whether Datel would produce reverse engineering documents given that these might be

6     the only documentary evidence for how Datel's products function.  *See* Exhibit R at 2.  On

7     November 30, 2010, counsel for Datel confirmed that it would not produce documents relating to

8     reverse engineering of the Maxwell security, but for the first time clearly stated that Datel would

9     produce or had produced technical documents detailing its reverse engineering efforts for the

10    other layers of Xbox 360 security.  *See id.* at 1.

11          5.      In an effort to address counsel for Datel's concerns about the burden of

12    producing the documents relating to the reverse engineering of Maxwell, I repeatedly offered to

13    have Datel begin its production with high-level technical documents discussing how Datel reverse

14    engineered Maxwell, without the underlying data files, followed by an opportunity for the parties

15    to try to flesh out the issues through depositions on these subjects.

16    **Product Samples**

17          6.      On September 27, 2010, Microsoft served its Fourth Set of Requests for

18    Production.  *See* Exhibit E.  Request for Production No. 83 asked for five samples of each Datel

19    product for the Xbox 360 or Xbox 1.  On November 3, 2010, Datel served its Responses to

20    Microsoft's Fourth Set of Requests for Production.  *See* Exhibit F.  It objected to this request on

21    grounds of relevance and burden.  On November 28, 2010, I sent a letter explaining that these

22    samples were needed for testing by Microsoft's experts, for use as trial exhibits, and for other

23    similar purposes.  *See* Exhibit Q.  I further explained that Microsoft required each version of these

24    products.  Counsel for Datel responded by letter on December 1, 2010.  *See* Exhibit S.  It offered

25    to provide Microsoft with only a single sample of those products "that are at issue in the case and

26    that you have not been able to obtain."  As a compromise, I sent an e-mail on December 1, 2010

27    offering to start by narrowing Microsoft's request to only those products that were the subject of

28    Datel's damages claims or Microsoft's DMCA counterclaims.  *See* Exhibit T.  We did not hear

1    back from Datel for weeks.  In a subsequent e-mail that I sent on December 20, 2010, I inquired

2    again and explained that this compromise would allow the parties to postpone discussion of

3    whether Microsoft required samples of other Datel products.  *See* Exhibit U.  I also offered that

4    Datel could exclude from its production versions that were differentiated only by changes in

5    packaging design or branding, rather than changes in functionality, software, features,

6    documentation, and so forth.  *See id.*  Datel rejected this proposed compromise.  In a letter sent on

7    December 27, 2010, Datel insisted that Microsoft identify all of the Datel products it had already

8    acquired, even though Microsoft had previously explained that this would reveal attorney work

9    product and even though it would not address the problem of prior versions of Datel products.

10   The only product samples Datel agreed to provide Microsoft were two samples of Datel's

11   wireless headset.  *See* Exhibit V.

12              7.        Many of Datel's products do not seem to be available for purchase from

13   Datel's own web-site or third party retailers.  Even where Datel's products are listed, Microsoft's

14   orders sometimes take weeks to be delivered.  For example, Microsoft's counsel ordered Datel's

15   TurboFire2 Wireless Controller from Datel's web-site on August 2, 2010, but it was not delivered

16   by Datel for more than a month.  Microsoft's attempts to obtain the product samples from

17   commercial retailers were often entirely unsuccessful.  For example, Microsoft was unable to

18   purchase Datel's wireless headset from a United States retailer or the Datel web-site and had to

19   order it from a European company instead.  As a result, Microsoft did not know if the product it

20   purchased was the same product Datel claims to be selling in the United States.  And Microsoft

21   has been entirely unable to locate other products that Datel claims to sell, such as the wireless

22   network adapter.  It is not listed on Datel's web-site, www.codejunkies.com.  Mr. Asimow

23   suggested to me that it could be bought at Wal-Mart, but I could not find it on www.wal-

24   mart.com nor at a Wal-Mart store.  We still, thus, do not have the wireless networking product.

25   Further, many of the samples of Datel's products Microsoft and its counsel obtained have been

26   tested and used already.  They are in no condition to be used as trial or deposition exhibits or even

27   for analysis by consultants and experts.  I have also assured counsel for Datel during oral meet

28   and confer that we have no usable versions of any Datel products that predate the filing of this

SINGLA DECL. ISO MOT. TO COMPEL
PRODUCTION OF DOCS. & THINGS
CASE NO. CV 09-5535 EDL

suit.

