# Exhibit A

1  GREGORY P. STONE (SBN 078329)
   Gregory.Stone@mto.com
2  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
3  Thirty-Fifth Floor
   Los Angeles, CA  90071-1560
4  Telephone:    (213) 683-9100
   Facsimile:    (213) 687-3702
5
   HOJOON HWANG (SBN 184950)
6  Hojoon.Hwang@mto.com
   ROHIT K. SINGLA (SBN 213057)
7  Rohit.Singla@mto.com
   JONATHAN H. BLAVIN (SBN 230269)
8  Jonathan.Blavin@mto.com
   MUNGER, TOLLES & OLSON LLP
9  560 Mission Street,
   Twenty-Seventh Floor
10 San Francisco, CA  94105-2907
   Telephone:    (415) 512-4032
11 Facsimile:    (415) 512-4077

12 Attorneys for Defendant
   MICROSOFT CORPORATION
13
                    UNITED STATES DISTRICT COURT
14
                   NORTHERN DISTRICT OF CALIFORNIA
15
                       SAN FRANCISCO DIVISION
16

17
                                    │  CASE NO.  CV 09-5535 EDL
18 DATEL HOLDINGS LTD. and DATEL     │
   DESIGN & DEVELOPMENT, INC.,       │  **DEFENDANT MICROSOFT CORP.'S**
19                                   │  **FIRST SET OF REQUESTS FOR THE**
              Plaintiffs,            │  **PRODUCTION OF DOCUMENTS**
20                                   │
          vs.                        │
21                                   │
   MICROSOFT CORPORATION,            │
22                                   │
              Defendant.             │
23
   ────────────────────────────────
24
25 PROPOUNDING PARTY:                   DEFENDANT MICROSOFT CORP.

26 RESPONDING PARTY:                    PLAINTIFFS DATEL HOLDINGS LTD.
                                        and DATEL DESIGN & DEVELOPMENT,
27         INC.

28 SET NUMBER:                          ONE

1           PLEASE TAKE NOTICE that, pursuant to Rules 26 and 34 of the Federal Rules of

2   Civil, Defendant Microsoft Corp. requests that Plaintiffs Datel Holdings Ltd. and Datel Design &

3   Development, Inc. produce for inspection and copying in accordance with the definitions and

4   instructions set forth below, at the offices of Microsoft's counsel, within at least thirty (30) days

5   of service of these requests, all documents described below.

6                     **<u>DEFINITIONS</u>**

7        1.       The singular form of a word should be interpreted as plural wherever necessary to

8   bring within the scope of the request any information that might otherwise be construed to be

9   outside its scope.

10        2.       The words "and" and "or" should be construed either disjunctively or

11   conjunctively wherever necessary to bring within the scope of this request any information that

12   might otherwise be construed to be outside its scope.

13        3.       The terms "any," "each," "all," and "every" shall be construed wherever necessary

14   to bring within the scope of this request any information that might otherwise be construed to be

15   outside its scope.

16        4.       "Microsoft" means the named Defendant Microsoft Corp., its present and former

17   business entities and any company through which it is doing business under a different name, and

18   includes, without limitation, its predecessors and successors, related companies, parent

19   companies, subsidiaries, divisions, partnerships, directors, officers, agents, employees, attorneys,

20   licensees, franchisees, distributors, salespersons, sales representatives, investigators, consultants,

21   experts, and all other Persons acting on its behalf or under its control.

22        5.       "Datel" or "You" or "Your" means one or both of the named Plaintiffs, Datel

23   Holdings Ltd. and Datel Design & Development, Inc., their present and former business entities

24   and any company or tradename through which they are doing business (including but not limited

25   to Codejunkies or codejunkies.com, and Raw Science), and includes their subsidiaries, divisions,

26   partnerships, directors, officers, agents, employees, licensees, distributors, and other Persons

27   acting on their behalf or under their control.

28

DEF'S FIRST SET OF RFPDS
CV 09-5535 EDL

1      6.      "Person," "Persons," and pronouns referring thereto, include, but are not limited

2    to, juristic persons, natural persons, companies, corporations, limited liability companies, sole

3    proprietorships, governmental entities, partnerships, associations, banks and other financial

4    institutions, and all other entities similar to any of the foregoing, however denominated.

5      7.      The words "refer," "referring," "relate," "relating," "concern," "concerning,"

6    "addressing," "reflecting" and "regarding" mean referring to, pertaining to, relating to, alluding

7    to, bearing upon, commenting upon, touching upon, concerning, regarding, recording, evidencing,

8    constituting, substantiating, discussing, mentioning, or otherwise affecting (directly or indirectly).

9      8.      "Xbox 360" means the Microsoft Xbox 360 video game system released on or

10   about November 22, 2005 in the United States, and except where set forth individually, it

11   includes each version released (e.g., "Arcade" or "Elite")

12     9.      "Xbox 1" means the Microsoft Xbox video game system released on or about

13   November 15, 2001 in the United States.

14     10.     "Accessories" means external or peripheral devices, hardware, and other electronic

15   products (excluding games), made for use with video game systems such as the Xbox 360,

16   including but not limited to game controllers, memory cards, external hard drives, media remotes,

17   headsets, microphones and cables.

18     11.     "Memory Cards" means external memory units that can be connected to a video

19   game console, excluding external hard drives that can be connected to the console.

20     12.     "Controllers" or "Game Controllers" means peripheral devices connected to a

21   video game system (by wired or wireless connection) and used to control game play, including

22   but not limited to regular game controllers (wired or wireless), special purpose controllers such as

23   guitar controllers or steering wheel style controllers, gun style and other combat controllers.

24     13.     The phrase "Dashboard Updates" means those updates to the Xbox 360 software

25   that Microsoft releases to Xbox 360 owners.

26     14.     "Authentication Scheme" shall mean any security techniques and/or technological

27   barriers used to ensure the authenticity and/or compatibility of third party add-ons and accessories

28   used by a video game system.

DEF'S FIRST SET OF RFPDS
CV 09-5535 EDL

15.     "Video Gaming Platforms" shall mean any and all systems or platforms for the playing of video games, including but not limited to the Xbox 1, the Xbox 360, the Playstation 2, the Playstation 3, the Nintendo Wii, the Nintendo GameCube, the Sony PSP, the Nintendo DS, and personal computer (PCs).

16.     "Document" or "Documents" shall have the full meaning ascribed to it under Rule 34 of the Federal Rules of Civil Procedure, and refers to all handwritten, typed, printed or otherwise visually, mechanically or electronically reproduced materials, whether copies or originals.  Where a copy contains any marking not appearing on the original or is altered from the original, then such item shall be considered a separate original document.

**INSTRUCTIONS**

17.     Datel shall produce responsive documents as they have been kept in the usual course of business or shall organize and label them to correspond to the enumerated requests of this Request.  In either case, documents contained in file folders, loose-leaf binders and notebooks with tabs or labels identifying such documents are to be produced intact with such file folders, loose-leaf binders, or notebooks.  In producing documents, all documents which are physically attached to each other shall be left so attached.  Documents which are segregated or separated from other documents, shall be left so segregated or separated.

18.     Pursuant to Federal Rule of Civil Procedure 34(b)(i)(C), Datel shall produce electronically stored information as follows:

a. Email:  In single page TIFF images with Optical Character Recognition ("OCR"), and with related, extracted text and associated metadata (for example, but not limited to, date, time, to, from, cc, bcc fields, internal path showing mail "folder" names, and source custodian name) in a Concordance load file format with Opticon image cross reference file, indicating beginning and ending pages of each message and each attachment, with attachments identified so as to enable the undersigned issuing attorneys to electronically identify their parent e-mails and with records for which you request special treatment (such as confidential records) identified with field flags;

b. <u>E-files, such as Microsoft word documents, Adobe Acrobat pdf's, Excel or other spreadsheet files:</u> in single page TIFF images with OCR, and with related, extracted text, with tracked changes, and associated metadata (for example, but not limited to, date last modified, date created, author, file type [e.g., .doc or .xls], full file path, and source custodian name) in a Concordance load file format with Opticon image cross reference file, indicating beginning and ending pages of each document, with records for which you request special treatment (such as confidential records) identified with field flags, and, the same for Excel and spreadsheet files, so long as the image to be produced communicates all essential substance of the spreadsheet workbooks, including but not limited to essential formulas and hidden data, but if such information is not available in the TIFF image, we request native production of Excel and spreadsheet files; and

c. <u>Databases</u>: native format or exported to a standard output file type which preserves data content and is readable by other common applications (e.g., Access or SQL).

19.     Notwithstanding the foregoing, if any electronically stored information is produced in a form that is not reasonably useable by the undersigned, the undersigned reserves the right to request that such electronically stored information be delivered in different form so that it is reasonably useable, including, but not limited to, native form.  If you find any part of this specification unclear, or if you contend it is burdensome, we ask that you communicate with the undersigned at your earliest possible convenience to discuss the forms and volume of electronically stored information to be collected and produced..

20.     These requests are continuing in character so as to require Datel to produce for inspection and copying any documents not previously produced that Datel may from time to time acquire, obtain, locate, or identify, in accordance with its duty to supplement and correct under Federal Rule of Civil Procedure 26(e).

21.     For each document requested herein that you presently contend you are not required to disclose because of any alleged "privilege" or "immunity," identify each such document as follows:

DEF'S FIRST SET OF RFPDS
CV 09-5535 EDL

A.      State the subject matter of the writing;

B.      State the purpose for which the communication was requested or prepared;

C.      State the date the writing was prepared and the date it bears;

D.      Identify each person who wrote, signed, initialed, dictated, or otherwise participated in the preparation of the writing;

E.      Identify each person to whom the writing was addressed and each person to whom the original or a copy of the writing was sent;

F.      Identify each person who was present when the writing was prepared;

G.      Identify such person who has seen the writing;

H.      Identify each person who has custody of the original or a copy of the writing;

I.      Identify each person referred to in immediately proceeding subparagraphs C, D, E, F, and G by stating his or her full name, job title, and business address, both currently and at the time he or she first had any involvement with the writing; and

J.      State the privilege or immunity asserted.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1:

All Documents referring or relating to the Xbox 360 Authentication Scheme, including but not limited to Documents referring or relating to Datel's efforts to analyze, replicate, or interface with the Authentication Scheme.  This includes, but is not limited to, all Documents referring or relating to Datel's circumvention of the Authentication Scheme and implementation of devices designed to operate with the Xbox 360 interface.

### REQUEST FOR PRODUCTION NO. 2:

All Documents referring or relating to the development and implementation of Datel's hardware and software for interfacing with the Xbox 360 Authentication Scheme, including but not limited to all technical specifications, and all versions of software code, in executable (object code) and human-readable form (source code), that interfaces with the Xbox 360 Authentication Scheme.

1    **REQUEST FOR PRODUCTION NO. 3:**

2         All Documents referring or relating to Datel's distribution, sale, offers to license,

3    licensing, advertising, and marketing of its hardware, software or any other device or know-how

4    for interfacing with the Xbox 360 Authentication Scheme.

5    **REQUEST FOR PRODUCTION NO. 4:**

6         All Documents referring or relating to Dashboard Updates, including but not limited to

7    communications with Datel's existing and potential consumers and customers, including retail

8    customers, regarding Dashboard Updates.

9    **REQUEST FOR PRODUCTION NO. 5:**

10        All Documents referring or relating to communications between Datel and any third-party

11   game developer.

12   **REQUEST FOR PRODUCTION NO. 6:**

13        All Documents, including but not limited to communications, referring or relating to

14   Datel's efforts to reverse engineer any Microsoft software or hardware.

15   **REQUEST FOR PRODUCTION NO. 7:**

16        All Documents referring or relating the interoperability, or lack thereof, between the Xbox

17   360 and Datel's and other third-party's Accessories.

18   **REQUEST FOR PRODUCTION NO. 8:**

19        All Documents referring or relating to Datel's communications with Datel's existing and

20   potential consumers and customers, including retail customers, regarding Microsoft's policy

21   against the use of unauthorized third-party Accessories.

22   **REQUEST FOR PRODUCTION NO. 9:**

23        All Documents referring or relating to Datel's development of Accessories for the Xbox 1,

24   including all Documents relating to the certification, or lack thereof, of Datel's Xbox 1

25   Accessories for compliance with Microsoft's Xbox 1 Accessory standards.

26   **REQUEST FOR PRODUCTION NO. 10:**

27        All Documents referring or relating to Datel's plans, design, development, and production

28   of Accessories for the Xbox 360 and Xbox 1, including without limitation Memory Cards, the

- 6 -

DEF'S FIRST SET OF RFPDS
CV 09-5535 EDL

1  "Ready Action Max" for Xbox 360 and Xbox 1, all Controllers, all headsets, all interfaces or

2  adapters for the Xbox 360 Memory Cards or hard drives, and all Accessories contemplated for the

3  future.  Included within this request are any Documents relating to the timing of Datel's

4  introduction of such Accessories.

5  **REQUEST FOR PRODUCTION NO. 11:**

6        All Documents referring or relating to Datel's business plans or strategies for Xbox 1 and

7  Xbox 360 Accessories, including any Accessory designed or intended to work with the Xbox 360

8  as well as with one or more other Video Gaming Platforms.

9  **REQUEST FOR PRODUCTION NO. 12:**

10       All Documents referring or relating to Datel's plans or options for future modifications or

11  enhancements to existing Datel Accessories for the Xbox 360 and Xbox 1, including any

12  Accessory designed or intended to work with the Xbox 360 as well as with one or more other

13  Video Gaming Platforms.

14  **REQUEST FOR PRODUCTION NO. 13:**

15       All Documents referring or relating to technical specifications, drawings, and software

16  code relating to each of Datel's Accessories for the Xbox 360.

17  **REQUEST FOR PRODUCTION NO. 14:**

18       All Documents referring or relating to the design, manufacturing, and importing of the

19  technology (e.g., integrated circuits and microchips) used by Datel's Xbox 360 Accessories to

20  authenticate with the Xbox 360.

21  **REQUEST FOR PRODUCTION NO. 15:**

22       All Documents referring or relating to Datel's becoming (or not becoming) a Microsoft

23  licensed Xbox 360 or Xbox 1 Accessory manufacturer.

24  **REQUEST FOR PRODUCTION NO. 16:**

25       All Documents referring or relating to Datel's becoming (or not becoming) a licensed

26  Accessory manufacturer for non-Microsoft Video Gaming Platforms.

27  **REQUEST FOR PRODUCTION NO. 17:**

28       All Documents referring or relating to Datel's financial statements, including without

1  limitation profit and loss statements, balance sheets, and cash flow statements

2  **REQUEST FOR PRODUCTION NO. 18:**

3       All Documents referring or relating to Datel's sales, profits, sales expectations, and profit

4  expectations for Xbox 360 Accessories.

5  **REQUEST FOR PRODUCTION NO. 19:**

6       All Documents referring or relating to Datel's historical experience and projections

7  regarding sales and profits of Accessories for Video Gaming Platforms.

8  **REQUEST FOR PRODUCTION NO. 20:**

9       All Documents referring or relating to Datel's discussions or communications with

10 potential or current retailers concerning Datel's products for Video Gaming Platforms.

11 **REQUEST FOR PRODUCTION NO. 21:**

12      All Documents referring or relating to Datel's marketing, advertising, or promotion,

13 including future plans, of Datel's Xbox 360 Accessories.

14 **REQUEST FOR PRODUCTION NO. 22:**

15      All Documents referring or relating to the Xbox 360's "closed system," including but not

16 limited to Microsoft's prohibition on the use of unauthorized third-party Accessories and

17 Microsoft's Xbox 360 compliance and licensing system for third-party Accessories.

18 **REQUEST FOR PRODUCTION NO. 23:**

19      All documents relating to the creation of "PowerSaves" and "cheats" on the Datel Action

20 Replay products for the Xbox 360 and Xbox 1.

21 **REQUEST FOR PRODUCTION NO. 24:**

22      All Documents describing or discussing the design, purpose and function of

23 "PowerSaves" and "cheats" developed or distributed by Datel for the Xbox 360 or Xbox 1.

24 **REQUEST FOR PRODUCTION NO. 25:**

25      All Documents referring or relating to "cheating" in the multiplayer online gaming

26 environment, including rules and/or customs regarding "cheating" in the multiplayer online

27 gaming environment.

28

DEF'S FIRST SET OF RFPDS
CV 09-5535 EDL

1    **REQUEST FOR PRODUCTION NO. 26:**

2         All Documents referring or relating to the design, purpose, functionality, and development

3    of "turbofire" buttons on Xbox 360 and Xbox 1 Controllers produced by Datel and other third-

4    party manufacturers.

5    **REQUEST FOR PRODUCTION NO. 27:**

6         All Documents referring or relating to the potential uses of Datel's Memory Cards,

7    including but not limited to any uses enabled by the greater capacity of Datel's Memory Cards as

8    compared to the Memory Cards sold by Microsoft and the ability to transfer data from the Xbox

9    360 to a PC, and vice versa, using in whole or in part Datel's Memory Cards.

10   **REQUEST FOR PRODUCTION NO. 28:**

11        All Documents referring or relating to the development, implementation, and distribution

12   of functionality to "re-sign" (or analogous technology) gamesaves and other content for the Xbox

13   360.

14   **REQUEST FOR PRODUCTION NO. 29:**

15        All Documents referring or relating to the development, implementation, and distribution

16   of any other functionality to change the content of gamesaves or other content for the Xbox 360.

17   **REQUEST FOR PRODUCTION NO. 30:**

18        All Documents referring or relating to the content, including but not limited to video game

19   code, copied onto Datel's Memory Cards.

20   **REQUEST FOR PRODUCTION NO. 31:**

21        All Documents referring or relating to a comparison or contrast of the functionality or

22   design of Datel's Accessories for Xbox 360 to any Xbox 360 Accessories manufactured by any

23   entity other than Datel.

24   **REQUEST FOR PRODUCTION NO. 32:**

25        All Documents referring or relating to competition among Video Gaming Platforms,

26   including but not limited to market shares of Video Gaming Platforms.

27

28

DEF'S FIRST SET OF RFPDS
CV 09-5535 EDL

1    **REQUEST FOR PRODUCTION NO. 33:**

2         All Documents referring or relating to a comparison or contrast of the Xbox 360 to other

3    Video Gaming Platforms.

4    **REQUEST FOR PRODUCTION NO. 34:**

5         All Documents referring or relating to the interoperability of Datel's products, including

6    Datel's Accessories, across different Video Gaming Platforms.

7    **REQUEST FOR PRODUCTION NO. 35:**

8         All Documents referring or relating to Datel's participation in the multiplayer online

9    gaming market.

10   **REQUEST FOR PRODUCTION NO. 36:**

11        All Documents referring or relating to the interoperability (or lack thereof) between

12   Accessories and Video Gaming Platforms.

13   **REQUEST FOR PRODUCTION NO. 37:**

14        All Documents referring or relating to Datel's practice of modifying, or ability to modify,

15   Accessories, for one video gaming console to work with another video gaming console.

16   **REQUEST FOR PRODUCTION NO. 38:**

17        All Documents referring or relating to any and all versions of Microsoft's Xbox LIVE

18   Terms of Use.

19   **REQUEST FOR PRODUCTION NO. 39:**

20        All Documents referring or relating to any and all versions of Microsoft's Xbox 360

21   warranty.

22   **REQUEST FOR PRODUCTION NO. 40:**

23        All Documents referring or relating to any and all versions of the software license

24   applicable to the Microsoft Xbox 360.

25   **REQUEST FOR PRODUCTION NO. 41:**

26        All Documents referring or relating to any and all versions of the Microsoft Xbox 360

27   user's manual.

28

DEF'S FIRST SET OF RFPDS
CV 09-5535 EDL

1    **REQUEST FOR PRODUCTION NO. 42:**

2        All Documents referring or relating to Datel's end user license agreements or other

3    contractual materials provided to Datel's customers at the time of purchase or on the Datel

4    website.

5    **REQUEST FOR PRODUCTION NO. 43:**

6        All versions of the datel.co.uk and codejunkies.com web sites since November 2001.

7    **REQUEST FOR PRODUCTION NO. 44:**

8        All Documents referring or relating to product literature, manuals, instructions, packaging

9    text and marketing materials for each Accessory for the Xbox 360 or Xbox 1 introduced by Datel

10   since November 2001.

11   **REQUEST FOR PRODUCTION NO. 45:**

12       All Documents constituting, referring or relating to Datel's communications with

13   Microsoft or third parties regarding Accessories for the Xbox 1, the Xbox 360, or the

14   Authentication Schemes for either, in any context.

15   **REQUEST FOR PRODUCTION NO. 46:**

16       All Documents referring or relating to licenses Datel has taken or certifications Datel has

17   obtained for Accessories for any Video Gaming Platform.

18   **REQUEST FOR PRODUCTION NO. 47:**

19       All Documents referring or relating to consumer and customer complaints for Datel's

20   Xbox 360 and Xbox 1 Accessories.

21   **REQUEST FOR PRODUCTION NO. 48:**

22       All Documents referring or relating to customer support requests or responses (whether

23   written or oral) relating to Datel's Xbox 360 and Xbox 1 Accessories.

24   **REQUEST FOR PRODUCTION NO. 49:**

25       All documents summarizing or analyzing consumer and customer complaints or support

26   inquiries for Datel Accessories for any Video Gaming Platform.

27   **REQUEST FOR PRODUCTION NO. 50:**

28       All Documents referring or relating to the testing of Datel Accessories for the Xbox 360

1   or Xbox 1.

2   **REQUEST FOR PRODUCTION NO. 51:**

3        All Documents referring or relating to any patents Microsoft may hold with respect to the

4   Xbox 360 console, the Xbox 360 Authentication Scheme, or the Xbox 360 Accessories

5   **REQUEST FOR PRODUCTION NO. 52:**

6        All Documents referring or relating to any patents Datel may hold with respect to Xbox

7   360 Accessories.

8   **REQUEST FOR PRODUCTION NO. 53:**

9        All Documents referring or relating to those referenced or identified in Datel's initial

10  disclosures.

11  **REQUEST FOR PRODUCTION NO. 54:**

12       All Documents on which Datel intends to rely in prosecution or defense of this litigation

13  **REQUEST FOR PRODUCTION NO. 55:**

14       All Documents referring or relating to any other lawsuits filed by Datel or against Datel

15  anywhere in the world relating to Accessories for Video Gaming Platforms.

16  **REQUEST FOR PRODUCTION NO. 56:**

17       Documents sufficient to show the personnel and organization of Datel.

18  **REQUEST FOR PRODUCTION NO. 57:**

19       Documents sufficient to show the corporate relationship between Datel and its various

20  subsidiaries and/or affiliates.

21  **REQUEST FOR PRODUCTION NO. 58:**

22       Documents sufficient to show all companies affiliated with Datel.

23
    **REQUEST FOR PRODUCTION NO. 59:**
24
         Documents sufficient to show the role of Datel and its various subsidiaries and/or
25
    affiliates in the design, development, production, marketing and sale of Accessories for the Xbox
26
    360 and Xbox 1.
27

28

DEF'S FIRST SET OF RFPDS
CV 09-5535 EDL

1    DATED: February 19, 2010                Munger, Tolles & Olson LLP

2

3
                                             By:_____/s/ Hojoon Hwang_____
4                                                       HOJOON HWANG

5                                            Attorneys for Defendant
                                             MICROSOFT CORPORATION
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF'S FIRST SET OF RFPDS
CV 09-5535 EDL

# Exhibit B

MARTIN R. GLICK (No. 40187)
Email: mglick@howardrice.com
BERNARD A. BURK (No. 118083)
Email: bburk@howardrice.com
DANIEL B. ASIMOW (No. 165661)
Email: dasimow@howardrice.com
ROBERT D. HALLMAN (No. 239949)
Email: rhallman@howardrice.com
MICHELLE S. YBARRA (No. 260697)
Email: mybarra@howardrice.com
HOWARD RICE NEMEROVSKI CANADY
        FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone:      415/434-1600
Facsimile: 415/677-6262

Attorneys for Plaintiffs
DATEL HOLDINGS LTD. and DATEL DESIGN
& DEVELOPMENT, INC.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DATEL HOLDINGS LTD. and DATEL DESIGN & DEVELOPMENT, INC., | No. 09-CV-05535 EDL |
| Plaintiffs, | Action Filed: November 20, 2009 |
| v. | PLAINTIFFS' RESPONSES TO DEFENDANT MICROSOFT CORPORATION'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS |
| MICROSOFT CORPORATION, | |
| Defendant. | |

1   PROPOUNDING PARTY:            Defendant MICROSOFT CORPORATION

2   RESPONDING PARTY:             Plaintiffs DATEL HOLDINGS LTD. and
                                  DATEL DESIGN & DEVELOPMENT, INC.
3

4   SET NUMBER:                   ONE

5        Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs Datel Holdings

6   Ltd. and Datel Design & Development, Inc. ("Datel") hereby respond to Defendant

7   Microsoft Corporation's ("Microsoft") First Set of Requests for the Production of

8   Documents as follows.

9                             **GENERAL OBJECTIONS**

10       1.    Datel objects to each Request that is overbroad, unreasonably duplicative of other

11  Requests, and/or beyond the scope of permissible discovery.

12       2.    Datel objects to these Requests, and to each Request, to the extent that they call

13  for information and/or documents that are equally or reasonably available to Microsoft

14  without undue burden on Datel.

15       3.    Datel objects to these Requests, and to each Request, to the extent Microsoft

16  requests information and/or documents that are not within Datel's possession or control.

17       4.    Datel objects to the Requests to the extent that they call for production of "all"

18  documents in Datel's possession.  To the extent that Datel undertakes to produce documents,

19  Datel will use reasonable diligence to locate files referencing the given subject matter, as

20  required by the Federal Rules of Civil Procedure

21       5.    Datel objects to the Requests, and to each Request, to the extent that they seek

22  information and/or documents protected from discovery by any applicable privilege,

23  protection, immunity or other exemption from discovery under the United States

24  Constitution, statutes or case law, including, without limitation, the attorney-client privilege,

25  attorney work-product doctrine, the right of privacy, trade secret protection, confidential

26  information protection or other exemption from discovery.  Nothing contained in these

27  responses is intended to be or should be considered a waiver of the attorney-client privilege,

28  attorney work-product doctrine, or other applicable privilege, immunity, the right of privacy

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    or other exemption from discovery.  Datel specifically reserves the right to assert privileges

2    and immunities for any privileged or otherwise protected information and/or document that

3    is disclosed inadvertently in response to these Requests.

4         6.    Datel objects to the Requests to the extent they seek confidential business

5    information and trade secrets.  To the extent Datel represents that it will produce any

6    confidential business records or trade secrets pursuant to these Requests, it will do so only

7    pursuant to a stipulated or court-ordered protective order providing for the confidential

8    treatment of such materials.

9         7.    Datel objects to the date and time set for production as unreasonably burdensome.

10   To the extent Datel represents that it will produce documents pursuant to these Requests,

11   Datel will do so at a reasonable time and place pursuant to discussions between the parties.

12                                 **RESERVATIONS**

13        1.    Datel's investigation and discovery of the allegations in this case is ongoing.  The

14   responses and objections herein are based upon information and/or documents presently

15   known to, and in the possession of Datel.  Datel reserves the right to rely on any documents

16   or other evidence which may develop or subsequently come to its attention, to assert

17   additional objections or supplemental responses should it discover that there is information

18   or grounds for objections, and to supplement or amend these responses at any time.  Without

19   obligating itself to do so, Datel also reserves the right to the further disclosure of any

20   documents and/or information.

21        2.    Inadvertent production by Datel of any material subject to the attorney-client

22   privilege, prepared in anticipation of litigation or for trial, or otherwise protected or immune

23   from discovery shall not constitute waiver of any privilege or of any other ground for

24   objecting to discovery of such materials, its subject matter or information contained therein

25   or of Datel's right to object to the use of such material during any later proceeding or

26   otherwise seek return of the material.

27        3.    Datel understands that Microsoft intends to propose that the parties use defined

28   search terms to limit electronic discovery.  No agreement has yet been reached between the

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   parties.  To the extent the parties later enter into an agreement to use defined search terms,

2   Datel's representations herein that it will produce documents pursuant to these Requests are

3   to be understood to exclude electronic documents that are not disclosed by the agreed search

4   terms.

**RESPONSES TO THE REQUESTS**

**FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:**

All Documents referring or relating to the Xbox 360 Authentication Scheme, including but not limited to Documents referring or relating to Datel's efforts to analyze, replicate, or interface with the Authentication Scheme. This includes, but is not limited to, all Documents referring or relating to Datel's circumvention of the Authentication Scheme and implementation of devices designed to operate with the Xbox 360 interface.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Datel further objects to this Request to the extent that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Datel will produce responsive documents within its possession, custody or control, sufficient to show Datel's investment in analyzing the security and authentication techniques employed by the Xbox to exclude competitive accessories, to the extent that and in the manner in which such information is kept in the ordinary course of business.  Datel is willing to meet and confer in order to narrow the scope of the remaining aspects of this Request to information that is reasonably likely to lead to admissible evidence concerning disputed issues in this case.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents referring or relating to the development and implementation of Datel's hardware and software for interfacing with the Xbox 360 Authentication Scheme, including but not limited to all technical specifications, and all versions of software code, in executable

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    (object code) and human-readable form (source code), that interfaces with the Xbox 360

2    Authentication Scheme.

3    **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

4         Datel incorporates the General Objections and Reservations as if fully set forth herein.

5    Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,

6    and seeks information that is irrelevant and not reasonably calculated to lead to the discovery

7    of admissible evidence.  Subject to and without waiving the foregoing objections, Datel will

8    produce documents relating to the development and implementation of Datel's hardware and

9    software for interfacing with the Xbox 360, excluding any technical specifications,

10   instructions, software code, or other Datel trade secrets.  Datel is willing to meet and confer

11   regarding the foregoing exclusions if Microsoft asserts that such excluded materials are

12   reasonably likely to lead to admissible evidence concerning disputed issues in this case.

13   **REQUEST FOR PRODUCTION NO. 3:**

14        All Documents referring or relating to Datel's distribution, sale, offers to license,

15   licensing, advertising, and marketing of its hardware, software or any other device or know-

16   how for interfacing with the Xbox 360 Authentication Scheme.

17   **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

18        Datel incorporates the General Objections and Reservations as if fully set forth herein.

19   Datel further objects that this request is vague and ambiguous, and ultimately

20   incomprehensible, because it is unclear whether it refers to technology for creating devices

21   compatible with the Xbox 360 Authentication Scheme or whether it refers to such devices

22   themselves (e.g., memory cards and controllers).  Based on these objections, Datel will not

23   produce documents pursuant to this Request at this time, but is willing to meet and confer in

24   order to ascertain the nature of the Request.

25   **REQUEST FOR PRODUCTION NO. 4:**

26        All Documents referring or relating to Dashboard Updates, including but not limited to

27   communications with Datel's existing and potential consumers and customers, including

28   retail customers, regarding Dashboard Updates.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Subject to and without waiving the foregoing objections, Datel will produce responsive documents within its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents referring or relating to communications between Datel and any third-party game developer.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Datel further objects to this Request to the extent that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Based on these objections, Datel will not produce documents pursuant to this Request at this time.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents, including but not limited to communications, referring or relating to Datel's efforts to reverse engineer any Microsoft software or hardware.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Datel further objects to this Request to the extent that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Datel will produce responsive documents within its possession, custody or control, consisting of communications relating to Datel's efforts to reverse engineer Microsoft software or hardware in connection with the Xbox 360, excluding any technical specifications, instructions, software code, or other Datel trade secrets. Datel is willing to meet and confer regarding the foregoing exclusions if Microsoft asserts that such excluded materials are reasonably likely to lead to admissible evidence concerning disputed issues in this case.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

**REQUEST FOR PRODUCTION NO. 7:**

All Documents referring or relating the interoperability, or lack thereof, between the Xbox 360 and Datel's and other third-party's Accessories.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Datel further objects to this Request to the extent that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Datel will produce responsive documents within its possession, custody or control, excluding any technical specifications, instructions, software code, or other Datel trade secrets.  Datel is willing to meet and confer regarding the foregoing exclusions if Microsoft asserts that such excluded materials are reasonably likely to lead to admissible evidence concerning disputed issues in this case.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents referring or relating to Datel's communications with Datel's existing and potential consumers and customers, including retail customers, regarding Microsoft's policy against the use of unauthorized third-party Accessories.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Subject to and without waiving the foregoing objections, Datel will produce responsive documents within its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents referring or relating to Datel's development of Accessories for the Xbox 1, including all Documents relating to the certification, or lack thereof, of Datel's Xbox 1 Accessories for compliance with Microsoft's Xbox 1 Accessory standards.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Datel will produce all documents within its possession, custody or control, relating to the certification, or lack thereof, of Datel's Xbox 1 memory cards and game controllers for compliance with Microsoft's Xbox 1 Accessory standards.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents referring or relating to Datel's plans, design, development, and production of Accessories for the Xbox 360 and Xbox 1, including without limitation Memory Cards, the "Ready Action Max" for Xbox 360 and Xbox 1, all Controllers, all headsets, all interfaces or adapters for the Xbox 360 Memory Cards or hard drives, and all Accessories contemplated for the future. Included within this request are any Documents relating to the timing of Datel's introduction of such Accessories.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Datel further objects to this Request to the extent that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Datel will produce responsive documents related to Xbox 360 Accessories and Xbox 1 memory cards and game controllers within its possession, custody or control, excluding any technical specifications, instructions, software code, or other Datel trade secrets. Datel is willing to meet and confer regarding the foregoing exclusions if Microsoft asserts that such excluded materials are reasonably likely to lead to admissible evidence concerning disputed issues in this case.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents referring or relating to Datel's business plans or strategies for Xbox 1 and Xbox 360 Accessories, including any Accessory designed or intended to work with the Xbox 360 as well as with one or more other Video Gaming Platforms.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

2   Datel incorporates the General Objections and Reservations as if fully set forth herein.

3   Subject to and without waiving the foregoing objections, Datel will produce responsive

4   documents within its possession, custody or control.

