MARTIN R. GLICK (No. 40187)
mglick@howardrice.com
DANIEL B. ASIMOW (No. 165661)
dasimow@howardrice.com
ROBERT D. HALLMAN (No. 239949)
rhallman@howardrice.com
SHAUDY DANAYE-ELMI (No. 242083)
sdanaye-elmi@howardrice.com
SEAN M. CALLAGY (No. 255230)
scallagy@howardrice.com
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone: 415/434-1600
Facsimile: 415/677-6262

Attorneys for Plaintiffs
DATEL HOLDINGS LTD. and DATEL
DESIGN & DEVELOPMENT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DATEL HOLDINGS LTD. and DATEL DESIGN & DEVELOPMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MICROSOFT CORPORATION, <br><br> Defendant. | No. 09-CV-05535 EDL <br><br> Action Filed: November 20, 2009 <br><br> REPLY SUPPLEMENTAL BRIEF REGARDING THE COURT'S AUTHORITY TO ORDER COST-SHIFTING TO MITIGATE PREJUDICE TO DATEL CAUSED BY MICROSOFT'S LATE AMENDMENT TO THE PLEADINGS |

The bulk of Microsoft's supplemental brief is devoted to re-arguing whether or not Microsoft was diligent in seeking leave to add its new counterclaims. As Datel understood the Court at the May 6 hearing, this is not what the supplemental briefs were supposed to address.[1] The Court has already determined that the timing of Microsoft's new counterclaims presents a meaningful hardship for Datel (*e.g.*, May 6, 2011 Hearing Transcript (Dkt. No. 204) ("Hearing Tr.") 43:10-13), and has already observed that "it's a close question as to whether there was undue delay or not." Hearing Tr. 43:7-8; *see also id.* at 50:5-7 ("I am open to the some kind of cost or expense shifting if there's authority for it, because I do -- I do think that, as I say, it's a close question").

What the Court invited the parties to brief was whether—given Microsoft's timing and the corresponding hardship to Datel, and given that the Court was for those reasons "receptive to cost shifting"—there was (a) authority for it and (b) what kind of cost shifting makes sense. Hearing Tr. 80:11-14. Even Microsoft had to effectively concede that the answer to (a) is "yes." On (b), even though some courts have shifted *all* fees and costs associated with discovery for newly added claims to offset prejudice to the opposing party,[2] Datel tried hard to be reasonable and limit its proposed cost-shifting to those costs (including fees) that would not have been incurred "but for" the late timing of the new counterclaims.

### A. The Court Has Ample Authority To Shift Costs Under The Circumstances Of This Case.

Microsoft contends that cost shifting is authorized only where the original pleadings were "faulty," or were "inadequate" because the party "knew the factual basis for the

---

[1] If Datel misunderstood the Court's intent, and if the Court is inclined to reconsider the question of whether Microsoft diligently pursued these new counterclaims, Datel would ask for the opportunity to submit a short brief outlining the timing of Microsoft's awareness of all the predicate facts underlying its copyright counterclaim, addressing the time by which the network adapter was readily available on the market, and addressing several curious points raised in Microsoft's brief, *e.g.*, the notion that "Xorloser" emails have some bearing on when Microsoft could have asserted a claim related to Datel's network adapter. Microsoft Brief (Dkt. No. 211) at 8:2-5.

[2] *See, e.g.*, *Leased Optical Departments-Montgomery Ward, Inc. v. Opti-Center, Inc.*, 120 F.R.D. 476, 481 (D.N.J. 1988) (awarding costs and fees even for "noncumulative and non-redundant" discovery).

1  amendment when it filed its original pleading." *E.g.*, Microsoft Brief (Dkt. No. 211) ("MS
2  Br.") at 1:9-13. We cannot find any such limitation on the court's discretion—in the Ninth
3  Circuit, or in any other jurisdiction. Even a cursory review of the two Ninth Circuit cases
4  Microsoft cites[3] reveals that—while each is necessarily set against its own particular fact
5  pattern—neither imposes or otherwise supports such limits, and, instead, generally endorses
6  the district court's authority to consider the circumstances and to impose cost-shifting as
7  appropriate to avoid prejudice to the party opposing the amendment.[4]

8  The treatises likewise impose no particular conditions on when or how the Court may
9  implement cost-shifting in connection with granting leave to amend. *E.g.*, 6 Charles Wright
10 et al., *Federal Practice and Procedure* §1486, at 604 (2d ed. 1990) ("the court may use its
11 discretion to impose conditions on the allowance of a proposed amendment as an appropriate
12 means of balancing the interests of the party seeking the amendment and those of the party
13 objecting to it"). As noted in our initial brief, the treatises also observe that cost-shifting is
14 the most commonly imposed condition on granting leave to amend.

