1   MARTIN R. GLICK (No. 40187)
    mglick@howardrice.com
2   DANIEL B. ASIMOW (No. 165661)
    dasimow@howardrice.com
3   ROBERT D. HALLMAN (No. 239949)
    rhallman@howardrice.com
4   SHAUDY DAN AYE-ELMI (No. 242083)
    sdanaye-elmi@howardrice.com
5   SEAN M. CALLAGY (No. 255230)
    scallagy@howardrice.com
6   HOWARD RICE NEMEROVSKI CANADY
          FALK & RABKIN
7   A Professional Corporation
    Three Embarcadero Center, 7th Floor
8   San Francisco, California 94111-4024
    Telephone:   415/434-1600
9   Facsimile:   415/677-6262

10  Attorneys for Plaintiffs and Counterclaim-Defendants
    DATEL HOLDINGS LTD. and DATEL DESIGN &
11  DEVELOPMENT, INC.

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14               SAN FRANCISCO DIVISION

15

16  DATEL HOLDINGS LTD. and DATEL          No. 09-CV-05535 EDL
    DESIGN & DEVELOPMENT, INC.,
17                                          Action Filed: November 20, 2009
            Plaintiffs and Counterclaim-
18          Defendants,                     DATEL'S REPLY TO MICROSOFT'S
                                            OPPOSITION TO DATEL'S MOTION
19      v.                                  TO COMPEL AND FOR PROTECTIVE
                                            ORDER PURSUANT TO CAL. CODE
20  MICROSOFT CORPORATION,                  CIV. PROC. §2019.210

21          Defendant and                   Date:      July 29, 2011
            Counterclaimant.                Time:      9:00 a.m.
22                                          Place:     Courtroom E, 15th Floor
                                            Judge:     Hon. Elizabeth D. Laporte
23
                                            Trial Date:   May 7, 2012
24

25
                  **DOCUMENT SUBMITTED UNDER SEAL**
26

27

28

REPLY ISO MOTION FOR PROTECTIVE ORDER & TO COMPEL PURS. TO §2019.210          09-CV-05535 EDL

**INTRODUCTION**

On May 31, 2011, Microsoft served a vague, two-sentence description of the two trade secrets it contends Datel has stolen.  Microsoft insisted for weeks that this sufficed, until Datel announced that it would file the present motion to compel.  Only then did Microsoft grudgingly agree to supplement its trade secret identification.  Declaration of Sean M. Callagy In Support of Datel's Motion To Compel And For Protective Order Pursuant To Cal. Code Civ. Proc. §2019.210 ("Callagy Decl.") Ex. E.  On June 17, 2011, Microsoft amended its identification.  *See* Declaration of Peter E. Gratzinger In Support Of Microsoft Corporation's Opposition To Plaintiff's Motion To Compel And For Protective Order Pursuant To Cal. Code Civ. Proc. §2019.210 ("Gratzinger Decl.") Ex. A (the "Amended Identification").  The Amended Identification adds a few details but fixes none of the flaws of the original.  Like its predecessor, the Amended Identification fails to "identify the trade secret[s] with reasonable particularity" as mandated by California Code of Civil Procedure §2019.210 ("Section 2019.210").  The Amended Identification covers just over a single page of text.  It contains high-level generic categories instead of the details of the trade secrets, as well as repetitive disclaimers and an extra-statutory right to freely amend the Identification following discovery.  In its Opposition To Plaintiff's Motion To Compel And For Protective Order Pursuant To Cal. Code Civ. Proc. §2019.210 ("Opp."), Microsoft insists that the law requires, and Datel needs, no more.  Datel strenuously disagrees.  Datel requests that the Court order Microsoft to provide the details of the algorithms, keys and processes that Microsoft contends comprise its trade secrets so that Datel has a fair opportunity to prepare its defenses.  Datel also requests that the Court relieve it of producing additional document discovery until Microsoft complies with Section 2019.210.[1]

---

[1]Given the upcoming schedule for deposition discovery and the short discovery window, we have attached a revised proposed order which would require Microsoft to provide a proper trade secret identification within three (3) business days.  That should be ample time given the many months that Microsoft has had to evaluate the discovery it obtained from Datel, define its trade secrets, and develop its claim.