**Documents Relating to Lite-Blue Tool and Other Hacking/Cheating Products**

8.      Microsoft served its Second Set of Requests for Production on June 17, 2010.  *See* Exhibit C.  It included a request for "[a]ll Documents referring or relating to Datel's 'Lite Blue Tool' for the Sony PSP, including Documents concerning any disputes or litigation relating to the 'Lite Blue Tool.'"  *Id.* at 6.  Datel served its Responses to Microsoft's Second Set of Requests for Production on August 5, 2010.  *See* Exhibit D.  It refused to produce any documents related to the Lite Blue Tool.  Subsequently, Microsoft requested samples of Datel's products for other gaming platforms in its Fourth Set of Requests for Production.  *See* Exhibit E.  Datel objected on grounds of relevance and burden in its response.  *See* Exhibit F.  In a November 28, 2010 letter, and in prior oral meet and confer, I asked whether Datel would produce samples of its cheating and hacking products for other platforms.  *See* Exhibit Q.  Counsel for Datel responded that it did not "see any relevance, or certainly not sufficient relevance that could justify the burden of collection and review, for voluminous documents about devices for other platforms -- and particularly about devices that never even reached market."  *See* Exhibit R.  Counsel also stated that they had provided "Sell Sheets" and other documents which provided all the information Microsoft needed.  *See id.*   Upon review, we determined that these documents contain no useful details regarding Datel's hacking and cheating products for other platforms.

**Documents Relating to Licensing of Datel's Reverse Engineering Technology.**

9.      Microsoft served its First Set of Requests for the Production of Documents on February 19, 2010.  Included in this set was Request for Production No.3, which asked for "[a]ll Documents referring or relating to Datel's distribution, sale, offers to license, licensing, advertising, and marketing of its hardware, software or any other device or know-how for interfacing with the Xbox 360 Authentication Scheme."  See Exhibit B.  Following the parties' meet and confer, Datel agreed to produce all documents relating to the "distribution, sale, offers to license, etc." of "hardware, or software, and other devices or knowhow, specifically to enable interfacing with the Xbox 360 Authentication Scheme."  See Exhibit L at 4.   Microsoft does not believe that Datel produced any such documents.

SINGLA DECL. ISO MOT. TO COMPEL
PRODUCTION OF DOCS. & THINGS
CASE NO. CV 09-5535 EDL

1              10.      Microsoft served its Fifth Set of Requests for Production on November 8,

2    2010. *See* Exhibit G. Included in this set was a broader request, Request for Production No. 85,

3    which asked for "[a]ll Documents relating to any licensing, sale or other distribution or proposal

4    for the sale of any technology, product or service embodying, constituting, reflecting, arising out

5    of or relating to [Datel's] reverse engineering of any Microsoft hardware or software for the Xbox

6    360 to any third party, including but not limited to Atomic and Big Ben." Datel served its

7    Responses to Microsoft's Fifth Set of Requests for Production on December 8, 2010. *See* Exhibit

8    H. Appearing to backtrack on its prior agreement, at least with respect to the Maxwell security

9    system, Datel objected to Request for Production No. 85 stating that it "already produced

10   domestic and worldwide sales data, as well as all documents relating to licensing, sales,

11   distribution or proposals for sales to third parties within the United States," and that it would not

12   produce any documents "relating solely to licensing, sales, distribution or proposals for sales to

13   third parties outside of the United States."

14             11.      Counsel for Microsoft sent an e-mail to Datel on December 30, 2010,

15   agreeing to limit the request to documents concerning the actual or proposed licensing,

16   distribution, or sale of Datel technology arising from its hack of the Maxwell chip and the

17   wireless protocol. *See* Exhibit W. In a response e-mail sent on January 4, 2011, counsel for

18   Datel agreed to abandon its distinction between domestic and foreign transactions, but only

19   agreed to produce documents "sufficient to show any Maxwell Chip and/or wireless protocol

20   actual transactions . . . including financial data regarding any Microsoft 360 Chip Units actually

21   licensed or sold." *See* Exhibit X. Datel's counsel informed me during our meet and confer on

22   January 10, 2011, that Datel in fact has not licensed its hacking technology at all in the United

23   States, and has only consummated one transaction abroad. Moreover, in an email dated January

24   11, 2011, Datel now stands on a *general* objection in its *November 15, 2010* Supplemental

25   Responses to Microsoft's First Set of Requests, five months after the response deadline to

26   Request No. 3 and four months after the July 7 letter resolving the issue, that Datel would not in

27   fact produce the "voluminous set of documents related to foreign retailers, sales, licensing and

28   distribution."

SINGLA DECL. ISO MOT. TO COMPEL
PRODUCTION OF DOCS. & THINGS
CASE NO. CV 09-5535 EDL

1

2          I declare under penalty of perjury under the laws of the United States of America

3   and the State of California that the foregoing is true and correct.

4          Executed on January 11, 2011 at San Francisco, California.

5

6                                        _____ */s/ Rohit K. Singla* _____
                                         Rohit K. Singla
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SINGLA DECL. ISO MOT. TO COMPEL
                                   PRODUCTION OF DOCS. & THINGS
                                   CASE NO. CV 09-5535 EDL