5   **REQUEST FOR PRODUCTION NO. 12:**

6   All Documents referring or relating to Datel's plans or options for future modifications

7   or enhancements to existing Datel Accessories for the Xbox 360 and Xbox 1, including any

8   Accessory designed or intended to work with the Xbox 360 as well as with one or more

9   other Video Gaming Platforms.

10   **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

11   Datel incorporates the General Objections and Reservations as if fully set forth herein.

12   Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,

13   and seeks information that is irrelevant and not reasonably calculated to lead to the discovery

14   of admissible evidence.  Subject to and without waiving the foregoing objections, Datel will

15   produce responsive documents related to Xbox 360 Accessories and Xbox 1 memory cards

16   and game controllers within its possession, custody or control, excluding any technical

17   specifications, instructions, software code, or other Datel trade secrets.  Datel is willing to

18   meet and confer regarding the foregoing exclusions if Microsoft asserts that such excluded

19   materials are reasonably likely to lead to admissible evidence concerning disputed issues in

20   this case.

21   **REQUEST FOR PRODUCTION NO. 13:**

22   All Documents referring or relating to technical specifications, drawings, and software

23   code relating to each of Datel's Accessories for the Xbox 360.

24   **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

25   Datel incorporates the General Objections and Reservations as if fully set forth herein.

26   Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,

27   and seeks information that is irrelevant and not reasonably calculated to lead to the discovery

28   of admissible evidence.   Based on these objections, Datel will not produce documents

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    pursuant to this Request.

2    **REQUEST FOR PRODUCTION NO. 14:**

3        All Documents referring or relating to the design, manufacturing, and importing of the

4    technology (e.g., integrated circuits and microchips) used by Datel's Xbox 360 Accessories

5    to authenticate with the Xbox 360.

6    **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

7        Datel incorporates the General Objections and Reservations as if fully set forth herein.

8    Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,

9    and seeks information that is irrelevant and not reasonably calculated to lead to the discovery

10   of admissible evidence.  Subject to and without waiving the foregoing objections, Datel will

11   produce responsive documents within its possession, custody or control, excluding any

12   technical specifications, instructions, software code, or other Datel trade secrets.  Datel is

13   willing to meet and confer regarding the foregoing exclusions if Microsoft asserts that such

14   excluded materials are reasonably likely to lead to admissible evidence concerning disputed

15   issues in this case.

16   **REQUEST FOR PRODUCTION NO. 15:**

17       All Documents referring or relating to Datel's becoming (or not becoming) a Microsoft

18   licensed Xbox 360 or Xbox 1 Accessory manufacturer.

19   **RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

20       Datel incorporates the General Objections and Reservations as if fully set forth herein.

21   Subject to and without waiving the foregoing objections, Datel will produce responsive

22   documents within its possession, custody or control.

23   **REQUEST FOR PRODUCTION NO. 16:**

24       All Documents referring or relating to Datel's becoming (or not becoming) a licensed

25   Accessory manufacturer for non-Microsoft Video Gaming Platforms.

26   **RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

27       Datel incorporates the General Objections and Reservations as if fully set forth herein.

28   Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Datel will produce responsive documents within its possession, custody or control, dating from November 2001 through the present.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents referring or relating to Datel's financial statements, including without limitation profit and loss statements, balance sheets, and cash flow statements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Datel further objects to this Request to the extent that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Datel will produce responsive documents within its possession, custody or control, dating from November 2001 to the present, sufficient to show its profit and loss for Xbox 360 Accessories and for Xbox 1 memory cards and game controllers, to the extent that and in the manner in which such information is kept in the ordinary course of business.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents referring or relating to Datel's sales, profits, sales expectations, and profit expectations for Xbox 360 Accessories.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Datel further objects to this Request to the extent that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Datel will produce responsive documents within its possession, custody or control, sufficient to show Datel's sales, profits, sales expectations, and profit expectations for Xbox 360 Accessories, to the extent that and in the manner in which such information is kept in the ordinary course of business.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

**REQUEST FOR PRODUCTION NO. 19:**

All Documents referring or relating to Datel's historical experience and projections regarding sales and profits of Accessories for Video Gaming Platforms.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Datel further objects to this Request to the extent that it is ambiguous, overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Datel will produce responsive documents within its possession, custody or control, sufficient to show Datel's past and expected sales and profits for Xbox 360 Accessories, Xbox 1 memory cards and game controllers, and memory cards and game controllers for other Video Gaming Platforms, in each case from November 2001 through the present, to the extent that and in the manner in which such information is kept in the ordinary course of business.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents referring or relating to Datel's discussions or communications with potential or current retailers concerning Datel's products for Video Gaming Platforms.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Datel further objects to this Request to the extent that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Datel will produce responsive documents within its possession, custody or control, showing or relating to Datel's discussions or communications with potential or current retailers concerning Datel's Xbox 360 Accessories, Xbox 1 memory cards and game controllers, and memory cards and game controllers for other Video Gaming Platforms, in each case from November 2001 through the present.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   **REQUEST FOR PRODUCTION NO. 21:**

2       All Documents referring or relating to Datel's marketing, advertising, or promotion,

3   including future plans, of Datel's Xbox 360 Accessories.

4   **RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

5       Datel incorporates the General Objections and Reservations as if fully set forth herein.

6   Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,

7   and seeks information that is irrelevant and not reasonably calculated to lead to the discovery

8   of admissible evidence.  Subject to and without waiving the foregoing objections, Datel will

9   produce responsive documents within its possession, custody or control, sufficient to show

10  Datel's marketing, advertising, or promotion, including future plans, of Datel's Xbox 360

11  Accessories, to the extent that and in the manner in which such information is kept in the

12  ordinary course of business.

13  **REQUEST FOR PRODUCTION NO. 22:**

14      All Documents referring or relating to the Xbox 360's "closed system," including but

15  not limited to Microsoft's prohibition on the use of unauthorized third-party Accessories and

16  Microsoft's Xbox 360 compliance and licensing system for third-party Accessories.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

18      Datel incorporates the General Objections and Reservations as if fully set forth herein.

19  Datel further objects to this Request to the extent that it seeks documents that are equally or

20  more readily accessible to Microsoft than Datel.  Subject to and without waiving the

21  foregoing objections, Datel will produce responsive documents within its possession,

22  custody or control.

23  **REQUEST FOR PRODUCTION NO. 23:**

24      All documents relating to the creation of "PowerSaves" and "cheats" on the Datel

25  Action Replay products for the Xbox 360 and Xbox 1.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

27      Datel incorporates the General Objections and Reservations as if fully set forth herein.

28  Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    and seeks information that is irrelevant and not reasonably calculated to lead to the discovery

2    of admissible evidence.   Based on these objections, Datel will not produce documents

3    pursuant to this Request at this time.

4    **REQUEST FOR PRODUCTION NO. 24:**

5        All Documents describing or discussing the design, purpose and function of

6    "PowerSaves" and "cheats" developed or distributed by Datel for the Xbox 360 or Xbox 1.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

8        Datel incorporates the General Objections and Reservations as if fully set forth herein.

9    Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,

10    and seeks information that is irrelevant and not reasonably calculated to lead to the discovery

11    of admissible evidence.   Based on these objections, Datel will not produce documents

12    pursuant to this Request at this time.

13    **REQUEST FOR PRODUCTION NO. 25:**

14        All Documents referring or relating to "cheating" in the multiplayer online gaming

15    environment, including rules and/or customs regarding "cheating" in the multiplayer online

16    gaming environment.

17    **RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

18        Datel incorporates the General Objections and Reservations as if fully set forth herein.

19    Datel incorporates the General Objections and Reservations as if fully set forth herein.  Datel

20    further objects to this Request to the extent that it is ambiguous, overbroad, unduly

21    burdensome, seeks documents that are equally or more readily accessible to Microsoft than

22    Datel, and seeks information that is irrelevant and not reasonably calculated to lead to the

23    discovery of admissible evidence.  Subject to and without waiving the foregoing objections,

24    Datel will produce responsive documents referring to "cheating" in the Xbox 360

25    multiplayer online gaming context within its possession, custody or control.

26    **REQUEST FOR PRODUCTION NO. 26:**

27        All Documents referring or relating to the design, purpose, functionality, and

28    development of "turbofire" buttons on Xbox 360 and Xbox 1 Controllers produced by Datel

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1  and other third party manufacturers.

2  **RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

3  Datel incorporates the General Objections and Reservations as if fully set forth herein.

4  Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,

5  and seeks information that is irrelevant and not reasonably calculated to lead to the discovery

6  of admissible evidence.  Subject to and without waiving the foregoing objections, Datel will

7  produce responsive documents within its possession, custody or control, excluding any

8  technical specifications, instructions, software code, or other Datel trade secrets.  Datel is

9  willing to meet and confer regarding the foregoing exclusions if Microsoft asserts that such

10  excluded materials are reasonably likely to lead to admissible evidence concerning disputed

11  issues in this case.

12  **REQUEST FOR PRODUCTION NO. 27:**

13  All Documents referring or relating to the potential uses of Datel's Memory Cards,

14  including but not limited to any uses enabled by the greater capacity of Datel's Memory

15  Cards as compared to the Memory Cards sold by Microsoft and the ability to transfer data

16  from the Xbox 360 to a PC, and vice versa, using in whole or in part Datel's Memory Cards.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

18  Datel incorporates the General Objections and Reservations as if fully set forth herein.

19  Subject to and without waiving the foregoing objections, Datel will produce responsive

20  documents within its possession, custody or control.

21  **REQUEST FOR PRODUCTION NO. 28:**

22  All Documents referring or relating to the development, implementation, and

23  distribution of functionality to "re-sign" (or analogous technology) gamesaves and other

24  content for the Xbox 360.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

26  Datel incorporates the General Objections and Reservations as if fully set forth herein.

27  Datel further objects to this Request to the extent that it is ambiguous, overbroad, unduly

28  burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

the discovery of admissible evidence.  Based on these objections, Datel will not produce documents pursuant to this Request at this time.

**REQUEST FOR PRODUCTION NO. 29:**

All Documents referring or relating to the development, implementation, and distribution of any other functionality to change the content of gamesaves or other content for the Xbox 360.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Datel further objects to this Request to the extent that it is overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Based on these objections, Datel will not produce documents pursuant to this Request at this time.

**REQUEST FOR PRODUCTION NO. 30:**

All Documents referring or relating to the content, including but not limited to video game code, copied onto Datel's Memory Cards.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Datel further objects to this Request to the extent that it is ambiguous, overbroad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Based on these objections, Datel will not produce documents pursuant to this Request at this time.

**REQUEST FOR PRODUCTION NO. 31:**

All Documents referring or relating to a comparison or contrast of the functionality or design of Datel's Accessories for Xbox 360 to any Xbox 360 Accessories manufactured by any entity other than Datel.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Subject to and without waiving the foregoing objections, Datel will produce responsive

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

documents within its possession, custody or control, excluding any technical specifications, instructions, software code, or other Datel trade secrets.  Datel is willing to meet and confer regarding the foregoing exclusions if Microsoft asserts that such excluded materials are reasonably likely to lead to admissible evidence concerning disputed issues in this case.

**REQUEST FOR PRODUCTION NO. 32:**

All Documents referring or relating to competition among Video Gaming Platforms, including but not limited to market shares of Video Gaming Platforms.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Subject to and without waiving the foregoing objections, Datel will produce responsive documents within its possession, custody or control, from November 2001 through the present.

**REQUEST FOR PRODUCTION NO. 33:**

All Documents referring or relating to a comparison or contrast of the Xbox 360 to other Video Gaming Platforms.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Subject to and without waiving the foregoing objections, Datel will produce responsive documents within its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 34:**

All Documents referring or relating to the interoperability of Datel's products, including Datel's Accessories, across different Video Gaming Platforms.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Subject to and without waiving the foregoing objections, Datel will produce responsive documents relating to memory cards and game controllers within its possession, custody or control, from November 2001 through the present, excluding any technical specifications, instructions, software code, or other Datel trade secrets.  Datel is willing to meet and confer

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   regarding the foregoing exclusions if Microsoft asserts that such excluded materials are

2   reasonably likely to lead to admissible evidence concerning disputed issues in this case.

3   **REQUEST FOR PRODUCTION NO. 35:**

4        All Documents referring or relating to Datel's participation in the multiplayer online

5   gaming market.

6   **RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

7        Datel incorporates the General Objections and Reservations as if fully set forth herein.

8   Subject to and without waiving the foregoing objections, Datel will produce responsive

9   documents within its possession, custody or control.

10  **REQUEST FOR PRODUCTION NO. 36:**

11       All Documents referring or relating to the interoperability (or lack thereof) between

12  Accessories and Video Gaming Platforms.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

14       Datel incorporates the General Objections and Reservations as if fully set forth herein.

15  Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,

16  and seeks information that is irrelevant and not reasonably calculated to lead to the discovery

17  of admissible evidence.  Subject to and without waiving the foregoing objections, Datel will

18  produce documents within its possession, custody or control referring or relating to the

19  interoperability (or lack thereof) of memory cards and game controllers for the Xbox 360

20  and any other Video Gaming Platform from November 2001 through the present, excluding

21  any technical specifications, instructions, software code, or other Datel trade secrets.  Datel

22  is willing to meet and confer regarding the foregoing exclusions if Microsoft asserts that

23  such excluded materials are reasonably likely to lead to admissible evidence concerning

24  disputed issues in this case.

25  **REQUEST FOR PRODUCTION NO. 37:**

26       All Documents referring or relating to Datel's practice of modifying, or ability to

27  modify, Accessories, for one video gaming console to work with another video gaming

28  console.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

2       Datel incorporates the General Objections and Reservations as if fully set forth herein.

3   Datel further objects to this Request to the extent that it is ambiguous, overbroad, unduly

4   burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to

5   the discovery of admissible evidence.   Subject to and without waiving the foregoing

6   objections, Datel will produce responsive documents within its possession, custody or

7   control related to memory cards and game controllers, excluding any technical

8   specifications, instructions, software code, or other Datel trade secrets.  Datel is willing to

9   meet and confer regarding the foregoing exclusions if Microsoft asserts that such excluded

10  materials are reasonably likely to lead to admissible evidence concerning disputed issues in

11  this case.

12  **REQUEST FOR PRODUCTION NO. 38:**

13      All Documents referring or relating to any and all versions of Microsoft's Xbox LIVE

14  Terms of Use.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

16      Datel incorporates the General Objections and Reservations as if fully set forth herein.

17  Subject to and without waiving the foregoing objections, Datel will produce responsive

18  documents within its possession, custody or control.

19  **REQUEST FOR PRODUCTION NO. 39:**

20      All Documents referring or relating to any and all versions of Microsoft's Xbox 360

21  warranty.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

23      Datel incorporates the General Objections and Reservations as if fully set forth herein.

24  Subject to and without waiving the foregoing objections, Datel will produce responsive

25  documents within its possession, custody or control.

26  **REQUEST FOR PRODUCTION NO. 40:**

27      All Documents referring or relating to any and all versions of the software license

28  applicable to the Microsoft Xbox 360.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

2         Datel incorporates the General Objections and Reservations as if fully set forth herein.

3    Subject to and without waiving the foregoing objections, Datel will produce responsive

4    documents within its possession, custody or control.

5    **REQUEST FOR PRODUCTION NO. 41:**

6         All Documents referring or relating to any and all versions of the Microsoft Xbox 360

7    user's manual.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

9         Datel incorporates the General Objections and Reservations as if fully set forth herein.

10   Subject to and without waiving the foregoing objections, Datel will produce responsive

11   documents within its possession, custody or control.

12   **REQUEST FOR PRODUCTION NO. 42:**

13        All Documents referring or relating to Datel's end user license agreements or other

14   contractual materials provided to Datel's customers at the time of purchase or on the Datel

15   website.

16   **RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

17        Datel incorporates the General Objections and Reservations as if fully set forth herein.

18   Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,

19   and seeks information that is irrelevant and not reasonably calculated to lead to the discovery

20   of admissible evidence.  Subject to and without waiving the foregoing objections, Datel will

21   produce responsive documents within its possession, custody or control, concerning Datel

22   Xbox 360 Accessories or Xbox 1 memory cards and game controllers, from November 2001

23   through the present.

24   **REQUEST FOR PRODUCTION NO. 43:**

25        All versions of the datel.co.uk and codejunkies.com web sites since November 2001.

26   **RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

27        Datel incorporates the General Objections and Reservations as if fully set forth herein.

28   Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   and seeks information that is irrelevant and not reasonably calculated to lead to the discovery
2   of admissible evidence.  Datel is willing to meet and confer in order to narrow the scope of
3   this Request to information that is reasonably likely to lead to admissible evidence
4   concerning disputed issues in this case.

5   **REQUEST FOR PRODUCTION NO. 44:**

6        All Documents referring or relating to product literature, manuals, instructions,
7   packaging text and marketing materials for each Accessory for the Xbox 360 or Xbox 1
8   introduced by Datel since November 2001.

9   **RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

10        Datel incorporates the General Objections and Reservations as if fully set forth herein.
11   Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,
12   and seeks information that is irrelevant and not reasonably calculated to lead to the discovery
13   of admissible evidence.  Subject to and without waiving the foregoing objections, Datel will
14   produce responsive documents related to Xbox 360 Accessories, and Xbox 1 memory cards
15   and game controllers within its possession, custody or control.

16   **REQUEST FOR PRODUCTION NO. 45:**

17        All Documents constituting, referring or relating to Datel's communications with
18   Microsoft or third parties regarding Accessories for the Xbox 1, the Xbox 360, or the
19   Authentication Schemes for either, in any context.

20   **RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

21        Datel incorporates the General Objections and Reservations as if fully set forth herein.
22   Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,
23   and seeks information that is irrelevant and not reasonably calculated to lead to the discovery
24   of admissible evidence.  Subject to and without waiving the foregoing objections, Datel will
25   produce responsive documents consisting of (a) Datel's communications with Microsoft, and
26   (b) Datel's communications with third parties specifically regarding Xbox 360 Accessories
27   and Xbox 1 memory cards and game controllers.  In each case, Datel's production of
28   responsive documents will exclude any technical specifications, instructions, software code,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   or other Datel trade secrets.  Datel is willing to meet and confer regarding the foregoing

2   exclusions if Microsoft asserts that such excluded materials are reasonably likely to lead to

3   admissible evidence concerning disputed issues in this case.

4   **REQUEST FOR PRODUCTION NO. 46:**

5        All Documents referring or relating to licenses Datel has taken or certifications Datel

6   has obtained for Accessories for any Video Gaming Platform.

7   **RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

8        Datel incorporates the General Objections and Reservations as if fully set forth herein.

9   Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,

10  and seeks information that is irrelevant and not reasonably calculated to lead to the discovery

11  of admissible evidence.  Subject to and without waiving the foregoing objections, Datel will

12  produce responsive documents within its possession, custody or control, from November

13  2001 through the present.

14  **REQUEST FOR PRODUCTION NO. 47:**

15       All Documents referring or relating to consumer and customer complaints for Datel's

16  Xbox 360 and Xbox 1 Accessories.

17  **RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

18       Datel incorporates the General Objections and Reservations as if fully set forth herein.

19  Subject to and without waiving the foregoing objections, Datel will produce responsive

20  documents within its possession, custody or control.

21  **REQUEST FOR PRODUCTION NO. 48:**

22       All Documents referring or relating to customer support requests or responses (whether

23  written or oral) relating to Datel's Xbox 360 and Xbox 1 Accessories.

24  **RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

25       Datel incorporates the General Objections and Reservations as if fully set forth herein.

26  Subject to and without waiving the foregoing objections, Datel will produce responsive

27  documents within its possession, custody or control.

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   **REQUEST FOR PRODUCTION NO. 49:**

2       All documents summarizing or analyzing consumer and customer complaints or

3   support inquiries for Datel Accessories for any Video Gaming Platform.

4   **RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

5       Datel incorporates the General Objections and Reservations as if fully set forth herein.

6   Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,

7   and seeks information that is irrelevant and not reasonably calculated to lead to the discovery

8   of admissible evidence.  Subject to and without waiving the foregoing objections, Datel will

9   produce responsive documents within its possession, custody or control to the extent they

10  relate to accessories for the Xbox 360 and Xbox 1.

11  **REQUEST FOR PRODUCTION NO. 50:**

12      All Documents referring or relating to the testing of Datel Accessories for the Xbox

13  360 or Xbox 1.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

15      Datel incorporates the General Objections and Reservations as if fully set forth herein.

16  Subject to and without waiving the foregoing objections, Datel will produce responsive

17  documents within its possession, custody or control related to testing Datel's Xbox 360

18  Accessories and Xbox 1 memory cards and game controllers, excluding any technical

19  specifications, instructions, software code, or other Datel trade secrets.  Datel is willing to

20  meet and confer regarding the foregoing exclusions if Microsoft asserts that such excluded

21  materials are reasonably likely to lead to admissible evidence concerning disputed issues in

22  this case.

23  **REQUEST FOR PRODUCTION NO. 51:**

24      All Documents referring or relating to any patents Microsoft may hold with respect to

25  the Xbox 360 console, the Xbox 360 Authentication Scheme, or the Xbox 360 Accessories.

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1 **RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

2      Datel incorporates the General Objections and Reservations as if fully set forth herein.

3 Datel further objects to this Request to the extent that it seeks information that is irrelevant

4 and not reasonably calculated to lead to the discovery of admissible evidence.  Based on

5 these objections, Datel will not produce documents pursuant to this Request at this time.

6 **REQUEST FOR PRODUCTION NO. 52:**

7      All Documents referring or relating to any patents Datel may hold with respect to Xbox

8 360 Accessories.

9 **RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

10      Datel incorporates the General Objections and Reservations as if fully set forth herein.

11 Subject to and without waiving the foregoing objections, Datel will produce responsive

12 documents within its possession, custody or control.

13 **REQUEST FOR PRODUCTION NO. 53:**

14      All Documents referring or relating to those referenced or identified in Datel's initial

15 disclosures.

16 **RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

17      Datel incorporates the General Objections and Reservations as if fully set forth herein.

18 Subject to and without waiving the foregoing objections, Datel will produce responsive

19 documents within its possession, custody or control.

20 **REQUEST FOR PRODUCTION NO. 54:**

21      All Documents on which Datel intends to rely in prosecution or defense of this

22 litigation.

23 **RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

24      Datel incorporates the General Objections and Reservations as if fully set forth herein.

25 Datel further objects to this Request to the extent that it is premature and unduly

26 burdensome.  Based on these objections, Datel will not produce documents pursuant to this

27 Request at this time.

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    **REQUEST FOR PRODUCTION NO. 55:**

2         All Documents referring or relating to any other lawsuits filed by Datel or against

3    Datel anywhere in the world relating to Accessories for Video Gaming Platforms.

4    **RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

5         Datel incorporates the General Objections and Reservations as if fully set forth herein.

6    Datel further objects to this Request to the extent that it is overbroad, unduly burdensome,

7    and seeks information that is irrelevant and not reasonably calculated to lead to the discovery

8    of admissible evidence.   Based on these objections, Datel will not produce documents

9    pursuant to this Request at this time.   Datel is willing to meet and confer about mutual

10   production of documents relating to litigation the parties have been involved with.

11   **REQUEST FOR PRODUCTION NO. 56:**

12        Documents sufficient to show the personnel and organization of Datel.

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

14        Datel incorporates the General Objections and Reservations as if fully set forth herein.

15   Subject to and without waiving the foregoing objections, Datel will produce responsive

16   documents within its possession, custody or control, to the extent that and in the manner in

17   which such information is kept in the ordinary course of business.

18   **REQUEST FOR PRODUCTION NO. 57:**

19        Documents sufficient to show the corporate relationship between Datel and its various

20   subsidiaries and/or affiliates.

21   **RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

22        Datel incorporates the General Objections and Reservations as if fully set forth herein.

23   Subject to and without waiving the foregoing objections, Datel will produce responsive

24   documents within its possession, custody or control, to the extent that and in the manner in

25   which such information is kept in the ordinary course of business.

26   **REQUEST FOR PRODUCTION NO. 58:**

27        Documents sufficient to show all companies affiliated with Datel.

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Subject to and without waiving the foregoing objections, Datel will produce responsive documents within its possession, custody or control, to the extent that and in the manner in which such information is kept in the ordinary course of business.

**REQUEST FOR PRODUCTION NO. 59:**

Documents sufficient to show the role of Datel and its various subsidiaries and/or affiliates in the design, development, production, marketing and sale of Accessories for the Xbox 360 and Xbox 1.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Datel further objects to this Request to the extent that it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving the foregoing objections, Datel will produce responsive documents within its possession, custody or control which show the aspects of the design, development, production, marketing and sale of (a) Xbox 360 Accessories, and (b) Xbox 1 memory cards and game controllers, conducted or managed by the respective Datel offices, to the extent that and in the manner in which such information is kept in the ordinary course of business.

DATED:  March 22, 2010.

MARTIN R. GLICK
BERNARD A. BURK
DANIEL B. ASIMOW
ROBERT D. HALLMAN
MICHELLE S. YBARRA
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation

By: _____
        ROBERT D. HALLMAN

Attorneys for Plaintiffs DATEL HOLDINGS LTD. and DATEL DESIGN & DEVELOPMENT, INC.

**PROOF OF SERVICE**

I, Robert D. Hallman, declare:

I am a resident of the State of California and over the age of eighteen years and not a party to the within-entitled action; my business address is Three Embarcadero Center, Seventh Floor, San Francisco, California 94111-4024. On March 22, 2010, I served the following document(s) described as: **PLAINTIFFS' RESPONSES TO DEFENDANT MICROSOFT CORPORATION'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

☐   by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☒   by transmitting via email the document(s) listed above to the email address(es) set forth below on this date.

☐   by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

**Hojoon Hwang**
Hojoon.Hwang@mto.com
**Rohit Singla**
Rohit.Singla@mto.com
**Jonathan Blavin**
Jonathan.Blavin@mto.com

Munger Tolles & Olson, LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907

**Gregory Stone**
Gregory.Stone@mto.com

Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at San Francisco, California on March 22, 2010.

_____
Robert D. Hallman

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

# Exhibit C

GREGORY P. STONE (SBN 078329)
Gregory.Stone@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

HOJOON HWANG (SBN 184950)
Hojoon.Hwang@mto.com
ROHIT K. SINGLA (SBN 213057)
Rohit.Singla@mto.com
JONATHAN H. BLAVIN (SBN 230269)
Jonathan.Blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street,
Twenty-Seventh Floor
San Francisco, CA  94105-2907
Telephone:    (415) 512-4032
Facsimile:    (415) 512-4077

Attorneys for Defendant
MICROSOFT CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DATEL HOLDINGS LTD. and DATEL DESIGN & DEVELOPMENT, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> MICROSOFT CORPORATION, <br><br> Defendant. | CASE NO.  CV 09-5535 EDL <br><br> **DEFENDANT MICROSOFT CORP.'S SECOND SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS** |

PROPOUNDING PARTY:          DEFENDANT MICROSOFT CORP.

RESPONDING PARTY:          PLAINTIFFS DATEL HOLDINGS LTD.
                                              and DATEL DESIGN & DEVELOPMENT,
          INC.

SET NUMBER:          TWO

1          PLEASE TAKE NOTICE that, pursuant to Rules 26 and 34 of the Federal Rules of

2    Civil Procedure, Defendant Microsoft Corp. requests that Plaintiffs Datel Holdings Ltd. and Datel

3    Design & Development, Inc. produce for inspection and copying in accordance with the

4    definitions and instructions set forth below, at the offices of Microsoft's counsel, within at least

5    thirty (30) days of service of these requests, all documents described below.

6                                   **DEFINITIONS**

7          1.       The singular form of a word should be interpreted as plural wherever necessary to

8    bring within the scope of the request any information that might otherwise be construed to be

9    outside its scope.

10         2.       The words "and" and "or" should be construed either disjunctively or

11   conjunctively wherever necessary to bring within the scope of this request any information that

12   might otherwise be construed to be outside its scope.

13         3.       The terms "any," "each," "all," and "every" shall be construed wherever necessary

14   to bring within the scope of this request any information that might otherwise be construed to be

15   outside its scope.

16         4.       "Microsoft" means the named Defendant Microsoft Corp., its present and former

17   business entities and any company through which it is doing business under a different name, and

18   includes, without limitation, its predecessors and successors, related companies, parent

19   companies, subsidiaries, divisions, partnerships, directors, officers, agents, employees, attorneys,

20   licensees, franchisees, distributors, salespersons, sales representatives, investigators, consultants,

21   experts, and all other Persons acting on its behalf or under its control.

22         5.       "Datel" or "You" or "Your" means one or both of the named Plaintiffs, Datel

23   Holdings Ltd. and Datel Design & Development, Inc., their present and former business entities

24   and any company or tradename through which they are doing business (including but not limited

25   to Codejunkies or codejunkies.com, and Raw Science), and includes their subsidiaries, divisions,

26   partnerships, directors, officers, agents, employees, licensees, distributors, and other Persons

27   acting on their behalf or under their control.

28

DEF'S 2ND SET OF RFPDS
CV 09-5535 EDL

6.     "Person," "Persons," and pronouns referring thereto, include, but are not limited to, juristic persons, natural persons, companies, corporations, limited liability companies, sole proprietorships, governmental entities, partnerships, associations, banks and other financial institutions, and all other entities similar to any of the foregoing, however denominated.

7.     The words "refer," "referring," "relate," "relating," "concern," "concerning," "addressing," "reflecting" and "regarding" mean referring to, pertaining to, relating to, alluding to, bearing upon, commenting upon, touching upon, concerning, regarding, recording, evidencing, constituting, substantiating, discussing, mentioning, or otherwise affecting (directly or indirectly).

8.     "Xbox 360" means the Microsoft Xbox 360 video game system released on or about November 22, 2005 in the United States, and except where set forth individually, it includes each version released (e.g., "Arcade" or "Elite")

9.     "Xbox LIVE" refers to the online multiplayer gaming and digital media delivery service created and operated by Microsoft for the Xbox 360 and Xbox 1.

10.     "Xbox 1" means the Microsoft Xbox video game system released on or about November 15, 2001 in the United States.

11.     "Accessories" means external or peripheral devices, hardware, and other electronic products (excluding games), made for use with video game systems such as the Xbox 360, including but not limited to game controllers, memory cards, external hard drives, media remotes, headsets, microphones and cables.

12.     "Memory Cards" means external memory units that can be connected to a video game console, excluding external hard drives that can be connected to the console.

13.     "Controllers" or "Game Controllers" means peripheral devices connected to a video game system (by wired or wireless connection) and used to control game play, including but not limited to regular game controllers (wired or wireless), special purpose controllers such as guitar controllers or steering wheel style controllers, gun style and other combat controllers.

14.     "Document" or "Documents" shall have the full meaning ascribed to it under Rule 34 of the Federal Rules of Civil Procedure, and refers to all handwritten, typed, printed or otherwise visually, mechanically or electronically reproduced materials, whether copies or

DEF'S 2ND SET OF RFPDS
CV 09-5535 EDL

1  originals.  Where a copy contains any marking not appearing on the original or is altered from the

2  original, then such item shall be considered a separate original document.

3                                    **INSTRUCTIONS**

4        15.    Datel shall produce responsive documents as they have been kept in the usual

5  course of business or shall organize and label them to correspond to the enumerated requests of

6  this Request.  In either case, documents contained in file folders, loose-leaf binders and notebooks

7  with tabs or labels identifying such documents are to be produced intact with such file folders,

8  loose-leaf binders, or notebooks.  In producing documents, all documents which are physically

9  attached to each other shall be left so attached.  Documents which are segregated or separated

10  from other documents, shall be left so segregated or separated.