15 In any event, cost-shifting would be completely appropriate here even under the
16 narrower standard Microsoft purports to apply. Microsoft sought leave to add new
17 counterclaims after the close of fact discovery (after more than 50 depositions), sixteen
18 months after the case was initiated, and five months after the deadline for seeking leave to
19 amend. The Court has already determined that it is a close question as to whether

---

[3] *Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500 (9th Cir. 1995); *Firchau v. Diamond Nat'l Corp.*, 345 F.2d 269 (9th Cir. 1965).

[4] The *General Signal* court itself cites to cases from other jurisdictions that do not follow the same fact patterns. 66 F.3d at 1514. For example, it cites *Local 783, Allied Industrial Workers of America v. General Electric Co.*, 471 F.2d 751, 756 (6th Cir. 1973) for the general observation "that costs may be imposed as condition of leave to amend to avoid prejudice to the opposing party." The *General Signal* court also points to a District of Delaware case in which a party was permitted to amend its complaint after several claims were dismissed because it may have uncovered pertinent supporting facts in the course of discovery. *Cemar, Inc. v. Nissan Motor Corp. in U.S.A.*, 678 F. Supp. 1091, 1105 (D. Del. 1988). One of the conditions imposed, however, was that the amending party had to reimburse the other party for duplicative discovery "not initiated by it and caused by the amended complaint." *Id.* at 1106 (citing authority for requiring reimbursement of expenses *and fees* for duplicative discovery).

Microsoft's delay was warranted.[5] These are comparable facts to those in cases cited by Datel in which cost (and fee) shifting was imposed. In *G & C Auto Body Inc v. Geico General Insurance Co.*, No. C06-04898 MJJ, 2008 WL 687371, at *4-*5 (N.D. Cal. Mar. 11, 2008), for example, the court compensated the party opposing the amended counterclaims for the incremental expenses of redoing discovery. Although the delay in asserting the new allegations in that case was much shorter than Microsoft's delay in this case, in both cases it came after the close of fact discovery, and in both cases it appeared likely to necessitate reexamination of witnesses. While, in the *Geico* case, the court chided the amending party for altering its new counterclaims after it was granted leave to amend, the cost-shifting was not a sanction for that conduct, it was to prevent the prejudice resulting from the timing of the new allegations:

> To allow GEICO to file a Counterclaim with a new allegation after fact discovery has ended raises the possibility that G & C could be prejudiced if additional discovery is needed to adequately prepare a defense. However, the Court will not strike the filed Counterclaim outright because it can cure any prejudice by reopening discovery and shifting any additional discovery costs to GEICO. (*Id.*)

The same result has followed from comparable facts in cases from other jurisdictions. In *Mohideen v. American Airlines, Inc.*, No. 99 Civ. 0016 HB FM, 1999 WL 714089 (S.D.N.Y. Sept. 14, 1999), for example, the plaintiffs sought to add a new claim after key witnesses had been deposed. Plaintiffs—like Microsoft in this case—argued that they could

---

[5] Moreover, this determination was made under the more stringent "good cause" standard of Rule 16. In its motion for leave to amend, Microsoft improperly focused on the liberal Rule 15 standard, and it stubbornly continues to analyze its amendment within a Rule 15 rubric. For example, Microsoft now insists that the "Ninth Circuit has authorized cost-shifting only where a party violated Rule 15 and filed a 'faulty' pleading or where a party filed an 'inadequate' pleading because it knew the factual basis for the amendment when it filed its original pleading." MS Br. at 2:11-13. That is wrong, as explained above, but is also misdirected. For reasons that will be obvious to the Court, a party that *timely* seeks to amend its complaint under the liberal Rule 15 standard will in all likelihood be in a better position to oppose cost-shifting than a party, like Microsoft, who makes an *untimely* motion for leave to amend. Indeed, the authorities on which Microsoft rely place great weight on the liberal policies embodied in Rule 15. For example. Microsoft quotes *Miller v. Union Pacific Railroad*, No. CIVA 06-2399-JAR-DJW, 2008 WL 4271906, at *6 (D. Kan. Sept. 12, 2008) to argue that "[t]o now shift the burden of those fees and expenses . . . merely because [Microsoft] chose to amend [its counterclaims] would be incompatible with the liberal amendment policy of Rule 15(a)." MS Br. at 6:22-25. No matter how hard Microsoft tries to invoke that standard here, it simply does not apply.

1 not have asserted the new claim until they discovered certain facts in the course of the
2 depositions. The court did not determine whether or not the delay was undue, but
3 nonetheless took steps to lessen the hardship for the defendants of re-doing the discovery by
4 conditioning the amendment on plaintiffs' agreement to pay the costs and fees associated
5 with responding to the amended complaint and reexamining a witness deposed before the
6 amendment. 1999 WL 714089 at *3.