REPLY ISO MOTION FOR PROTECTIVE ORDER & TO COMPEL PURS. TO §2019.210          09-CV-05535 EDL

**HowardRice**

1    **I.   MICROSOFT HAS FAILED TO IDENTIFY ITS TRADE SECRETS WITH
2         REASONABLE PARTICULARITY DESPITE BEING ALERTED TO THE
          DEFICIENCIES OVER A MONTH AGO.**

3           In opposing Datel's motion, Microsoft ineffectually insists that the Amended

4    Identification now complies with Section 2019.210 (it even asserts that its original two-

5    sentence identification was sufficient).  *See* Opp. at 3:28-4:1.  Yet Microsoft's strained

6    reading renders the statute and Microsoft's promise to comply with it all but meaningless

7    and, if endorsed by the Court, will leave Datel inadequately informed to defend itself.

8           The Amended Identification is easily summarized.  Echoing the original identification,

9    Microsoft describes the first trade secret thus: ████████████████████████

10   ████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████

13   ████████████████████████████████████████  *Id.* at 2:9-10.  Microsoft also

14   cites seven pages of emails with xorLoser without saying where within the correspondence

15   the trade secret or any part of it is revealed.  *Id.* at 2:10-12.  Next, Microsoft clarifies that it

16   does not claim protection for certain "publicly known standards" (which it obviously does

17   not own).  *Id.* at 2:13-15.  Finally, Microsoft says ███████████████████████

18   ████████████████████████████████████████████████  *Id.* at

19   2:15-16.  Microsoft says nothing more to describe what the "particular combination" is.

20          Microsoft describes the second trade secret in a similar manner.  As before, it says the

21   second secret is the "peripheral authentication process used by the Xbox 360 and known as

22   XSM-3 that is executed on the console and in the Maxwell peripheral chip."  *Id.* at 2:17-18.

23   Microsoft repeats that this process is "reflected in the system code on the Xbox 360 console"

24   and in the Maxwell chip.  *Id.* at 2:18-20.  The asserted "trade secret aspects" of this process

25   are (1) "[t]he secret cryptographic keys used in the authentication process," and (2) "[t]he

26   specific series of steps and inputs used in the authentication process on the console and the

27   peripheral to formulate the challenge, formulate the response, and verify the response."  *Id.*

28   at 2:20-25.  Microsoft then says the trade secret is *not* the function names or structure of the

REPLY ISO MOTION FOR PROTECTIVE ORDER & TO COMPEL PURS. TO §2019.210         09-CV-05535 EDL

code, nor (like the first trade secret) publicly known standards. *Id.* at 2:26-3:3. "Rather, it is the particular combination of steps and inputs (including the secret keys) used by Microsoft in the XSM-3 authentication process that are the trade secret." *Id.* at 3:3-5. Microsoft again reveals nothing more about the "steps and inputs" or the "secret keys."

It is precisely these "algorithms," "cryptographic keys" and "particular combination[s] of inputs and steps" that Datel needs to know. But Microsoft has categorically refused to disclose them without a Court order. Gratzinger Decl. Exs. C & A at 2:15-16. Microsoft insists that, like describing the principle behind a bank vault, giving a simplistic sketch of an undisclosed volume of source code files, algorithms, cryptographic keys and unelaborated "processes" suffices under Section 2019.210. Opp. at 2:5-13. Microsoft's conduct does not fulfill its own hypothetical, *i.e.* that "the instructions are accurate enough to work." *Id.* at 2:15. It is not even "reasonable particularity" to say that one opens a bank vault with a "particular combination of inputs and steps." Why withhold the combination if it is easily stated and a protective order is in place? What purpose does evasive circumlocution serve? How else will the defendant evaluate his case? In this case, Microsoft seeks to withhold a significant amount of information—which resembles a simple bank vault combination only at the most abstract and superficial level. As we demonstrated in our opening brief, vague and evasive descriptions of sophisticated and technical processes comply neither with the letter nor spirit of Section 2019.210. Mtn. at 8-10.