11       16.    Pursuant to Federal Rule of Civil Procedure 34(b)(i)(C), Datel shall produce

12  electronically stored information as follows:

13           a. Email:  In single page TIFF images with Optical Character Recognition

14  ("OCR"), and with related, extracted text and associated metadata (for example, but not

15  limited to, date, time, to, from, cc, bcc fields, internal path showing mail "folder" names,

16  and source custodian name) in a Concordance load file format with Opticon image cross

17  reference file, indicating beginning and ending pages of each message and each

18  attachment, with attachments identified so as to enable the undersigned issuing attorneys

19  to electronically identify their parent e-mails and with records for which you request

20  special treatment (such as confidential records) identified with field flags;

21           b. E-files, such as Microsoft word documents, Adobe Acrobat pdf's, Excel or other

22  spreadsheet files: in single page TIFF images with OCR, and with related, extracted text,

23  with tracked changes, and associated metadata (for example, but not limited to, date last

24  modified, date created, author, file type [e.g., .doc or .xls], full file path, and source

25  custodian name) in a Concordance load file format with Opticon image cross reference

26  file, indicating beginning and ending pages of each document, with records for which you

27  request special treatment (such as confidential records) identified with field flags, and, the

28  same for Excel and spreadsheet files, so long as the image to be produced communicates

                                  - 3 -                  DEF'S 2ND SET OF RFPDS
                                                         CV 09-5535 EDL

all essential substance of the spreadsheet workbooks, including but not limited to essential formulas and hidden data, but if such information is not available in the TIFF image, we request native production of Excel and spreadsheet files; and

   c. Databases: native format or exported to a standard output file type which preserves data content and is readable by other common applications (e.g., Access or SQL).

17.     Notwithstanding the foregoing, if any electronically stored information is produced in a form that is not reasonably useable by the undersigned, the undersigned reserves the right to request that such electronically stored information be delivered in different form so that it is reasonably useable, including, but not limited to, native form.  If you find any part of this specification unclear, or if you contend it is burdensome, we ask that you communicate with the undersigned at your earliest possible convenience to discuss the forms and volume of electronically stored information to be collected and produced..

18.     These requests are continuing in character so as to require Datel to produce for inspection and copying any documents not previously produced that Datel may from time to time acquire, obtain, locate, or identify, in accordance with its duty to supplement and correct under Federal Rule of Civil Procedure 26(e).

19.     For each document requested herein that you presently contend you are not required to disclose because of any alleged "privilege" or "immunity," identify each such document as follows:

          A.     State the subject matter of the writing;

          B.     State the purpose for which the communication was requested or prepared;

          C.     State the date the writing was prepared and the date it bears;

          D.     Identify each person who wrote, signed, initialed, dictated, or otherwise participated in the preparation of the writing;

          E.     Identify each person to whom the writing was addressed and each person to whom the original or a copy of the writing was sent;

          F.     Identify each person who was present when the writing was prepared;

1          G.      Identify such person who has seen the writing;

2          H.      Identify each person who has custody of the original or a copy of the

3  writing;

4          I.      Identify each person referred to in immediately proceeding subparagraphs

5  C, D, E, F, and G by stating his or her full name, job title, and business address, both currently

6  and at the time he or she first had any involvement with the writing; and

7          J.      State the privilege or immunity asserted.

8        **REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

9  **REQUEST FOR PRODUCTION NO. 60:**

10      All Documents referring or relating to the electrical and other interfaces between the Xbox

11  360 console and Accessories for the Xbox 360.

12  **REQUEST FOR PRODUCTION NO. 61:**

13      All Documents referring or relating to "Gamertags" as that term is understood in the

14  context of the Xbox 360 and Xbox LIVE.

15  **REQUEST FOR PRODUCTION NO. 62:**

16      All Documents referring or relating to "Gamerscores" as that term is understood in the

17  context of the Xbox 360 and Xbox LIVE.

18  **REQUEST FOR PRODUCTION NO. 63:**

19      All Documents referring or relating to "Achievements" as that term is understood in the

20  context of the Xbox 360 and Xbox LIVE.

21  **REQUEST FOR PRODUCTION NO. 64:**

22      All Documents referring or relating to technologies, including but not limited to "hash"-

23  based systems and identifiers, used to prevent the tampering or modification of Xbox 360 video

24  game content, including but not limited to game save content.

25  **REQUEST FOR PRODUCTION NO. 65:**

26      All Documents referring or relating to unpublished file formats or file systems used by

27  Microsoft or other game developers in the context of the Xbox 360.

28

DEF'S 2ND SET OF RFPDS
CV 09-5535 EDL

**REQUEST FOR PRODUCTION NO. 66:**

All Documents referring or relating to Datel's "Advanced Controller" for the Xbox 1, including Documents reflecting the sales, margins, design and features of the product.

**REQUEST FOR PRODUCTION NO. 67:**

All Documents referring or relating to Datel's "Advanced Controller" for the Playstation 2, including Documents reflecting the sales, margins, design and features of the product.

**REQUEST FOR PRODUCTION NO. 68:**

All Documents referring or relating to Datel's "WildFire Controller" for the Playstation 3, including Documents reflecting the sales, margins, design and features of the product.

**REQUEST FOR PRODUCTION NO. 69:**

All Documents referring or relating to Datel's "Advanced Controller" for the Nintendo GameCube, including Documents reflecting the sales, margins, design and features of the product.

**REQUEST FOR PRODUCTION NO. 70:**

All Documents referring or relating to Datel's "Lite Blue Tool" for the Sony PSP, including Documents concerning any disputes or litigation relating to the "Lite Blue Tool."

**REQUEST FOR PRODUCTION NO. 71:**

All Documents concerning the development and design of the packaging of Datel's products for the Xbox 360, including but not limited to the packaging of the "MAX" Memory Card, the "Xsata," and the "Xport."

**REQUEST FOR PRODUCTION NO. 72:**

Specimens of all advertising Documents and promotional materials bearing "Xbox 360."

**REQUEST FOR PRODUCTION NO. 73:**

All Documents pertaining to Datel's use of "Xbox 360," including correspondence with design firms, advertising agencies, advertising media and suppliers.

**REQUEST FOR PRODUCTION NO. 74:**

All Documents relating to statements, inquiries, comments or other communications by or from Datel's customers, suppliers or other third parties, either written or oral, evidencing any

1   confusion, suspicion, belief or doubt on the part of said customer, supplier or other third party or

2   lack thereof as to the relationship between Microsoft and Datel or their respective products.

3   **REQUEST FOR PRODUCTION NO. 75:**

4   Specimens of all product packaging for all Datel products bearing "Xbox 360."

5   **REQUEST FOR PRODUCTION NO. 76:**

6   All Documents relating to Datel's knowledge of Microsoft's use, advertising and federal

7   trademark registrations of "Xbox 360," including but not limited to the design of Microsoft's

8   product packaging bearing "Xbox 360."

9   **REQUEST FOR PRODUCTION NO. 77:**

10   All Documents relating to Datel's exhibition of its products bearing "Xbox 360,"

11   including on the product packaging, at any trade shows or conferences.

12   **REQUEST FOR PRODUCTION NO. 78:**

13   All Documents issued by Datel in connection with publicity for its products bearing

14   "Xbox 360," including on the product packaging, including press releases and promotional

15   literature of any kind.

16   **REQUEST FOR PRODUCTION NO. 79:**

17   All Documents identifying the publications in which Datel has advertised, is advertising,

18   and has planned to advertise any and all of its products bearing "Xbox 360," including on the

19   product packaging.

20   **REQUEST FOR PRODUCTION NO. 80:**

21   All Documents that support your contention that retailers have either refused or imposed

22   conditions on the sale or distribution of Datel's products as a result of the October 2009

23   dashboard update, or because of any other conduct by Microsoft.

24   **REQUEST FOR PRODUCTION NO. 81:**

25   All Documents relating to Datel's sales, profits, sales expectations, and profit expectations

26   for all Controllers Datel has sold for the Xbox 1, Sony Playstation 2, and Sony Playstation 3.

27

28

DEF'S 2ND SET OF RFPDS
CV 09-5535 EDL

1

2    DATED: June 17, 2010                    Munger, Tolles & Olson LLP

3

4                                            By:              /s/ Hojoon Hwang
                                                              HOJOON HWANG
5

6                                            Attorneys for Defendant
                                             MICROSOFT CORPORATION
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF'S 2ND SET OF RFPDS
CV 09-5535 EDL

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO:

3

4

5

        I, the undersigned, declare that I am over the age of 18 and not a party to the within cause.  I am employed by Munger, Tolles & Olson LLP in the County of San Francisco, State of California.  My business address is 560 Mission Street, Twenty-Seventh Floor, San Francisco, California  94105-2907.

6

7

        On June 17, 2010, I served upon the interested party(ies) in this action the foregoing document(s) described as:

8

**DEFENDANT MICROSOFT CORP.'S SECOND SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

9

10

☒  **BY ELECTRONIC MAIL** to the following by attaching true and correct copy(ies) in pdf format thereof, as set out below, in an email clearly labeled to identify the person(s) being served at the email address(es) set forth below:

11

12

**Martin R. Glick**
Email:   mglick@howardrice.com

13

**Bernard A. Burk**
Email: bburk@howardrice.com

**Daniel B. Asimow**

14

Email: dasimow@howardrice.com

**Robert Hallman**

15

Email: rhallman@howardrice.com

16

**Michelle Ybarra**
Email: mybarra@howardrice.com

17

**HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN**

18

Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4024

19

(415) 434-1600
Fax: (415) 217-5910

20

21

☒  **BY MAIL (AS INDICATED BELOW)** I caused such envelope(s) to be placed in interoffice mail for collection and deposit in the U.S. Postal Service at 560 Mission Street, 27th Floor, San Francisco, California, on that same date, following ordinary business practices.  I am familiar with Munger, Tolles & Olson LLP's practice for collection and processing correspondence for mailing with the U.S. Postal Service; in the ordinary course of business, correspondence placed in interoffice mail is deposited with the U.S. Postal Service with first class postage thereon fully prepaid on the same day it is placed for collection and mailing.

22

23

24

25

**Martin R. Glick**
**HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN**

26

Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4024

27

28

PROOF OF SERVICE
CV 09-5535 EDL

1

2   ☒   **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

3           Executed on June 17, 2010, at San Francisco, California.

4

5   9982578.1

                                            Rachel Mullinax

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
CV 09-5535 EDL

# Exhibit D

1    MARTIN R. GLICK (No. 40187)
     Email:  mglick@howardrice.com
2    BERNARD A. BURK (No. 118083)
     Email:  bburk@howardrice.com
3    DANIEL B. ASIMOW (No. 165661)
     Email:  dasimow@howardrice.com
4    ROBERT D. HALLMAN (No. 239949)
     Email:  rhallman@howardrice.com
5    MICHELLE S. YBARRA (No. 260697)
     Email:  mybarra@howardrice.com
6    HOWARD RICE NEMEROVSKI CANADY
         FALK & RABKIN
7    A Professional Corporation
     Three Embarcadero Center, 7th Floor
8    San Francisco, California  94111-4024
     Telephone:   415/434-1600
9    Facsimile:    415/677-6262

10   Attorneys for Plaintiffs and Counterclaim-Defendants
     DATEL HOLDINGS LTD. and DATEL DESIGN
11   & DEVELOPMENT, INC.

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                      SAN FRANCISCO DIVISION

16

17   DATEL HOLDINGS LTD. and DATEL          No. 09-CV-05535 EDL
     DESIGN & DEVELOPMENT, INC.,
18                                          Action Filed:  November 20, 2009
                  Plaintiffs and
19                Counterclaim-Defendants,  PLAINTIFFS' RESPONSE TO
                                            DEFENDANT MICROSOFT CORP.'S
20         v.                               SECOND SET OF REQUESTS FOR
                                            THE PRODUCTION OF DOCUMENTS
21   MICROSOFT CORPORATION,

22                Defendant and
                  Counterclaimant.
23

24

25   PROPOUNDING PARTY:            DEFENDANT MICROSOFT CORPORATION

26   RESPONDING PARTY:             PLAINTIFFS DATEL HOLDINGS LTD. and
                                   DATEL DESIGN & DEVELOPMENT, INC.
27
     SET NUMBER:                   TWO
28

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs Datel Holdings Ltd. and Datel Design & Development, Inc. ("Datel") hereby respond to Defendant Microsoft Corporation's ("Microsoft") Second Set of Requests for the Production of Documents as follows.

## GENERAL OBJECTIONS

1.     Datel objects to each Request that is overbroad, unreasonably duplicative of other Requests, and/or beyond the scope of permissible discovery.

2.     Datel objects to these Requests, and to each Request, to the extent that they call for information and/or documents that are equally or reasonably available to Microsoft without undue burden on Datel.

3.     Datel objects to these Requests, and to each Request, to the extent Microsoft requests information and/or documents that are not within Datel's possession or control.

4.     Datel objects to the Requests to the extent that they call for production of "all" documents in Datel's possession.  To the extent that Datel undertakes to produce documents, Datel will use reasonable diligence to locate files referencing the given subject matter, as required by the Federal Rules of Civil Procedure

5.     Datel objects to the Requests, and to each Request, to the extent that they seek information and/or documents protected from discovery by any applicable privilege, protection, immunity or other exemption from discovery under the United States Constitution, statutes or case law, including, without limitation, the attorney-client privilege, attorney work-product doctrine, the right of privacy, trade secret protection, confidential information protection or other exemption from discovery.  Nothing contained in these responses is intended to be or should be considered a waiver of the attorney-client privilege, attorney work-product doctrine, or other applicable privilege, immunity, the right of privacy or other exemption from discovery.  Datel specifically reserves the right to assert privileges and immunities for any privileged or otherwise protected information and/or document that is disclosed inadvertently in response to these Requests.

6.    Datel objects to the Requests to the extent they seek confidential business information and trade secrets.  To the extent Datel represents that it will produce any confidential business records or trade secrets pursuant to these Requests, it will do so only pursuant to a stipulated or court-ordered protective order providing for the confidential treatment of such materials.

7.    Datel objects to the date and time set for production as unreasonably burdensome. To the extent Datel represents that it will produce documents pursuant to these Requests, Datel will do so at a reasonable time and place pursuant to discussions between the parties.

## RESERVATIONS

1.    Datel's investigation and discovery of the allegations in this case is ongoing.  The responses and objections herein are based upon information and/or documents presently known to, and in the possession of Datel.  Datel reserves the right to rely on any documents or other evidence which may develop or subsequently come to its attention, to assert additional objections or supplemental responses should it discover that there is information or grounds for objections, and to supplement or amend these responses at any time.  Without obligating itself to do so, Datel also reserves the right to the further disclosure of any documents and/or information.

2.    Inadvertent production by Datel of any material subject to the attorney-client privilege, prepared in anticipation of litigation or for trial, or otherwise protected or immune from discovery shall not constitute waiver of any privilege or of any other ground for objecting to discovery of such materials, its subject matter or information contained therein or of Datel's right to object to the use of such material during any later proceeding or otherwise seek return of the material.

3.    Datel understands that Microsoft may intend to propose that the parties use defined search terms to limit electronic discovery.  No agreement has yet been reached between the parties.  To the extent the parties enter into an agreement to use defined search terms,  Datel's representations herein that it will produce documents pursuant to these

1   Requests are to be understood to exclude electronic documents that are not disclosed by such

2   search terms.

3

4       **RESPONSE TO REQUESTS FOR PRODUCTION OF DOCUMENTS**

5   **REQUEST FOR PRODUCTION NO. 60:**

6       All Documents referring or relating to the electrical and other interfaces between the

7   Xbox 360 console and Accessories for the Xbox 360.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

9       Datel incorporates the General Objections and Reservations as if fully set forth herein.

10  Datel further objects that this Request is overbroad, that it is vague and ambiguous to the

11  extent it refers to "electrical and other interfaces" and that it seeks information that is

12  irrelevant and not reasonably calculated to lead to the discovery of admissible evidence to

13  the extent it would encompass technical specifications, instructions, software code, or other

14  Datel trade secrets related to the manner in which Datel's accessories connect to the Xbox

15  360 console.  Subject to and without waiving the foregoing objections, Datel will produce

16  responsive documents within its possession, custody or control, consisting of documents

17  referring to or discussing electrical or other interfaces between the Xbox 360 console and

18  Accessories for the Xbox 360, excluding technical specifications, instructions, and software

19  code related to Datel's Accessories and technologies.

20  **REQUEST FOR PRODUCTION NO. 61:**

21      All Documents referring or relating to "Gamertags" as that term is understood in the

22  context of the Xbox 360 and Xbox LIVE.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

24      Datel incorporates the General Objections and Reservations as if fully set forth herein.

25  Datel further objects that this Request is overbroad and unduly burdensome to the extent it

26  seeks files that are "related" to gamertags merely because they were generated by someone

27  with a gamertag or reflect product testing or other business conducted under a particular

28  gamertag.  Datel objects that this Request seeks information that is irrelevant and not

1   reasonably calculated to lead to the discovery of admissible evidence, and represents an

2   improper invasion of privacy to the extent it seeks the gamertags associated with particular

3   individuals or projects.  Subject to and without waiving the foregoing objections, Datel will

4   produce responsive documents within its possession, custody or control, referring to or

5   discussing gamertags for the Xbox 360 or Xbox LIVE, redacting as appropriate specific

6   gamertags themselves.

7   **REQUEST FOR PRODUCTION NO. 62:**

8       All Documents referring or relating to "Gamerscores" as that term is understood in the

9   context of the Xbox 360 and Xbox LIVE.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

11      Datel incorporates the General Objections and Reservations as if fully set forth herein.

12  Subject to and without waiving the foregoing objections, Datel will produce responsive

13  documents within its possession, custody or control, referring to or discussing gamerscores

14  for the Xbox 360 or Xbox LIVE.

15  **REQUEST FOR PRODUCTION NO. 63:**

16      All Documents referring or relating to "Achievements" as that term is understood in

17  the context of the Xbox 360 and Xbox LIVE.

18  **RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

19      Datel incorporates the General Objections and Reservations as if fully set forth herein.

20  Subject to and without waiving the foregoing objections, Datel will produce responsive

21  documents within its possession, custody or control, referring to or discussing achievements

22  for the Xbox 360 or Xbox LIVE.

23  **REQUEST FOR PRODUCTION NO. 64:**

24      All Documents referring or relating to technologies, including but not limited to

25  "hash"- based systems and identifiers, used to prevent the tampering or modification of

26  Xbox 360 video game content, including but not limited to game save content.

27  **RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

28      Datel incorporates the General Objections and Reservations as if fully set forth herein.

1   Datel further objects that this Request is vague and ambiguous to the extent it refers to

2   "technologies . . . used to prevent the tampering or modification of Xbox 360 video game

3   content," and overbroad to the extent it seeks all documents "relating to" such undefined

4   technologies.   Subject to and without waiving the foregoing objections, and without

5   conceding that Microsoft has accurately described their purpose or use herein, Datel will

6   produce responsive documents within its possession, custody or control, referring to or

7   discussing the "hash"-based systems and identifiers used in connection with game content

8   for the Xbox 360.

9   **REQUEST FOR PRODUCTION NO. 65:**

10   All Documents referring or relating to unpublished file formats or file systems used by

11   Microsoft or other game developers in the context of the Xbox 360.

12   **RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

13   Datel incorporates the General Objections and Reservations as if fully set forth herein.

14   Datel further objects that this Request is vague and ambiguous to the extent it refers to

15   "unpublished file formats or file systems," and overbroad to the extent it seeks all documents

16   "relating to" such undefined file formats and systems.   Subject to and without waiving the

17   foregoing objections, and without conceding that Microsoft has accurately described it

18   herein, Datel will produce responsive documents within its possession, custody or control,

19   discussing the FATX file system as used in connection with the Xbox 360.

20   **REQUEST FOR PRODUCTION NO. 66:**

21   All Documents referring or relating to Datel's "Advanced Controller" for the Xbox 1,

22   including Documents reflecting the sales, margins, design and features of the product.

23   **RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

24   Datel incorporates the General Objections and Reservations as if fully set forth herein.

25   Datel further objects that this Request seeks information that is irrelevant and not reasonably

26   calculated to lead to the discovery of admissible evidence to the extent it would encompass

27   technical specifications, instructions, or software code concerning the controller at issue.

28   Subject to and without waiving the foregoing objections, Datel will produce responsive

1    documents within its possession, custody or control, excluding technical specifications,

2    instructions, and software code.

3    **REQUEST FOR PRODUCTION NO. 67:**

4        All Documents referring or relating to Datel's "Advanced Controller" for the

5    Playstation 2, including Documents reflecting the sales, margins, design and features of the

6    product.

7    **RESPONSE TO REQUEST FOR PRODUCTION NO. 67**

8        Datel incorporates the General Objections and Reservations as if fully set forth herein.

9    Datel further objects that this Request seeks information that is irrelevant and not reasonably

10   calculated to lead to the discovery of admissible evidence to the extent it would encompass

11   technical specifications, instructions, or software code concerning the controller at issue.

12   Subject to and without waiving the foregoing objections, Datel will produce responsive

13   documents within its possession, custody or control, excluding technical specifications,

14   instructions, and software code.

15   **REQUEST FOR PRODUCTION NO. 68:**

16       All Documents referring or relating to Datel's "WildFire Controller" for the

17   Playstation 3, including Documents reflecting the sales, margins, design and features of the

18   product.

19   **RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

20       Datel incorporates the General Objections and Reservations as if fully set forth herein.

21   Datel further objects that this Request seeks information that is irrelevant and not reasonably

22   calculated to lead to the discovery of admissible evidence to the extent it would encompass

23   technical specifications, instructions, or software code concerning the controller at issue.

24   Subject to and without waiving the foregoing objections, Datel will produce responsive

25   documents within its possession, custody or control, excluding technical specifications,

26   instructions, and software code.

27   **REQUEST FOR PRODUCTION NO. 69:**

28       All Documents referring or relating to Datel's "Advanced Controller" for the Nintendo

1    GameCube, including Documents reflecting the sales, margins, design and features of the
2    product.

3    **RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

4         Datel incorporates the General Objections and Reservations as if fully set forth herein.
5    Datel further objects that this Request seeks information that is irrelevant and not reasonably
6    calculated to lead to the discovery of admissible evidence to the extent it would encompass
7    technical specifications, instructions, or software code concerning the controller at issue.
8    Subject to and without waiving the foregoing objections, Datel will produce responsive
9    documents within its possession, custody or control, excluding technical specifications,
10   instructions, and software code.

11   **REQUEST FOR PRODUCTION NO. 70:**

12        All Documents referring or relating to Datel's "Lite Blue Tool" for the Sony PSP,
13   including Documents concerning any disputes or litigation relating to the "Lite Blue Tool."

14   **RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

15        Datel incorporates the General Objections and Reservations as if fully set forth herein.
16   Datel further objects that this Request seeks information that is not reasonably calculated to
17   lead to the discovery of admissible evidence inasmuch as it seeks all documents concerning
18   a type of accessory that is not at issue in this case for a video game platform that is not at
19   issue in this case.  The potential probative value of such materials is marginal at best, and
20   does not justify the significant investment in resources for collection and review that would
21   be required.  Based on these objections, Datel will not produce documents pursuant to this
22   Request at this time, but remains willing to meet and confer about the mutual exchange of
23   information concerning litigation that each party has been involved in over gaming products
24   and services.

25   **REQUEST FOR PRODUCTION NO. 71:**

26        All Documents concerning the development and design of the packaging of Datel's
27   products for the Xbox 360, including but not limited to the packaging of the "MAX"
28   Memory Card, the "Xsata," and the "Xport."

1    **RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

2        Datel incorporates the General Objections and Reservations as if fully set forth herein.

3    Datel further objects that this Request is duplicative of other document requests and

4    ambiguous as to whether by "packaging" it refers to the molded plastic or cardboard

5    containers in which the products described are shipped, or to the documents and images used

6    in and on such containers.  Subject to and without waiving the foregoing objections, Datel

7    will produce responsive documents within its possession, custody or control, concerning the

8    design and development of documents and images used in the product packaging for Datel's

9    products for the Xbox 360.

10   **REQUEST FOR PRODUCTION NO. 72:**

11       Specimens of all advertising Documents and promotional materials bearing "Xbox

12   360."

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

14       Datel incorporates the General Objections and Reservations as if fully set forth herein.

15   Datel further objects that this Request is duplicative of other document requests and

16   overbroad to the extent it seeks specimens of *all* advertising documents and promotional

17   materials bearing "Xbox 360."  Subject to and without waiving the foregoing objections,

18   Datel will endeavor to produce responsive documents within its possession, custody or

19   control, consisting of image files reflecting such advertising and promotional materials for

20   Datel's Xbox 360 products as have been preserved in the ordinary course of business.

21   **REQUEST FOR PRODUCTION NO. 73:**

22       All Documents pertaining to Datel's use of "Xbox 360," including correspondence

23   with design firms, advertising agencies, advertising media and suppliers.

24   **RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

25       Datel incorporates the General Objections and Reservations as if fully set forth herein.

26   Datel further objects that this Request is overbroad to the extent it seeks *all* documents

27   pertaining to the use of the term "Xbox 360" by a company that makes accessories for the

28   Xbox 360 system.  Based on these objections, Datel will not produce documents pursuant to

1   this Request at this time, but is willing to meet and confer over a more narrowly-tailored
2   request.

3   **REQUEST FOR PRODUCTION NO. 74:**

4       All Documents relating to statements, inquiries, comments or other communications by
5   or from Datel's customers, suppliers or other third parties, either written or oral, evidencing
6   any confusion, suspicion, belief or doubt on the part of said customer, supplier or other third
7   party or lack thereof as to the relationship between Microsoft and Datel or their respective
8   products.

9   **RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

10      Datel incorporates the General Objections and Reservations as if fully set forth herein.
11  Datel further objects that this Request is overbroad to the extent it seeks all documents
12  evidencing any belief as to any relationship between Microsoft and Datel or their respective
13  products.  Subject to and without waiving the foregoing objections, Datel will produce
14  responsive documents within its possession, custody or control, reflecting or referring to
15  statements, inquiries, comments or other communications by third parties reflecting an
16  inaccurate belief or suspicion, or reflecting confusion, as to the relationship between
17  Microsoft and Datel or their respective products.

18  **REQUEST FOR PRODUCTION NO. 75:**

19      Specimens of all product packaging for all Datel products bearing "Xbox 360."

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

21      Datel incorporates the General Objections and Reservations as if fully set forth herein.
22  Datel further objects that this Request is unduly burdensome to the extent it seeks specimens
23  of all product packaging for all Datel products bearing "Xbox 360."  Datel does not maintain
24  archival packaging specimens.  Subject to and without waiving the foregoing objections,
25  Datel will produce responsive documents within its possession, custody or control,
26  consisting of image files reflecting product packaging for Datel's products for the Xbox 360.

27  **REQUEST FOR PRODUCTION NO. 76:**

28      All Documents relating to Datel's knowledge of Microsoft's use, advertising and

1     federal trademark registrations of "Xbox 360," including but not limited to the design of

2     Microsoft's product packaging bearing "Xbox 360."

3     **RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

4         Datel incorporates the General Objections and Reservations as if fully set forth herein.

5     Datel further objects that this Request is overbroad to the extent it seeks "all documents

6     relating to Datel's knowledge of Microsoft's use, [or] advertising . . . of 'Xbox 360.'"

7     Subject to and without waiving the foregoing objections, Datel will produce responsive

8     documents within its possession, custody or control, that discuss Microsoft's use or

9     advertising of "Xbox 360" or discuss the design of Microsoft's product packaging for Xbox

10     360 products.

11     **REQUEST FOR PRODUCTION NO. 77:**

12         All Documents relating to Datel's exhibition of its products bearing "Xbox 360,"

13     including on the product packaging, at any trade shows or conferences.

14     **RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

15         Datel incorporates the General Objections and Reservations as if fully set forth herein.

16     Subject to and without waiving the foregoing objections, Datel will produce responsive

17     documents within its possession, custody or control, that discuss or reflect the exhibition of

18     its products for the Xbox 360 at trade shows and conferences.

19     **REQUEST FOR PRODUCTION NO. 78:**

20         All Documents issued by Datel in connection with publicity for its products bearing

21     "Xbox 360," including on the product packaging, including press releases and promotional

22     literature of any kind.

23     **RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

24         Datel incorporates the General Objections and Reservations as if fully set forth herein.

25     Datel further objects that this Request is duplicative of other Requests.  Subject to and

26     without waiving the foregoing objections, Datel will produce responsive documents within

27     its possession, custody or control.

28

1  **REQUEST FOR PRODUCTION NO. 79:**

2      All Documents identifying the publications in which Datel has advertised, is

3  advertising, and has planned to advertise any and all of its products bearing "Xbox 360,"

4  including on the product packaging.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

6      Datel incorporates the General Objections and Reservations as if fully set forth herein.

7  Subject to and without waiving the foregoing objections, Datel will produce responsive

8  documents within its possession, custody or control.

9  **REQUEST FOR PRODUCTION NO. 80:**

10      All Documents that support your contention that retailers have either refused or

11  imposed conditions on the sale or distribution of Datel's products as a result of the October

12  2009 dashboard update, or because of any other conduct by Microsoft.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

14      Datel incorporates the General Objections and Reservations as if fully set forth herein.

15  Subject to and without waiving the foregoing objections, Datel will produce responsive

16  documents within its possession, custody or control.

17  **REQUEST FOR PRODUCTION NO. 81:**

18      All Documents relating to Datel's sales, profits, sales expectations, and profit

19  expectations for all Controllers Datel has sold for the Xbox 1, Sony Playstation 2, and Sony

20  Playstation 3.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

22      Datel incorporates the General Objections and Reservations as if fully set forth herein.

23  Datel further objects that this Request is duplicative of other Requests, and is overbroad to

24  the extent it seeks *all* documents relating to sales, profits, etc.  Subject to and without

25  waiving the foregoing objections, Datel will produce responsive documents within its

26  possession, custody or control, sufficient to show Datel's sales, profits, sales expectations

27  and profit expectations for all Controllers Datel has sold for the Xbox 1, Sony PlayStation 2,

28

1  and Sony PlayStation 3.

2

3  DATED: August 5, 2010.            MARTIN R. GLICK
                                     BERNARD A. BURK
4                                    DANIEL B. ASIMOW
                                     ROBERT D. HALLMAN
5                                    MICHELLE S. YBARRA
                                     HOWARD RICE NEMEROVSKI CANADY
6                                         FALK & RABKIN
                                     A Professional Corporation
7

8                                    By_____
                                              ROBERT D. HALLMAN
9
                                     Attorneys for Plaintiffs
10                                   DATEL HOLDINGS LTD. and DATEL DESIGN
                                     & DEVELOPMENT, INC.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2    I, Jane Rustice, declare:

3    I am a resident of the State of California and over the age of eighteen years and not a

4 party to the within-entitled action; my business address is Three Embarcadero Center,

5 Seventh Floor, San Francisco, California  94111-4024.   On August 5, 2010, I served the

6 following document(s) described as: **PLAINTIFFS' RESPONSE TO DEFENDANT**

7 **MICROSOFT CORP.'S SECOND SET OF REQUESTS FOR THE PRODUCTION**

8 **OF DOCUMENTS** by transmitting via email the document(s) listed above to the email

9 address(es) set forth below on this date:

10    Hojoon Hwang                           Gregory P. Stone
      *Hojoon.Hwang@mto.com*                  *Gregory.Stone@mto.com*
11    Rohit Singla                           Munger Tolles & Olson LLP
      *Rohit.Singla@mto.com*                  355 South Grand Avenue, 35th Floor
12    Jonathan Blavin                        Los Angeles, CA  90071-1560
      *Jonathan.Blavin@mto.com*
13    Munger Tolles & Olson, LLP
      560 Mission Street, 27th FLoor
14    San Francisco, CA  94105-2907

15    I declare under penalty of perjury under the laws of the United States that the foregoing

16 is true and correct.  Executed at San Francisco, California on August 5, 2010.

17

18                                          _Jane Rustice_
19                                             Jane Rustice

20

21

22

23

24

25

26

27

28

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN

# Exhibit E

1  GREGORY P. STONE (SBN 078329)
   Gregory.Stone@mto.com
2  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
3  Thirty-Fifth Floor
   Los Angeles, CA  90071-1560
4  Telephone:    (213) 683-9100
   Facsimile:    (213) 687-3702
5
   HOJOON HWANG (SBN 184950)
6  Hojoon.Hwang@mto.com
   ROHIT K. SINGLA (SBN 213057)
7  Rohit.Singla@mto.com
   JONATHAN H. BLAVIN (SBN 230269)
8  Jonathan.Blavin@mto.com
   MUNGER, TOLLES & OLSON LLP
9  560 Mission Street,
   Twenty-Seventh Floor
10 San Francisco, CA  94105-2907
   Telephone:    (415) 512-4032
11 Facsimile:    (415) 512-4077

12 Attorneys for Defendant
   MICROSOFT CORPORATION
13
                    UNITED STATES DISTRICT COURT
14
                  NORTHERN DISTRICT OF CALIFORNIA
15
                     SAN FRANCISCO DIVISION
16

17
                                     | CASE NO.  CV 09-5535 EDL
18 DATEL HOLDINGS LTD. and DATEL     |
   DESIGN & DEVELOPMENT, INC.,       | **DEFENDANT MICROSOFT CORP.'S**
19                                   | **FOURTH SET OF REQUESTS FOR THE**
                 Plaintiffs,         | **PRODUCTION OF DOCUMENTS**
20
          vs.
21
   MICROSOFT CORPORATION,
22
                 Defendant.
23

24
   PROPOUNDING PARTY:        DEFENDANT MICROSOFT CORP.
25
   RESPONDING PARTY:         PLAINTIFFS DATEL HOLDINGS LTD.
26                           and DATEL DESIGN & DEVELOPMENT,

27       INC.

28 SET NUMBER:               FOUR

1    PLEASE TAKE NOTICE that, pursuant to Rules 26 and 34 of the Federal Rules of

2   Civil Procedure, Defendant Microsoft Corp. requests that Plaintiffs Datel Holdings Ltd. and Datel

3   Design & Development, Inc. produce for inspection and copying in accordance with the

4   definitions and instructions set forth below, at the offices of Microsoft's counsel, within at least

5   thirty (30) days of service of these requests, all documents described below.