7 These and other cases stress the simple point that where an amendment will result in
8 hardship for the other party, particularly by way of duplicative discovery efforts, courts may
9 impose conditions as they see fit to alleviate the hardship. The discretion of the court in this
10 regard is not nearly as limited, nor as complex, as Microsoft makes it out to be.

### B. Datel Has Reasonably Limited Its Proposed Cost-Shifting To Incremental "But For" Costs and Fees.

13 Datel only asked to shift those costs and fees that would have been avoided if the new
14 counterclaims had been brought earlier and Datel's discovery efforts could have been
15 completed in one pass. That means, for example, that Datel is not seeking to shift the cost of
16 the deposition of a Datel employee who would only be deposed in connection with the new
17 trade secrets counterclaim, but is seeking to shift the cost of a deposition of a Datel
18 employee that was already conducted once, and now has to be redone. Likewise, Datel
19 seeks the incremental additional cost of re-doing its document collection and review—*not*
20 for what it would have cost to perform the necessary collection and review in the first
21 instance, but only for the extra burden associated with accessing the documents through a
22 second, separate review process.[6]

---

[6] Microsoft appears to misread Datel's fees and costs analysis. Datel is not saying it will take its lawyers twice as long to collect and review documents this time around. It is saying that if these counterclaims were asserted earlier, and were part of the case when Datel reviewed the bulk of the documents the first time around, it would have taken relatively little extra time to deal with the issues then. Say, for example, it would have taken 50 hours instead of 40 hours to collect and review the documents of a particular witness. Datel reasonably pointed out in its initial brief that adding the new counterclaims now means it won't just take those ten extra hours to perform the necessary additional document review. It will take at least twice that amount of time—and probably much more than that—to go back to the witness, expand the collection, and then go through the whole batch of

Datel tried hard to make its request manageable and reasonable. Courts have been quite willing to impose such conditions on a late-filed motion for leave to amend, and it is simply not accurate to suggest that the Court would be bucking the norm, or taking exceptional or unusual measures, were it to adopt the cost-shifting structure Datel proposed. While there is always the chance that parties will disagree about what reasonable attorneys' fees amount to, courts deal with this issue all the time in this very context and others, and such potential disagreement is hardly a reason to exclude fees from the cost-shifting analysis.[7]

In short, to ameliorate the prejudice to Datel, the Court is free to impose cost and fee shifting as outlined in Datel's supplemental brief, and Datel respectfully requests that the Court do so.

DATED: May 24, 2011.

MARTIN R. GLICK
DANIEL B. ASIMOW
ROBERT D. HALLMAN
SHAUDY DANAYE-ELMI
SEAN M. CALLAGY
HOWARD RICE NEMEROVSKI CANADY
   FALK & RABKIN
A Professional Corporation

By    /s/ Daniel B. Asimow
        DANIEL B. ASIMOW

Attorneys for Plaintiffs
DATEL HOLDINGS LTD. and DATEL DESIGN & DEVELOPMENT, INC.

---

documents again to find what is responsive to the new claims. Thus, at least 50% of the time now spent collecting and reviewing the documents is incremental. To be practical, as well as conservative, about this, Datel proposed that Microsoft bear 50% of the associated time.

[7]Courts have routinely ordered reimbursement of expenses, including fees. *See, e.g.*, *Hewlett Packard Co. v. Factory Mut. Ins. Co.*, No. 04 Civ. 2791, 2006 WL 1788946, at *18 (S.D.N.Y. June 28, 2006) (amending party must "pay all reasonable attorney's fees and other costs incurred by [opposing party] in connection with recalling previously-deposed witnesses to give new deposition testimony . . . . Such costs would include reasonable preparation time, deposition time, travel time, travel expenses, and reporter fees"); *SFM Corp. v. Sundstrand Corp.*, 99 F.R.D. 101, 107 & n.6 (N.D. Ill. 1983) (amending party must "reimburse [opposing party] for its incremental expenses of reexamining (by deposition or interrogatories) previously deposed witnesses . . . Those incremental expenses include (but are not necessarily limited to) subpoena fees, mileage and attendance fees, attorneys' fees, court reporters' fees and travel and lodging expenses. Determination of the incremental amounts should be made on a "but-for" basis"); *G & C Auto Body Inc*, 2008 WL 687371, at *5 (discussing *SFM Corp.* and applying "similar remedy").

REPLY SUPP. BRIEF RE AUTHORITY TO ORDER COST-SHIFTING     09-05535 EDL

-5-