Microsoft admits that it has not provided or described the source code that "reflects" its trade secret or the jealously guarded master keys. *See* Opp. at 6:17-18; Amended Identification at 2:18-20. Microsoft says it is justified in doing so because it will eventually provide "access to the limited universe of source code that will tell Datel everything it needs to know about the content of Microsoft's trade secret authentication process." *Id.* at 6:24-26. But this would take place at a terminal server at Microsoft's counsel's offices, where Datel's counsel and experts will need to scour large libraries of code under a time constraint. More importantly, the vague promise that all will be revealed in due time only underscores Microsoft's fundamental misreading of the statute. It is incumbent on Microsoft to identify

HowardRice

1    at this juncture where within the "universe" of files and thousands of lines of code the trade

2    secrets are to be found, either by providing the algorithms, code files and processes, or

3    providing a detailed description of where these are located.  This will allow Datel to do what

4    Microsoft was able to do months ago, before seeking leave to amend: compare Datel's and

5    Microsoft's embodiment of the information to evaluate its discovery options and litigation

6    strategy.

7        It is plain that Microsoft's evasive actions are an attempt to maintain flexibility to alter

8    the definitions of the trade secrets as long as possible and to avoid the discovery boundaries

9    that a proper identification boundary provides.  This is precisely what Microsoft should not

10   be allowed to accomplish.

11   **II.    THE LAW REQUIRES FAR GREATER SPECIFICITY THAN MICROSOFT**
12   **HAS GIVEN.**

13       Microsoft primarily relies on two cases to justify its stonewalling: *Pixion, Inc. v.*

14   *PlaceWare, Inc.*, 421 F. Supp. 2d 233 (N.D. Cal. 2005), *aff'd*, 177 Fed. App'x 85 (Fed. Cir.

15   2006), and *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443 (2002).  Neither is on point

16   and neither concerns a motion to compel.

17       In *Pixion*, the court held that the plaintiff could not amend its trade secret identification

18   in response to a motion for summary judgment after previously insisting the disclosure was

19   adequate.  *See* 421 F. Supp. 2d at 1241-42.  Microsoft's reliance on this case for the

20   proposition that a plaintiff need not set forth the details of the trade secret (Opp. at 3:7-11,

21   5:25-6:6) is misplaced; the *Pixion* court's comment is mere dicta because the defendant was

22   not challenging the adequacy of the initial disclosure.  421 F. Supp. 2d at 1241-42.  Rather,

23   the defendant argued, and the court held, that it would undermine the purposes of the statute

24   to allow the plaintiff to change its description of the trade secrets at the summary judgment

25   stage—which the parties in this case have not yet reached.  *See id.* at 1242.  (*Pixion* further

26   undermines Microsoft's insistence that it can freely supplement the Amended Identification

27

28

1    as "new evidence is discovered." *See* Amended Identification at 2:5.)[2]

2        *Pixion* relied on *Whyte*, which Microsoft likewise cites in arguing that the statute does

3    not really mean it when it says Microsoft "shall *identify* the trade secret." *See* §2019.210

4    (emphasis added). *Whyte* is inapposite because it is an interlocutory appeal from a denial of

5    a preliminary injunction, not a motion to compel or for protective order. *See* 101 Cal. App.

6    4th at 1452-53. The court did not examine whether the trade secret claimant fulfilled

7    Section 2019.210; instead, it considered whether the pleadings stated a claim for preliminary

8    injunction purposes. *Id.* The opposing party conceded that the categories of business

9    information listed by the claimant (such as pricing and profit data) were both easily

10   comprehensible and confidential—a far cry from the data presently at issue. *Id.* at 1453. As

11   with *Pixion*, the *Whyte* case presents an entirely different procedural posture and set of facts.

12   Neither case is a helpful analog in determining the adequacy of Microsoft's identification.

13       Microsoft next acknowledges controlling authority in *Brescia v. Angelin*, 172 Cal.

14   App. 4th 133, 151-52 (2009), where the court held that the plaintiff adequately described a

15   secret pudding formula. *See* Opp. at 6:7-16. To do so, the plaintiff identified the ingredients

16   by common name, brand name, supplier and percentage weight of each ingredient in the

17   final product, and also described "each step in the mixing, testing, and code marking of the

18   pudding." 172 Cal. App. 4th at 140-41. Microsoft says the court found this disclosure

19   adequate not because the plaintiff finally disclosed the formula, but rather, it was adequate

20   only because the plaintiff "pared away" references to hundred of pages of external

21   documents. Opp. at 6:10-14. Not so. The Court indeed first held that the plaintiff's

22   previous identifications of the trade secret, by merely "referring to the generic description in

23   his cross-complaint and voluminous documents already disclosed in discovery," did not