6                                  **<u>DEFINITIONS</u>**

7    1.    The singular form of a word should be interpreted as plural wherever necessary to

8   bring within the scope of the request any information that might otherwise be construed to be

9   outside its scope.

10    2.    The words "and" and "or" should be construed either disjunctively or

11   conjunctively wherever necessary to bring within the scope of this request any information that

12   might otherwise be construed to be outside its scope.

13    3.    The terms "any," "each," "all," and "every" shall be construed wherever necessary

14   to bring within the scope of this request any information that might otherwise be construed to be

15   outside its scope.

16    4.    "Microsoft" means the named Defendant Microsoft Corp., its present and former

17   business entities and any company through which it is doing business under a different name, and

18   includes, without limitation, its predecessors and successors, related companies, parent

19   companies, subsidiaries, divisions, partnerships, directors, officers, agents, employees, attorneys,

20   licensees, franchisees, distributors, salespersons, sales representatives, investigators, consultants,

21   experts, and all other Persons acting on its behalf or under its control.

22    5.    "Datel" or "You" or "Your" means one or both of the named Plaintiffs, Datel

23   Holdings Ltd. and Datel Design & Development, Inc., their present and former business entities

24   and any company or tradename through which they are doing business (including but not limited

25   to Codejunkies or codejunkies.com, and Raw Science), and includes their subsidiaries, divisions,

26   partnerships, directors, officers, agents, employees, licensees, distributors, and other Persons

27   acting on their behalf or under their control.

28

1      6.     "Person," "Persons," and pronouns referring thereto, include, but are not limited

2 to, juristic persons, natural persons, companies, corporations, limited liability companies, sole

3 proprietorships, governmental entities, partnerships, associations, banks and other financial

4 institutions, and all other entities similar to any of the foregoing, however denominated.

5      7.     The words "refer," "referring," "relate," "relating," "concern," "concerning,"

6 "addressing," "reflecting" and "regarding" mean referring to, pertaining to, relating to, alluding

7 to, bearing upon, commenting upon, touching upon, concerning, regarding, recording, evidencing,

8 constituting, substantiating, discussing, mentioning, or otherwise affecting (directly or indirectly).

9      8.     "Xbox 360" means the Microsoft Xbox 360 video game system released on or

10 about November 22, 2005 in the United States, and except where set forth individually, it

11 includes each version released (e.g., "Arcade" or "Elite")

12      9.     "Xbox LIVE" refers to the online multiplayer gaming and digital media delivery

13 service created and operated by Microsoft for the Xbox 360 and Xbox 1.

14      10.     "Xbox 1" means the Microsoft Xbox video game system released on or about

15 November 15, 2001 in the United States.

16      11.     "Accessories" means external or peripheral devices, hardware, and other electronic

17 products (excluding games), made for use with video game systems such as the Xbox 360,

18 including but not limited to game controllers, memory cards, external hard drives, media remotes,

19 headsets, microphones and cables.

20      12.     "Memory Cards" means external memory units that can be connected to a video

21 game console, excluding external hard drives that can be connected to the console.

22      13.     "Controllers" or "Game Controllers" means peripheral devices connected to a

23 video game system (by wired or wireless connection) and used to control game play, including

24 but not limited to regular game controllers (wired or wireless), special purpose controllers such as

25 guitar controllers or steering wheel style controllers, gun style and other combat controllers.

26      14.     "Document" or "Documents" shall have the full meaning ascribed to it under Rule

27 34 of the Federal Rules of Civil Procedure, and refers to all handwritten, typed, printed or

28 otherwise visually, mechanically or electronically reproduced materials, whether copies or

1   originals.  Where a copy contains any marking not appearing on the original or is altered from the

2   original, then such item shall be considered a separate original document.

3                                           **INSTRUCTIONS**

4          15.     Datel shall produce responsive documents as they have been kept in the usual

5   course of business or shall organize and label them to correspond to the enumerated requests of

6   this Request.  In either case, documents contained in file folders, loose-leaf binders and notebooks

7   with tabs or labels identifying such documents are to be produced intact with such file folders,

8   loose-leaf binders, or notebooks.  In producing documents, all documents which are physically

9   attached to each other shall be left so attached.  Documents which are segregated or separated

10  from other documents, shall be left so segregated or separated.

11         16.     Pursuant to Federal Rule of Civil Procedure 34(b)(i)(C), Datel shall produce

12  electronically stored information as follows:

13               a. Email:  In single page TIFF images with Optical Character Recognition

14         ("OCR"), and with related, extracted text and associated metadata (for example, but not

15         limited to, date, time, to, from, cc, bcc fields, internal path showing mail "folder" names,

16         and source custodian name) in a Concordance load file format with Opticon image cross

17         reference file, indicating beginning and ending pages of each message and each

18         attachment, with attachments identified so as to enable the undersigned issuing attorneys

19         to electronically identify their parent e-mails and with records for which you request

20         special treatment (such as confidential records) identified with field flags;

21               b. E-files, such as Microsoft word documents, Adobe Acrobat pdf's, Excel or other

22         spreadsheet files: in single page TIFF images with OCR, and with related, extracted text,

23         with tracked changes, and associated metadata (for example, but not limited to, date last

24         modified, date created, author, file type [e.g., .doc or .xls], full file path, and source

25         custodian name) in a Concordance load file format with Opticon image cross reference

26         file, indicating beginning and ending pages of each document, with records for which you

27         request special treatment (such as confidential records) identified with field flags, and, the

28         same for Excel and spreadsheet files, so long as the image to be produced communicates

all essential substance of the spreadsheet workbooks, including but not limited to essential formulas and hidden data, but if such information is not available in the TIFF image, we request native production of Excel and spreadsheet files; and

c. Databases: native format or exported to a standard output file type which preserves data content and is readable by other common applications (e.g., Access or SQL).

17.     Notwithstanding the foregoing, if any electronically stored information is produced in a form that is not reasonably useable by the undersigned, the undersigned reserves the right to request that such electronically stored information be delivered in different form so that it is reasonably useable, including, but not limited to, native form.  If you find any part of this specification unclear, or if you contend it is burdensome, we ask that you communicate with the undersigned at your earliest possible convenience to discuss the forms and volume of electronically stored information to be collected and produced..

18.     These requests are continuing in character so as to require Datel to produce for inspection and copying any documents not previously produced that Datel may from time to time acquire, obtain, locate, or identify, in accordance with its duty to supplement and correct under Federal Rule of Civil Procedure 26(e).

19.     For each document requested herein that you presently contend you are not required to disclose because of any alleged "privilege" or "immunity," identify each such document as follows:

A.     State the subject matter of the writing;

B.     State the purpose for which the communication was requested or prepared;

C.     State the date the writing was prepared and the date it bears;

D.     Identify each person who wrote, signed, initialed, dictated, or otherwise participated in the preparation of the writing;

E.     Identify each person to whom the writing was addressed and each person to whom the original or a copy of the writing was sent;

F.     Identify each person who was present when the writing was prepared;

1    G.    Identify such person who has seen the writing;

2    H.    Identify each person who has custody of the original or a copy of the

3  writing;

4    I.    Identify each person referred to in immediately proceeding subparagraphs

5  C, D, E, F, and G by stating his or her full name, job title, and business address, both currently

6  and at the time he or she first had any involvement with the writing; and

7    J.    State the privilege or immunity asserted.

8    **REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

9  **REQUEST FOR PRODUCTION NO. 83:**

10    Five samples, with any available packaging and literature, of each Datel product,

11  whether released or not, that was developed for Xbox 360 or Xbox 1.

12  **REQUEST FOR PRODUCTION NO. 84:**

13    Three samples, with any available packaging and literature, of each Datel

14  controller, memory card, or cheating product, whether released or not, that was developed for the

15  PS, PS2, PS3, PSP, Nintendo 64, Nintendo GameCube, Game Boy, Wii, DS, and Sega

16  Dreamcast.

17

18

19  DATED:  September 27, 2010                Munger, Tolles & Olson LLP

20

21                                              By:_____ */s/ Rohit K. Singla*_____
                                                            ROHIT K. SINGLA
22

23                                              Attorneys for Defendant
                                                MICROSOFT CORPORATION
24

25

26

27

28

# Exhibit F

1   MARTIN R. GLICK (No. 40187)
    mglick@howardrice.com
2   BERNARD A. BURK (No. 118083)
    bburk@howardrice.com
3   DANIEL B. ASIMOW (No. 165661)
    dasimow@howardrice.com
4   ROBERT D. HALLMAN (No. 239949)
    rhallman@howardrice.com
5   MICHELLE S. YBARRA (No. 260697)
    mybarra@howardrice.com
6   HOWARD RICE NEMEROVSKI CANADY FALK
        & RABKIN
7   A Professional Corporation
    Three Embarcadero Center, 7th Floor
8   San Francisco, California  94111-4024
    Telephone:    415/434-1600
9   Facsimile:    415/217-5910

10  Attorneys for Plaintiffs and Counterclaim-Defendants
    DATEL HOLDINGS LTD. AND DATEL DESIGN &
11  DEVELOPMENT, INC.

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14                SAN FRANCISCO DIVISION

15

16  DATEL HOLDINGS LTD. and DATEL          No. 09-CV-05535 EDL
    DESIGN & DEVELOPMENT, INC.,
17                                         Action Filed: November 20, 2009
            Plaintiffs and
18          Counterclaim-Defendants,       RESPONSE TO DEFENDANT
                                           MICROSOFT CORP.'S FOURTH SET
19       v.                                OF REQUESTS FOR THE
                                           PRODUCTION OF DOCUMENTS
20  MICROSOFT CORPORATION,

21          Defendant and
            Counterclaimant.
22

23

24  PROPOUNDING PARTY:      Defendant and Counterclaimant MICROSOFT
                            CORPORATION
25
    RESPONDING PARTY:       Plaintiffs and Counterclaim-Defendants DATEL HOLDINGS
26                          LTD. AND DATEL DESIGN & DEVELOPMENT, INC.

27  SET NUMBER:             FOUR

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

**GENERAL OBJECTIONS**

1.      Datel objects to each Request that is overbroad, unreasonably duplicative of other Requests, and/or beyond the scope of permissible discovery.

2.      Datel objects to these Requests, and to each Request, to the extent that they call for information and/or documents that are equally or reasonably available to Microsoft without undue burden on Datel.

3.      Datel objects to these Requests, and to each Request, to the extent Microsoft requests information and/or documents that are not within Datel's possession or control.

4.      Datel objects to the Requests, and to each Request, to the extent that they seek the disclosure of information protected by the attorney-client privilege, the work product doctrine, or other applicable privileges or protections.

**RESERVATIONS**

1.      Datel's investigation and discovery of the allegations in this case is ongoing.  The responses and objections herein are based upon information and/or documents presently known to, and in the possession of Datel.  Datel reserves the right to rely on any documents or other evidence which may develop or subsequently come to its attention, to assert additional objections or supplemental responses should it discover that there is information or grounds for objections, and to supplement or amend these responses at any time.  Without obligating itself to do so, Datel also reserves the right to the further disclosure of any documents and/or information.

2.      Inadvertent production by Datel of any material subject to the attorney-client privilege, prepared in anticipation of litigation or for trial, or otherwise protected or immune from discovery shall not constitute waiver of any privilege or of any other ground for objecting to discovery of such materials, its subject matter or information contained therein or of Datel's right to object to the use of such material during any later proceeding or otherwise seek return of the material.

3.      Datel responds to these Requests For Production subject to and without waiving

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   any of the General Objections and Reservations which are hereby expressly incorporated by

2   reference into each response below.

3

4                    **RESPONSES TO REQUESTS FOR PRODUCTION**

5                                **OF DOCUMENTS**

6   **REQUEST FOR PRODUCTION NO. 83:**

7          Five samples, with any available packaging and literature, of each Datel product,

8   whether released or not, that was developed for Xbox 360 or Xbox 1.

9   **RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

10         Datel incorporates the General Objections and Reservations as if fully set forth

11  herein.  Datel objects to this Request to the extent that it is overbroad, unduly burdensome,

12  seeks materials that are irrelevant and not reasonably calculated to lead to the discovery of

13  admissible evidence, and seeks materials equally accessible to Microsoft.  Subject to and

14  without waiving the foregoing objections, Datel remains willing to meet and confer in an

15  effort to narrow the scope of the Request (e.g., to the production of a single sample of

16  particular products at issue in the case, which are not otherwise readily accessible to

17  Microsoft).

18  **REQUEST FOR PRODUCTION NO. 84:**

19         Three samples, with any available packaging and literature, of each Datel controller,

20  memory card, or cheating product, whether released or not, that was developed for the PS,

21  PS2, PS3, PSP, Nintendo 64, Nintendo GameCube, Game Boy, Wii, DS, and Sega.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

23         Datel incorporates the General Objections and Reservations as if fully set forth

24  herein.  Datel objects to this Request to the extent that it is overbroad, unduly burdensome,

25  seeks materials that are irrelevant and not reasonably calculated to lead to the discovery of

26  admissible evidence, and seeks materials equally accessible to Microsoft.  Datel objects to

27  this Request For Production as vague and ambiguous as to the term "cheating product."

28  Subject to and without waiving the foregoing objections, Datel remains willing to meet and

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    confer to determine if there are particular products for other platforms that Microsoft

2    actually needs a sample of, and which are not otherwise readily accessible to Microsoft.

3    DATED:  November 3, 2010.

4                                                      Respectfully,

5                                                      MARTIN R. GLICK
                                                       BERNARD A. BURK
6                                                      DANIEL B. ASIMOW
                                                       ROBERT D. HALLMAN
7                                                      MICHELLE S. YBARRA
                                                       HOWARD RICE NEMEROVSKI CANADY
8                                                              FALK & RABKIN
                                                       A Professional Corporation
9

10                                                     By: _____

11                                                                    MARTIN R. GLICK

12                                                     Attorneys for Plaintiffs and Counterclaim-
                                                       Defendants DATEL HOLDINGS LTD. AND
13                                                     DATEL DESIGN & DEVELOPMENT, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Jane Rustice, declare:

I am a resident of the State of California and over the age of eighteen years and not a party to the within-entitled action; my business address is Three Embarcadero Center, Seventh Floor, San Francisco, California 94111-4024. On November 3, 2010, I served the following document(s) described as: **RESPONSE TO DEFENDANT MICROSOFT CORP.'S FOURTH SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

☐     by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☒     by transmitting via email the document(s) listed above to the email address(es) set forth below on this date before 5:00 p.m.

☐     by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☐     by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

**Hojoon Hwang**
Hojoon.Hwang@mto.com
**Rohit Singla**
Rohit.Singla@mto.com
**Jonathan Blavin**
Jonathan.Blavin@mto.com
**Munger Tolles & Olson, LLP**
560 Mission Street, 27th FLoor
San Francisco, CA 94105-2907

**Gregory P. Stone**
Gregory.Stone@mto.com
**Munger Tolles & Olson LLP**
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at San Francisco, California on November 3, 2010.

_____
Jane Rustice

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

# Exhibit G

1  GREGORY P. STONE (SBN 078329)
   Gregory.Stone@mto.com
2  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
3  Thirty-Fifth Floor
   Los Angeles, CA  90071-1560
4  Telephone:    (213) 683-9100
   Facsimile:    (213) 687-3702
5
   HOJOON HWANG (SBN 184950)
6  Hojoon.Hwang@mto.com
   ROHIT K. SINGLA (SBN 213057)
7  Rohit.Singla@mto.com
   JONATHAN H. BLAVIN (SBN 230269)
8  Jonathan.Blavin@mto.com
   MUNGER, TOLLES & OLSON LLP
9  560 Mission Street,
   Twenty-Seventh Floor
10 San Francisco, CA  94105-2907
   Telephone:    (415) 512-4032
11 Facsimile:    (415) 512-4077

12 Attorneys for Defendant
   MICROSOFT CORPORATION
13
14               UNITED STATES DISTRICT COURT

15               NORTHERN DISTRICT OF CALIFORNIA

16                  SAN FRANCISCO DIVISION

17
                                      CASE NO.  CV 09-5535 EDL
18 DATEL HOLDINGS LTD. and DATEL
   DESIGN & DEVELOPMENT, INC.,        **DEFENDANT MICROSOFT CORP.'S**
19                                     **FIFTH SET OF REQUESTS FOR THE**
              Plaintiffs,              **PRODUCTION OF DOCUMENTS**
20
         vs.
21
   MICROSOFT CORPORATION,
22
              Defendant.
23

24
   PROPOUNDING PARTY:         DEFENDANT MICROSOFT CORP.
25
   RESPONDING PARTY:          PLAINTIFFS DATEL HOLDINGS LTD.
26                            and DATEL DESIGN & DEVELOPMENT,
27      INC.

28 SET NUMBER:                FIVE

                                      DEFENDANT'S FIFTH SET OF RFP'S
                                      CV 09-5535 EDL

1          PLEASE TAKE NOTICE that, pursuant to Rules 26 and 34 of the Federal Rules of

2   Civil Procedure, Defendant Microsoft Corp. requests that Plaintiffs Datel Holdings Ltd. and Datel

3   Design & Development, Inc. produce for inspection and copying in accordance with the

4   definitions and instructions set forth below, at the offices of Microsoft's counsel, within at least

5   thirty (30) days of service of these requests, all documents described below.

6                                    **DEFINITIONS**

7          1.       The singular form of a word should be interpreted as plural wherever necessary to

8   bring within the scope of the request any information that might otherwise be construed to be

9   outside its scope.

10         2.       The words "and" and "or" should be construed either disjunctively or

11  conjunctively wherever necessary to bring within the scope of this request any information that

12  might otherwise be construed to be outside its scope.

13         3.       The terms "any," "each," "all," and "every" shall be construed wherever necessary

14  to bring within the scope of this request any information that might otherwise be construed to be

15  outside its scope.

16         4.       "Microsoft" means the named Defendant Microsoft Corp., its present and former

17  business entities and any company through which it is doing business under a different name, and

18  includes, without limitation, its predecessors and successors, related companies, parent

19  companies, subsidiaries, divisions, partnerships, directors, officers, agents, employees, attorneys,

20  licensees, franchisees, distributors, salespersons, sales representatives, investigators, consultants,

21  experts, and all other Persons acting on its behalf or under its control.

22         5.       "Datel" or "You" or "Your" means one or both of the named Plaintiffs, Datel

23  Holdings Ltd. and Datel Design & Development, Inc., their present and former business entities

24  and any company or tradename through which they are doing business (including but not limited

25  to Codejunkies or codejunkies.com, and Raw Science), and includes their subsidiaries, divisions,

26  partnerships, directors, officers, agents, employees, licensees, distributors, and other Persons

27  acting on their behalf or under their control.

28

DEFENDANT'S FIFTH SET OF RFP'S
CV 09-5535 EDL

1    6.    "Person," "Persons," and pronouns referring thereto, include, but are not limited

2    to, juristic persons, natural persons, companies, corporations, limited liability companies, sole

3    proprietorships, governmental entities, partnerships, associations, banks and other financial

4    institutions, and all other entities similar to any of the foregoing, however denominated.

5    7.    The words "refer," "referring," "relate," "relating," "concern," "concerning,"

6    "addressing," "reflecting" and "regarding" mean referring to, pertaining to, relating to, alluding

7    to, bearing upon, commenting upon, touching upon, concerning, regarding, recording, evidencing,

8    constituting, substantiating, discussing, mentioning, or otherwise affecting (directly or indirectly).

9    8.    "Xbox 360" means the Microsoft Xbox 360 video game system released on or

10    about November 22, 2005 in the United States, and except where set forth individually, it

11    includes each version released (e.g., "Arcade" or "Elite")

12    9.    "Xbox LIVE" refers to the online multiplayer gaming and digital media delivery

13    service created and operated by Microsoft for the Xbox 360 and Xbox 1.

14    10.    "Xbox 1" means the Microsoft Xbox video game system released on or about

15    November 15, 2001 in the United States.

16    11.    "Accessories" means external or peripheral devices, hardware, and other electronic

17    products (excluding games), made for use with video game systems such as the Xbox 360,

18    including but not limited to game controllers, memory cards, external hard drives, media remotes,

19    headsets, microphones and cables.

20    12.    "Memory Cards" means external memory units that can be connected to a video

21    game console, excluding external hard drives that can be connected to the console.

22    13.    "Controllers" or "Game Controllers" means peripheral devices connected to a

23    video game system (by wired or wireless connection) and used to control game play, including

24    but not limited to regular game controllers (wired or wireless), special purpose controllers such as

25    guitar controllers or steering wheel style controllers, gun style and other combat controllers.

26    14.    "Document" or "Documents" shall have the full meaning ascribed to it under Rule

27    34 of the Federal Rules of Civil Procedure, and refers to all handwritten, typed, printed or

28    otherwise visually, mechanically or electronically reproduced materials, whether copies or

DEFENDANT'S FIFTH SET OF RFP'S
CV 09-5535 EDL

1    originals.  Where a copy contains any marking not appearing on the original or is altered from the

2    original, then such item shall be considered a separate original document.

3                                                  **INSTRUCTIONS**

4           15.    Datel shall produce responsive documents as they have been kept in the usual

5    course of business or shall organize and label them to correspond to the enumerated requests of

6    this Request.  In either case, documents contained in file folders, loose-leaf binders and notebooks

7    with tabs or labels identifying such documents are to be produced intact with such file folders,

8    loose-leaf binders, or notebooks.  In producing documents, all documents which are physically

9    attached to each other shall be left so attached.  Documents which are segregated or separated

10   from other documents, shall be left so segregated or separated.

11          16.    Pursuant to Federal Rule of Civil Procedure 34(b)(i)(C), Datel shall produce

12   electronically stored information as follows:

13                 a.  Email:  In single page TIFF images with Optical Character Recognition

14          ("OCR"), and with related, extracted text and associated metadata (for example, but not

15          limited to, date, time, to, from, cc, bcc fields, internal path showing mail "folder" names,

16          and source custodian name) in a Concordance load file format with Opticon image cross

17          reference file, indicating beginning and ending pages of each message and each

18          attachment, with attachments identified so as to enable the undersigned issuing attorneys

19          to electronically identify their parent e-mails and with records for which you request

20          special treatment (such as confidential records) identified with field flags;

21                 b.  E-files, such as Microsoft word documents, Adobe Acrobat pdf's, Excel or other

22          spreadsheet files:  in single page TIFF images with OCR, and with related, extracted text,

23          with tracked changes, and associated metadata (for example, but not limited to, date last

24          modified, date created, author, file type [e.g., .doc or .xls], full file path, and source

25          custodian name) in a Concordance load file format with Opticon image cross reference

26          file, indicating beginning and ending pages of each document, with records for which you

27          request special treatment (such as confidential records) identified with field flags, and, the

28          same for Excel and spreadsheet files, so long as the image to be produced communicates

                                                  - 3 -

all essential substance of the spreadsheet workbooks, including but not limited to essential

formulas and hidden data, but if such information is not available in the TIFF image, we

request native production of Excel and spreadsheet files; and

        c. Databases: native format or exported to a standard output file type which

preserves data content and is readable by other common applications (e.g., Access or

SQL).

      17.     Notwithstanding the foregoing, if any electronically stored information is

produced in a form that is not reasonably useable by the undersigned, the undersigned reserves

the right to request that such electronically stored information be delivered in different form so

that it is reasonably useable, including, but not limited to, native form.  If you find any part of this

specification unclear, or if you contend it is burdensome, we ask that you communicate with the

undersigned at your earliest possible convenience to discuss the forms and volume of

electronically stored information to be collected and produced..

      18.     These requests are continuing in character so as to require Datel to produce for

inspection and copying any documents not previously produced that Datel may from time to time

acquire, obtain, locate, or identify, in accordance with its duty to supplement and correct under

Federal Rule of Civil Procedure 26(e).

      19.     For each document requested herein that you presently contend you are not

required to disclose because of any alleged "privilege" or "immunity," identify each such

document as follows:

        A.     State the subject matter of the writing;

        B.     State the purpose for which the communication was requested or prepared;

        C.     State the date the writing was prepared and the date it bears;

        D.     Identify each person who wrote, signed, initialed, dictated, or otherwise

participated in the preparation of the writing;

        E.     Identify each person to whom the writing was addressed and each person to

whom the original or a copy of the writing was sent;

        F.     Identify each person who was present when the writing was prepared;

1          G.      Identify such person who has seen the writing;

2          H.      Identify each person who has custody of the original or a copy of the

3 writing;

4          I.      Identify each person referred to in immediately proceeding subparagraphs

5 C, D, E, F, and G by stating his or her full name, job title, and business address, both currently

6 and at the time he or she first had any involvement with the writing; and

7          J.      State the privilege or immunity asserted.

8 **REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

9 **REQUEST FOR PRODUCTION NO. 85:**

10      All Documents relating to any licensing, sale or other distribution or proposal for the same

11 of any technology, product or service embodying, constituting, reflecting, arising out of or

12 relating to Your reverse engineering of any Microsoft hardware or software for the Xbox 360 to

13 any third party, including but not limited to Atomic and Big Ben.

14

15 DATED:  November 8, 2010          Munger, Tolles & Olson LLP

16

17

18                       By:        */s/ Hojoon Hwang*

19                             HOJOON HWANG

20                     Attorneys for Defendant
                        MICROSOFT CORPORATION

21

22

23

24

25

26

27

28

DEFENDANT'S FIFTH SET OF RFP'S
CV 09-5535 EDL

1

**PROOF OF SERVICE**

2

STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO:

3

4

      I, the undersigned, declare that I am over the age of 18 and not a party to the within cause. I am employed by Munger, Tolles & Olson LLP in the County of San Francisco, State of California. My business address is 560 Mission Street, Twenty-Seventh Floor, San Francisco, California 94105-2907.

5

6

      On November 8, 2010, I served upon the interested party(ies) in this action the foregoing document(s) described as:

7

8

**DEFENDANT MICROSOFT CORP.'S FIFTH SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

9

10

☒   **BY ELECTRONIC MAIL** to the following by attaching true and correct copy(ies) in pdf format thereof, as set out below, in an email clearly labeled to identify the person(s) being served at the email address(es) set forth below:

11

12

13

14

15

16

17

18

19

**Martin R. Glick**
Email:  mglick@howardrice.com
**Bernard A. Burk**
Email: bburk@howardrice.com
**Daniel B. Asimow**
Email: dasimow@howardrice.com
**Robert Hallman**
Email: rhallman@howardrice.com
**Michelle Ybarra**
Email: mybarra@howardrice.com
**HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN**
Three Embarcadero Center, 7th Floor,
San Francisco, CA 94111-4024
(415) 434-1600
Fax: (415) 217-5910

20

21

22

23

24

☒   **BY MAIL (AS INDICATED BELOW)** I caused such envelope(s) to be placed in interoffice mail for collection and deposit in the U.S. Postal Service at 560 Mission Street, 27th Floor, San Francisco, California, on that same date, following ordinary business practices. I am familiar with Munger, Tolles & Olson LLP's practice for collection and processing correspondence for mailing with the U.S. Postal Service; in the ordinary course of business, correspondence placed in interoffice mail is deposited with the U.S. Postal Service with first class postage thereon fully prepaid on the same day it is placed for collection and mailing.

25

26

27

**Martin R. Glick**
**HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN**
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4024

28

PROOF OF SERVICE
CV 09-5535 EDL

1

2   ☒   **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

3        Executed on November 8, 2010, at San Francisco, California.

4

5                                                         Rachel Mullinax

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
CV 09-5535 EDL

# Exhibit H

MARTIN R. GLICK (No. 40187)
mglick@howardrice.com
DANIEL B. ASIMOW (No. 165661)
dasimow@howardrice.com
ROBERT D. HALLMAN (No. 239949)
rhallman@howardrice.com
MICHELLE S. YBARRA (No. 260697)
mybarra@howardrice.com
HOWARD RICE NEMEROVSKI CANADY
     FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California  94111-4024
Telephone:    415/434-1600
Facsimile:    415/217-5910

Attorneys for Plaintiffs and Counterclaim-Defendants
DATEL HOLDINGS LTD. AND DATEL DESIGN &
DEVELOPMENT, INC.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DATEL HOLDINGS LTD. and DATEL DESIGN & DEVELOPMENT, INC.,<br><br>    Plaintiffs and<br>    Counterclaim-Defendants,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>    Defendant and<br>    Counterclaimant. | No. 09-CV-05535 EDL<br><br>Action Filed: November 20, 2009<br><br>RESPONSE TO DEFENDANT MICROSOFT CORP.'S FIFTH SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS |

PROPOUNDING PARTY:          Defendant and Counterclaimant MICROSOFT
                                                   CORPORATION

RESPONDING PARTY:           Plaintiffs and Counterclaim-Defendants DATEL
                                                  HOLDINGS LTD. and DATEL DESIGN &
                                                  DEVELOPMENT, INC.

SET NUMBER:                        FIFTH

**GENERAL OBJECTIONS**

1.     Datel objects to each Request that is overbroad, unreasonably duplicative of other Requests, and/or beyond the scope of permissible discovery.

2.     Datel objects to these Requests, and to each Request, to the extent that they call for information and/or documents that are equally or reasonably available to Microsoft without undue burden on Datel.

3.     Datel objects to these Requests, and to each Request, to the extent Microsoft requests information and/or documents that are not within Datel's possession or control.

4.     Datel objects to the Requests, and to each Request, to the extent that they seek the disclosure of information protected by the attorney-client privilege, the work product doctrine, or other applicable privileges or protections.

**RESERVATIONS**

1.     Datel's investigation and discovery of the allegations in this case is ongoing.  The responses and objections herein are based upon information and/or documents presently known to, and in the possession of Datel.  Datel reserves the right to rely on any documents or other evidence which may develop or subsequently come to its attention, to assert additional objections or supplemental responses should it discover that there is information or grounds for objections, and to supplement or amend these responses at any time.  Without obligating itself to do so, Datel also reserves the right to the further disclosure of any documents and/or information.

2.     Inadvertent production by Datel of any material subject to the attorney-client privilege, prepared in anticipation of litigation or for trial, or otherwise protected or immune from discovery shall not constitute waiver of any privilege or of any other ground for objecting to discovery of such materials, its subject matter or information contained therein or of Datel's right to object to the use of such material during any later proceeding or otherwise seek return of the material.

3.     Datel responds to these Requests For Production subject to and without waiving

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1  any of the General Objections and Reservations which are hereby expressly incorporated by

2  reference into each response below.

3  **RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS**

4  **REQUEST FOR PRODUCTION NO. 85:**

5      All Documents relating to any licensing, sale or other distribution or proposal for the

6  sale of any technology, product or service embodying, constituting, reflecting, arising out of

7  or relating to Your reverse engineering of any Microsoft hardware or software for the Xbox

8  360 to any third party, including but not limited to Atomic and Big Ben.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

10      Datel incorporates the General Objections and Reservations as if fully set forth herein.

11  Datel further objects that this Request is irrelevant and not reasonably calculated to lead to

12  the discovery of admissible evidence to the extent that it seeks Documents relating to Datel's

13  licensing, sales, distribution or proposals for sales to third parties outside of the United

14  States.   Datel has already produced domestic and worldwide sales data, as well as all

15  documents relating to licensing, sales, distribution or proposals for sales to third parties

16  within the United States, and further objects to this Request as overbroad and unduly

17  burdensome to the extent that it seeks Documents relating to Datel's licensing, sales,

18  distribution or proposals for sales to third parties outside of the United States.   Based on

19  these objections and the General Objections, Datel will not produce documents relating

20  solely to licensing, sales, distribution or proposals for sales to third parties outside of the

21  United States.

22  DATED:  December 8, 2010.        Respectfully,

23                      HOWARD RICE NEMEROVSKI CANADY

24                      FALK & RABKIN
                    A Professional Corporation

25

26                      By: _____
                                  MARTIN R. GLICK

27                      Attorneys for Plaintiffs and Counterclaim-
                    Defendants DATEL HOLDINGS LTD. AND

28                      DATEL DESIGN & DEVELOPMENT, INC.

**PROOF OF SERVICE**

I, Jane Rustice, declare:

I am a resident of the State of California and over the age of eighteen years and not a party to the within-entitled action; my business address is Three Embarcadero Center, Seventh Floor, San Francisco, California 94111-4024.  On December 8, 2010, I served the following document(s) described as: **RESPONSE TO DEFENDANT MICROSOFT CORP.'S FIFTH SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

☐   by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☒   by transmitting via email the document(s) listed above to the email address(es) set forth below on this date before 5:00 p.m.