24

25       [2]Microsoft cites *Neothermia Corp. v. Rubicor Medical, Inc.*, 345 F. Supp. 2d 1042
26   (N.D. Cal. 2004) (cited at Opp. at 10), to justify its effort to use discovery to fish for more
     evidence and claims. But this case reasons that the purposes of Section 2019.210 "would
27   easily be frustrated were [plaintiff] given complete freedom to amend its disclosure . . . as
     the case evolves," and therefore holds that the plaintiff may *only* do so upon showing good
28   cause. *Id.* at 1044-45.

fulfill Section 2019.210. *See Brescia*, 172 Cal. App. 4th at 150. However, the court next held that the plaintiff only fulfilled the statute *after* providing the details of the formula and manufacturing process—*i.e.* the trade secret itself. *Id.* at 151 ("[Plaintiff] particularly described the details of his pudding formula as of the last quarter of 2003, listing the 15 specific ingredients by common name and the percentage of the total pudding. He also listed the same 15 ingredients by their supplier and brand name. He particularly described each step in the mixing, testing, and code marking of the pudding").

Microsoft has not made the step that *Brescia* deemed sufficient. Microsoft stands by its use of generic terms such as "code," "algorithm," "keys" and "process" without saying what the actual code files, algorithms, keys or steps of each process are. Moreover, Microsoft does precisely what it says the *Brescia* plaintiff should not have done. It refers to voluminous external documents, namely Datel's correspondence with xorLoser and the "universe of source code" where Microsoft's trade secrets reside. Opp. at 6:24-26. This is manifestly inadequate. When a trade secret can be described succinctly, the plaintiff should do so. If a trade secret is sophisticated, as is the case here, "reasonable particularity" logically requires greater detail. *See Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 836 (2005) ("Where, as here, the alleged trade secrets consist of incremental variations on, or advances in the state of the art in a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field"). Microsoft's contention that "more is frequently less" in this context lacks support in law or reason. Contrary to Microsoft's unsupported assertion, courts often order that details of the trade secret itself be disclosed under Section 2019.210 (or the Federal Rules, if the applicability of Section 2019.210 is in dispute, which it is not here). *See, e.g.*, *Brescia*, 172 Cal. App. 4th at 151; *Applied Materials, Inc. v. Advances Micro-Fabrication Equip. (Shanghai) Co.*, No. C 07-5248 JW (PVT), 2008 WL 183520, at *1 (N.D. Cal. Jan. 18, 2008) (noting "this court's order requiring Plaintiff to disclose the trade secrets it alleges were misappropriated"); *see also IMAX Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1168 (9th Cir. 1998) (affirming

exclusion of trade secret evidence for failure to timely identify precise dimensions and tolerances of alleged secrets). In this case, less is actually less.

## III. A COURT ORDER WILL GUIDE DISCOVERY AND TRIAL PREPARATION, PREVENTING PREJUDICE TO DATEL.

Microsoft argued on June 17 that this motion was not ripe. Dkt. No. 240 at 1:20. It then said that the Amended Identification cured the ills of the original. Gratzinger Decl. Ex. B. It now makes the whipsaw argument that a protective order would be "moot" because the parties exchanged a first round of documents on June 30. Opp. at 9:23-27. But Microsoft acknowledges that depositions and follow-up document requests will continue. *Id.* at 11:27-12:2. Datel should not be forced to use deposition time, interrogatories or requests for admissions to guess at how it should fill in the blanks of the Amended Identification. Given Microsoft's categorical refusal to disclose its actual trade secrets, and its agreement that the parties' readings of Section 2019.210 are diametrically opposed, the dispute is now ripe for a Court order. *See* Gratzinger Decl. Ex. C. With depositions set to commence the first week of August, and with fact discovery ending August 19, time is of the essence. *See* Dkt. No. 222 at 2:17-19.