☐   by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

**Hojoon Hwang**
Hojoon.Hwang@mto.com
**Rohit Singla**
Rohit.Singla@mto.com
**Jonathan Blavin**
Jonathan.Blavin@mto.com
**Munger Tolles & Olson, LLP**
560 Mission Street, 27th Floor
San Francisco, CA  94105-2907

**Gregory P. Stone**
Gregory.Stone@mto.com
**Munger Tolles & Olson LLP**
355 South Grand Avenue, 35th Floor
Los Angeles, CA  90071-1560

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed at San Francisco, California on December 8, 2010.

_____
Jane Rustice

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

# Exhibit I

1   MARTIN R. GLICK (No. 40187)
    mglick@howardrice.com
2   BERNARD A. BURK (No. 118083)
    bburk@howardrice.com
3   DANIEL B. ASIMOW (No. 165661)
    dasimow@howardrice.com
4   ROBERT D. HALLMAN (No. 239949)
    rhallman@howardrice.com
5   MICHELLE S. YBARRA (No. 260697)
    rhallman@howardrice.com
6   HOWARD RICE NEMEROVSKI CANADY
        FALK & RABKIN
7   A Professional Corporation
    Three Embarcadero Center, 7th Floor
8   San Francisco, California  94111-4024
    Telephone:   415/434-1600
9   Facsimile:    415/677-6262

10  Attorneys for Plaintiffs and Counterclaim-Defendants
    DATEL HOLDINGS LTD. and DATEL DESIGN &
11  DEVELOPMENT, INC.

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14               SAN FRANCISCO DIVISION

15

16  DATEL HOLDINGS LTD. and DATEL          No. 09-CV-05535 EDL
    DESIGN & DEVELOPMENT, INC.,
17                                         Action Filed: November 20, 2009
               Plaintiffs and
18             Counterclaim-Defendants,    PLAINTIFFS' RESPONSES TO
                                           DEFENDANT MICROSOFT CORP.'S
19         v.                              FIRST SET OF REQUESTS FOR
                                           ADMISSIONS
20  MICROSOFT CORPORATION,

21             Defendant and
               Counterclaimant.
22

23

24  PROPOUNDING PARTY:      Defendant and Counterclaimant MICROSOFT
                            CORPORATION
25
    RESPONDING PARTY:       Plaintiffs and Counterclaim-Defendants DATEL HOLDINGS
26                          LTD. and DATEL DESIGN & DEVELOPMENT, INC.

27  SET:                    ONE

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1      Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiffs and

2 Counterclaim-Defendants Datel Holdings Ltd. and Datel Design & Development, Inc.

3 (collectively, "Datel") provide the following objections and responses to Defendant and

4 Counterclaimant's Microsoft Corporation's First Set of Requests for Admissions.

5

6                             **GENERAL OBJECTIONS**

7      1.      Datel objects to these Requests for Admissions to the extent that they contain

8 subparts or a compound, conjunctive or disjunctive request.

9      2.      Datel objects to these Requests for Admissions, and to each request, to the extent

10 that they seek the disclosure of information protected by the attorney-client privilege, the

11 work product doctrine, or other applicable privileges or protections.

12      3.      Datel objects to these Requests For Admissions, and to each request, as vague

13 and ambiguous as to the meaning of "security and authentication scheme." In responding,

14 Datel has interpreted "security and authentication scheme" to mean the accessories

15 authentication protocol carried out by the Infineon-made security IC chips residing in the

16 Xbox 360 console and certain accessories.

17      4.      Datel objects to these Requests For Admissions, and to each request, as vague

18 and ambiguous as to the meaning of "anticompetitive." The Xbox 360 security and

19 authentication scheme is "anticompetitive" in the sense that it is intended, at least in part, to

20 prevent other non-licensed companies from competing with it in sales of compatible

21 accessories. In responding, Datel has interpreted "anticompetitive" to mean in violation of

22 federal or state antitrust and unfair competition laws.

23      5.      Datel objects to these Requests for Admissions, and to each Request, to the extent

24 they seek the disclosure of information that is not within Datel's possession, custody, or

25 control, cannot be obtained by Datel through a reasonable and good faith effort, or that is

26 available from another source or sources, public or private.

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    6.    Datel objects to these Requests for Admissions, and to each Request, to the extent
2    they are overbroad, unreasonably duplicative of other Requests, and/or beyond the scope of
3    permissible discovery.

4

5                                    **RESERVATIONS**

6        1.    Datel's investigation and discovery of the allegations in this case is ongoing.  The
7    responses and objections herein are based upon information and/or documents presently
8    known to, and in the possession of Datel.  Datel reserves the right to rely on any documents
9    or other evidence which may develop or subsequently come to its attention, to assert
10   additional objections or supplemental responses should it discover that there is information
11   or grounds for objections, and to supplement or amend these responses at any time.  Without
12   obligating itself to do so, Datel also reserves the right to the further disclosure of any
13   documents and/or information.

14       2.    Inadvertent production by Datel of any material subject to the attorney-client
15   privilege, prepared in anticipation of litigation or for trial, or otherwise protected or immune
16   from discovery shall not constitute waiver of any privilege or of any other ground for
17   objecting to discovery of such materials, its subject matter or information contained therein
18   or of Datel's right to object to the use of such material during any later proceeding or
19   otherwise seek return of the material.

20       3.    Datel responds to these Requests subject to and without waiving any of the
21   General Objections and Reservations which are hereby expressly incorporated by reference
22   into each response below.

23

24               **RESPONSES TO REQUESTS FOR ADMISSIONS**
25   **REQUEST FOR ADMISSION NO. 1:**

26       Admit that, as part of its first claim for relief, Datel challenges the Xbox 360's security
27   and authentication scheme for accessories, as it existed before the October 2009 dashboard
28   update, as anticompetitive exclusionary conduct.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Subject to and without waiving the foregoing objections, Datel contends that Microsoft's changes to the design of the Xbox 360 security and authentication scheme, as implemented through the October 2009 dashboard update, constituted illegal exclusionary acts by a monopolist in violation of the antitrust laws. The first claim for relief in the present action does not challenge the Xbox 360 security and authentication scheme, as it existed before the October 2009 update, as anticompetitive exclusionary conduct.

**REQUEST FOR ADMISSION NO. 2:**

Admit that, as part of its third claim for relief, Datel challenges the Xbox 360's security and authentication scheme for accessories, as it existed before the October 2009 dashboard update, as an anticompetitive technological tie.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Subject to and without waiving the foregoing objections, Datel contends that Microsoft's changes to the design of the Xbox 360 security and authentication scheme, as implemented through the October 2009 dashboard update, constituted an anticompetitive technological tie by a monopolist in violation of the antitrust laws. The third claim for relief in the present action does not challenge the Xbox 360 security and authentication scheme, as it existed before the October 2009 update, as an anticompetitive technological tie.

**REQUEST FOR ADMISSION NO. 3:**

Admit that, as part of its fourth claim for relief, Datel challenges the Xbox 360's security and authentication scheme for accessories, as it existed before the October 2009 dashboard update, as an unlawful or unfair business practice.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Subject to and without waiving the foregoing objections, Datel contends that Microsoft's changes to the design of the Xbox 360 security and authentication scheme, as implemented

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

through the October 2009 dashboard update, constituted an unlawful or unfair business practice. The fourth claim for relief in the present action does not challenge the Xbox 360 security and authentication scheme, as it existed before the October 2009 update, as an unlawful or unfair business practice.

**REQUEST FOR ADMISSION NO. 4:**

Admit that Datel is not disputing Microsoft's right to implement the Xbox 360's security and authentication scheme for accessories, as it existed before the October 2009 dashboard update.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Subject to and without waiving the foregoing objections, Datel contends that Microsoft's changes to the design of the Xbox 360 security and authentication scheme, as implemented through the October 2009 dashboard update, constituted illegal exclusionary acts and an anticompetitive technological tie by a monopolist in violation of the antitrust laws, as well as an unlawful or unfair business practice. In the present action, Datel does not challenge Microsoft's implementation of the Xbox 360's security and authentication scheme for accessories, as it existed before the October 2009 dashboard update.

**REQUEST FOR ADMISSION NO. 5:**

Admit that Datel is disputing Microsoft's right to implement the Xbox 360's security and authentication scheme for accessories, as it existed before the October 2009 dashboard update.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Datel incorporates the General Objections and Reservations as if fully set forth herein. Subject to and without waiving the foregoing objections, Datel contends that Microsoft's changes to the design of the Xbox 360 security and authentication scheme, as implemented through the October 2009 dashboard update, constituted illegal exclusionary acts and an anticompetitive technological tie by a monopolist in violation of the antitrust laws, as well as an unlawful or unfair business practice. In the present action, Datel does not dispute

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   Microsoft's implementation of the Xbox 360's security and authentication scheme for

2   accessories, as it existed before the October 2009 dashboard update.

3   **REQUEST FOR ADMISSION NO. 6:**

4       Admit that Datel does not contend that the Xbox 360's security and authentication

5   scheme for accessories, as it existed before the October 2009 dashboard update, was

6   anticompetiive [sic].

7   **RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

8       Datel incorporates the General Objections and Reservations as if fully set forth herein.

9   Datel objects to this Request For Admission as vague and ambiguous as to the word

10  "anticompetiive" [sic].   Subject to and without waiving the foregoing objections, Datel

11  contends that Microsoft's changes to the design of the Xbox 360 security and authentication

12  scheme, as implemented through the October 2009 dashboard update, constituted illegal

13  exclusionary acts and an anticompetitive technological tie by a monopolist in violation of the

14  antitrust laws, as well as an unlawful or unfair business practice.  In the present action, Datel

15  does not contend that the Xbox 360's security and authentication scheme for accessories, as

16  it existed before the October 2009 dashboard update, was anticompetitive.

17  **REQUEST FOR ADMISSION NO. 7:**

18      Admit that Datel does contend that the Xbox 360's security and authentication scheme

19  for accessories, as it existed before the October 2009 dashboard update, was anticompetiive

20  [sic].

21  **RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

22      Datel incorporates the General Objections and Reservations as if fully set forth herein.

23  Datel objects to this Request For Admission as vague and ambiguous as to the word

24  "anticompetiive" [sic].   Subject to and without waiving the foregoing objections, Datel

25  contends that Microsoft's changes to the design of the Xbox 360 security and authentication

26  scheme, as implemented through the October 2009 dashboard update, constituted illegal

27  exclusionary acts and an anticompetitive technological tie by a monopolist in violation of the

28  antitrust laws, as well as an unlawful or unfair business practice.  In the present action, Datel

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    does not contend that the Xbox 360's security and authentication scheme for accessories, as

2    it existed before the October 2009 dashboard update, was anticompetitive.

3    **REQUEST FOR ADMISSION NO. 8:**

4        Admit that Datel is not claiming any damages based on the Xbox 360's security and

5    authentication scheme for accessories, as it existed before the October 2009 dashboard

6    update.

7    **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

8        Datel incorporates the General Objections and Reservations as if fully set forth herein.

9    Subject to and without waiving the foregoing objections, Datel contends that Microsoft's

10   changes to the design of the Xbox 360 security and authentication scheme, as implemented

11   through the October 2009 dashboard update, constituted illegal exclusionary acts and an

12   anticompetitive technological tie by a monopolist in violation of the antitrust laws, as well as

13   an unlawful or unfair business practice.  In the present action, Datel is not claiming any

14   damages based on the Xbox 360's security and authentication scheme for accessories, as it

15   existed before the October 2009 dashboard update.

16   **REQUEST FOR ADMISSION NO. 9:**

17       Admit that Datel is not claiming any injury based on the Xbox 360's security and

18   authentication scheme for accessories, as it existed before the October 2009 dashboard

19   update.

20   **RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

21       Datel incorporates the General Objections and Reservations as if fully set forth herein.

22   Subject to and without waiving the foregoing objections, Datel contends that Microsoft's

23   changes to the design of the Xbox 360 security and authentication scheme, as implemented

24   through the October 2009 dashboard update, constituted illegal exclusionary acts and an

25   anticompetitive technological tie by a monopolist in violation of the antitrust laws, as well as

26   an unlawful or unfair business practice.  In the present action, Datel is not claiming any

27   injury based on the Xbox 360's security and authentication scheme for accessories, as it

28   existed before the October 2009 dashboard update.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1

2   DATED: November 3, 2010.

3                                           MARTIN R. GLICK
                                            BERNARD A. BURK
4                                           DANIEL B. ASIMOW
                                            ROBERT D. HALLMAN
5                                           MICHELLE S. YBARRA
                                            HOWARD RICE NEMEROVSKI CANADY
6                                                 FALK & RABKIN
                                            A Professional Corporation
7

8                                           By: _____
                                                        MARTIN R. GLICK
9
                                            Attorneys for Plaintiffs and Counterclaim-
10                                          Defendants DATEL HOLDINGS LTD. and
                                            DATEL DESIGN & DEVELOPMENT, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

I, Ken Tarolla, am President of Datel Design & Development, Inc. I am authorized to make this verification on behalf of Datel Holdings Ltd. and Datel Design & Development, Inc. I have reviewed PLAINTIFFS' RESPONSES TO DEFENDANT MICROSOFT CORPORATION'S REQUESTS FOR ADMISSIONS NOS. 1-9 and am familiar with the contents thereof. I am informed and believe that the responses stated therein are true and correct to the best of my knowledge.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct and that this Verification was hereby executed on this 3rd day of November, 2010.

_____
KEN TAROLLA

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

TAROLLA VERIFICATION

1
## PROOF OF SERVICE

2
I, Jane Rustice, declare:

3
I am a resident of the State of California and over the age of eighteen years and not a party to the within-entitled action; my business address is Three Embarcadero Center, Seventh Floor, San Francisco, California 94111-4024. On November 3, 2010, I served the following document(s) described as: **PLAINTIFFS' RESPONSES TO DEFENDANT MICROSOFT CORP.'S FIRST SET OF REQUESTS FOR ADMISSIONS**

4

5

6
☐   by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

7

8
☐   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

9

10
☒   by transmitting via email the document(s) listed above to the email address(es) set forth below on this date before 5:00 p.m.

11

12
☐   by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

13

14
☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

15

16
**Hojoon Hwang**
Hojoon.Hwang@mto.com
**Rohit Singla**
Rohit.Singla@mto.com
**Jonathan Blavin**
Jonathan.Blavin@mto.com
**Munger Tolles & Olson, LLP**
560 Mission Street, 27th FLoor
San Francisco, CA 94105-2907

**Gregory P. Stone**
Gregory.Stone@mto.com
**Munger Tolles & Olson LLP**
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560

17

18

19

20

21
I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at San Francisco, California on November 3, 2010.

22

23

24
_Jane Rustice_

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

# Exhibit J

# Intentionally Omitted

# Exhibit K

1  MARTIN R. GLICK (No. 40187)
   mglick@howardrice.com
2  DANIEL B. ASIMOW (No. 165661)
   dasimow@howardrice.com
3  ROBERT D. HALLMAN (No. 239949)
   rhallman@howardrice.com
4  MICHELLE S. YBARRA (No. 260697)
   rhallman@howardrice.com
5  SEAN M. CALLAGY (No. 255230)
   scallagy@howardrice.com
6  HOWARD RICE NEMEROVSKI CANADY FALK
         & RABKIN
7  A Professional Corporation
   Three Embarcadero Center, 7th Floor
8  San Francisco, California  94111-4024
   Telephone:   415/434-1600
9  Facsimile:   415/677-6262

10 Attorneys for Plaintiffs and Counterclaim-Defendants
   DATEL HOLDINGS LTD. and DATEL DESIGN &
11 DEVELOPMENT, INC.

12                 UNITED STATES DISTRICT COURT

13               NORTHERN DISTRICT OF CALIFORNIA

14                  SAN FRANCISCO DIVISION

15

16 DATEL HOLDINGS LTD. and DATEL          No. 09-CV-05535 EDL
   DESIGN & DEVELOPMENT, INC.,
17                                        Action Filed: November 20, 2009
            Plaintiffs and
18          Counterclaim-Defendants,      RESPONSE TO DEFENDANT
                                          MICROSOFT CORP.'S FIFTH SET
19      v.                                OF INTERROGATORIES

20 MICROSOFT CORPORATION,

21          Defendant and
            Counterclaimant.
22

23

24 PROPOUNDING PARTY:        Defendant and Counterclaimant MICROSOFT
                             CORPORATION
25
   RESPONDING PARTY:         Plaintiffs and Counterclaim-Defendants DATEL HOLDINGS
26                           LTD. AND DATEL DESIGN & DEVELOPMENT, INC.

27 SET NUMBER:               FIFTH

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1      Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs and

2 Counterclaim-Defendants Datel Holdings Ltd. and Datel Design & Development, Inc.

3 (collectively, "Datel") provide the following objections and responses to Defendant and

4 Counterclaimant's Microsoft Corporation's Fifth Set of Interrogatories.

5

6                              **GENERAL OBJECTIONS**

7      1.     Datel objects to these Interrogatories to the extent that they contain subparts or a

8 compound, conjunctive or disjunctive request.

9      2.     Datel objects to these Interrogatories as vague and ambiguous as to the meaning

10 of "Maxwell security system."   In responding, Datel has interpreted "Maxwell security

11 system" to mean the accessories authentication protocol carried out by the Infineon-made

12 security IC chips residing in the Xbox 360 console and certain accessories.

13

14                                **RESERVATIONS**

15     1.     Datel's investigation and discovery of the allegations in this case is ongoing.  The

16 responses and objections herein are based upon information and/or documents presently

17 known to, and in the possession of Datel.  Datel reserves the right to rely on any documents

18 or other evidence which may develop or subsequently come to its attention, to assert

19 additional objections or supplemental responses should it discover that there is information

20 or grounds for objections, and to supplement or amend these responses at any time.  Without

21 obligating itself to do so, Datel also reserves the right to the further disclosure of any

22 documents and/or information.

23     2.     Datel responds to these Interrogatories subject to and without waiving any of the

24 General Objections and Reservations which are hereby expressly incorporated by reference

25 into the response below.

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 23:**

Explain in detail, and identify all supporting facts and evidence, why you contend the October 2009 dashboard update was an anticompetitive act.

**RESPONSE TO INTERROGATORY NO. 23:**

Datel incorporates the General Objections and Reservations is if fully set forth herein. Datel objects to this interrogatory to the extent that is seeks the disclosure of information protected by the attorney-client privilege, the work product doctrine, or other applicable privileges or protections. Datel further objects to this interrogatory to the extent that it calls for a legal conclusion. Datel further objects to this interrogatory on the ground that it is compound. Datel further objects to this interrogatory on the ground that it is premature given that discovery remains in progress. Finally, Datel objects to this interrogatory to the extent that Microsoft seeks, at any stage of proof, to limit Datel to its response to this interrogatory, given that the facts and evidence required to make a contention in good faith at the pleading stage are not necessarily coterminous with the facts and evidence required to prove that contention in a subsequent stage. Subject to and without waiving the foregoing objections, Datel responds as follows:

Datel incorporates by reference and adopts as if fully set forth herein its responses to Microsoft's Interrogatories Nos. 1, 4, and 5, and its responses to Microsoft's Requests For Admission Nos. 1–9. In addition, Datel provides the following response:

Microsoft released the Xbox in 2001. In addition to purchasing the Xbox console and games, many Xbox consumers purchased accessories, such as wired and wireless controllers and gamepads, external hard drives, flash-memory units, and specialized controllers tailored to particular video games. Microsoft produced and released many accessories under its own name ("first-party" accessories). Microsoft also approved and licensed accessories produced by other companies which were compatible with the Xbox ("third-party" accessories). Finally, certain companies produced accessories which were compatible with the Xbox system without seeking licensure or approval from Microsoft ("unlicensed" accessories).

1   Datel produced unlicensed accessories products for the Xbox.  Microsoft encouraged the
2   presence and development of unlicensed products for the Xbox system.

3   Microsoft launched its second generation console, the Xbox 360, in 2005.  Microsoft
4   made general statements that third-party products and accessories would be available.  As
5   with the original Xbox, Microsoft indicated that competitors' accessories would be available
6   to the public.  Microsoft never indicated that such products would be limited.

7   Through significant research and development, Datel reverse-engineered the Maxwell
8   security system between August 2007 and March 2009.  Datel developed a system that was
9   interoperable with the Maxwell system and began developing, producing, marketing, and
10  selling accessories that were interoperable with the Xbox 360 console.  Datel planned to
11  release wired and wireless controllers, headsets, memory units and other products.  Datel
12  began meeting with retailers in June 2009 to discuss such accessories and received a positive
13  response from retailers.

14  Datel's first product which was interoperable with the Maxwell security system was a
15  memory unit, which it released in May 2009.  While at the time Microsoft sold a first-party
16  memory unit with 512 MB of memory for $59.99, Datel introduced a 2 GB memory unit for
17  $39.99 and a 4 GB memory unit for $49.99.  Like Microsoft's product, Datel's product
18  allowed consumers to save data from the Xbox 360 console.  It cost up to $20 less and
19  provided as much as eight times the memory of Microsoft's first-party product.  Shortly after
20  Datel introduced its superior, lower-priced competitive alternatives to Microsoft's memory
21  unit, Microsoft lowered the price of the 512 MB memory unit.  Microsoft did not offer a
22  memory unit with greater than 512 MB of storage capacity, though it had considered doing
23  so as early as 2005.  Consumers and retailers reacted positively to Datel's memory unit.
24  From May to October 2009, Datel sold approximately 50,000 memory units worldwide.

25  Microsoft's response was to gather a team internally in June 2009 to take steps to cut
26  off this unexpected and unwanted competition.  Microsoft was particularly concerned to
27  preserve the lucrative controller market to itself, as it was by that point at least discussing
28  opening up game saves to USB flash memory.  Microsoft's internal discussions led

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   Microsoft to plan to release a software update aimed solely at Datel that would (1) break all

2   existing and future memory units, and (2) implement a disguised and secret plan to disable

3   Datel's wired controller by a means different than the change for the Datel memory unit.

4   Through this offensive, Microsoft intended to send, and did send, a message that it could and

5   would disable the products of competitors who had the temerity to try to compete with it.

6       Microsoft's October 2009 dashboard update implemented Microsoft's plan to squash

7   third-party competition for Xbox 360 accessories.   Xbox 360 users were required to

8   download and accept the update in order to access online multiplayer gaming.   Other players

9   were required or prompted to download the update when they installed new games.   If users

10  did not install the dashboard update, they would not be able to access certain content or play

11  certain games.   The dashboard update re-configured Xbox 360 consoles to only recognize

12  memory units with a size of 512 MB or less.   In other words, the "update" had the effect of

13  rendering useless at least 50,000 Datel memory units and making any data stored on such

14  memory units inaccessible to their owners.   The dashboard update also modified the

15  Maxwell security system to prevent the interoperability of, and hence preemptively disable

16  Datel's wired controllers which had been shipped to retailers.

17      Microsoft decided to render Datel's memory units and other accessories inoperable in

18  June or July of 2009.   Prior to releasing the dashboard update, Microsoft communicated

19  directly with several retailers of Xbox 360 accessories, including Best Buy, Wal-Mart, and

20  GameStop, telling them of the impending lockout and that Datel's memory unit would cease

21  to work with the Xbox 360.   Microsoft also told at least one major retailer that it could and

22  would block any Datel response or workaround to the initial lockout, ensuring that Datel's

23  products remained inoperable with the Xbox 360 system.   Finally, Microsoft communicated

24  that it could and would lock out and break other unlicensed products, including wireless

25  controllers, via future updates.   The Microsoft actions had their intended results.   Retailers

26  refused to carry Datel accessories for the Xbox 360.

27      Microsoft did not disclose its plan to destroy Datel's products to Datel or consumers

28  until shortly before it released the October 2009 dashboard update.   On or about October 16,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

2009, a blog called "Major Nelson," which is operated by Microsoft's Xbox Live Director of Programming, Larry Hryb, issued the following notice to the Xbox 360 community:

> Don't use unauthorized Xbox 360 Storage Devices
>
> When Preview Program members start receiving the Xbox 360 system update next week, one of the changes is that unauthorized Memory Units will no longer work with the Xbox 360. If you've moved your profile or saved games onto one to "back it up," you'd better move it back onto an authorized Xbox 360 storage device prior to taking the update. If you continue to use an unauthorized Memory Unit after the update, you will not be able to access your stored profile or saved games.
>
> If you need help identifying officially licensed Xbox 360 storage devices or accessories you can read more about the licensed accessories program on Xbox.com.

Microsoft initially informed Datel that the disabling of third-party memory units was an unintentional or inadvertent effect of an unrelated software update, although that was not the case.

Microsoft's internal documents and development strategies for the Xbox 360 contemplated introducing larger memory units as greater flash memory storage capacity became cheaper. The disabling of Datel's higher capacity memory cards was a technological step backwards and a degrading of system performance, which harmed Xbox 360 consumers and harmed competition.

In April 2010, via a subsequent dashboard update, Microsoft altered the protocol for saving data from the Xbox 360 console. Whereas consumers had previously been required to use Microsoft's first-party memory unit, Microsoft henceforth allowed consumers to save data directly to USB flash memory devices. Microsoft did not require that the flash memory devices be licensed, tested, or approved by Microsoft prior to allowing interoperability with the Xbox 360 console. Instead, the Xbox 360 console now determines whether the flash memory device can fulfill basic memory requirements and read/write specifications. Microsoft simply abandoned the Maxwell security system for flash memory storage. Microsoft also abandoned the 512 MB limit on the storage capacity of flash memory devices. Instead, Microsoft now allows two devices with up to 16 GB each to connect to the

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   console simultaneously—allowing users up to 32 GB of storage capacity.  This is more than

2   fifty times the storage capacity of Microsoft's 512 MB memory unit.  If a particular device

3   has a capacity greater than 16 GB, Microsoft still allows data to be saved to it after the

4   console partitions the device to allow 16 GB of Xbox 360 data to be stored on it.  A

5   consumer can then use the remaining storage space to store, back-up, or transfer other data.

6       Microsoft's act of blocking Datel's lower-priced, higher performing memory unit was

7   an anticompetitive act designed to make an example of a company that offered competing

8   products for the Xbox 360 platform without Microsoft's permission.  In doing this act,

9   Microsoft sent a message to consumers, retailers and producers.

10      Consumers were to understand that Microsoft would not abide free competition and

11  unlicensed products to encroach on its monopoly for accessories for the Xbox 360.  This was

12  a marked change from Microsoft's approach to the original Xbox system, where Microsoft

13  tolerated and encouraged interoperable unlicensed products from numerous manufacturers.

14  Microsoft did not inform consumers of this strategy prior to the October 2009 dashboard

15  update.  Many consumers experienced the effects of Microsoft's strategy for the first time

16  when they attempted to use the memory units that Microsoft had blocked and could not

17  access their data.

18      Retailers also learned that, if they carried unlicensed products for the Xbox 360

19  console, Microsoft could and would block and disable the products without warning.  This,

20  in turn, would harm relations with customers and harm the retailers' overall reputation.

21      Competitors were to understand that their only option was to abide the licensure

22  requirements imposed by Microsoft.  Microsoft would do all within its power to shut off

23  competing products, either by technologically degrading system performance, as it had for

24  Datel's memory units, or by arbitrarily altering its authentication protocol for the Maxwell

25  security system.   By playing a game of cat-and-mouse, Microsoft would prevent

26  manufacturers of unlicensed products from gaining a beachhead in the market for Xbox 360

27  accessories.  This is turn would chill and eliminate any legitimate competition in the market

28  for Xbox 360 accessories.  Microsoft was in essence putting a competitor's head on a pike to

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    demonstrate that it would cede no territory to outside innovation.  Regardless of the quality,

2    price, or positive consumer reaction to unlicensed or unapproved products, Microsoft would

3    defend its monopoly at all costs.

4         This course of conduct was patently anticompetitive.  By rendering inoperable

5    products that had been interoperable, Microsoft foreclosed legitimate competition.  The

6    technological lockout did not improve the product in any respect, but rather was an arbitrary

7    contrivance to perpetuate Microsoft's market power and unlawfully maintain its monopoly.

8    Microsoft also perpetuated an unlawful tying arrangement between the Xbox 360 console

9    and accessories and aftermarket products for the Xbox 360.  Microsoft's actions were not

10   limited to memory units (via the 512 MB limit), but included all other unlicensed accessories

11   for the Xbox 360 (via alterations to the Maxwell security system).   Microsoft's

12   anticompetitive acts have had immediate and lasting effects on competition in the relevant

13   market.  For one, Microsoft's acts delayed the rollout of Datel's products.  For the time it

14   took Datel to redesign and re-configure its accessories, consumers continued to have no

15   choice but to buy Microsoft's own accessories and controllers and to pay inflated prices for

16   products made or licensed by Microsoft that did not offer superior performance.  Accessories

17   affected by Microsoft's actions included memory units, controllers, headsets, data transfer

18   cables and devices, and external hard drives.  Microsoft has also stifled competition in the

19   market for Xbox 360 accessories via its conduct targeted at retailers, consumers, and

20   manufacturers, with lasting effects.

21        For responsive documents, please see Microsoft's communications concerning the

22   purpose of the October 2009 dashboard update, documents concerning the October 16, 2009

23   Major Nelson blog post announcing the impending lockout of Datel's memory units,

24   Microsoft's communications with retailers concerning the October 2009 dashboard update,

25   and documents produced by Datel concerning Microsoft's communications with retailers.

26        Additionally, please see Datel's letter of January 4, 2011, attached hereto as Exhibit

27   A, concerning Microsoft's late and incomplete production of communications with retailers

28   regarding Datel's products.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

**INTERROGATORY NO. 24:**

Given that you do not contend in this action the Maxwell security system as it existed before the October 2009 dashboard update was anticompetitive, explain in detail (and identify all supporting facts and evidence) why you contend that it is or was anticompetitive for Microsoft to update the Maxwell system once it had been compromised by Datel.

**RESPONSE TO INTERROGATORY NO. 24:**

Datel incorporates the General Objections and Reservations is if fully set forth herein. Datel objects to this interrogatory to the extent that it purports to characterize Datel's contentions in words other than those used by Datel. Datel further objects to this interrogatory to the extent that is seeks the disclosure of information protected by the attorney-client privilege, the work product doctrine, or other applicable privileges or protections. Datel further objects to this interrogatory to the extent that it calls for a legal conclusion. Datel further objects to this interrogatory on the ground that it is compound. Datel further objects to this interrogatory on the ground that it is duplicative of Interrogatory No. 23. Datel further objects to this interrogatory on the ground that it is premature given that discovery remains in progress. Finally, Datel objects to this interrogatory to the extent that Microsoft seeks, at any stage of proof, to limit Datel to its response to this interrogatory, given that the facts and evidence required to make a contention in good faith at the pleading stage are not necessarily coterminous with the facts and evidence required to prove that contention in a subsequent stage. Subject to and without waiving the foregoing objections, Datel responds as follows:

Datel incorporates by reference and adopts as if fully set forth herein its responses to Microsoft's Interrogatories Nos. 1, 4, 5, and 23, and its responses to Microsoft's Requests For Admission Nos. 1–9.

In addition, please see:

*Fortner Enters. United States Steel Corp.*, 394 U.S. 495 (1969)

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984)

*Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451 (1992)

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979)

2   *California Computer Prods., Inc. v. IBM*, 613 F.2d 727 (9th Cir. 1979)

3   *Northeastern Tel. Co. v. American Tel. & Tel. Co.*, 651 F.2d 76 (2d Cir. 1981)

4   *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534 (9th Cir. 1983)

5   *Cost Mgmt. Servs. v. Wash. Natural Gas*, 99 F.3d 937 (9th Cir. 1996)

6   *Amarel v. Connell*, 102 F.3d 1494 (9th Cir. 1996)

7   *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997)

8   *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340 (Fed. Cir. 1998)

9   *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001)

10  *Newcal Indus., Inc. v. Ikon Office Solutions*, 513 F.3d 1038 (9th Cir. 2008)

11  *ILC Peripherals Leasing Corp. v. IBM*, 458 F. Supp. 423 (N.D. Cal. 1978), *aff'd sub*

12  *nom. Memorex Corp. v. IBM*, 636 F.2d 1188 (9th Cir. 1980)

13  *Transamerica Computer Co. v. IBM*, 481 F. Supp. 965 (N.D. Cal. 1979), *aff'd*, 698

14  F.2d 1377 (9th Cir. 1983)

15  *GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203 (S.D.N.Y. 1981)

16  *Medtronic Minimed Inc. v. Smiths Medical MD Inc.*, 371 F. Supp. 2d 578 (D. Del.