More importantly, Datel should not be punished for adhering to the case management order and producing what documents it could despite Microsoft's failure to adequately identify the trade secrets. Microsoft cites a single case from another jurisdiction for the proposition that discovery of other claims cannot be affected by Microsoft's refusal to comply with Section 2019.210. Opp. at 11:15-25 (citing *Bryant v. Mattel, Inc.*, No. C 04-09049 SGL (RNBx), 2007 WL 5430888, at *4 n.3 (C.D. Cal. May 18, 2007), *enforced in part*, 2007 WL 5430887 (C.D. Cal. June 20, 2007). This is wrong on both the law and the facts. Where another cause of action depends on the same factual matter as a misappropriation claim, courts may not permit discovery of such facts until the plaintiff complies with Section 2019.210; otherwise such claims would allow an end-run around the statute. *See Advanced Modular Sputtering*, 132 Cal. App. 4th at 834-35 ("Under these circumstances, an order that bars discovery on the cause of action for misappropriation but

permits it on the others simply makes no sense").  Microsoft alleges both copyright and trade secret causes of action relating to the same accessory authentication code.  *See* Microsoft's Second Amended Answer And Counterclaims ¶¶55-69, 120-139.  The Court cannot allow Microsoft to flaunt the statute merely because it has pleaded more than one theory of relief.

The prejudice to Datel if it lacks a code-compliant trade secret identification will be significant.  Much fact and expert discovery must be conducted in a short period of time. Datel must evaluate potential defenses, which may include testing, *inter alia*, whether any parts of the alleged trade secrets (*i.e.*, the source code files, algorithms, keys and processes) have been publicly disclosed.  Datel cannot do so unless it knows what those items are, and Microsoft is premature to say it cannot be done.  *Cf.* Opp. at 8:24-25 ("nobody contends that Microsoft's authentication process . . . was available on the Internet . . .").  Unlike Microsoft, Datel also cannot adequately evaluate how exactly the information from xorLoser relates to the trade secrets until it has the missing pieces of the puzzle.  *Cf. id.* at 10:8-9.  If Microsoft is allowed to hide the ball in this manner, it will force Datel to "wait until the eve of trial to effectively defend against charges of trade secret misappropriation."  *See Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999).  The specter of this prejudice alone is reason to compel further disclosures.

Microsoft's remaining arguments are not legally relevant.  For instance, Microsoft faults Datel for not submitting an expert report in support of its Motion.  Opp. at 8:25-27. There is of course no requirement in the statute or cases that Datel do so, and no expert could reasonably begin to analyze the trade secrets based on the one-page description Microsoft has provided.  Additionally, Microsoft insists (as it did in the meet-and-confer process) that "Datel fully understands and appreciates Microsoft's trade secret" (Opp. at 2:1-2) and that "Microsoft does not believe that Datel is genuinely confused about the substance of Microsoft's trade secret. . . ."  *Id.* at 2:23-24.  Microsoft's subjective *belief* that Datel understands the trade secret is neither here nor there.  The meet-and-confer record amply illustrates what Datel does not know about the trade secrets—and that its confusion is an entirely predictable result of vague drafting and incomplete disclosure.  *See* Callagy Decl.

REPLY ISO MOTION FOR PROTECTIVE ORDER & TO COMPEL PURS. TO §2019.210          09-CV-05535 EDL

Exs. B, D & E; Declaration of Sean M. Callagy In Support Of Datel's Reply To Microsoft's Opposition To Datel's Motion To Compel And For Protective Order Pursuant To Cal. Code Civ. Proc. §2019.210 Ex. A.[3]

### CONCLUSION

For the foregoing reasons, Datel requests that the Court order Microsoft to further supplement its Amended Identification of trade secrets to provide a detailed, unconditional disclosure of the trade secrets at issue and further grant a protective order that Datel not be required to produce additional trade secret-related document discovery until Microsoft has complied with Section 2019.210 and the Court's orders.

DATED: July 7, 2011.

Respectfully,

MARTIN R. GLICK
DANIEL B. ASIMOW
ROBERT D. HALLMAN
SHAUDY DANAYE-ELMI
SEAN M. CALLAGY
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation

By: _____/s/_____
                    MARTIN R. GLICK

Attorneys for Plaintiffs and Counterclaim-Defendants DATEL HOLDINGS LTD. and DATEL DESIGN & DEVELOPMENT, INC.

---

[3]Microsoft contends that Datel "turned around and made new demands" following service of the Amended Identification (Opp. at 3:1-2), but omits Datel's letter of June 23 in its supporting declaration, which reflects Datel's position that Microsoft had not cured the defects of its original Identification.

REPLY ISO MOTION FOR PROTECTIVE ORDER & TO COMPEL PURS. TO §2019.210          09-CV-05535 EDL

HowardRice