17  2005)

18  *Abbott Labs. v. Teva Pharms. USA, Inc.*, 432 F. Supp. 2d 408 (D. Del. 2006)

19  *Xerox Corp. v. Media Sciences Int'l, Inc.*, 511 F. Supp. 2d 372 (S.D.N.Y. 2007)

20  *In re Apple & AT&T Antitrust Litig.*, 596 F. Supp. 2d 1288 (C.D. Cal. 2008)

21  **INTERROGATORY NO. 25:**

22      Describe in detail each communication by which you contend Microsoft discouraged

23  retailers (in the United States or elsewhere) from carrying Datel's products, including (1) the

24  date of, content of, form of and parties to each alleged communication; (2) when and how

25  Datel learned of each alleged communication, including the identity of the persons through

26  which Datel learned of each alleged communication; and (3) all evidence you are aware of

27  regarding each alleged communication.

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

**RESPONSE TO INTERROGATORY NO. 25:**

Datel incorporates the General Objections and Reservations is if fully set forth herein. Datel further objects to this interrogatory on the ground that it is compound, and Datel only responds to the subparts of this interrogatory on the understanding that each subpart counts as an additional interrogatory against Microsoft's interrogatory limit.  Datel further objects to this interrogatory to the extent that Microsoft seeks, at any stage of proof, to limit Datel to its response to this interrogatory, given that the facts and evidence required to make a contention in good faith at the pleading stage are not necessarily coterminous with the facts and evidence required to prove that contention in a subsequent stage.  Datel further objects to this interrogatory on the ground that it primarily calls for information already within Microsoft's possession, and that, according to representations made by counsel for Microsoft on January 4, 2011, Microsoft still has not produced documents that may be relevant to this interrogatory.  Datel further objects to this interrogatory on the ground that it calls for information in the possession of certain third parties, and that third-party discovery remains in progress.  Datel further objects to this interrogatory to the extent that it incorrectly presumes that Microsoft only discouraged retailers from carrying Datel's products through direct communications.  Datel further objects to this interrogatory on the ground that information regarding oral communications are most appropriately elicited through depositions, which Microsoft has already noticed.  Finally, Datel objects to this interrogatory on the ground that it is premature given that discovery remains in progress.

Subject to and without waiving the foregoing objections, Datel responds as follows:

(1) Based on materials produced through January 3, 2011 and pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Datel directs Microsoft's attention to MS-DTL_0050350, MS-DTL_0209396, MS-DTL_0214187, MS-DTL_0214188, MS-DTL_0581187, DAT-ITC00022166, and DAT-SF00125344-45;

(2) Datel learned of certain communications between Microsoft and Best Buy, reflected in whole or in part in the documents identified above in response to Interrogatory No. 25(1),  through oral conversations between David Arndt and Chris Duppler in or about

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   November of 2009, and through materials produced by Microsoft through December 30,
2   2010.

3       (3) Subject to the General and Specific Objections, Datel reincorporates its response to
4   Interrogatory No. 25(1).

5   **INTERROGATORY NO. 26:**

6       Describe in detail Datel's estimate of its damages, including without limitation (1) the
7   sales Datel claims it lost; (2) how those lost sales are attributable to Microsoft's conduct; (3)
8   how Datel is estimating the prices and margins on its alleged lost sales; (4) which other
9   companies it contends would be selling competing products but for Microsoft's challenged
10  conduct and why; and (5) all evidence supporting Datel's contentions.  If Datel's estimate of
11  its damages differs among its remaining causes of action, describe each damages estimate
12  separately.

13  **RESPONSE TO INTERROGATORY NO. 26:**



14      Datel incorporates the General Objections and Reservations is if fully set forth herein.
15  Datel further objects to this interrogatory on the ground that it is compound, and Datel only
16  responds to the subparts of this interrogatory on the understanding that each subpart counts
17  as an additional interrogatory against Microsoft's interrogatory limit.  Datel objects to this
18  interrogatory on the ground that it is premature given that discovery remains in progress.
19  Finally, Datel objects to this interrogatory on the ground that it calls for information that will
20  be the subject of expert testimony, and therefore improperly seeks to impose obligations
21  upon Datel beyond those set forth in Rule 26 of the Federal Rules of Civil Procedure.
22  Subject to the General and Specific Objections, Datel responds as follows:

23      (1) Datel hereby incorporates its Supplemental Responses to Interrogatory Nos. 11-12
24  and 16-19;

25      (2) Datel hereby incorporates its Response to Interrogatory Nos. 23 and 24;

26      (3) Datel hereby incorporates its Supplemental Responses to Interrogatory Nos. 11-12
27  and 16-19; and

28      (4) As to all Xbox 360 accessories other than wired gamepads, the only company other

1  than Datel that would be selling competing products but for Microsoft's anticompetitive

2  conduct is Microsoft because Datel was the only company able to overcome the

3  technological barriers erected by Microsoft to restrict interoperability of third-party add-ons

4  and accessories.  As to wired gamepads, the only company other than Datel that would be

5  selling competing products but for Microsoft's anticompetitive conduct is Microsoft and its

6  licensees because Datel was the only company able to overcome the technological barriers

7  erected by Microsoft to restrict interoperability of third-party add-ons and accessories.

8       (5) Datel hereby incorporates Interrogatory Response Nos. 26(1)-(4).

9

10  DATED:  January 5, 2011.

11                                         MARTIN R. GLICK
                                          DANIEL B. ASIMOW
12                                         ROBERT D. HALLMAN
                                          MICHELLE S. YBARRA
13                                         SEAN M. CALLAGY
                                          HOWARD RICE NEMEROVSKI CANADY
14                                              FALK & RABKIN
                                          A Professional Corporation
15

16                                         By: _____

17                                               MARTIN R. GLICK

18                                         Attorneys for Plaintiffs and Counterclaim-
                                          Defendants DATEL HOLDINGS LTD. and
19                                         DATEL DESIGN & DEVELOPMENT, INC.

20

21

22

23

24

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

# EXHIBIT A



HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

*A Professional Corporation*

January 4, 2011

Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4024

Telephone 415.434.1600
Facsimile 415.677.6355
*www.howardrice.com*

Writer's Information:

Daniel B. Asimow
*dasimow@howardrice.com*

**VIA EMAIL**

Hojoon Hwang, Esq.
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105-2907

Re:    *Datel Holdings Ltd., et al. v. Microsoft Corporation*
       (N.D. Cal.) Case No. CV 09-5535 EDL

Dear Hojoon:

On the evening of December 21, 2010, we received two DVDs from your office containing a total of 332 additional documents.

The majority of these documents appear to be OneNote files, and we previously received your explanation that you only recently realized that these were responsive documents and that it was necessary to add a viewer to your review environment. We understand that issues of that nature come up in the course of a document production.

However, the production includes also includes seven emails for which Jason Wright is listed as custodian. These are tagged on at the very end of the production. We are at a loss to understand how these highly relevant emails were not produced earlier. It has always been clear that Mr. Wright was a central witness in this case, and approximately 387 emails for which he is listed as custodian were produced earlier in the case.

In particular, document MS-DTL_0581187 clearly shows that on November 18, 2009 Microsoft informed Best Buy that Microsoft could break Datel's controllers through a system update if Best Buy were to carry them. This document is an email from Mr. Wright to Mr. Arndt at Best Buy, clearly referencing the Datel controller.

This document was withheld even though, at the hearing on the bifurcation motion on August 27, 2010, Mr. Stone dismissed the notion that Microsoft had threatened retailers regarding Datel's controllers and stated that Datel has no evidence of such a threat. That evidence, of course, was in Microsoft's files and had not yet been produced to Datel. Indeed, it was only after Datel subpoenaed Best Buy and Mr. Arndt for deposition and the production of documents that Microsoft finally produced this document, without explanation and at the end of a group of unrelated documents.

Hojoon Hwang, Esq.
January 4, 2011
Page 2

In light of these circumstances, we request that you (a) explain why this document was not produced earlier in this case, (b) state whether there are any other documents of Mr. Wright—whose deposition is this Friday, January 7—still being reviewed, and (c) state for which other custodians you are still in the process of review and when such review will be complete. Given the timing of Mr. Wright's deposition, please provide this information no later than the close of business on January 6.

In addition, we have previously agreed that Microsoft would take the minimal, low burden step of asking everyone in its Xbox retail-facing organization (a) if he or she has had any discussions about Datel or Datel products, and (b) to search his or her own outlook mail box (including sent items) for any such communications (at a minimum, searching for the term "Datel"). The failure to timely produce the Wright emails indicates the urgency and appropriateness of this request. In addition, we believe there are communications with other retailers (including GameStop) that have not been produced. We reiterate our request that you take these steps immediately and produce any responsive documents identified as a result of the process no later than January 14, 2010. Please confirm no later than January 6 that this search is underway and that you will be able to complete the production by January 14.

Very truly yours,

Daniel B. Asimow

**VERIFICATION**

I, Ken Tarolla, am President of Datel Design & Development, Inc.  I am authorized to make this verification on behalf of Datel Holdings Ltd. and Datel Design & Development, Inc.  I have reviewed the foregoing **RESPONSE TO DEFENDANT MICROSOFT CORP.'S FIFTH SET OF INTERROGATORIES** and am familiar with the contents thereof.  I am informed and believe that the response stated therein is true and correct to the best of my knowledge.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Verification was hereby executed on this 5th day of January 2011.

KEN TAROLLA

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

TAROLLA VERIFICATION TO RESPONSE TO 5TH SET OF INTERROGATORIES

1

**PROOF OF SERVICE**

2   I, Jane Rustice, declare:

3   I am a resident of the State of California and over the age of eighteen years and not a party to the within-entitled action; my business address is Three Embarcadero Center, Seventh Floor, San Francisco, California 94111-4024. On January 5, 2011, I served the following document(s) described as: **RESPONSE TO DEFENDANT MICROSOFT CORP.'S FIFTH SET OF INTERROGATORIES**

4

5

6   ☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

7

8   ☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

9

10  ☒ by transmitting via email the document(s) listed above to the email address(es) set forth below on this date before 5:00 p.m.

11

12  ☐ by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

13

14  ☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

15

16  **Hojoon Hwang**                    **Gregory P. Stone**
    Hojoon.Hwang@mto.com                Gregory.Stone@mto.com
17  **Rohit Singla**                    **Munger Tolles & Olson LLP**
    Rohit.Singla@mto.com                355 South Grand Avenue, 35th Floor
18  **Jonathan Blavin**                 Los Angeles, CA 90071-1560
    Jonathan.Blavin@mto.com
19  **Munger Tolles & Olson, LLP**
    560 Mission Street, 27th FLoor
20  San Francisco, CA 94105-2907

21  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at San Francisco, California on January 5, 2011.

22

23

24  _____
                    Jane Rustice

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

PROOF OF SERVICE                                      09-CV-05535 EDL

# Exhibit L



HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

*A Professional Corporation*

Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4024

Telephone 415.434.1600
Facsimile 415.677.6262
*www.howardrice.com*

Writer's Information:

Robert D. Hallman
*rhallman@howardrice.com*

July 7, 2010

**VIA EMAIL**

Rohit K. Singla
Hojoon Hwang
Jonathan H. Blavin
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105-2907

Re:   *Datel Holdings Ltd., et al. v. Microsoft Corporation*
      (N.D. Cal.) Case No. CV 09-5535 EDL

Dear Counsel:

This letter grows out of a series of meet and confer discussions concerning Datel's responses to Microsoft's interrogatories, and reflects agreements reached in the course of those discussions as well as further investigation into certain interrogatories by Datel.

## GENERAL OBJECTIONS AND RESERVATIONS

By way of supplementing and clarifying several of Datel's objections and reservations, Datel states the following:

**Certain Technical Details.**

In the course of our meet and confer meetings, we have discussed Datel's objection to producing certain technical details about Datel products, namely technical specifications, instructions, and software code.  We have also discussed Datel's objection to producing documents showing the technical details of Datel's reverse-engineering of the Xbox 360 "authentication scheme" and accessories security chip.  Prior to the filing of Microsoft's counterclaims, we explained that such material was not relevant in the case because Microsoft had not asserted any claim or defense that related to the technical manner in which Datel's products operated.  We disagreed over the propriety of discovery into *potential* affirmative defenses, and we cited to the Advisory Committee Notes providing that the 2000 Amendment to Rule 26(b)(1) "signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."  We offered to reconsider the objection if Microsoft later asserted a claim or defense to which this technical information is relevant.

Rohit K. Singla
Hojoon Hwang
Jonathan H. Blavin
July 7, 2010
Page 2

        In light of Microsoft's DMCA counterclaim, which appears to target Datel's game saves and related technologies, Datel concedes the relevancy of the contents of its Xbox 360 and Xbox 1 game saves and of the technical details of its technologies supporting the transfer of such game saves—with the possible exception of its Powersaves product for the Xbox 360, which Datel has not intentionally sold into the United States.[1] Document requests addressing such topics will not be challenged on a relevancy basis.  Based on our present understanding, that means that Datel will produce responsive, non-privileged documents that show technical details concerning:

        (a)    game saves for the Xbox 1;

        (b)    game saves for the Xbox 360;

        (c)    the Action Replay Max product for the Xbox 1;

        (d)    the XPORT product for the Xbox 360;

        (e)    the XSATA product for the Xbox 360;

        (f)    the Xbox 360 Transfer Kit;

        (g)    the file management software included with the foregoing products.

        Datel intends to produce responsive documents concerning additional Datel technologies supporting the management or transfer of game saves if it comes across such additional technologies in the course of its investigation and document review.  Datel maintains its objection, however, to producing technical specifications, instructions, and software code related to products and technologies other than the foregoing.  Such materials are voluminous and highly sensitive, and appear to have no bearing on the claims, counterclaims, or defenses in this action.

        Datel also continues to object to the production of documents concerning the technical details of its reverse-engineering of the Xbox 360 authentication scheme and accessories security chip.  Datel will produce documents reflecting substantive discussions about the authentication scheme, Datel's investment in such reverse-engineering efforts, Datel's purposes behind such efforts, and about any connection between the authentication scheme or security chip and game saves, and Datel will consider additional categories of documents that do not bear on the sensitive technical details of the reverse-engineering process that Microsoft believes are relevant to this action.

---

        [1]Datel continues to investigate the availability of that product for purchase in the United States through one or more resellers.  Datel will provide its position on the production of documents related to its Powersaves product for the Xbox 360 as soon as it completes its investigation of the United States sales or offers for sale of the product.

Rohit K. Singla
Hojoon Hwang
Jonathan H. Blavin
July 7, 2010
Page 3

As we discussed, it is Datel's position that the authentication scheme has very little, if anything, to do with game saves or transferring game saves, and that the technical details surrounding Datel's reverse-engineering of the authentication scheme and security chip bear no relevance to Microsoft's defenses or counterclaims.  The security chip and authentication scheme are not intended or designed to protect copyrighted content; they are instead intended and designed to block the use of accessories that have not been licensed by Microsoft—including accessories that have nothing to do with game saves or with any copyrighted content, such as controllers and headsets.  You noted that Datel's memory card (one of a number of accessories that works around the authentication scheme) can be used in transferring game saves, but we pointed out that Microsoft's own memory card can be used in the same manner; again, in that context, the authentication scheme is not pertinent to the DMCA claim.  You have indicated in the course of our discussions that Microsoft intends to list the authentication scheme and security chip as one of the layers of protection that the Xbox 360 system provides for copyrighted content.  While we may disagree over whether the authentication scheme and security chip fit that description, Datel has already admitted in its Answer to the counterclaims (and is willing to stipulate) that it has reverse-engineered the authentication scheme and security chip.  So even if you were correct—that the authentication scheme and security chip constitute a layer of protection for DMCA purposes—Datel has admitted that it overcame that layer.  We cannot come up with any legitimate reason why the technical details surrounding the reverse-engineering of the authentication scheme or security chip are relevant to Microsoft's counterclaims or defenses, and certainly no relevancy argument that could justify the burden of locating, reviewing, and producing numerous highly-sensitive technical documents generated in the course of a 20-month intensive reverse-engineering project that involved a number of Datel employees.

You have indicated that after receiving this letter, you will explain in writing why you nonetheless believe technical details of the reverse-engineering of the Xbox 360 authentication scheme and accessories security chip is a legitimate subject of discovery.  We will of course review your explanation carefully and advise you promptly as to whether we adhere to our position on this issue.

**Xbox 1 and Other Gaming Platforms.**

Datel agreed to consider Microsoft's requests for the production of a large volume of documents and data concerning Datel's products for the prior generation Xbox 1 system, as well as for other gaming platforms (e.g., the Playstation 3, Nintendo Game Cube, etc).  We have reviewed those discovery requests and explored the burden of locating and producing such materials.  As a general matter, we do not believe that such materials are relevant to the claims and defenses in this action except to the extent they might (a) provide a benchmark for Datel's damages arising from Microsoft's exclusion of Datel's memory cards and controllers for the Xbox 360, or (b) relate to the game saves and related technologies for the Xbox 1 addressed in Microsoft's counterclaims.  Accordingly, Datel will produce information and responsive

Rohit K. Singla
Hojoon Hwang
Jonathan H. Blavin
July 7, 2010
Page 4

documents addressing (a) memory cards, and (b) game controllers (collectively, the "Relevant Accessories"), for other gaming platforms (including the Xbox 1). With respect to the Xbox 1, the term "Relevant Accessories" also includes the "Xbox Action Replay Max" product. In addition to the "Relevant Accessories," as noted above, Datel will produce information and documents concerning game saves for the Xbox 1. Datel will also produce "sell sheets" (brief product overviews) for its products for other video game platforms that relate to game saves and/or cheats. The potential probative value of the other requested materials is marginal at best, and simply does not justify the significant investment in resources for collection and review that it would require.

### REQUESTS FOR THE PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

Datel agrees to expand the scope of the documents it will produce in response to this Request to include non-privileged documents that substantively discuss, analyze or comment upon the Xbox 360 Authentication Scheme, including the dashboard updates, or that discuss Datel's investment in such reverse-engineering efforts, Datel's purposes behind such efforts, and about any connection between the authentication scheme or security chip and game saves. Datel will consider additional categories of documents concerning the authentication scheme that Microsoft contends are relevant and that do not bear on the sensitive technical details of the reverse-engineering process. Datel will not produce documents addressing the technical details of its reverse-engineering processes or technologies, based on its general objection described above.

**REQUEST FOR PRODUCTION NO. 2:**

Datel agrees to expand the scope of the documents it will produce in response to this Request to include non-privileged documents that substantively discuss, analyze or comment upon Datel's hardware and software for interfacing with the Xbox 360 Authentication Scheme. Datel will not produce documents addressing the technical details of its reverse-engineering processes or technologies, based on its general objection described above.

**REQUEST FOR PRODUCTION NO. 3:**

The parties agree that the Request addresses the distribution, sale, offers to license, etc., of hardware or software **other than its retail products to its distributors, retail partners or end consumers**, and that it only addresses other hardware, or software, and other devices or know-how, specifically to enable interfacing with the Xbox 360 Authentication Scheme. Datel agrees to produce non-privileged documents responsive to the Request.

Rohit K. Singla
Hojoon Hwang
Jonathan H. Blavin
July 7, 2010
Page 5

**REQUEST FOR PRODUCTION NO. 5:**

Datel agrees to produce (a) complaints from game developers about Datel's products or services in connection with games for the Xbox 1 and Xbox 360, and (b) substantive discussion with game developers about (i) so-called cheating and cheat codes in connection with games for the Xbox 1 and Xbox 360, and (ii) the Xbox 360 Authentication Scheme. Datel continues to believe that communications about other gaming platforms are irrelevant and will stand on its objection to producing such communications.

**REQUEST FOR PRODUCTION NO. 6:**

Datel agrees to adjust its response to this Request to include non-privileged documents relating to Datel's efforts to reverse-engineer Microsoft software or hardware in connection with the Xbox 360. Limitations on the scope of such document production are set forth in the discussion of Request Nos. 1 and 2, above. In addition, Datel will not produce documents addressing the technical details of its reverse-engineering processes or technologies, based on its general objection described above.

**REQUEST FOR PRODUCTION NO. 7:**

Datel has agreed to produce non-privileged responsive documents, but maintains at this time its objection to the production of technical specifications, instructions, and software code, based on its general objection described above.

**REQUEST FOR PRODUCTION NO. 9:**

Datel has agreed to produce non-privileged documents relating to the development—including the certification, or lack thereof—of the Relevant Accessories for the Xbox 1, but will not produce documents addressing other Xbox 1 accessories based on the general objection described above. With respect to technical specifications, instructions, and software code, except as indicated in its general objection described above, Datel will not produce such material at this time.

**REQUEST FOR PRODUCTION NO. 10:**

Datel has agreed to produce non-privileged documents relating to Xbox 360 accessories, and to Relevant Accessories for the Xbox 1, but will not produce documents addressing other Xbox 1 accessories based on the general objection described above. With respect to technical specifications, instructions, and software code, except as indicated in its general objection described above, Datel will not produce such material at this time.

Rohit K. Singla
Hojoon Hwang
Jonathan H. Blavin
July 7, 2010
Page 6

**REQUEST FOR PRODUCTION NO. 12:**

Datel has agreed to produce non-privileged documents relating to Xbox 360 accessories, and to Relevant Accessories for the Xbox 1, but will not produce documents addressing other Xbox 1 accessories based on the general objection described above. With respect to technical specifications, instructions, and software code, except as indicated in its general objection described above, Datel will not produce such material at this time.

**REQUEST FOR PRODUCTION NO. 13:**

Except as indicated in its general objection described above, Datel will not produce the requested technical specifications, instructions, and software code at this time.

**REQUEST FOR PRODUCTION NO. 14:**

Datel has agreed to produce responsive non-privileged documents that substantively discuss, analyze or comment upon the technology used by Datel's Xbox 360 Accessories to interface with the Xbox 360 Authentication Scheme. Datel will not produce documents addressing the technical details of its reverse-engineering processes or technologies, or addressing technical specifications, instructions, and software code, based on its general objection described above.

**REQUEST FOR PRODUCTION NO. 16:**

Datel has agreed to produce responsive non-privileged documents dating from November 2001 through the present. Datel has also agreed that it will respond to an interrogatory asking that Datel list every platform for which it was a licensed manufacturer.

**REQUEST FOR PRODUCTION NO. 17:**

Datel has agreed to produce high level financial statements (including balance sheets and profit and loss statements), as well as segmented profit and loss statements for Xbox 360 accessories and Relevant Accessories for other gaming platforms, all from November 2001 to the present, and all to the extent that and in the manner in which such information is kept in the ordinary course of business.

**REQUEST FOR PRODUCTION NO. 18:**

Datel has agreed to produce documents sufficient to show Datel's sales, and profits for Xbox 360 Accessories (to the extent that and in the manner in which such information is kept in the ordinary course of business), and all documents reflecting or discussing sales expectations and profit expectations for Xbox 360 Accessories.

Rohit K. Singla
Hojoon Hwang
Jonathan H. Blavin
July 7, 2010
Page 7

**REQUEST FOR PRODUCTION NO. 19:**

Datel has agreed to produce documents sufficient to show Datel's past sales, and profits for its Xbox 360 accessories and Relevant Accessories for other gaming platforms, from November 2001 to the present, to the extent that and in the manner in which such information is kept in the ordinary course of business, as well as all documents reflecting or discussing projections regarding sales and profits of such accessories.

**REQUEST FOR PRODUCTION NO. 20:**

Datel has agreed to produce documents showing or relating to Datel's discussions with potential or current retailers concerning Datel's Xbox 360 Accessories, and its Relevant Accessories for other gaming platforms, in each case from November 2001 to the present.  Such production will also include documents reflecting discussions with retailers about so-called cheating (not including "cheat codes"), but will not include documents that have no substantive discussion of the accessories at issue (or of cheating), such as purchase orders and invoices.

**REQUEST FOR PRODUCTION NO. 21:**

Datel has agreed to produce non-privileged documents that discuss, analyze or comment upon marketing and marketing strategy for Xbox 360 Accessories, and documents sufficient to show the marketing materials themselves, to the extent that and in the manner in which such materials are kept in the ordinary course of business.

**REQUEST FOR PRODUCTION NO. 23:**

Datel has agreed to produce non-privileged documents relating to the creation of "Powersaves" and/or "cheats" for the Xbox 360, and modifies its response to this Request, based on Microsoft's counterclaims, to include such materials for the Xbox 1.

**REQUEST FOR PRODUCTION NO. 24:**

Datel has agreed to produce non-privileged documents describing or discussing the design, purpose and function of "Powersaves" and "cheats" for the Xbox 360, and modifies its response to this Request, based on Microsoft's counterclaims, to include such materials for the Xbox 1.

**REQUEST FOR PRODUCTION NO. 25:**

Datel has agreed to produce non-privileged documents referring or relating to "cheating" in the multiplayer online gaming environment of the Xbox 360, and modifies its response to this Request, based on Microsoft's counterclaims, to include such documents for the Xbox 1.  In both cases, as discussed, Datel will treat the term "cheating" to contemplate advantages in game play that were not intended by the game developers, and will exclude cheat codes from the scope of

Rohit K. Singla
Hojoon Hwang
Jonathan H. Blavin
July 7, 2010
Page 8

the definition of the term.  Datel will not produce at this time such materials in connection with the multiplayer online gaming environments of other platforms, based on its general objection described above.

**REQUEST FOR PRODUCTION NO. 26:**

Microsoft has requested that Datel provide all documents relating to the design, purpose, functionality, and development of Xbox 360 and Xbox 1 Controllers (rather than just the "turbofire" buttons on any such controllers).  Datel has agreed to produce such additional non-privileged documents in response to this Request, to the extent that they are not already encompassed in the response to Request No. 10.  With respect to technical specifications, instructions, and software code, Datel will not produce such material at this time based on its general objection described above.

**REQUEST FOR PRODUCTION NO. 28:**

Datel modifies its response to this Request, based on Microsoft's counterclaims, and agrees to produce non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 29:**

Datel modifies its response to this Request, based on Microsoft's counterclaims, and agrees to produce non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 30:**

Microsoft clarified that its Request encompasses (1) content that is initially shipped on Datel's memory cards, and (2) content that third parties (including consumers) copy onto Datel's memory cards.  Datel agrees to produce responsive non-privileged documents concerning Datel's memory cards for the Xbox 360 and Xbox 1, subject to the limitations on the scope of its production of technical documents described in its general objection, above.

**REQUEST FOR PRODUCTION NO. 31:**

Datel has agreed to produce responsive non-privileged documents.  With respect to technical specifications, instructions, and software code, however, except as indicated in its general objection described above, Datel will not produce such material at this time.

**REQUEST FOR PRODUCTION NO. 34:**

Datel has agreed to produce non-privileged responsive documents referring or relating to the interoperability of any Datel products that have the capacity to operate with a gaming platform's non-public, proprietary security feature, and that are designed to work with the Xbox

Rohit K. Singla
Hojoon Hwang
Jonathan H. Blavin
July 7, 2010
Page 9

360 and another video gaming platform. With respect to technical specifications, instructions, and software code, however, Datel will not produce such material at this time based on its general objection described above.

**REQUEST FOR PRODUCTION NO. 36:**

Datel has agreed to produce non-privileged responsive documents referring or relating to the interoperability of Accessories that have the capacity to operate with a gaming platform's non-public, proprietary security feature, and that are designed to work with the Xbox 360 and another video gaming platform. With respect to technical specifications, instructions, and software code, however, Datel will not produce such material at this time based on its general objection described above.

**REQUEST FOR PRODUCTION NO. 37:**

Datel has agreed to produce non-privileged responsive documents referring or relating to Datel's practice of modifying or ability to modify Accessories for one gaming platform to work with another gaming platform, for those Accessories that have the capacity to operate with a gaming platform's non-public, proprietary security feature, and that are designed to work with, or could be modified to work with, the Xbox 360 and another video gaming platform. With respect to technical specifications, instructions, and software code, however, and with respect to the technical details of its reverse-engineering processes and technologies, Datel will not produce such material at this time based on its general objection described above.

**REQUEST FOR PRODUCTION NO. 42:**

Datel has agreed to produce non-privileged documents referring or relating to Datel's end user license agreements or other contractual materials provided to Datel's customers concerning Xbox 360 accessories and Relevant Accessories for the Xbox 1, from November 2001 to the present, but specifically excluding communications involving warranty claims. Datel has agreed to attempt to produce such documents on a worldwide basis, to the extent possible. The parties have agreed to defer without prejudice Microsoft's request for similar materials for other gaming platforms.

**REQUEST FOR PRODUCTION NO. 43:**

Datel has investigated the burden of producing documents responsive to this Request, and has determined that Datel and its vendors do not keep a copy of the prior versions of web sites at issue. Datel will nonetheless produce any responsive non-privileged documents that it is able to locate in the course of its investigation and review.

Rohit K. Singla
Hojoon Hwang
Jonathan H. Blavin
July 7, 2010
Page 10

**REQUEST FOR PRODUCTION NO. 44:**

Datel has agreed to produce non-privileged documents referring or relating to Datel's product literature, manuals, instructions, packaging text and marketing materials concerning Xbox 360 accessories and Relevant Accessories for the Xbox 1, from November 2001 to the present.

**REQUEST FOR PRODUCTION NO. 45:**

Datel has agreed to produce non-privileged documents responsive to this Request concerning Xbox 360 accessories and Relevant Accessories for the Xbox 1, but will not produce documents addressing other Xbox 1 accessories based on the general objection described above. With respect to technical specifications, instructions, and software code, and with respect to the confidential technical details of Datel's reverse-engineering processes and technologies, Datel will not produce such material at this time based on its general objection described above.

**REQUEST FOR PRODUCTION NO. 49:**

Datel has investigated the burden of producing documents responsive to this Request, and has determined that Datel and its vendors do not maintain summaries or analyses of customer and consumer complaints across the various video game platforms.  Datel will produce responsive documents as they related to Xbox 360 accessories and Relevant Accessories for other video game platforms.

**REQUEST FOR PRODUCTION NO. 50:**

Datel has agreed to produce non-privileged responsive documents pertaining to the testing of Datel Accessories for the Xbox 360 and of Relevant Accessories for the Xbox 1, but will not produce documents addressing other Xbox 1 accessories based on the general objection described above.  With respect to technical specifications, instructions, and software code, Datel will not produce such material at this time based on its general objection described above.

**REQUEST FOR PRODUCTION NO. 51:**

The parties agreed to look into a possible compromise concerning this Request, whereby Microsoft would produce documents identifying patents licensed from other parties in connection with Xbox 360 console, accessories and authentication scheme, and Datel would produce documents referring to, discussing or analyzing any patents Microsoft may hold with respect to the Xbox 360 console, accessories and authentication scheme.  Not having heard from Microsoft to date, Datel stands on its objection to the Request at this time, but agrees to revisit this issue once Microsoft's counsel indicates Microsoft's position on the proposed compromise.

Rohit K. Singla
Hojoon Hwang
Jonathan H. Blavin
July 7, 2010
Page 11

**REQUEST FOR PRODUCTION NO. 54:**

Datel will stand on its objection to this Request at this time.  As explained at the meet and confer, we feel this is an overbroad and inappropriate request at this stage of the case.

**REQUEST FOR PRODUCTION NO. 55:**

Datel has proposed that each party produce a list of lawsuits relating to the Xbox 360, Xbox 360 accessories, or accessories for other gaming platforms, including a sentence or two describing the nature of the suit, the jurisdiction, the case number and the date, and then the parties can meet and confer as to which suits, if any, warrant production of further information. Microsoft agreed to consider this proposal.  We are awaiting your response to this proposal.

**REQUEST FOR PRODUCTION NO. 59:**

Datel agrees to produce non-privileged responsive documents showing the aspects of the design, development, production, marketing and sale of Xbox 360 and Xbox 1 accessories conducted or managed by the respective Datel offices, to the extent that and in the manner in which such information is kept in the ordinary course of business.

Very truly yours,

Robert D. Hallman

# Exhibit M

MUNGER, TOLLES & OLSON LLP

ROBERT K. JOHNSON†
ALAN V. FRIEDMAN†
RONALD L. OLSON†
RICHARD S. VOLPERT
DENNIS C. BROWN†
ROBERT E. DENHAM
JEFFREY I. WEINBERGER
CARY B. LERMAN
CHARLES D. SIEGAL
RONALD K. MEYER
GREGORY P. STONE
VILMA S. MARTINEZ
BRAD D. BRIAN
BRADLEY S. PHILLIPS
GEORGE M. GARVEY
WILLIAM D. TEMKO
STEVEN L. GUISE†
ROBERT B. KNAUSS
STEPHEN M. KRISTOVICH
JOHN W. SPIEGEL
TERRY E. SANCHEZ
STEVEN M. PERRY
MARK B. HELM
JOSEPH D. LEE
MICHAEL R. DOYEN
MICHAEL E. SOLOFF
GREGORY D. PHILLIPS
LAWRENCE C. BARTH
KATHLEEN M. M°DOWELL
GLENN D. POMERANTZ
RONALD C. HAUSMANN
PATRICK J. CAFFERTY, JR.
JAY M. FUJITANI
O'MALLEY M. MILLER
SANDRA A. SEVILLE-JONES
MARK H. EPSTEIN
HENRY WEISSMANN
KEVIN S. ALLRED
BART H. WILLIAMS
JEFFREY A. HEINTZ
JUDITH T. KITANO
KRISTIN LINSLEY MYLES
MARC T.G. DWORSKY
JEROME C. ROTH
STEPHEN D. ROSE
JEFFREY L. BLEICH
GARTH T. VINCENT

TED DANE
MARK SHINDERMAN
STUART N. SENATOR
MARTIN D. BERN
DANIEL P. COLLINS
RICHARD E. DROOYAN
ROBERT L. DELL ANGELO
BRUCE A. ABBOTT
JONATHAN E. ALTMAN
MARY ANN TODD
MICHAEL J. O'SULLIVAN
KELLY M. KLAUS
DAVID B. GOLDMAN
BURTON A. GROSS
KEVIN S. MASUDA
HOJOON HWANG
KRISTIN S. ESCALANTE
DAVID C. DINIELLI
ANDREA WEISS JEFFRIES
PETER A. DETRE
PAUL J. WATFORD
DANA S. TREISTER
CARL H. MOOR
DAVID M. ROSENZWEIG
DAVID H. FRY
LISA J. DEMSKY
MALCOLM A. HEINICKE
GREGORY J. WEINGART
TAMERLIN J. GODLEY
JAMES C. RUTTEN
J. MARTIN WILLHITE
RICHARD ST. JOHN
ROHIT K. SINGLA
LUIS LI
CAROLYN HOECKER LUEDTKE
C. DAVID LEE
MARK H. KIM
BRETT J. RODDA
SEAN ESKOVITZ
FRED A. ROWLEY, JR.
KATHERINE M. FORSTER
BLANCA FROMM YOUNG
SUSAN R. SZABO
NATALIE PAGÉS STONE
MONIKA S. WIENER
LYNN HEALEY SCADUTO
RANDALL G. SOMMER

SHONT E. MILLER
MARIA SEFERIAN
MANUEL F. CACHÁN
ERIC J. LORENZINI
KATHERINE K. HUANG
ROSEMARIE T. RING
JOSEPH J. YBARRA
KATE E. ANDERSON
ALISON J. MARKOVITZ
E. DORSEY KLEGER-HEINE
JAY K. GHIYA
SUSAN TRAUB BOYD
JENNIFER L. POLSE
TODD J. ROSEN
BRIAN R. HOCHLEUTNER
GRANT A. DAVIS-DENNY
JASON RANTANEN
AMY C. TOVAR
REBECCA GOSE LYNCH
JONATHAN H. BLAVIN
JOHN M. GRIFFIN
KAREN J. FESSLER
MICHELLE T. FRIEDLAND
J. RAZA LAWRENCE
LIKA C. MIYAKE
MELINDA EADES LEMOINE
ANDREW W. SONG
YOHANCE C. EDWARDS
JULIE D. CANTOR
SETH GOLDMAN
FADIA RAFEEDIE KHOURY
JOSHUA P. GROBAN
VICTORIA L. BOESCH
HAILYN J. CHEN
BRAD SCHNEIDER
ALEXANDRA LANG SUSMAN
GENEVIEVE A. COX
MIRIAM KIM
MISTY M. SANFORD
BRIAN P. DUFF
AIMEE FEINBERG
JOEL D. WHITLEY
KATHERINE L. HALL
KATHERINE KU
KIMBERLY A. CHI
SHOSHANA E. BANNETT
TINA CHAROENPONG

LEE S. TAYLOR
DEREK J. KAUFMAN
KIMBERLY D. ENCINAS
MARCUS J. SPIEGEL
GABRIEL P. SANCHEZ
BETHANY C. WOODARD
PAULA R. LEVY
CONNIE C. CHIANG
DAVID C. YANG
WILLIAM E. CANO
EMILY PAN
BILL WARD
HENRY E. ORREN
BENJAMIN W. HOWELL
WESLEY SHIH
JACOB S. KREILKAMP
PAUL J. KATZ
TYLER A. ROOZEN
JONATHAN H. WEISS
ZACHARY KATZ
DANIEL A. LYONS
ELIZABETH J. NEUBAUER
TREVOR D. DRYER
ERIC P. TUTLE
HEATHER E. TAKAHASHI
KRISTINA L. WILSON
KEVIN A. GOLDMAN
ROBYN KALI BACON
BERNARD A. ESKANDARI
JENNY M. JIANG
KEITH R.D. HAMILTON, II
SORAYA C. KELLY
PATRICK ANDERSON
MARK R. YOHALEM
JEFFREY Y. WU
YUVAL MILLER
MARK R. CONRAD
DANIEL R. M°CARTHY
_____
RICHARD D. ESBENSHADE†
ALLISON B. STEIN
PETER R. TAFT†
OF COUNSEL
_____
E. LEROY TOLLES
(1922-2008)

†A PROFESSIONAL CORPORATION

560 MISSION STREET
TWENTY-SEVENTH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2907
TELEPHONE (415) 512-4000
FACSIMILE (415) 512-4077

_____

355 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 683-9100
FACSIMILE (213) 687-3702

July 19, 2010

WRITER'S DIRECT LINE
(415) 512-4032
(415) 644-6932 FAX
Rohit.Singla@mto.com

**VIA E-MAIL**

Robert D. Hallman
Howard Rice Nemerovski Canady Falk & Rabkin
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4024


        Re:    *Datel Holdings Ltd., et al. v. Microsoft Corporation*
               <u>USDC, Northern District of California Case No. CV 09-5535 EDL</u>

Dear Robert:

        Thank you for your letter of July 7, 2010, which as you know follows almost four months of meet-and-confers regarding Datel's responses to Microsoft's first set of requests for production.  Your letter does appear accurately to document Datel's agreements during meet-and-confer to produce certain categories of documents in addition to the documents that Datel committed to produce in its formal responses.  To be clear, however, I do not think the letter summarizes Microsoft's positions during the meet and confer (and perhaps that was not your intent).  I also confirm my understanding that you have agreed that Microsoft reserves its right to seek to compel further production pending a review of the documents that Datel produces pursuant its formal responses and your letter.

        There are a few issues, however, that from your letter and our lengthy meet-and-confers appear ripe for resolution by the Court.  Before we bring a motion relating to those issues, however, I seek a few clarifications to ensure that we understand the scope of the disputes and to see if there any of these disputes could be resolved without motion practice.

11186306.1

M<small>UNGER</small>, T<small>OLLES</small> & O<small>LSON</small> LLP

Robert D. Hallman
July 19, 2010
Page 2

Specifically:

1. Your letter objects to production of the technical specifications for Datel's version of the Xbox 360 authentication security chip, arguing that Datel has already admitted in its Answer that "it has reverse-engineered the authentication scheme and security chip" in the Xbox 360.  Does Datel admit that its Xbox 360 MAX memory card and Controllers *circumvent* (as defined in the DMCA) the Xbox 360 authentication scheme and security chip — subject, of course, to Datel's contentions that the authentication scheme and security chip are not "effective" technologies for the protection of copyright content under the DMCA and subject to any other defenses to the DMCA claim?

2. Am I understanding your letter correctly that Datel refuses to produce any technical documentation (specifications, source code, schematics, etc.) for the Xbox 360 MAX Memory Card, Controllers, and the Powersave products — even specifications unrelated to Datel's version of the Xbox 360 authentication security chip?

3. Could you clarify whether Datel will provide documents relating to its reverse engineering of security features of the Xbox 360 other than the authentication scheme and security chip?  For example, will Datel produce documents relating to the reverse engineering of Xbox 360 electrical interfaces, file formats, cryptographic protocols (other than the authentication scheme), etc.?

4. Datel has limited its production of documents relating to the Xbox 1 to documents relating only to Xbox 1 controllers, memory cards, and the Action Replay system. To determine whether there is a meaningful dispute here, will Datel provide a list of all of the products it has developed or marketed for the Xbox 1 along with "sell sheets" or other product descriptions?

5. Similarly, in an effort to resolve the dispute regarding detailed technical and other documents relating to products for other platforms, will Datel produce a list of all of its products for any platform (going back to 1990) along with "sell sheets" or other product descriptions?  Microsoft can then try to narrowly tailor its requests to those products most relevant to its claims and defenses.

6. Datel has limited a number of categories to documents relating only to controllers and memory cards.  Are Datel's damage claims limited to its Xbox 360 controllers and memory cards?

Finally, you asked for an explanation for why Microsoft contends that it is entitled to documents relating to the "technical details of the reverse engineering of the Xbox 360 authentication scheme and accessories security chip."  As I explained during our meet and confer sessions, most of Datel's own allegations center on the Xbox 360 authentication scheme and

MUNGER, TOLLES & OLSON LLP

Robert D. Hallman
July 19, 2010
Page 3

security chip and Datel's efforts to reverse engineer it.  To take one obvious example, as we understand, a significant part of Datel's damage claim relates to those very reverse engineering efforts.  It is difficult to see, thus, how Datel can withhold documents relating to its reverse engineering efforts.  Separately Microsoft's DMCA claim is premised, in significant part, on Datel's circumvention of that authentication scheme and security chip.  Datel's contention on the *merits* that the authentication scheme and security chip are not protected by the DMCA is not a basis to refuse related discovery.

Sincerely,

Rohit K. Singla

RKS:su

11186306.1

# Exhibit N



HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

_A Professional Corporation_

August 10, 2010

Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4024

Telephone 415.434.1600
Facsimile 415.677.6262
_www.howardrice.com_

Writer's Information:

Robert D. Hallman
_rhallman@howardrice.com_

**VIA EMAIL**

Rohit K. Singla
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907

     Re:    _Datel Holdings Ltd., et al. v. Microsoft Corporation_
           (N.D. Cal.) Case No. CV 09-5535 EDL

Dear Rohit:

This letter is sent in response to your letter dated July 19, concerning Datel's position on certain document production issues. We address the issues you raised, _seriatim_, below.

1. While Datel has admitted that it has reverse-engineered the Xbox 360 accessory authentication scheme in order to create compatible accessories for the the Xbox 360 accessories, it is not clear to us what it would mean for Datel to admit that any of its products "circumvent," _as defined in the DMCA_, the authentication scheme and security chip. The definition of circumvention there is tied to bypassing technological measures to access a copyrighted work (_see_ Section 1201(a)(3)(A) ("to 'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner")). We can explore whether there is tied to which we could stipulate, but it appears to us that admitting Datel "circumvents" as defined in the DMCA could effect unintended concessions concerning the authentication scheme and security chip, and their purpose. As you know, our view is that the accessory authentication scheme has everything to do with protecting first party sales and licensing revenue, and nothing to do with copyrighted content.

We think it is vivid what we are talking about here. As has been well-known since at least 2005, and as the attached publications explain, the Xbox 360 employs a security chip, made by Infineon, that authenticates accessories by way of a digital handshake. If an accessory does not have a chip that interacts properly with the authentication protocol, it will not achieve interoperability with the Xbox 360—in other words, it will not work. The authentication scheme and security chip let Microsoft cordon off particular types of accessories from third party developers, and charge substantial fees and royalties for third party accessories that it chooses to endorse (some even call it the "licensing chip"). The revenue-driven purpose of the

Rohit K. Singla
August 10, 2010
Page 2

authentication scheme and security chip is clear enough (see attached article, "Digging profits out of Xbox") and the fact that it operates to lock-out unlicensed accessories like game pads and headsets belies any claim that they are meant to protect copyrighted content.

We aver and concede that Datel set about to reverse-engineer this lock-out, in order to be able to achieve interoperability for its accessories with the Xbox 360 system. After considerable effort, Datel succeeded. Indeed, but for Microsoft's predatory acts described in the Complaint, Datel's accessories would shake hands and get along just fine with the Xbox 360 system.

Having conceded that this reverse-engineering project was accomplished, and that Datel's accessories have chips that successfully "shake hands" with the Xbox 360 authentication scheme, we cannot see how documents revealing *how* Datel performed the reverse-engineering process are relevant to the claims and defenses in this case. Datel's damages turn on lost sales, product returns, and damage to reputation and good will caused by Microsoft's conduct, and not in any way on Datel's investment in reverse-engineering the security chip and authentication protocol. If you nevertheless still feel that the documents surrounding the reverse-engineering process are relevant, please explain in detail how that could be the case. It appears to us that the potential relevancy, if any, of such documents is vastly outweighed by the extraordinary burden of processing, reviewing and producing them. For instance, we understand that logic analyzers are used in the process and that they generate massive amounts of data.

2. Datel does not see the relevancy of the source code for its Xbox 360 memory card or controllers. Many of these files are not viewable in the ordinary course of document review and it is a substantial burden, therefore, to have such materials reviewed and produced. However, in light of the DMCA claims, Datel will make available the final versions of the source code that runs on personal computers for Datel's various file management software applications (including the software application that can be used in connection with Datel's memory cards) and powersave applications for the Xbox 360. Datel will also produce the specifications and schematics for its memory cards, controllers, and powersave products, to the extent that those files can be reviewed by Datel's attorneys without purchasing specialized engineering software.

3. We are not sure what you mean when you say "reverse engineering of Xbox 360 electrical interfaces." With respect to file formats, Datel will produce emails discussing the FATX file format (which, as you know, Datel does not concede requires any reverse-engineering to access or work with). With respect to cryptographic protocols, Datel will produce emails discussing resigning technologies for game saves (which is our best guess as to what you mean by cryptographic protocols).

4. Datel will provide a list of all the products it has developed or marketed for the Xbox 1 along with sell sheets (to the extent available) or other product descriptions.

5. We fail to see the relevancy of other products for other platforms going back to 1990. Datel will be providing financial information that will give a basic identification of all products (we will check how far back in time this goes), and Datel is willing to provide

Rohit K. Singla
August 10, 2010
Page 3

additional information by way of a product description for any particular item(s) upon
Microsoft's request.

6. Datel's damage claims are not limited to controllers and memory cards. Datel will
provide financial information that encompasses a broader range of products.

Very truly yours,

Robert D. Hallman

Enclosures

**Attachments to August 10, 2010 Letter**

August 10, 2005 11:42 AM PDT

# Digging profits out of Xbox

By Ina Fried

Staff Writer, CNET News

**Microsoft is looking to squeeze a profit out of the gaming market with a new royalty program tied to the release of its next Xbox console.**

Only accessory makers that get Microsoft's blessing and fork over a slice of their sales to the software maker will be able to produce Xbox 360 game pads, steering wheels, joysticks and other controllers.

In addition, in order to ensure that only authorized products connect to the new console, Microsoft is adding a security mechanism that will be available exclusively to those who sign a deal with the company, according to documents from a peripheral company filed with the SEC. The Xbox 360 console, announced in May, is slated to go on sale this holiday season.

With the last Xbox release, Microsoft had a licensing program in which makers of such gadgets could either pay a royalty and display an Xbox logo, or offer the products without paying the fee or using the logo.

The new royalty program could be part of Microsoft's goal of turning a profit with Xbox 360, something the company was not able to do with the prior generation console, said IDC analyst Schelley Olhava.

"Microsoft has made it very clear that it's all about profitability" with this generation of console, Olhava said. "Maybe this is a way they are looking to make additional

## Related Stories

Microsoft sees Xbox 360 in driver's seat
July 29, 2005

Xbox specs revealed
May 12, 2005

Xbox 360 preview gets jump on rivals
May 12, 2005

Apple seeks 'tax' on iPod accessories
March 16, 2005

**News.context**

**What's new:**
Microsoft has introduced a program to get royalties by restricting accessories for its upcoming Xbox 360 update to authorized makers only.

**Bottom line:**
The program could be part of Microsoft's

Yahoo! Buzz

revenue off of the Xbox." But, she said, the move could also be intended as "a way to ensure quality products make it out the door," reasoning that makers willing to pony up a share of the proceeds would be the kind of companies that make more reliable gear.

Microsoft declined to comment on the royalty structure for the program or outline how it compares with the logo-only program for the original Xbox. "We want to make sure the customers are getting the best experience possible," a company representative told CNET News.com.

goal of turning a profit with the console, something it wasn't able to do with the previous Xbox.

More stories on Xbox 360

According to a contract between Microsoft and Mad Catz Interactive, the software giant will get a share of the wholesale revenue generated by the accessory maker's Xbox add-ons. An edited version of the contract was filed by Mad Catz as part of the company's annual report to the Securities and Exchange Commission. The edited document does not state the percentage cut that Microsoft will get from the accessory sales.

Whatever the royalty figure amounts to, it will come on top of a variety of other revenue sources for Microsoft. These include upfront licensing fees from accessory makers, the money Microsoft gets from selling the console itself and, most importantly, the royalties the company gets from those who sell Xbox 360 games.

**"Microsoft has made it very clear that it's all about profitability."**
--Schelley Olhava, analyst, IDC

The decision to seek royalties from console controllers is not unlike a move Apple Computer made earlier this year, in which it sought to get as much as a 10 percent cut from iPod accessory makers that wanted to display Apple's "Made for iPod" logo. The move was referred to by some analysts as tantamount to a "tax" on the iPod economy.

The Mad Catz agreement, which refers to the Xbox 360 console by its Xenon code name, also hints at the type of security that Microsoft may use to ensure that third parties work with it to produce Xbox 360 add-ons.

"'Security Feature' means Microsoft's proprietary protocol used to validate authentic

Case3:09-cv-05535-EDL   Document81-1   Filed01/11/11   Page152 of 192

devices on the Xenon platform as implemented in a Xenon Chip or other implementation method designated by Microsoft in writing," according to the Mad Catz agreement.

## Precedent set years ago

Programs that seek royalties from accessory makers are not unprecedented. Indeed, game console makers make most of their money off of similar royalties charged on sales of the game software that runs on their machines. Nintendo pioneered the "Seal of Quality" years ago as a way to nail down game-related revenue. But the moves from Apple and Microsoft appear aimed at expanding the concept.

At the same time, the software maker's move carries some risk, Olhava said, noting that some of the appeal for third parties is the ability to offer controllers cheaper than the official Microsoft-branded accessories.

"There could be less opportunities for third-party peripheral makers, just because the market opportunities may not be there, because they cannot bring out products that are priced low enough," Olhava said.

It's unclear whether Microsoft's licensing plans will affect the market for third-party devices. The Microsoft representative would not say how

**See more CNET content tagged:**
royalty, Microsoft Xbox, Xbox 360, profit, console

CONTINUED: ...
Page 1 | 2

August 10, 2005 11:42 AM PDT

# Digging profits out of Xbox

By Ina Fried

Staff Writer, CNET News

### Related Stories

Microsoft sees Xbox
360 in driver's seat
July 29, 2005

Xbox specs revealed
May 12, 2005

Xbox 360 preview
gets jump on rivals
May 12, 2005

Apple seeks 'tax' on
iPod accessories
March 16, 2005

(continued from previous page)

the company expects the more-stringent requirements to impact the market for third-party accessories.

Companies that have made accessories in the past have not outlined any plans for the Xbox 360. A representative for Logitech declined to comment on the company's policies, but said, "We plan to have at least one product at launch."

A Radica Games representative declined to comment, while representatives for Thrustmaster and Mad Catz did not return calls seeking comment.

However, Mad Catz has said in regulatory filings that developing accessories for the new Xbox console is one of the company's "key initiatives" for the coming fiscal year.

The Mad Catz license agreement also puts limits on the type of controllers that third parties can make. Most notably, the add-on products can only be of the corded variety, while Microsoft itself is supporting wireless controllers.

In addition to the restrictions on wireless products, the Mad Catz contract excludes light guns, memory units, hard drives and cheat cards. Licensed peripherals include game pads, steering wheels, arcade sticks, flight sticks and dance pads.

Microsoft declined to say if others might be licensed to produce such things or whether the company had separate deals for wireless add-ons.

**See more CNET content tagged:**

Yahoo! Buzz

Case3:09-cv-05535-EDL   Document81-1    Filed01/11/11   Page154 of 192

royalty, Microsoft Xbox, Xbox 360, profit, console

Previous page
Page 1 | 2



# Infineon Provides Key Components In Microsoft Xbox 360 Game Console

Business & Financial Press

August 30, 2005

Munich, Germany - August 30, 2005 - Infineon Technologies AG (FSE/NYSE: IFX) today announced that it will supply three key components for the Microsoft Xbox 360™ video game and entertainment system. Infineon will provide a removable solid-state memory unit product, a single-chip application-specific integrated circuit (ASIC) wireless game-pad controller that makes cables unnecessary for game play, and an advanced security chip.

Xbox 360 consoles with Infineon produced chips and components are expected to be on the shelves in the fourth quarter of this year. Financial details of the design collaboration and supply agreement were not disclosed.

"Collaboration with leading suppliers of semiconductors and electronic components is essential to the realization of Microsoft's vision to deliver entirely new capabilities in consumer entertainment," said Marc Whitten, Director, Xbox Peripherals at Microsoft. "Infineon's broad and complementary IP portfolio, system integration skill, manufacturing expertise and proven track record were crucial factors in our decision to work with the company on these components."

Infineon is leveraging its IP in areas such as security, memory control and embedded firmware into ASIC-based system solutions for the Xbox 360. For the memory unit, the company designed an ASIC memory controller, created the embedded software that runs on the chip and designed the system printed circuit board. And the security chip is a custom implementation of Infineon's proven authentication technology.

The chips were developed in Germany, Israel and Italy and will be manufactured in France. Using the flexibility of Infineon fab clusters, Infineon's ASIC components can be manufactured worldwide in multiple locations, allowing customers additional supply-chain flexibility and opportunity to expand. This is a very important value proposition in the consumer electronics industry where security of supply and reliable high-volume manufacturing are paramount.

"Today, customers require a system view to technology development in order to achieve increased performance, lower cost and a higher level of integration. Infineon is taking this system design approach to bring more value to its key customers," stated Peter Bauer, Member of the Management Board, Executive Vice President and Head of Automotive, Industrial and Multimarket business group at Infineon Technologies.

**About Xbox 360**

Xbox 360 is a very powerful video game and entertainment system, delivering the best games, the next generation of the premier Xbox Live online gaming service, and unique digital entertainment experiences that revolve around you. The system will launch this holiday season in Europe, Japan and North America, to be followed by availability in Australia, Colombia, Hong Kong, Korea, Mexico, New Zealand, Singapore and Taiwan in 2006. For more information, go to www.xbox.com/xbox360.

**About Microsoft**

Founded in 1975, Microsoft (Nasdaq "MSFT") is the worldwide leader in software, services and solutions that help people and businesses realize their full potential.

*Xbox, Xbox 360, and Xbox Live are either registered trademarks or trademarks of Microsoft Corporation in the United States and/or other countries.*

## About Infineon

Infineon Technologies AG, Munich, Germany, offers semiconductor and system solutions for automotive, industrial and multimarket sectors, for applications in communication, as well as memory products. With a global presence, Infineon operates through its subsidiaries in the US from San Jose, CA, in the Asia-Pacific region from Singapore and in Japan from Tokyo. In fiscal year 2004 (ending September), the company achieved sales of Euro 7.19 billion with about 35,600 employees worldwide. Infineon is listed on the DAX index of the Frankfurt Stock Exchange and on the New York Stock Exchange (ticker symbol: IFX). Further information is available at www.infineon.com.

## Information Number

INFAIM200508.085e

## Ask Infineon!

International Toll Free:

0(0)800 951 951 951

Direct Access:

+49 89 234 65555

Infineon is happy to help you:

- Infineon Service Center

## Where to buy

Please use our location finder to get in contact with your nearest Infineon distributor or sales office

- Find a location

© 1999 - 2010 Infineon Technologies AG - Usage of this website is subject to our Usage Terms - Imprint - Contact - Privacy Policy

· **Ads by Google**· Xbox 360 Games    Team Xbox    Xbox Reviews    Xbox Mag

# Xbox 360 Third Party Peripheral Manufacturers Subject to Microsoft Royalties

Sep 15, 2005 @ 10:55 pm
Filed under Accessories · 🇩🇪 Deutsch

Quarterly financial filings from peripheral manufacturer Mad Catz Interactive have revealed that Microsoft intends to implement a royalty-based system for the manufacture of third party peripherals for its next generation Xbox 360 console. Such a system has long been in place for third-party software manufacturers, but this is the first time a royalty policy has been implemented for hardware manufacturers.

Analysts have speculated that this move has been driven by Microsoft's desire to make the Xbox 360 a profitable venture, considering that the software giant failed to turn a profit on the Xbox 1. In an interview with CNET news, IDC analyst Schelly Olhava stated, "Microsoft has made it very clear that it's all about profitability with this generation of console. Maybe this is a way they are looking to make additional revenue off of the Xbox."

Microsoft itself has claimed that the Xbox 360 royalty scheme is essentially a form of quality control, designed to ensure that third party peripherals for the video games console meet certain standards. A Microsoft representative commented to CNET news that, "We [Microsoft] want to make sure the customers are getting the best experience possible."

According to the Mad Catz documents, Xbox 360 third-party peripheral manufacturers will have to purchase a "Xenon chip". This chip will execute a protocol with the Xbox 360 video games console to prove its authenticity as an officially licensed product. Peripherals without the chip will not be able to correctly execute the protocol, and will thus be unable to connect to or work with the Xbox 360 console.



The Mad Catz contract also appears to specify that the firm will only be able to produce wired controllers for the Xbox 360 console, which would preclude it from manufacturing other peripherals such as wireless controllers, memory units or add-on hard drives. At this stage, it's unclear whether Microsoft will allow other third parties to make a more expansive range of peripherals for the Xbox 360, or if these accessories will be available as first-party versions only.

As Businessweek states, "This move is a calculated risk by Microsoft, one with high rewards and very real risks. While the deal may provide a new stream of revenue never fully tapped by console makers in the past, the licensing agreements may also alienate third-parties and drive them into supporting the PS3 and Revolution with increased vigor."

URL: http://www.xb360info.com/xbox/accessories/109

# Exhibit O



HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

*A Professional Corporation*

Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4024

Telephone 415.434.1600
Facsimile 415.677.6262
*www.howardrice.com*

Writer's Information:

Martin R. Glick
*mglick@howardrice.com*

September 29, 2010

**VIA EMAIL**

Rohit K. Singla
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105-2907

> Re:   *Datel Holdings Ltd., et al. v. Microsoft Corporation*
>        (N.D. Cal.) Case No. CV 09-5535 EDL

Dear Rohit:

This letter responds further regarding Datel's responses to Microsoft's document requests, and in particular to Requests for Production Nos. 1 and 2.  As you know, we have been discussing for some time now the issues relating to the relevancy and burdens involved with these requests.  We will send a separate letter documenting yesterday's discussion of other pending discovery issues.

On August 10, 2010 we sent you a detailed response concerning discovery into the "how" Datel reverse-engineered the Infineon security chip used in the Xbox 360 as opposed to the "what" Datel's products are in the end.  You have never responded to that letter or to the points and questions contained within it.  It is attached to this letter and fully incorporated herein to avoid restatement of it a second time.  Moreover, very shortly after Microsoft filed its DMCA claim, Datel on June 7 sent interrogatories to Microsoft asking it to specify the technological measures that it contends that Datel circumvented in connection with any of Datel's products.  Although we agreed to extend the time for Microsoft to respond, on August 19 Microsoft served responses that were plain and simple evasions of the questions posed.  We sent you a pointed letter regarding those inadequate responses to Interrogatory Nos. 13, 17 and 18 on September 9 and met and conferred about it at the same time as we conferred regarding your document requests.  As you can appreciate, without that information, it is quite difficult to ascertain just what information you are asking for and why it may be pertinent.  In our call on September 10 you promised to supplement those answers without even arguing the point.  Jonathan Blavin has also indicated in a recent letter that such supplemental responses are forthcoming, but 19 days have passed since our call with no further responses by Microsoft.  Why is it so difficult for Microsoft—having asserted its DMCA counterclaim—to answer these basic core questions?  It is our position that any motion to compel on technical documents is intertwined with these interrogatories and it would be premature for Microsoft to file a motion until after it has properly answered and given Datel an opportunity to consider the further response now so long overdue.

Rohit K. Singla
September 29, 2010
Page 2

At the hearing on the motion to bifurcate the DMCA claims, you and I discussed with Judge Laporte the issue of production of technical documents and the substantial burdens involved in the discovery you seek. While she was quite explicit that she was not deciding the issue based on our few comments back and forth, she did observe that "You need to know the product's design, but not necessarily . . . how they got to that point." [Hearing Transcript at p.71.] That is the distinction that now appears to be the root of our disagreement.

So let's be as clear as we can be. We think you owe us a response to the issues raised in the attached letter from Rob Hallman including the basis for seeking the details *of the process by which* Datel reverse-engineered the Xbox 360 authentication chip as well as the interrogatory responses you promised to supplement, and that should happen before any motion would be proper or ripe. Nevertheless, so there is no ambiguity, Datel intends to produce—and indeed already has produced—nearly all of the technical documents in its possession that you have requested. In particular, Datel's production includes documents reflecting the technical specifications, components, implementation process (e.g., the selection of vendors), and testing for all of the Datel's Xbox and Xbox 360 products referenced in your September 16, 2010 email (Action Replay Powersaves for the Xbox 360, the Max Memory Card for the Xbox 360, the TurboFire controllers for the Xbox 360, the Wireless Headset for the Xbox 360, the Wireless Network Adapter for the Xbox 360, and the full range of products for the Xbox 1). To the extent such documents exist, they have not been withheld.

In addition, Datel has produced to you copies of all sell sheets it was able to locate in its files (including draft sell sheets) for all products for all platforms.

Datel has also produced documents sufficient to show all domestic sales of all of its products for all platforms, as far back as 2001.

Datel also agrees to make available to you the source code for the software that runs on its Xbox and Xbox 360 accessories or is included with those accessories for installation on a PC. Pursuant to the protective order, this source code will be made available at Howard Rice's offices for inspection.

To sum things up, Datel's document production will cover the complete design of the products at issue—the materials Judge Laporte noted preliminarily should be produced—including technical documents regarding Datel's hardware and software for interfacing with the Xbox 360 authentication scheme, technical details about the finished products for the Xbox 360, *technical details about Datel's security chip*, along with the documents responsive to other document requests concerning Datel's successful reverse engineering process: documents addressing Datel's investments in reverse-engineering efforts, addressing Datel's purposes behind those efforts, and addressing any connection between the authentication scheme or security chip and game saves.

What we have not produced are documents that show how Datel engaged in the reverse engineering process itself. That set of documents is extremely burdensome to collect and review, and bears no relevance whatsoever to the case. Indeed, in the two months since our July 7 letter,

Rohit K. Singla
September 29, 2010
Page 3

Microsoft has not provided any explanation as to why these documents are relevant, except for the mistaken assertion that Datel was seeking to recover the costs of its reverse-engineering program.  As we noted in our August 10 letter, this was a long-term project involving advanced technological processes—including, for example, extensive imaging from electron microscope machinery.  As we have mentioned, logic analyzers were used in the process and they generate massive amounts of data.  There are other technical files generated in the course of the reverse-engineering process that we are not equipped to review in the course of our document production.  Emails back and forth regarding the technical processes would also be very burdensome to review and produce—particularly given the numerous file attachments.

    We look forward to your further responses and to the promised interrogatory answers.

Very truly yours,

Martin R. Glick

# Exhibit P



HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

*A Professional Corporation*

November 24, 2010

Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4024

Telephone 415.434.1600
Facsimile 415.677.6355
*www.howardrice.com*

Writer's Information:

Daniel B. Asimow
dasimow@howardrice.com

**VIA EMAIL**

Rohit K. Singla, Esq.
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907

   Re: *Datel Holdings Ltd., et al. v. Microsoft Corporation*
     (N.D. Cal.) Case No. CV 09-5535 EDL

Dear Rohit,

  I am writing to follow up on our conversation on Thursday, November 18, 2010, in which you asked me several questions about Datel's document production. In the spirit of informal resolution of these issues, we're providing the following clarifications. Please feel free to call me if you would like to discuss these issues further.

  1. <u>Reverse Engineering</u>. You asked if Datel had withheld otherwise responsive documents based on its reverse engineering objection (which has been the subject of numerous prior calls, emails, and letters) other than documents showing the reverse engineering of the "Maxwell" chip. As we understand Microsoft's position from its interrogatory responses, Microsoft asserts that there are three other technological measures the circumvention of which allegedly violates the DMCA. These are the FATX file format, the shape and voltage levels of the memory card's USB plug, and the hashing technique used for certain game save files. Subject to Datel's general and specific objections (e.g., privilege and certain file types that we did not have a viewer for), we haven't withheld such documents.

  2. <u>Source Code</u>. You asked for clarification of what source code Datel intended to make available. Datel will make available the source code for (a) Datel's version of the authentication chip and (b) the PC-based FATX file manager programs that were included with Datel's Max Memory Card, Xport, Xsata, Transfer Cable, and Powersaves products. We are still in the process of assembling this material and I will let you know when it is ready for your expert to review. As provided in the protective order, we'll need to see the requisite information about your expert in advance. I believe this satisfies your requests for source code, but let us know if there are other items you wish to discuss.

  3. <u>Sell Sheet for PSP 3000 Battery</u>. A sell sheet for Datel's PSP 3000 Battery can be found at DAT-SF0044503.

Rohit K. Singla, Esq.
November 24, 2010
Page 2

    4.   <u>Excluded File Types</u>.  You asked if we would provide a list of file types that were not produced because we did not have the ability to review them.  Datel is willing to provide this list if Microsoft would do the same.

    I hope this answers your questions concerning Datel's production.

                  Very truly yours,

                  Daniel B. Asimow

# Exhibit Q

MUNGER, TOLLES & OLSON LLP

560 MISSION STREET

TWENTY-SEVENTH FLOOR

SAN FRANCISCO, CALIFORNIA 94105-2907

TELEPHONE (415) 512-4000

FACSIMILE (415) 512-4077

———————

355 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-1560

TELEPHONE (213) 683-9100

FACSIMILE (213) 687-3702

November 28, 2010

WRITER'S DIRECT LINE
(415) 512-4032
(415) 644-6932 FAX
Rohit.Singla@mto.com

**BY EMAIL**

Daniel B. Asimow
Howard Rice Nemerovski Canady Falk & Rabkin
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4024

> Re:   *Datel Holdings Ltd., et al. v. Microsoft Corporation*
>       <u>USDC, Northern District of California Case No. CV 09-5535 EDL</u>

Dear Dan:

      I write to meet and confer regarding Datel's responses to Microsoft's Third Set of Requests for Production, Request Numbers 83 and 84. We have requested samples of each version of each Datel Xbox 360 and Xbox 1 accessory, as well as products for other platforms. We need these samples for testing by our experts, as trial exhibits, and for similar purposes. We are currently asking for only five samples for each version of each product. Given the upcoming close of fact discovery we require these as soon as possible. We have been unable to acquire some of them from Datel's own web site or other sources, without substantial delay. We also are unable now to acquire historical versions of Datel's products, some of which are no longer available for sale. Datel's objections do not specify any meaningful reason to withhold the requested items. If there are specific products or versions that it would be burdensome to produce or which Datel no longer has in its possession, custody or control, please identify them.

      We are particularly surprised that Datel has refused to produce samples of each version of the Xbox 360 accessories that are the basis for Datel's own damage claim, such as the MAX Memory Card, WildFire or Turbofire controllers, wireless headset, wireless networking adapter, etc. Nor can we understand Datel's refusal to produce samples of each version of each

Munger, Tolles & Olson LLP

Daniel B. Asimow
November 28, 2010
Page 2

product that is the subject of Microsoft's counterclaims, including transfer cables, harddrive interfaces, resigning software, and Action Reply gamessaves.  If Datel cannot confirm that these will be produced within a week or explain its inability to produce these, we will consider whether to move to compel or to seek other relief for Datel's refusal to comply with these basic discovery requests.

In a similar vein, please let us know whether Datel will produce 5 samples each — or explain its inability to do so — of the Lite Blue Tool and all other cheating/hacking products (whether commercially marketed or not) for the Xbox 1, PlayStation2, PlayStation3, PlayStation Portable, GameCube, Wii, and Nintendo DS.  If Datel is not sure whether a device constitutes a "cheating" or "hacking" product, we are happy to discuss on a device-by-device basis.

Finally, we also request a telephonic meet and confer regarding the broader request for samples of Datel's controllers, memory cards, and cheating products for the Xbox 1 and for other platforms.

Sincerely,

Rohit K. Singla

12411189.2

# Exhibit R

## Uhrig, Steven

| | |
|---|---|
| **From:** | Daniel B. Asimow [dasimow@howardrice.com] |
| **Sent:** | Tuesday, November 30, 2010 4:42 PM |
| **To:** | Singla, Rohit; Robert D. Hallman |
| **Cc:** | Hwang, Hojoon; Blavin, Jonathan; Mongan, Michael |
| **Subject:** | RE: Technical documents |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |

Rohit,

I'll try to clarify.

1. We have produced all documents regarding reverse engineering, to the extent they exist and aren't in any unreviewable file format, regarding the three other alleged anti-circumvention technologies identified in Microsoft's responses to interrogatories: the FATX file format, the shape and voltage levels of the memory unit's USB plug, and the hashing techniques used for certain game save files. I am not sure if this is different from what you are saying, but if, in addition to the three I list, there are other "Xbox 360 security lawyers other than Maxwell," we don't know what they are and accordingly I can't represent we've produced documents regarding them.

2. Again, to the extent they exist and aren't in unreviewable formats, we have produced documents showing how Datel's Xbox and Xbox 360 accessories function and their specifications. If by "code" you mean source code, please see my letter of November 24, which explains the source code we will make available.

3. As to so-called "hacking or cheating products" for other platforms that never reached market, we obviously take issue with the description of Datel's products as hacking products. We have said repeatedly that we don't see any relevance, or certainly not sufficient relevance that could justify the burden of collection and review, for voluminous documents about devices for other platforms -- and particularly about devices that never even reached market. We have produced sales data for all of Datel's products, and the general description, capabilities, appearance and pricing of products as reflected in sell sheets. For the life of me I can't see the relevance of your further requests for more information on non-Xbox or Xbox 360 products.

I hope this closes the loop on this.

Dan

---

**From:** Singla, Rohit [mailto:Rohit.Singla@mto.com]
**Sent:** Saturday, November 27, 2010 2:21 PM
**To:** Daniel B. Asimow; Robert D. Hallman
**Cc:** Hwang, Hojoon; Blavin, Jonathan; Mongan, Michael
**Subject:** RE: Technical documents

Thanks Dan. Hope you had a good Thanksgiving.

I want to make sure that we are understanding each other. Could you respond to the points below? As I understand your letter,
    1. Datel is producing documents detailing its reverse engineering efforts for all Xbox 360 security layers other than Maxwell.
    2. Datel is producing all technical documents/code/specifications relating to its Xbox 1 and Xbox 360 accessories, except for documents showing how Maxwell was reverse

engineered.

   3. I do not think your letter address point #3.

Is that correct?

---

**From:** Daniel B. Asimow [mailto:dasimow@howardrice.com]
**Sent:** Wednesday, November 24, 2010 11:29 AM
**To:** Singla, Rohit; Robert D. Hallman
**Subject:** RE: Technical documents

Rohit, I see that my letter from this morning crossed with your email from even earlier this morning.  I think my letter addresses these points, but let's talk after the holiday if you have further questions on these issues.  Dan

---

**From:** Singla, Rohit [mailto:Rohit.Singla@mto.com]
**Sent:** Wednesday, November 24, 2010 3:01 AM
**To:** Daniel B. Asimow; Robert D. Hallman
**Cc:** Mongan, Michael; Hwang, Hojoon; Blavin, Jonathan
**Subject:** Technical documents

Dan — I am following up on our conversation last week on the issue of technical documents. Despite months of meet and confer, we still have not been able to obtain confirmation of what documents Datel has produced or will produce.  Here is the position that I understand Datel to have taken based on our conversation.  I note that this differs in some ways from the positions taken in Datel's prior letters, or at least our understanding of those prior letters.

1. Circumvention.  Datel has not and will not produce any documents that demonstrate how it has reverse engineered and ultimately circumvented the various security layers of the Xbox 360.  So, for example, Datel is not producing documents that show how it hacked the cryptographic signatures that protect gamesaves and developed its own "resigning" software. Datel also is not be producing documents showing how it hacked the Maxwell security chip that prevent unauthorized accessories from being used with the Xbox.  Datel takes this position even if there are no other technical specifications or documents that show how its products work, i.e., if the only specification for its own product is a description of how an Xbox 360 security layer is implemented.

2. Specifications and Software Code.  I understand that Datel has produced all documents that describe how its products function, including how its chip that mimics Maxwell functions — except and unless such documents fall within category 1 above.  As I understand, this includes Datel's agreement to make available at its offices at some unspecified time the software code for its Xbox 360 products at issue here, including the code used to implement Datel's chip that mimics Maxwell.

3. Products for Other Platforms.  Datel will not provide any disclosure of hacking or cheating products that it has considered for other platforms but which did not ultimately reach the stage of development where a "sell sheet" was prepared.

---

This message and any files or text attached to it are intended only for the recipients named above, and contain information that may be confidential or privileged. If you are not an intended recipient, you must not read, copy, use or disclose this communication. Please also

notify the sender by replying to this message, and then delete all
copies of it from your system. Thank you.

_____

This message and any files or text attached to it are intended only for
the recipients named above, and contain information that may be
confidential or privileged. If you are not an intended recipient, you
must not read, copy, use or disclose this communication. Please also
notify the sender by replying to this message, and then delete all
copies of it from your system. Thank you.

# Exhibit S



HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

*A Professional Corporation*

December 1, 2010

Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4024

Telephone 415.434.1600
Facsimile 415.677.6355
*www.howardrice.com*

Writer's Information:

Daniel B. Asimow
*dasimow@howardrice.com*

**VIA EMAIL**

Rohit K. Singla, Esq.
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105-2907

Re:    *Datel Holdings Ltd., et al. v. Microsoft Corporation*
(N.D. Cal.) Case No. CV 09-5535 EDL

Dear Rohit,

I am writing in response to your letter of Sunday, November 28, 2010 concerning Datel product samples.

On November 3rd, Datel responded to your Request No. 83—for five samples of every product Datel developed for the Xbox 1 or Xbox 360—by objecting, among other things, that the Request was overbroad, unduly burdensome and sought irrelevant materials, but indicated that Datel would be willing to meet and confer in an effort to narrow the scope of the Request. Datel suggested that Microsoft consider asking for a single sample of particular products that are (a) at issue in the case, and (b) not otherwise readily accessible to Microsoft.

Datel raised similar objections in response to your Request No. 84—for three samples of each controller, memory card, or "cheating product" ever developed for the Sony PlayStation 1, PlayStation 2, PlayStation 3, PSP, Nintendo 64, Game Cube, Game Boy, Wii, DS, and Sega—and indicated that it would meet and confer to determine if there are particular products for other platforms that Microsoft actually needs a sample of, and which are not otherwise readily accessible to Microsoft.

It has been nearly a month since we invited you to meet and confer over which Datel products at issue in this case you have not been able to obtain easily, and you still haven't identified any particular products in that regard. Instead, we have received a letter from you threatening a motion to compel to be filed within one week.

We don't think there can be any dispute that your Requests as currently framed are overbroad. You're asking for 5 copies each of over 100 SKUs for the Xbox 1 and Xbox 360 platforms alone: that's many thousands of dollars of products, the vast majority of which have never been mentioned in Microsoft's defenses or counterclaims. Many of Datel's SKUs are

Rohit K. Singla, Esq.
December 1, 2010
Page 2

created for specific retailers and have not even been offered for sales in the United States. On top of that, you're asking for three copies of numerous products from as many as ten other video game platforms: hundreds of products, many thousands of dollars of inventory and, in this case, even harder to try to conceive of any possible relevance to this action.

If, among all these extraneous and expensive product requests, you can identify particular products that are at issue in the case and that you have not been able to obtain, we will be happy to discuss with you how Datel can help. For example, if you have not been able to obtain one of the products at issue in Datel's antitrust claims (Datel's memory card, controller, network adapter or headset for the Xbox 360), we would be glad to supply you with a sample. Likewise, if you have been unable to obtain a sample of any of the products that form the basis of your DMCA or trademark counterclaims (Datel's Transfer Kit, Xsata, Xport, Max Battery Charger, or 360 Powersaves product), we will again endeavor to supply you with a copy of what you are missing—although it seems unlikely that you do not have these products, since you included images from them in your counterclaims. This is of course substantially greater assistance than Microsoft was willing to provide Datel in the ITC proceedings—where it has been unwilling to supply Datel with a single copy of the controller specimens that it submitted to the Commission.

I hope that we can work together to narrow your Requests to something substantially more feasible and more relevant to the claims and defenses in the case. I look forward to receipt of your identification of particular products at issue in the case that you need samples of, along with some explanation as to why you need them.

Very truly yours,

Daniel B. Asimow

# Exhibit T

**Uhrig, Steven**

| | |
|---|---|
| **From:** | Singla, Rohit |
| **Sent:** | Wednesday, December 01, 2010 6:10 PM |
| **To:** | Jane Rustice |
| **Cc:** | Mongan, Michael; Blavin, Jonathan; Daniel B. Asimow; Robert D. Hallman |
| **Subject:** | RE: Meet and Confer Correspondence |

Dan --

To start with, please provide 5 copies of each version of the Xbox 360 Max memory unit, Turbofire or Wildfire controller, Network adapter, wireless headset, Xsata, Xport, Transfer Kit, and Powersaves products. If Datel cannot or will not do that immediately, please explain. We have already said that we have not been able to obtain many of these products, particulary older versions.

---

**From:** Jane Rustice [mailto:jrustice@howardrice.com]
**Sent:** Wednesday, December 01, 2010 5:52 PM
**To:** Singla, Rohit
**Cc:** Mongan, Michael; Blavin, Jonathan; Daniel B. Asimow; Robert D. Hallman
**Subject:** Meet and Confer Correspondence

Please see the attached correspondence from Dan Asimow in response to your letter of November 28, 2010.



**Jane Rustice**, *Legal Secretary*
HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN, A Professional Corporation
Three Embarcadero Center, Seventh Floor, San Francisco, CA 94111-4024  415.434.1600
DD: 415.677.6535  F: 415.677.6262
jrustice@howardrice.com  www.howardrice.com
Please consider the environment before printing this email



---

This message and any files or text attached to it are intended only for
the recipients named above, and contain information that may be
confidential or privileged. If you are not an intended recipient, you
must not read, copy, use or disclose this communication. Please also
notify the sender by replying to this message, and then delete all
copies of it from your system. Thank you.

1/7/2011

# Exhibit U

**From:**       Singla, Rohit
**Sent:**       Monday, December 20, 2010 6:20 PM
**To:**         Daniel B. Asimow; Robert D. Hallman
**Cc:**         Blavin, Jonathan; Mongan, Michael; Hwang, Hojoon
**Subject:**    Product Samples

Dan —

We are still waiting to hear whether Datel will produce product samples for each version of each of its Xbox 360 products at issue in this case.  We offered, as a compromise, to start with that set and then discuss whether we require samples of products for other platforms.  With respect to Xbox 360 products, you asked what we meant by "each version," and I explained that Datel could exclude "versions" that only had changes in packaging design or branding.  We are requesting, however, each version that includes any differences in functionality, software, features, documentation, etc. — regardless of whether it was expressly designated as a "new version" or "updated version."  We would like 5 samples of each version so that we can provide a couple to experts and consultants, a couple for our internal use, and some that can be used as trial exhibit.  As we have said, if there are specific products that Datel no longer has in its possession or that it would be difficult for Datel to provide, we are happy to discuss.

You had asked which Datel products we have been able or not been able to obtain.  I am concerned that might reveal work product, and so we decline to answer that inquiry.  I will say, however, that there are many Datel products that took months to be delivered after being ordered from Datel's web site or that were never delivered at all.  There are other products Datel has mentioned that we still do not see in the marketplace, such as Datel's wireless adapter.  Finally, we obviously have had no ability to obtain versions of Datel's Xbox 360 products that predate the filing of this case.

Regards
**Rohit K. Singla** | **Munger, Tolles & Olson LLP**
560 Mission Street | San Francisco, CA 94105
Tel:  415.512.4032| Fax:  415.644.6932 | rohit.singla@mto.com

# Exhibit V



HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

*A Professional Corporation*

December 27, 2010

Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4024

Telephone 415.434.1600
Facsimile 415.677.6355
*www.howardrice.com*

Writer's Information:

Daniel B. Asimow
*dasimow@howardrice.com*

**VIA EMAIL**

Rohit K. Singla, Esq.
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA  94105-2907

Re:     *Datel Holdings Ltd., et al. v. Microsoft Corporation*
        (N.D. Cal.) Case No. CV 09-5535 EDL

Dear Rohit,

I am writing in response to your email of December 20, 2010, concerning samples of Datel's Xbox 360 products at issue in this case.  Your email followed our discussion of the issue by telephone on December 15, 2010.

In our discussion, I requested and you agreed to tell me which Datel products you already had acquired so that I would not need to burden my client with requests for such products.  In your email, you switched course and decided you would not tell us what you already had, purportedly on the basis that to do so would "reveal work product."

This is a silly game of hide the ball designed to burden Datel.  It is apparent to us that you already have all or nearly all of the products.

Datel's antitrust claim concerns four Xbox 360 products — memory cards, controllers, wireless headsets, and network adapters.  We know that Microsoft has the memory cards and controllers, based on ample emails you have produced discussing the memory cards and the pictures of the controllers you included in your ITC complaint.  The network adapters are available for purchase at Walmart and you may acquire one there.  The headsets are available for purchase from Datel's web sites, but because it is not clear that you have been able to obtain one (and you will not tell me one way or the other), we will provide you with two samples of the headset.  I expect to have these to you by the end of the first week of January.

With respect to your counterclaims, there appear to be five products at issue — the Transfer Cable, Xport, Xsata, Action Replay Powersaves, and the memory cards.  It is apparent to us that you already have the Xport and Xsata because there are pictures of them on pages 27 and 28 of your counterclaim.  As mentioned above, we are aware that Microsoft already has the memory unit from emails, and there are likewise emails indicating that Microsoft has had the

Rohit K. Singla, Esq.
December 27, 2010
Page 2


Transfer Cable since 2006 (and even requested and obtained changes to the packaging of it). With respect to Action Replay Powersaves, you told me in a conversation many months ago that you already had a copy.  Thus, we conclude that you already have all of the products potentially at issue in the counterclaims.

As to prior version of Datel's products, we are inquiring with our client whether they have sufficient inventory of prior versions (which, as you clarified in your email, differ in functionality, software, features or documentation from the current version) to make them available to you for testing.  Because of the holidays, it will likely be the second or third week of January before I have more information for you on this.


Very truly yours,

Daniel B. Asimow

# Exhibit W

## Uhrig, Steven

| | |
|---|---|
| **From:** | Blavin, Jonathan |
| **Sent:** | Thursday, December 30, 2010 5:09 PM |
| **To:** | 'Martin R. Glick' |
| **Cc:** | Hwang, Hojoon; Singla, Rohit; Mongan, Michael |
| **Subject:** | RE: |

Marty,

The documents relating to Datel's licensing of any technology created in part through the reverse engineering of Microsoft's products are relevant for at least two reasons.

First, the dashboard update was global in nature, and our position is that it is justified not only by the security, cheating, and other threats to the Xbox 360 posed by Datel products created through the reverse engineering of Microsoft technology, but also by any threats posed by third party products that rely on technology created through Datel's reverse engineering, whether those products are sold in the US or abroad.  Indeed, in the days of the Xbox 1, various third party products posing security and cheating threats quickly proliferated globally.  Second, Datel has made an issue in this case about how Microsoft has licensed its technology, including the Maxwell chip and wireless protocol technology.  We believe that equally relevant is how Datel has licensed its reverse engineering of that very technology.

Given that RFP 85 is broad enough to encompass Datel's reverse engineering of *any* Microsoft product, I said that we would consider limiting it to documents relating to any licensing, sale or other distribution or proposal for the same of any technology, product or service embodying, constituting, reflecting, arising out of or relating to Datel's reverse engineering of (1) the Maxwell chip; and (2) the wireless protocol to any third party, including but not limited to Big Ben and Atomic.  This request includes any communications relating to any licensing, sale or other distribution or *proposal* of such technology, and thus would include not only "all license or sales documents for *actual* transactions," as you note, but also communications relating to any *proposed* sales or transactions.

I look forward to hearing back from you early next week.  Happy New Year as well.

Thanks,
Jonathan

---

From: Martin R. Glick [mailto:mglick@howardrice.com]
Sent: Thursday, December 30, 2010 4:02 PM
To: Blavin, Jonathan
Subject:

  Hi Jonathan,   I was checking my notes re our conversation on RFP 85 and want to be sure I understand correctly the resolution that I believe you suggested in our discussion.  By all means correct anything that I have that is incomplete or incorrect.   You suggest that the inquiry is relevant at least to a Microsoft claim that any such deals entered into by Datel could be evidence  justifying the Microsoft update that disabled Datel controllers and memory units.  Therefore you say Microsoft is entitled to information re sales or licensing of  the Datel chip (or its reverse engineering details or technology) even if just to Europe or other parts of the World outside of the United States. (As you know, we disagree.)   On that basis the proposition I understood was:

  (1)  The inquiry would be as to the Maxwell chip only    (You mentioned the "hopping" wireless scheme but I don't have down that it was to be included for this purpose.)

  (2)  We would provide all license or sales documents for actual transactions with Big Ben, Atomic, or any other third party, even if not for any distribution in the United States for the Maxwell chip or the sale of any technology related to the reverse engineering of that chip. (I am absolutely certain that Datel would never give anyone that

information any more that Microsoft would give out its source code or know how.)

   This, again as I have it noted, was asserted to reduce the search burden but require the evidence of any and all such actual deals   As per my email earlier today, I hope to talk to the client on Monday when he is back in the UK about this suggestion so would very much appreciate your input on the above so I can go over the choices with him and be accurate about it.   Thanks  and Happy New Year   Marty

_____

This message and any files or text attached to it are intended only for the recipients named above, and contain information that may be confidential or privileged. If you are not an intended recipient, you must not read, copy, use or disclose this communication. Please also notify the sender by replying to this message, and then delete all copies of it from your system. Thank you.

# Exhibit X

## Uhrig, Steven

| | |
|---|---|
| **From:** | Martin R. Glick [mglick@howardrice.com] |
| **Sent:** | Tuesday, January 04, 2011 4:13 PM |
| **To:** | Blavin, Jonathan |
| **Cc:** | Daniel B. Asimow; Robert D. Hallman |

**Subject:** RE:

   Jonathan,  Datel continues to disagree that RFP 85 calls for relevant documents or documents that would lead to the discovery of relevant evidence.  We do agree that the Microsoft Fall 2009 update, implemented for the sole purpose of locking out Datel controllers and memory units and rendering useless units Datel already sold and was in the process of selling, was a Microsoft worldwide action. As you know, we contend and believe that it was done to prevent competition and to injure Datel with consumers and retailers and for no other reasons. It remains our view that the rationale set forth in your argument below is no more than an after the fact attempt to come up with some sort of more palatable explanation and that, in any event, Datel actual activity abroad to license or sell its solution for use outside the United States adds nothing to that contention.  In that connection, I was today reviewing Microsoft's objections to recent Datel RFPs and noted that Microsoft General Objection No. 12 states that:  "Microsoft objects to each Request to the extent that it would require ... production of documents relating to Microsoft's business outside of the United States.... Microsoft will produce responsive documents *only* in so far as they relate, in whole or in part, to information concerning the United States." Microsoft cannot have it both ways.

   Nevertheless, and without waiving any of its objections including objections to relevance and materiality, Datel will agree to respond to the RFP with documents sufficient to show any Maxwell Chip and/or wireless protocol *actual* transactions (herein collectively, for convenience, referred to as "Chip Units"), including financial data regarding any Microsoft 360 Chip Units actually licensed or sold.   These, to the extent there any any, would not impose a substantial burden to identify and produce. (Locating and producing *all* communications about any such relationships, discussions, and other back and forth would require a significant search as they are not kept by any such identifier and the back and forth has no relevance whatever.)  As to possibly *proposed* transactions that *might* have involved Chip Units, those would be unduly burdensome to search for as well as difficult to even identify.  Datel does not keep track of requests it might receive from third parties for sale or license of its interoperability chip or wireless protocol.  Nor does it keep records as to whether or not, in the course of discussion of a possible business relationship, either party gave consideration to a transaction that might potentially have included sale or license of Chip Units but did not do so in the end.  The very scant possible relevance of any such discussions that did not lead to a contract or other agreement is far outweighed by the burden of trying to find them.

   We will begin now the collection of the documents identified above and provide them to you as soon as we reasonably can gather them.   Thanks for your attempts to reach resolution as to this RFP.   We hope you will find this further effort on our part to be satisfactory.   Best,   Marty

---

**From:** Blavin, Jonathan [mailto:Jonathan.Blavin@mto.com]
**Sent:** Thursday, December 30, 2010 5:09 PM
**To:** Martin R. Glick
**Cc:** Hwang, Hojoon; Singla, Rohit; Mongan, Michael
**Subject:** RE:

Marty,

The documents relating to Datel's licensing of any technology created in part through the reverse engineering of Microsoft's products are relevant for at least two reasons.

First, the dashboard update was global in nature, and our position is that it is justified not only by the security, cheating, and other threats to the Xbox 360 posed by Datel products created through the reverse engineering of Microsoft technology, but also by any threats posed by third party

products that rely on technology created through Datel's reverse engineering, whether those products are sold in the US or abroad.  Indeed, in the days of the Xbox 1, various third party products posing security and cheating threats quickly proliferated globally.  Second, Datel has made an issue in this case about how Microsoft has licensed its technology, including the Maxwell chip and wireless protocol technology.  We believe that equally relevant is how Datel has licensed its reverse engineering of that very technology.

Given that RFP 85 is broad enough to encompass Datel's reverse engineering of *any* Microsoft product, I said that we would consider limiting it to documents relating to any licensing, sale or other distribution or proposal for the same of any technology, product or service embodying, constituting, reflecting, arising out of or relating to Datel's reverse engineering of (1) the Maxwell chip; and (2) the wireless protocol to any third party, including but not limited to Big Ben and Atomic.  This request includes any communications relating to any licensing, sale or other distribution or *proposal* of such technology, and thus would include not only "all license or sales documents for *actual* transactions," as you note, but also communications relating to any *proposed* sales or transactions.

I look forward to hearing back from you early next week.  Happy New Year as well.

Thanks,
Jonathan

---

**From:** Martin R. Glick [mailto:mglick@howardrice.com]
**Sent:** Thursday, December 30, 2010 4:02 PM
**To:** Blavin, Jonathan
**Subject:**

  Hi Jonathan,   I was checking my notes re our conversation on RFP 85 and want to be sure I understand correctly the resolution that I believe you suggested in our discussion.  By all means correct anything that I have that is incomplete or incorrect.   You suggest that the inquiry is relevant at least to a Microsoft claim that any such deals entered into by Datel could be evidence  justifying the Microsoft update that disabled Datel controllers and memory units.  Therefore you say Microsoft is entitled to information re sales or licensing of  the Datel chip (or its reverse engineering details or technology) even if just to Europe or other parts of the World outside of the United States.  (As you know, we disagree.)   On that basis the proposition I understood was:

  (1)  The inquiry would be as to the Maxwell chip only   (You mentioned the "hopping" wireless scheme but I don't have down that it was to be included for this purpose.)

  (2)  We would provide all license or sales documents for actual transactions with Big Ben, Atomic, or any other third party, even if not for any distribution in the United States for the Maxwell chip or the sale of any technology related to the reverse engineering of that chip.  (I am absolutely certain that Datel would never give anyone that information any more that Microsoft would give out its source code or know how.)

   This, again as I have it noted, was asserted to reduce the search burden but require the evidence of any and all such actual deals   As per my email earlier today, I hope to talk to the client on Monday when he is back in the UK about this suggestion so would very much appreciate your input on the above so I can go over the choices with him and be accurate about it.  Thanks  and Happy New Year   Marty

---

This message and any files or text attached to it are intended only for the recipients named above, and contain information that may be confidential or privileged. If you are not an intended recipient, you must not read, copy, use or disclose this communication. Please also notify the sender by replying to this message, and then delete all copies of it from your system. Thank you.

---

This message and any files or text attached to it are intended only for the recipients named above, and contain information that may be confidential or privileged. If you are not an intended recipient, you must not read, copy, use or disclose this communication. Please also notify the sender by replying to this message, and then delete all copies of it from your system. Thank you.

# Exhibit Y

## Uhrig, Steven

**From:**    Robert D. Hallman [rhallman@howardrice.com]

**Sent:**    Tuesday, January 11, 2011 2:32 PM

**To:**    Singla, Rohit; Daniel B. Asimow

**Cc:**    Hwang, Hojoon; Blavin, Jonathan; Mongan, Michael; Glick, Martin

**Subject:** RE: Clarification regarding Datels' document production

Rohit,

Thanks for your email. I've looked at my July 7th letter and I agree with you that it fails to state the general objection regarding domestic vs. international sales and licensing. I apologize if that caused confusion. We did raise that issue as a general objection in our Supplemental Responses to the First Set of RFPs on Nov. 15th:

Datel objects to the Requests as overbroad and unduly burdensome to the extent they seek Datel's communications with foreign retailers and distributors. Datel has produced domestic and worldwide sales data, and does not presently intend further review and production of the voluminous set of documents related to foreign retailers, sales, licensing and distribution.

We have not withheld anything pertaining to U.S. transactions (for chip technology or wireless technology). In addition, I saw Marty's recent email (Jan. 4th) where he agreed that we would provide documents sufficient to show any actual transactions--worldwide--regarding Datel's authentication chip or wireless protocol, and I have been gathering those documents for production.

Regards,
Rob

---

**From:** Singla, Rohit [mailto:Rohit.Singla@mto.com]
**Sent:** Monday, January 10, 2011 3:49 PM
**To:** Robert D. Hallman; Daniel B. Asimow
**Cc:** Hwang, Hojoon; Blavin, Jonathan; Mongan, Michael; Martin R. Glick
**Subject:** RE: Clarification regarding Datels' document production

Robert -- thanks for your response. Can you tell us where you believe that Datel took the following position: "we agreed to produce documents related to the sale and/or licensing of Datel's technology for the Xbox 360 authentication routine, but we did so subject to our general objection that we would produce documents relating to U.S.-- but not overseas--retail." That does not comport with our recollection; perhaps we missed it in our review of the correspondence. Please see your letter of July 7, 2010, at page 4 regarding Datel's response to RFP 3.

---

**From:** Robert D. Hallman [mailto:rhallman@howardrice.com]
**Sent:** Sunday, January 09, 2011 11:10 PM
**To:** Singla, Rohit; Daniel B. Asimow
**Cc:** Hwang, Hojoon; Blavin, Jonathan; Mongan, Michael; Martin R. Glick
**Subject:** RE: Clarification regarding Datels' document production

Rohit,

Dan is in Seattle, but he asked me to forward the following in response to your Friday email:

Consistent with item #1 in my November 30, 2010 email, we have not withheld from production

non-privileged, reviewable format documents concerning the FATX file format, the shape and voltage levels of the memory unit's USB plug, and the hashing techniques used for certain game save files. One of the reasons you may not be finding many documents, certainly as to the first 2 points, is that these measures are trivial--they didn't require any meaningful reverse engineering (everyone, including Datel, already knew how to work with FATX from Xbox 1 days). My recollection is that there were a number of documents related to "resigning" in connection with the powersaves product, but I don't have a list of the bates numbers. With everything else going on in the case we are not presently able to go through our whole production and identify for you by bates number the documents on a particular subject. However, we will endeavor to double-check our initial collection database to make sure there isn't anything on these subjects that we inadvertently failed to produce.

I checked in with Dan about your email below as well. As Marty indicated in his September 29 letter, we agreed to provide (and have provided) documents pertaining to the 360 Powersaves product notwithstanding the fact that it was never intentionally sold in the United States. Second, as you note, we agreed to produce documents related to the sale and/or licensing of Datel's technology for the Xbox 360 authentication routine, but we did so subject to our general objection that we would produce documents relating to U.S.--but not overseas--retail. What Marty and Jonathan have been discussing, as I understand it, is an expansion of Datel's collection and production so that it includes documents related to foreign sales or licensing (as well as additional technologies).

Finally, as far as meeting and conferring tomorrow, it probably makes sense for you to discuss it with Marty during your scheduled call. If you want to give us a preview on the subject matter, we can determine if it's something that we will need Dan's input in or not.

Regards,

Rob

---

**From:** Singla, Rohit [mailto:Rohit.Singla@mto.com]
**Sent:** Sunday, January 09, 2011 6:09 PM
**To:** Daniel B. Asimow; Robert D. Hallman
**Cc:** Hwang, Hojoon; Blavin, Jonathan; Mongan, Michael
**Subject:** Clarification regarding Datels' document production

Dan/Rob —

Two questions about Datel's document production. First, in your letter of July 7, 2010, you state that Datel will determine whether to produce documents about its Xbox 360 Powersaves product after it "investigates" its own sales of that product. Having heard nothing further, we assumed Datel was in fact producing documents regarding the Powersaves product. But we have seen few, if any, such documents in Datel's production, and so we seek clarification as to whether Datel is withholding such documents.

Second, your letter of July 7, 2010, confirms Datel's agreement to produce documents in responses to RFP 3, i.e., documents relating to all of Datel's efforts to sell or license its technology for circumventing the Maxwell authentication system. But in recent meet and confer over Microsoft's RFP 85 — which reaches more broadly to all technologies to evade Xbox 360 security that Datel has developed — it appears that Datel is now taking the contrary position. Is that correct?

We would appreciate a response to these items as soon as possible. We intend to seek relief from the Court promptly if Datel is not producing both categories of information.

Rohit

_____

This message and any files or text attached to it are intended only for
the recipients named above, and contain information that may be
confidential or privileged. If you are not an intended recipient, you
must not read, copy, use or disclose this communication. Please also
notify the sender by replying to this message, and then delete all
copies of it from your system. Thank you.


_____

This message and any files or text attached to it are intended only for
the recipients named above, and contain information that may be
confidential or privileged. If you are not an intended recipient, you
must not read, copy, use or disclose this communication. Please also
notify the sender by replying to this message, and then delete all
copies of it from your system. Thank you.

1/11/2011